Nicola A. Pisano (CA Bar No. 151282)
   npisano@foley.com
Jose L. Patiño (CA Bar No. 149568)
   jpatino@foley.com
Justin E. Gray (CA Bar No. 282452)
   jegray@foley.com
Christopher C. Bolten (CA Bar No. 268284)
   cbolten@foley.com
FOLEY & LARDNER LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130-3302
Telephone:  858.847.6700
Facsimile:  858.792.6773

Attorneys for Defendant
SHENZHEN MINDRAY BIO-MEDICAL
ELECTRONICS CO., LTD.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>MINDRAY DS USA, INC., a Delaware corporation and SHENZHEN MINDRAY BIO-MEDICAL ELECTRONICS CO., LTD, a corporation of the People's Republic of China,<br><br>Defendants. | Case No:  SACV12-02206 CJC (JPRx)<br><br>**ANSWER AND COUNTERCLAIMS OF SHENZHEN MINDRAY BIO-MEDICAL ELECTRONICS CO., LTD.**<br><br>**DEMAND FOR JURY TRIAL** |

Shenzhen Mindray Bio-Medical Electronics Co., Ltd., ("Shenzhen Mindray"), by and through its undersigned attorneys, hereby answers the Complaint filed by Masimo Corporation ("Masimo") and asserts counterclaims as follows:

## PARTIES

1.      Shenzhen Mindray admits the allegations of Paragraph 1.

2.      Shenzhen Mindray admits that Masimo is a medical technology

4822-2046-7987.6

company and that Masimo's pulse oximetry systems acquire and detect signals generated by passing light from red and infrared light-emitting diodes through tissue, which signals are used to extract oxygen saturation and pulse rate values. Shenzhen Mindray is without knowledge or information sufficient to form a belief regarding the remaining allegations of Paragraph 2 of Masimo's Complaint, and on that basis denies those allegations.

3.     The allegations of Paragraph 3 are directed to Mindray DS USA, Inc., which has been dismissed from this case, requiring no response by Shenzhen Mindray to the allegations of Paragraph 3.

4.     Shenzhen Mindray denies that it develops, manufactures, and markets medical devices worldwide.  Shenzhen Mindray admits the remaining allegations of Paragraph 4.

## JURISDICTION AND VENUE

5.     Shenzhen Mindray incorporates by reference its responses to the preceding paragraphs of Masimo's Complaint.

6.     Shenzhen Mindray admits that Masimo contends in Paragraph 6 of the Complaint that this action includes claims for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100 et seq., more particularly, 35 U.S.C. § 271, but Shenzhen Mindray denies that Masimo has stated a claim for patent infringement against Shenzhen Mindray and denies that Masimo's infringement claims have merit.  Shenzhen Mindray admits that, because Masimo contends in Paragraph 6 of the Complaint that this action arises under the patent laws of the United States, Title 35 of the United States Code, this Court has subject matter jurisdiction of these claims under 28 U.S.C. § 1338(a).

7.     Shenzhen Mindray admits that the Complaint purports to include claims for breach of contract, breach of the covenant of good faith and fair dealing, accounting, interference with prospective economic advantage, declaratory relief, and unfair competition against Shenzhen Mindray.  Shenzhen Mindray is without

2

knowledge or information sufficient to form a belief regarding the remaining allegations of Paragraph 7 of Masimo's Complaint, and on that basis, denies those allegations.

8.　　Shenzhen Mindray admits the Agreement between Shenzhen Mindray and Masimo includes purported consent to personal jurisdiction in the Central District of California for any dispute or difference concerning the rights or obligation of either Masimo or Shenzhen Mindray.  Shenzhen Mindray admits that the Agreement in Section 18 states "any claim or cause of action shall be filed in any court in Orange County, California USA.  MASIMO and MINDRAY each consents to personal jurisdiction in any action brought in the United States District Court for the Central District of California[.]"  Shenzhen Mindray denies the remaining allegations of Paragraph 8 of Masimo's Complaint.

9.　　 Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 9 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 9 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

10.　　Shenzhen Mindray admits that Masimo contends that venue is proper in this Court under Title 28 United States Code §§ 1391, 1400(b).  Shenzhen Mindray denies that venue is convenient in this district, and reserves the right to seek a transfer of venue and/or dismissal based on the doctrine of *forum non conveniens*.  Shenzhen Mindray denies the remaining allegations of Paragraph 10 of Masimo's Complaint.

## **THE PATENTS IN SUIT**

11.　　Shenzhen Mindray incorporates by reference its responses to the preceding paragraphs of Masimo's Complaint.

12.　　Shenzhen Mindray admits that on December 14, 1999, the United States Patent and Trademark Office issued U.S. Patent No. 6,002,952 ("the '952 patent") entitled "Signal Processing Apparatus and Method."  Shenzhen Mindray

4822-2046-7987.6

denies that the '952 patent was duly or lawfully issued.  Shenzhen Mindray is without knowledge or information sufficient to form a belief regarding the remaining allegations of Paragraph 12 of Masimo's Complaint, and on that basis denies those allegations.

13.    Shenzhen Mindray admits that on July 17, 2001, the United States Patent and Trademark Office issued U.S. Patent No. 6,263,222 ("the '222 patent") entitled "Signal Processing Apparatus."  Shenzhen Mindray denies that the '222 patent was duly or lawfully issued.  Shenzhen Mindray is without knowledge or information sufficient to form a belief regarding the remaining allegations of Paragraph 13 of Masimo's Complaint, and on that basis denies those allegations.

14.    Shenzhen Mindray admits that on June 17, 2003, the United States Patent and Trademark Office issued U.S. Patent No. 6,580,086 ("the '086 patent") entitled "Shielded Optical Probe and Method."  Shenzhen Mindray denies that the '086 patent was duly or lawfully issued.  Shenzhen Mindray is without knowledge or information sufficient to form a belief regarding the remaining allegations of Paragraph 14 of Masimo's Complaint, and on that basis denies those allegations.

15.    Shenzhen Mindray admits that on March 2, 2004, the United States Patent and Trademark Office issued U.S. Patent No. 6,699,194 ("the '194 patent") entitled "Signal Processing Apparatus and Method."  Shenzhen Mindray denies that the '194 patent was duly or lawfully issued.  Shenzhen Mindray is without knowledge or information sufficient to form a belief regarding the remaining allegations of Paragraph 15 of Masimo's Complaint, and on that basis denies those allegations.

16.    Shenzhen Mindray admits that on June 1, 2004, the United States Patent and Trademark Office issued U.S. Patent No. 6,745,060 ("the '060 patent") entitled "Signal Processing Apparatus."  Shenzhen Mindray denies that the '060 patent was duly or lawfully issued.  Shenzhen Mindray is without knowledge or information sufficient to form a belief regarding the remaining allegations of

4

Paragraph 16 of Masimo's Complaint, and on that basis denies those allegations.

17.    Shenzhen Mindray admits that on May 8, 2007, the United States Patent and Trademark Office issued U.S. Patent No. 7,215,986 ("the '986 patent") entitled "Signal Processing Apparatus." Shenzhen Mindray denies that the '986 patent was duly or lawfully issued. Shenzhen Mindray is without knowledge or information sufficient to form a belief regarding the remaining allegations of Paragraph 17 of Masimo's Complaint, and on that basis denies those allegations.

18.    Shenzhen Mindray admits that on February 10, 2009, the United States Patent and Trademark Office issued U.S. Patent No. 7,489,958 ("the '958 patent") entitled "Signal Processing Apparatus and Method." Shenzhen Mindray denies that the '958 patent was duly or lawfully issued. Shenzhen Mindray is without knowledge or information sufficient to form a belief regarding the remaining allegations of Paragraph 18 of Masimo's Complaint, and on that basis denies those allegations.

19.    Shenzhen Mindray admits that on March 24, 2009, the United States Patent and Trademark Office issued U.S. Patent No. 7,509,154 ("the '154 patent") entitled "Signal Processing Apparatus." Shenzhen Mindray denies that the '154 patent was duly or lawfully issued. Shenzhen Mindray is without knowledge or information sufficient to form a belief regarding the remaining allegations of Paragraph 19 of Masimo's Complaint, and on that basis denies those allegations.

20.    Shenzhen Mindray admits that on July 24, 2012, the United States Patent and Trademark Office issued U.S. Patent No. 8,229,533 ("the '533 patent") entitled "Low-Noise Optical Probes For Reducing Ambient Noise." Shenzhen Mindray denies that the '533 patent was duly or lawfully issued. Shenzhen Mindray is without knowledge or information sufficient to form a belief regarding the remaining allegations of Paragraph 20 of Masimo's Complaint, and on that basis denies those allegations.

///

21.     Responding for itself only, Shenzhen Mindray is without knowledge or information sufficient to form a belief regarding the allegations of Paragraph 21 of Masimo's Complaint, and on that basis denies those allegations.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 21 of the Complaint insofar as they are directed to Mindray DS USA, Inc.

22.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 22 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 22 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

## GENERAL ALLEGATIONS AS TO NON-PATENT CLAIMS

23.     Shenzhen Mindray incorporates by reference its responses to the preceding paragraphs of Masimo's Complaint.

24.     Shenzhen Mindray admits the allegations of Paragraph 24 of Masimo's Complaint, but denies that the Original Agreement is enforceable by Masimo.

25.     Shenzhen Mindray denies the allegations in Paragraph 25 of Masimo's Complaint.

26.     Shenzhen Mindray denies the allegations of Paragraph 26 of Masimo's Complaint.

27.     Shenzhen Mindray denies the allegations of Paragraph 27 of Masimo's Complaint.

28.     Shenzhen Mindray denies the allegations of Paragraph 28 of Masimo's Complaint.

29.     Shenzhen Mindray denies the allegations of Paragraph 29 of Masimo's Complaint.

30.     Shenzhen Mindray admits the allegations of Paragraph 30 of Masimo's Complaint, but denies that Amendment One is enforceable by Masimo.

///

4822-2046-7987.6

31.     Shenzhen Mindray denies the allegations of Paragraph 31 of Masimo's Complaint.

32.     Shenzhen Mindray admits the allegations of Paragraph 32 of Masimo's Complaint, but denies that Amendment Two is enforceable by Masimo.

33.     Shenzhen Mindray admits the quoted language in Paragraph 33 of Masimo's Complaint appears in the paragraph numbered "7" of Amendment Two. Shenzhen Mindray denies the remaining allegations of Paragraph 33 of Masimo's Complaint.

34.     Shenzhen Mindray denies the allegations of Paragraph 34 of Masimo's Complaint.

35.     Shenzhen Mindray admits the quoted language appears in the paragraph number "7" of Amendment Two.  Shenzhen Mindray denies the remaining allegations of Paragraph 35 of Masimo's Complaint.

36.     Shenzhen Mindray denies the allegations of Paragraph 36 of Masimo's Complaint.

37.     Shenzhen Mindray admits the allegations of Paragraph 37 of Masimo's Complaint, but denies that Amendment Three is enforceable by Masimo.

38.     Shenzhen Mindray admits the allegations of Paragraph 38 of Masimo's Complaint.

39.     Shenzhen Mindray admits the allegations of Paragraph 39 of Masimo's Complaint, but denies that Amendment Four is enforceable by Masimo.

40.     Shenzhen Mindray admits that Amendment Four extended the terms of the Original Agreement and prior amendments to March 31, 2011, but denies the remaining allegations of Paragraph 40 of Masimo's Complaint.

///

4822-2046-7987.6

41.     Shenzhen Mindray admits the allegations of Paragraph 41 of Masimo's Complaint, but denies that Amendment Five is enforceable by Masimo.

42.     Shenzhen Mindray admits that Amendment Five extended the terms of the Original Agreement and prior amendments to March 31, 2012, but denies the remaining allegations of Paragraph 42 of Masimo's Complaint.

43.     Shenzhen Mindray admits the allegations of Paragraph 43 of Masimo's Complaint, but denies that Amendment Six is enforceable by Masimo.

44.     Shenzhen Mindray admits the allegations of Paragraph 44 of Masimo's Complaint, but denies that Amendment Seven is enforceable by Masimo.

45.     Shenzhen Mindray admits the Original Agreement sets forth at Section 18 the quoted language in Paragraph 45 of Masimo's Complaint except of the "[sic]" set forth as part of the quote.  Shenzhen Mindray denies the remaining allegations of Paragraph 45 of Masimo's Complaint.

46.     Shenzhen Mindray admits that on or about November 9, 2011, Masimo purported to exercise audit rights with respect to Shenzhen Mindray pursuant to the Original Agreement.  Shenzhen Mindray denies the remaining allegations of Paragraph 46 of Masimo's Complaint.

47.     Responding for itself only, Shenzhen Mindray admits that on or about February 27, 2012, Masimo purported to give notice of a dispute between Mindray Corporation and Masimo Corporation under Paragraph 18 of the Original Agreement, including purported reason to believe that Mindray Corporation is in breach of various provisions of the Original Agreement.  Shenzhen Mindray denies the remaining allegations of Paragraph 47 of Masimo's Complaint.  Shenzhen Mindray does not, and

need not, respond to the allegations of Paragraph 47 of Masimo's Complaint insofar as they are directed to Mindray Corporation or Mindray DS USA, Inc.

48.     Responding for itself only, Shenzhen Mindray admits that on or about May 14, 2012, Masimo sent a letter purporting to describe certain breaches of the Original Agreement, but denies the remaining allegations of Paragraph 48 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 48 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

## FIRST CLAIM FOR RELIEF
## INFRINGEMENT OF U.S. PATENT NO. 6,002,952

49.     Shenzhen Mindray incorporates by reference its responses to the preceding paragraphs of Masimo's Complaint.

50.     Responding for itself only, Shenzhen Mindray admits that the First Claim for Relief purports to be a claim for patent infringement that arises under the Patent Laws of the United States, Title 35 of the United States Code, but denies that Masimo has stated a claim for patent infringement against Shenzhen Mindray and denies that Masimo's infringement claims have merit.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 50 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

51.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 51 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 51 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

52.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 52 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 52 of

Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

53.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 53 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 53 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

54.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 54 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 54 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

55.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 55 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 55 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

## SECOND CLAIM FOR RELIEF
## INFRINGEMENT OF U.S. PATENT NO. 6,263,222

56.     Shenzhen Mindray incorporates by reference its responses to the preceding paragraphs of Masimo's Complaint.

57.     Responding for itself only, Shenzhen Mindray admits that the Second Claim for Relief purports to be a claim for patent infringement that arises under the Patent Laws of the United States, Title 35 of the United States Code, but denies that Masimo has stated a claim for patent infringement against Shenzhen Mindray and denies that Masimo's infringement claims have merit.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 57 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

58.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 58 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 58 of

Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

59.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 59 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 59 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

60.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 60 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 60 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

61.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 61 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 61 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

## THIRD CLAIM FOR RELIEF

## INFRINGEMENT OF U.S. PATENT NO. 6,580,086

62.     Shenzhen Mindray incorporates by reference its responses to the preceding paragraphs of Masimo's Complaint.

63.     Responding for itself only, Shenzhen Mindray admits that the Third Claim for Relief purports to be a claim for patent infringement that arises under the Patent Laws of the United States, Title 35 of the United States Code, but denies that Masimo has stated a claim for patent infringement against Shenzhen Mindray and denies that Masimo's infringement claims have merit.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 63 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

64.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 64 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 64 of

4822-2046-7987.6

Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

65.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 65 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 65 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

66.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 66 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 66 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

67.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 67 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 67 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

## <u>FOURTH CLAIM FOR RELIEF</u>

## <u>INFRINGEMENT OF U.S. PATENT NO. 6,699,194</u>

68.     Shenzhen Mindray incorporates by reference its responses to the preceding paragraphs of Masimo's Complaint.

69.     Responding for itself only, Shenzhen Mindray admits that the Fourth Claim for Relief purports to be a claim for patent infringement that arises under the Patent Laws of the United States, Title 35 of the United States Code, but denies that Masimo has stated a claim for patent infringement against Shenzhen Mindray and denies that Masimo's infringement claims have merit.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 69 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

70.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 70 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 70 of

4822-2046-7987.6

Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

71.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 71 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 71 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

72.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 72 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 72 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

73.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 73 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 73 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

## FIFTH CLAIM FOR RELIEF

## INFRINGEMENT OF U.S. PATENT NO. 6,745,060

74.     Shenzhen Mindray incorporates by reference its responses to the preceding paragraphs of Masimo's Complaint.

75.     Responding for itself only, Shenzhen Mindray admits that the Fifth Claim for Relief purports to be a claim for patent infringement that arises under the Patent Laws of the United States, Title 35 of the United States Code, but denies that Masimo has stated a claim for patent infringement against Shenzhen Mindray and denies that Masimo's infringement claims have merit.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 75 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

76.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 76 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 76 of

13

Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

77.    Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 77 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 77 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

78.    Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 78 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 78 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

## SIXTH CLAIM FOR RELIEF

## INFRINGEMENT OF U.S. PATENT NO. 7,215,986

79.    Shenzhen Mindray incorporates by reference its responses to the preceding paragraphs of Masimo's Complaint.

80.    Responding for itself only, Shenzhen Mindray admits that the Sixth Claim for Relief purports to be a claim for patent infringement that arises under the Patent Laws of the United States, Title 35 of the United States Code, but denies that Masimo has stated a claim for patent infringement against Shenzhen Mindray and denies that Masimo's infringement claims have merit.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 80 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

81.    Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 81 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 81 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

82.    Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 82 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 82 of

14

Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

83.    Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 83 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 83 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

84.    Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 84 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 84 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

## SEVENTH CLAIM FOR RELIEF
## INFRINGEMENT OF U.S. PATENT NO. 7,489,958

85.    Shenzhen Mindray incorporates by reference its responses to the preceding paragraphs of Masimo's Complaint.

86.    Responding for itself only, Shenzhen Mindray admits that the Seventh Claim for Relief purports to be a claim for patent infringement that arises under the Patent Laws of the United States, Title 35 of the United States Code, but denies that Masimo has stated a claim for patent infringement against Shenzhen Mindray and denies that Masimo's infringement claims have merit.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 86 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

87.    Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 87 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 87 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

88.    Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 88 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 88 of

15

4822-2046-7987.6

Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

89.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 89 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 89 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

90.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 90 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 90 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

## EIGHTH CLAIM FOR RELIEF

## INFRINGEMENT OF U.S. PATENT NO. 7,509,154

91.     Shenzhen Mindray incorporates by reference its responses to the preceding paragraphs of Masimo's Complaint.

92.     Responding for itself only, Shenzhen Mindray admits that the Eighth Claim for Relief purports to be a claim for patent infringement that arises under the Patent Laws of the United States, Title 35 of the United States Code, but denies that Masimo has stated a claim for patent infringement against Shenzhen Mindray and denies that Masimo's infringement claims have merit.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 92 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

93.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 93 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 93 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

94.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 94 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 94 of

16

Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

95.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 95 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 95 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

96.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 96 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 96 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

## NINTH CLAIM FOR RELIEF

## INFRINGEMENT OF U.S. PATENT NO. 8,229,533

97.     Shenzhen Mindray incorporates by reference its responses to the preceding paragraphs of Masimo's Complaint.

98.     Responding for itself only, Shenzhen Mindray admits that the Ninth Claim for Relief purports to be a claim for patent infringement that arises under the Patent Laws of the United States, Title 35 of the United States Code, but denies that Masimo has stated a claim for patent infringement against Shenzhen Mindray and denies that Masimo's infringement claims have merit.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 98 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

99.     Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 99 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 99 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

100.    Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 100 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 100 of

Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

101.   Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 101 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 101 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

## **TENTH CLAIM FOR RELIEF**
## **BREACH OF CONTRACT**

102.   Shenzhen Mindray incorporates by reference its responses to the preceding paragraphs of Masimo's Complaint.

103.   Paragraph 103 of Masimo's Complaint calls for a legal conclusion to which no response is required by Shenzhen Mindray.  To the extent a response is required, Shenzhen Mindray admits that it entered into the Original Agreement and all Amendments thereto, but denies the remaining allegations of Paragraph 103 of Masimo's Complaint.

104.   Shenzhen Mindray denies the allegations of Paragraph 104 of Masimo's Complaint.

105.   Shenzhen Mindray denies the allegations of Paragraph 105 of Masimo's Complaint, and each and every of subpart of Paragraph 105, including subparts A.1 though A.7,  subpart B.1, subpart C.1, subparts D.1 through D.2, subparts E.1 through E.2, and subpart F.1.

106.   Shenzhen Mindray denies the allegations of Paragraph 106 of Masimo's Complaint.

107.   Shenzhen Mindray denies the allegations of Paragraph 107 of Masimo's Complaint.

108.   Shenzhen Mindray denies the allegations of Paragraph 108 of Masimo's Complaint.

109.   Shenzhen Mindray denies the allegations of Paragraph 109 of Masimo's Complaint.

110.   Shenzhen Mindray denies the allegations of Paragraph 110 of Masimo's Complaint.

111.   Shenzhen Mindray denies the allegations of Paragraph 111 of Masimo's Complaint.

## ELEVENTH CLAIM FOR RELIEF

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

112.   Shenzhen Mindray incorporates by reference its responses to the preceding paragraphs of Masimo's Complaint.

113.   Paragraph 113 of Masimo's Complaint calls for a legal conclusion to which no response is required by Shenzhen Mindray.  To the extent a response is required, Shenzhen Mindray admits that it entered into the Original Agreement and all Amendments thereto, but denies the remaining allegations of Paragraph 113 of Masimo's Complaint.

114.   Paragraph 114 of Masimo's Complaint calls for a legal conclusion to which no response is required by Shenzhen Mindray.  To the extent a response is required, Shenzhen Mindray admits that it entered into the Original Agreement and all Amendments thereto, but denies the remaining allegations of Paragraph 114 of Masimo's Complaint.

115.   Paragraph 115 of Masimo's Complaint is unintelligible, and on that basis, Shenzhen Mindray denies the allegations of Paragraph 115 of  Masimo's Complaint.

116.   Shenzhen Mindray denies the allegations of Paragraph 116 of Masimo's Complaint.

117.   Shenzhen Mindray denies the allegations of Paragraph 117 of Masimo's Complaint.

118.   Shenzhen Mindray denies the allegations of Paragraph 118 of Masimo's Complaint.

///

4822-2046-7987.6

119.   Shenzhen Mindray denies the allegations of Paragraph 119 of Masimo's Complaint.

120.   Shenzhen Mindray denies the allegations of Paragraph 120 of Masimo's Complaint.

## TWELFTH CLAIM FOR RELIEF

## ACCOUNTING

121.   Shenzhen Mindray incorporates by reference its responses to the preceding paragraphs of Masimo's Complaint.

122.   Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 122 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 122 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

123.   Responding for itself only, Shenzhen Mindray denies that any amount of money is due from Shenzhen Mindray to Masimo, and denies the remaining allegations of Paragraph 123 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 123 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

124.   Responding for itself only, Shenzhen Mindray denies the allegations of Paragraph 124 of Masimo's Complaint.  Shenzhen Mindray does not, and need not, respond to the allegations of Paragraph 124 of Masimo's Complaint insofar as they are directed to Mindray DS USA, Inc.

## THIRTEENTH CLAIM FOR RELIEF

## INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

125.   Shenzhen Mindray incorporates by reference its responses to the preceding paragraphs of Masimo's Complaint.

126.   Paragraph 126 of Masimo's Complaint calls for a legal conclusion to which no response is required by Shenzhen Mindray.  To the extent a response is required, Shenzhen Mindray admits that it entered into the Original Agreement and

20

all Amendments thereto, but denies the remaining allegations of Paragraph 126 of Masimo's Complaint.

127.   Shenzhen Mindray denies the allegations of Paragraph 127 of Masimo's Complaint.

128.   Shenzhen Mindray denies the allegations of Paragraph 128 of Masimo's Complaint.

129.   Shenzhen Mindray denies the allegations of Paragraph 129 of Masimo's Complaint.

130.   Shenzhen Mindray denies the allegations of Paragraph 130 of Masimo's Complaint.

131.   Shenzhen Mindray denies the allegations of Paragraph 131 of Masimo's Complaint.

132.   Shenzhen Mindray denies the allegations of Paragraph 132 of Masimo's Complaint.

133.   Shenzhen Mindray denies the allegations of Paragraph 133 of Masimo's Complaint.

134.   Shenzhen Mindray denies the allegations of Paragraph 134 of Masimo's Complaint.

## FOURTEENTH CLAIM FOR RELIEF
## DECLARATORY RELIEF

135.   Shenzhen Mindray incorporates by reference its responses to the preceding paragraphs of Masimo's Complaint.

136.   Shenzhen Mindray admits that an actual controversy has arisen between the parties concerning their respective rights and duties under the Original Agreement and Amendments thereto, but denies the remaining allegations of Paragraph 136 of Masimo's Complaint.

137.   Shenzhen Mindray admits that Masimo purports to desire a judicial determination of the respective rights and duties under the Original Agreement and

21

Amendments thereto, but denies the remaining allegations of Paragraph 137 of Masimo's Complaint.

138.   Shenzhen Mindray denies the allegations of Paragraph 138 of Masimo's Complaint.

## FIFTEENTH CLAIM FOR RELIEF

## UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200

139.   Shenzhen Mindray incorporates by reference its responses to the preceding paragraphs of Masimo's Complaint.

140.   Shenzhen Mindray admits that the Fifteenth Claim for Relief purports to be a claim for statutory unfair competition under California Business & Profession Code § 17200 et seq., but denies that Masimo has stated a claim for relief, and denies that Shenzhen Mindray has engaged in statutory unfair competition under California Business & Profession Code § 17200 et seq.

141.   Shenzhen Mindray denies the allegations of Paragraph 141 of Masimo's Complaint.

142.   Shenzhen Mindray denies the allegations of Paragraph 142 of Masimo's Complaint.

143.   Shenzhen Mindray denies the allegations of Paragraph 143 of Masimo's Complaint.

144.   Shenzhen Mindray denies the allegations of Paragraph 144 of Masimo's Complaint.

## PRAYER FOR RELIEF

Responding for itself only, Shenzhen Mindray denies that Masimo is entitled to judgment against Shenzhen Mindray as follows:

A.   An Order adjudging Shenzhen Mindray to have infringed, directly and indirectly, each of the '952, '222, '086, '194, '060, '986, '958, '154 and '533 patents, because Shenzhen Mindray has not infringed, directly or indirectly, the '952, '222,

4822-2046-7987.6

'086, '194, '060, '986, '958, '154 or '533 patents;

B.      A permanent injunction enjoining Shenzhen Mindray, as well as its officers, agents, servants, employees, and attorneys and those persons in active concert or participation with Shenzhen Mindray, from infringing each of the '952, '086, '194, '986, '958, '154 and '533 patents, because Shenzhen Mindray has not infringed the '952, '086, '194, '986, '958, '154 or '533 patents;

C.      An accounting of all gains, profits, and advantages derived by Shenzhen Mindray's infringement of each of the '952, '222, '086, '194, '060, '986, '958, '154 and '533 patents and for damages adequate to compensate Masimo for Shenzhen Mindray's infringement of each of the '952, '222, '086, '194, '060, '986, '958, '154 and '533 patents, because Shenzhen Mindray has not infringed the '952, '222, '086, '194, '060, '986, '958, '154 or '533 patents;

D.      An Order adjudging Shenzhen Mindray to have willfully infringed one or more of the '952, '222, '086, '194, '060, and '986 patents because Shenzhen Mindray has not infringed, willfully or otherwise, the '952, '222, '086, '194, '060, '986 patents;

E.      An Order trebling damages due to Shenzhen Mindray's willful infringement under 35 U.S.C. § 284 because Shenzhen Mindray has not infringed, willfully or otherwise, the '952, '222, '086, '194, '060 or '986 patents;

F.      An Order declaring this to be an exceptional case under 35 U.S.C. §285, and an award to Masimo of its attorneys' fees incurred in connection with this action because this is an exceptional case in favor of Shenzhen Mindray, and it is Shenzhen Mindray that is entitled to an award from Masimo of Shenzhen Mindray's attorneys' fees incurred in connection with this action;

G.      An award of pre-judgment and post-judgment interest and costs of this action against Shenzhen Mindray, because such interest and costs are not available to Masimo from Shenzhen Mindray;

///

4822-2046-7987.6

H.      Judgment that Shenzhen Mindray has breached the Original Agreement and the Amendments thereto because Shenzhen Mindray has not breached an enforceable or valid provision of the Original Agreement and the Amendments thereto;

I.      Judgment that Shenzhen Mindray has tortiously interfered with Masimo's prospective economic advantage because Shenzhen Mindray has not interfered, tortiously or otherwise, with Masimo's prospective economic advantage;

J.      Judgment that Shenzhen Mindray competed unfairly with Masimo under California Business & Professions Code § 17200, et seq., and that Mindray Shenzhen's actions in doing so be adjudged as intentional and willful, because Shenzhen Mindray has not competed unfairly with Masimo under California Business & Professions Code § 17200, et seq.;

K.      Judgment that Shenzhen Mindray competed unfairly with Masimo under the common law of the State of California and that Mindray Shenzhen's actions in doing so be adjudged as intentional and willful, because Shenzhen Mindray has not competed unfairly with Masimo under the common law of the State of California;

L.      An accounting of all gains, profits, and advantages derived by Shenzhen Mindray, and an award of such gains, profits and advantages to Masimo because Masimo is not entitled to an accounting from Shenzhen Mindray;

M.      Judgment in the form of specific performance to require Shenzhen Mindray to perform under its contractual obligations because Masimo is not entitled to specific performance of any provision of the Original Agreement or the Amendments thereto;

N.      For an order that interest be awarded on all applicable damages resulting from Shenzhen Mindray's breach of contract under California Civil Code § 3289 because Masimo is not entitled to damages from Shenzhen Mindray on any claim for relief;

O.      For a recovery of reasonable attorneys' fees for Shenzhen Mindray's tortious interference with prospective advantage because Shenzhen Mindray has not tortiously interfered with Masimo's prospective advantage;

P.      For a recovery of punitive damages for Shenzhen Mindray's wrongful conduct because Shenzhen Mindray's conduct has not been wrongful and does not support punitive damages in favor of Masimo;

Q.      An award to Masimo of all damages sustained on account of Shenzhen Mindray's wrongful conduct, in an amount to be proven at trial, because Shenzhen Mindray has not engaged in wrongful conduct and Masimo cannot prove recoverable damages at trial;

R.      Preliminary and permanent injunctive relief enjoining Shenzhen Mindray, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them from engaging in any act or practice that 1) constitutes a breach of the Original Agreement and the Amendments therefore, 2) intentionally interferes with Masimo's prospective economic advantage, 3) constitutes unfair competition against Masimo, because Masimo is not entitled to injunctive relief on any claim for relief against Shenzhen Mindray; and

S.      Such other and further relief as the Court may deem just and proper because no relief is just and proper in favor of Masimo in this case.

## JURY DEMAND

Shenzhen Mindray joins Masimo's request for a trial by jury of any and all issues in this action so triable.

## AFFIRMATIVE DEFENSES

Shenzhen Mindray asserts the following affirmative defenses without admitting or acknowledging that it bears the burden of proof as to any of them.

///

///

ANSWER AND COUNTERCLAIMS
OF SHENZHEN MINDRAY

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

1.      Masimo's First through Fifteenth Claims each fail to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Lack of Infringing Acts in the United States)

2.      Masimo's claims and requested relief under Title 35 of the United States Code are barred because Shenzhen Mindray has not made, used, sold, or offered for sale in the United States, or imported into the United States, the accused patient monitoring devices.

## THIRD AFFIRMATIVE DEFENSE

### (Lack of Knowledge and Intent Regarding Infringing Acts)

3.      Masimo's claims and requested relief under Title 35 of the United States Code are barred because Shenzhen Mindray did not employ, intentionally or otherwise, extraterritorial means to contribute to, or induce, acts within the United States known to be infringing.

## FOURTH AFFIRMATIVE DEFENSE

### (Failure To Conduct A Reasonable Presuit Investigation)

4.      Masimo's claims and requested relief under Title 35 of the United States Code are barred, and its infringement causes of action are subject to dismissal and other sanctions, because Masimo failed to conduct a reasonable investigation to determine that Shenzhen Mindray engaged in infringing acts in the United States.

## FIFTH AFFIRMATIVE DEFENSE

### (Non-Infringement)

5.      Shenzhen Mindray does not infringe, directly or indirectly, or under the doctrine of equivalents, any claim of the '952 patent.

///

26

4822-2046-7987.6

6.     Shenzhen Mindray does not infringe, directly or indirectly, or under the doctrine of equivalents, any claim of the '222 patent.

7.     Shenzhen Mindray does not infringe, directly or indirectly, or under the doctrine of equivalents, any claim of the '086 patent.

8.     Shenzhen Mindray does not infringe, directly or indirectly, or under the doctrine of equivalents, any claim of the '194 patent.

9.     Shenzhen Mindray does not infringe, directly or indirectly, or under the doctrine of equivalents, any claim of the '060 patent.

10.     Shenzhen Mindray does not infringe, directly or indirectly, or under the doctrine of equivalents, any claim of the '986 patent.

11.     Shenzhen Mindray does not infringe, directly or indirectly, or under the doctrine of equivalents, any claim of the '958 patent.

12.     Shenzhen Mindray does not infringe, directly or indirectly, or under the doctrine of equivalents, any claim of the '154 patent.

13.     Shenzhen Mindray does not infringe, directly or indirectly, or under the doctrine of equivalents, any claim of the '533 patent.

## SIXTH AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel)

14.     Masimo's claims of infringement of the '952 patent are barred in whole or in part by the doctrine of prosecution history estoppel.

15.     Masimo's claims of infringement of the '222 patent are barred in whole or in part by the doctrine of prosecution history estoppel.

16.     Masimo's claims of infringement of the '086 patent are barred in whole or in part by the doctrine of prosecution history estoppel.

17.     Masimo's claims of infringement of the '194 patent are barred in whole or in part by the doctrine of prosecution history estoppel.

18.     Masimo's claims of infringement of the '060 patent are barred in whole or in part by the doctrine of prosecution history estoppel.

4822-2046-7987.6

19.     Masimo's claims of infringement of the '986 patent are barred in whole or in part by the doctrine of prosecution history estoppel.

20.     Masimo's claims of infringement of the '958 patent are barred in whole or in part by the doctrine of prosecution history estoppel.

21.     Masimo's claims of infringement of the '154 patent are barred in whole or in part by the doctrine of prosecution history estoppel.

22.     Masimo's claims of infringement of the '533 patent are barred in whole or in part by the doctrine of prosecution history estoppel.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Invalidity)**

23.     Each and every claim of the '952 patent is invalid for failure to comply with one or more of the conditions for patentability, including but not limited to inventorship, utility, novelty, non-obviousness, enablement, indefiniteness, and written description, as set forth in 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

24.     Each and every claim of the '222 patent is invalid for failure to comply with one or more of the conditions for patentability, including but not limited to inventorship, utility, novelty, non-obviousness, enablement, indefiniteness, and written description, as set forth in 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

25.     Each and every claim of the '086 patent is invalid for failure to comply with one or more of the conditions for patentability, including but not limited to inventorship, utility, novelty, non-obviousness, enablement, indefiniteness, and written description, as set forth in 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

26.     Each and every claim of the '194 patent is invalid for failure to comply with one or more of the conditions for patentability, including but not limited to inventorship, utility, novelty, non-obviousness, enablement,

4822-2046-7987.6

indefiniteness, and written description, as set forth in 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

27. Each and every claim of the '060 patent is invalid for failure to comply with one or more of the conditions for patentability, including but not limited to inventorship, utility, novelty, non-obviousness, enablement, indefiniteness, and written description, as set forth in 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

28. Each and every claim of the '986 patent is invalid for failure to comply with one or more of the conditions for patentability, including but not limited to inventorship, utility, novelty, non-obviousness, enablement, indefiniteness, and written description, as set forth in 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

29. Each and every claim of the '958 patent is invalid for failure to comply with one or more of the conditions for patentability, including but not limited to inventorship, utility, novelty, non-obviousness, enablement, indefiniteness, and written description, as set forth in 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

30. Each and every claim of the '154 patent is invalid for failure to comply with one or more of the conditions for patentability, including but not limited to inventorship, utility, novelty, non-obviousness, enablement, indefiniteness, and written description, as set forth in 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

31. Each and every claim of the '533 patent is invalid for failure to comply with one or more of the conditions for patentability, including but not limited to inventorship, utility, novelty, non-obviousness, enablement, indefiniteness, and written description, as set forth in 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

///

4822-2046-7987.6

32.     The provision of the Original Agreement suggesting a bar to challenging the validity of Masimo's patents by Shenzhen Mindray is void as a matter of law, unenforceable as anticompetitive, and inapplicable given Masimo's breach of the Original Agreement.

33.     Pursuant to the unfair competition law in the People's Republic of China, a provision in a contract or license restricting a party's ability to challenge the validity of patent rights is void, and any judgment entered abroad based at least in part on a preclusion of a party from challenging the validity of patents in suit is unenforceable through the courts of the People's Republic of China.

## EIGHTH AFFIRMATIVE DEFENSE
### (License)

34.     Masimo's claims and requested relief under Title 35 of the United States Code are barred in whole or in part because the Original Agreement and Amendments thereto licensed Shenzhen Mindray to practice Masimo's patented technology, including each of the '952, '222, '086, '194, '060, '986, '958, '154 and '533 patents.

## NINTH AFFIRMATIVE DEFENSE
### (Implied License)

35.     Masimo's claims and requested relief under Title 35 of the United States Code are barred in whole or in part by an implied license to each of the '952, '222, '086, '194, '060, '986, '958, '154 and '533 patents.

## TENTH AFFIRMATIVE DEFENSE
### (Patent Exhaustion)

36.     Masimo's claims and requested relief under Title 35 of the United States Code are barred in whole or in part because Shenzhen Mindray's products were imported into the United States by third parties authorized by Masimo to sell the allegedly infringing products.

///

ANSWER AND COUNTERCLAIMS
OF SHENZHEN MINDRAY

4822-2046-7987.6

## ELEVENTH AFFIRMATIVE DEFENSE

### (Patent Misuse)

37.     Masimo is barred from asserting the '952, '222, '086, '194, '060, '986, '958, '154 and '533 patents against Shenzhen Mindray based on the doctrine of patent misuse, because Masimo engaged in acts designed to broaden the scope of its patent rights and Masimo did so with anti-competitive effect.

## TWELFTH AFFIRMATIVE DEFENSE

### (Inequitable Conduct)

38.     Shenzhen Mindray incorporates herein by reference the facts set forth with particularity in paragraphs 72 to 113 of its Counterclaims, *infra*.  As alleged in the incorporated paragraphs, Masimo's '222, '986, '958 and '154 patents are unenforceable for inequitable conduct.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Other Equitable Defenses)

39.     Masimo's claims and requested relief under Title 35 of the United States Code are barred by one or more of the equitable doctrines of acquiescence, unclean hands, waiver, laches or estoppel.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Limitation of Damages and Costs)

40.     Masimo's claim for damages and costs under Title 35 of the United States Code are limited, in whole or in part, by one or more of 35 U.S.C. §§ 286, 287, and 288.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Failure of Consideration)

41.     Masimo's claims and requested relief based on the Original Agreement and Amendments thereto are barred by failure of consideration.

///

///

ANSWER AND COUNTERCLAIMS
OF SHENZHEN MINDRAY

4822-2046-7987.6

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Failure To Perform)

42.     Masimo's claims and requested relief based on the Original Agreement and Amendments thereto are barred by Masimo's failure to perform in accordance with its duties and obligations under the Original Agreement and Amendments thereto.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Excuse of Performance)

43.     Shenzhen Mindray has fully performed all obligations under the Original Agreement and Amendments thereto except for any conditions excused by virtue of Masimo's anticipatory repudiation and/or Masimo's contractual breach.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Illegality)

44.     Masimo's claims and requested relief based on the Original Agreement and Amendments thereto are barred by the illegality created by the anti-competitive provisions of the Original Agreement and Amendments thereto.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Statutes of Limitation)

45.     Masimo's claims for damages are limited in whole or in part by applicable statutes of limitation.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Contract of Adhesion)

46.     Masimo's claims based on the Original Agreement and Amendments thereto are barred in whole or in part in light of provisions that are the product of disparate bargaining power and/or the failure of knowing and voluntary agreement by Shenzhen Mindray.

///

## TWENTY FIRST AFFIRMATIVE DEFENSE

### (Insufficient Service of Process)

47.    This Court is deprived of jurisdiction to enter a judgment in favor of Masimo against Shenzhen Mindray until Shenzhen Mindray is effectively served, and Shenzhen Mindray has not been effectively served at least for the following reasons: (1) the Complaint was transmitted by postal channels to Shenzhen Mindray in China when such service is illegal under Chinese law, in violation of the Hague Convention, and in breach of the strictures of Rule 4 of the Federal Rules of Civil Procedure; (2) in light of the illegality of the method of service used by Masimo under Chinese law, any provisions of a private agreement purporting to circumvent the treaty obligations of the United States and/or to violate the provisions of a foreign country's laws are void, unenforceable, and any service based thereon is ineffective as a matter of law; (3) controlling law requires compliance with the Hague Convention whenever service abroad is attempted, and Hague Convention procedures were not followed by Masimo; (4) Masimo did not comply with the procedures required under Rule 4 of the Federal Rules of Civil Procedure to obviate compliance with the Hague Convention, including securing an appropriate order from the Court prior to the attempted service permitting substitute service consistent with the Hague Convention and Rule 4 of the Federal Rules of Civil Procedure; (5) Masimo failed to translate the Complaint or the asserted patents, depriving Shenzhen Mindray of adequate notice of the asserted claims, and deprive Shenzhen Mindray of due process of law; and (6) the Court failed to honor and give effect to protections afforded Shenzhen Mindray under the United States' treaty obligations and Chinese law with respect to service of process.

///

///

///

4822-2046-7987.6

## TWENTY SECOND AFFIRMATIVE DEFENSE

## (Forum *Non Conveniens*)

48.     The doctrine of forum *non conveniens* requires that this Court dismiss this case in favor of a forum in the People's Republic of China where an action between Shenzhen Mindray and Masimo regarding Masimo's anticompetitive conduct is presently pending, at least because: (1) the claims asserted by Masimo here arise from actions and omissions that occurred outside of the United States; (2) this Court has no interest in addressing or regulating the conduct of Masimo and Shenzhen Mindray outside of the United States; (3) Shenzhen Mindray would effectively be denied its day in court because its sources of proof in response to Masimo's allegations are third party customers and their documents located in China which are beyond the subpoena power of this Court; and (4) laws and regulations of the People's Republic of China restrict the delivery outside of China of certain trade secret materials that Masimo will no doubt request in discovery, and which Shenzhen Mindray would require for its defense to Masimo's claims for relief.

## TWENTY THIRD AFFIRMATIVE DEFENSE

## (No Immediate or Irreparable Injury)

49.     Masimo is not entitled to injunctive relief at least because: (1) Masimo has not suffered nor will it suffer irreparable harm because of Shenzhen Mindray's conduct; (2) any harm to Masimo would be outweighed by the harm to Shenzhen Mindray; (3) Masimo has an adequate remedy at law even if it were to prevail in this action; and (4) the public interest would not be served by an injunction in favor of Masimo.

## OTHER AFFIRMATIVE DEFENSES

50.     Shenzhen Mindray reserves the right to assert additional affirmative defenses during or upon completion of discovery.

///

4822-2046-7987.6

# COUNTERCLAIMS

Shenzhen Mindray Bio-Medical Electronics Co., Ltd. ("Shenzhen Mindray") alleges the following counterclaims against Masimo Corporation ("Masimo"):

## JURISDICTION AND VENUE

1.      Shenzhen Mindray asserts violations of federal antitrust law, specifically Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2, and Section 3 of the Clayton Act, 15 U.S.C. § 14.

2.      Shenzhen Mindray seeks monetary and equitable relief under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 & 26.

3.      Shenzhen Mindray asserts counterclaims under the Federal Declaratory Judgment Act, 28 U.S.C. § 2, seeking declaratory judgments under the patent laws of the United States, United States Code Title 35, that the patents asserted by Masimo are invalid, unenforceable, and not infringed.

4.      This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367(a), 2201, and 2202, and 35 U.S.C. § 1, et seq.

5.      Masimo has submitted to the personal jurisdiction of this Court.

6.      Venue is proper in this district for the purpose of compulsory counterclaims pursuant to 28 U.S.C. § 1391, because this suit was filed in this District by Masimo.

## THE PARTIES

7.      Shenzhen Mindray is a Chinese corporation having its principal place of business at Keji 12th Road South, High-Tech Industrial park, Nanshan, Shenzhen, People's Republic of China 518057.

8.      Masimo purports to be a Delaware corporation with its principal place of business at 40 Parker, Irvine, California 92618.

///

///

## ALLEGATIONS COMMON TO ANTITRUST, UNFAIR COMPETITION, AND TORTIOUS INTERFERENCE COUNTERCLAIMS

### A.  Background of Pulse Oximetry

9.  Pulse oximetry involves the noninvasive measurement of oxygen levels in a patient's blood.  This is accomplished by using a system generally comprising a sensor, a monitor and a patient cable that connects the sensor to the pulse oximeter monitor.  The sensor may be reusable or disposable, and typically is applied onto the finger of an adult patient or the foot of an infant.  Special purpose sensors also may be used on other parts of the body, such as the ear and the forehead.

10.  A basic pulse oximeter sensor contains two light emitting diodes ("LEDs") - one red and one infrared.  The LEDs emit light that passes through the patient's tissue, and a receptor generally opposite the LEDs detects the amount of light that is not absorbed by the blood and tissue.  This information is transmitted from the sensor via the patient cable to the pulse oximeter monitor.  The pulse oximeter monitor may be a standalone pulse oximeter monitor that reports pulse rate, blood oxygenation saturation ("SpO2") and a plethysmographic waveform (a waveform that shows the time-varying changes in blood volume in the tissue), or alternatively, a multi-parameter patient parameter monitor ("MPPM") that includes sensors that measure and report other patient parameters, such as ECG, blood pressure, etc.

11.  Because oxygenated blood absorbs light differently than deoxygenated blood, the monitor is able to use various well-known algorithms to calculate oxygenation saturation of the blood in the tissue based on light absorption, as well as additional patient parameters, such as pulse rate.  On information and belief, pulse oximetry was invented in the 1970s and introduced into the United States healthcare markets during the early 1980s, long before Masimo's existence.

4822-2046-7987.6

12.     Pulse oximeter monitors comprise of electronic circuitry and software. The monitors are reusable, durable pieces of equipment that typically function from 5 to 10 years before being replaced.  Pulse oximeter monitors or "pulse oximeters" typically are sold as either standalone devices or components of a multi-parameter patient monitoring system ("MPPM").

13.     Patient cables and sensors are commodity products that must be replaced frequently.  Hospitals generally purchase either disposable sensors, which must be replaced after each use, or reusable sensors, which typically are replaced every 1–2 years.  Likewise, patient cables typically have a limited useful life of about a year.

**B.     The Relevant Markets**

14.     There is a relevant product market for pulse oximeter monitors.  The relevant geographic market for this product is the United States.  The pulse oximeter monitor market contains several relevant submarkets − a market for stand-alone pulse oximeter monitors, a market for MPPM monitors, and an underlying technology market (OEM circuit boards, as set forth below).  There is virtually no cross-elasticity of demand between pulse oximeter monitors and other forms of obtaining blood oxygen saturation, such as invasive methods of analyzing blood oxygen saturation via analysis of periodic blood draws.

15.     There is a second relevant product market for pulse oximetry sensors. Absent anticompetitive constraints, customers would make buying decisions for sensors independently from decisions to purchase pulse oximeter monitors.  The relevant geographic market for this product is the United States.  There is no cross-elasticity of demand between sensors for non-invasive use with pulse oximeter monitors and sensors used in connection with invasive methods of obtaining blood oxygen saturation via analysis of periodic blood draws.

16.     There is a third relevant product market for patient cables used to connect sensors to pulse oximeter monitors.  Absent anticompetitive constraints,

customers would make buying decisions for patient cables independently from decisions to purchase pulse oximeter monitors.  The relevant geographic market for this product is the United States.  There is no cross-elasticity of demand between patient cables for non-invasive use with pulse oximeter monitors and accessories used with invasive methods of obtaining blood oxygen saturation via analysis of periodic blood draws.

17.   Masimo markets pulse oximeters under the brand name "Masimo SET®."  Masimo manufactures its own pulse oximeter monitors, but also has licensed its technology to third parties in the form of circuit boards that include the "Masimo SET®" pulse oximeter functionality ("OEM circuit boards").  These third parties, including Nellcor Puritan Bennett LLC (a subsidiary of Covidien Inc.), Philips Medical Systems (part of Royal Philips Electronics), and Mindray DS USA, Inc. (prior to 2008, Datascope Corporation), manufacture pulse oximeter monitors pursuant to their agreements with Masimo.  On information and belief, Nellcor is currently the largest manufacturer of Masimo-licensed pulse oximeters, which are sold under the brand name "Oximax."  In addition, Masimo sells OEM circuit boards for incorporation into MPPMs.

18.   Shenzhen Mindray incorporates a Masimo-branded SET® circuit boards into its BeneView pulse oximeters and MPPMs.  From its manufacturing facility located near Shenzhen, China, Shenzhen Mindray also makes and sells pulse oximeter monitors that use pulse oximetry algorithms developed by Shenzhen Mindray, known as the Vital Signs and PM-9000 series of monitors.  Shenzhen Mindray monitors are purchased in China by third party distributors and other Mindray Medical International Limited subsidiaries located worldwide, who import and sell Shenzhen Mindray monitors and accessories, including pulse oximeter monitors, sensors and patient cables, in their respective countries, including the U.S.

///

4822-2046-7987.6

19.     The relevant market for pulse oximeter monitors (including standalone pulse oximeter monitors, MPPMs and OEM circuit boards) is highly concentrated.  On information and belief, Masimo currently controls over 80% of the market by manufacturing its own products and by directing the competitive activities of its licensees and distributors.  The market for pulse oximeter monitors is also subject to high barriers to entry, including the cost of developing intellectual property and defending against lawsuits.

20.     The markets for sensors and patient cables are moderately concentrated with lower barriers to entry due to the commodity nature of both products and relatively low technical hurdles to production.

21.     Sensor and patient cable sales account for significantly more revenue than sales of pulse oximeter monitors in any given year.  For companies like Masimo, the primary driver for sales of sensors and patient cables is an installed base of pulse oximeter monitors (including standalone pulse oximeter monitors, MPPMs and third party monitors that incorporate Masimo OEM circuit boards).  On information and belief, more than 80% of Masimo's revenues are derived from forcing Masimo pulse oximeter monitor customers to purchase Masimo sensors and patient cables.

**C.     Masimo's Market Power**

22.     Masimo has engaged in a systematic effort to monopolize pulse oximetry in the United States.

23.     Masimo currently wields market power in the sale of pulse oximeter monitors, sensors and patient cables.  It has the ability to control price and exclude competition, and routinely exercises those powers.  Masimo's market power extends equally into the corresponding submarkets for standalone pulse oximeter monitors, MPPM monitors, OEM circuit boards, and the markets for pulse oximeter sensors and patient cables.  Masimo's market power is maintained through the coordinated direction of its own branded products and its licensed

39

pulse oximeter products.

24.    Masimo's market power is derived in part from the abuse of its technology position and in part from its decade-long campaign of anticompetitive licensing strategies.

25.    Masimo has entered into numerous contracts to restrain competition for the sale of pulse oximeter technology by third parties.  Masimo exerts control over the market by dictating the terms under which licensees or distributors can compete using their own branded pulse oximeter monitors or Masimo-branded pulse oximeter monitors.  Upon information and belief, Masimo's licensing agreements usually demand that its licensees promote Masimo SET® as their primary pulse oximetry technology.  In many of its licenses, Masimo requires the licensee to abandon marketing or sales of its own pre-existing pulse oximetry technology and forego development of any competing technology.  Through its agreements and technically useless and exclusionary changes to its OEM circuit boards, Masimo has directed licensees and distributors to exclude competition in the pulse oximeter monitor, sensor, and patient cable markets.  Masimo extracts the anticompetitive profits from these exclusionary practices by recovering royalties for the sale of both patented and unpatented goods.

26.    Through the combination of its direct pulse oximeter monitor and accessory sales and its control over third party pulse oximeter monitor manufacturers, Masimo has become the single dominant firm in the market for pulse oximeter monitors, including the submarkets for standalone pulse oximeter monitors, MPPM monitors, OEM circuit boards, and in the market for sensors and patient cables.  Masimo's dominant market position empowers it to control pricing and exclude competition.  As detailed below, Masimo has created and maintained its dominant position through various anticompetitive practices.  Masimo has further exploited its dominant position in the market for pulse oximeter monitors to capture additional profits from the relevant markets for patient cables and sensors.

40

4822-2046-7987.6

### D.    Exclusionary Agreements with Competitors and Distributors

27.    Masimo has forced many of its current and former competitors to enter into exclusive dealing arrangements under threat of onerous patent litigation. These agreements require the licensee or distributor to produce and sell primarily Masimo branded pulse oximeter monitors, patient cables, or sensors, and to abandon such licensees in competing pulse oximetry technologies.  These agreements either expressly prohibit the sale of non-Masimo pulse oximeter monitors, patient cables, or sensors, or create a threat of patent litigation for continued sale of non-Masimo pulse oximeter monitors, patient cables and sensors, even if the non-Masimo products would not infringe any of Masimo's patents. Masimo has compounded the anti-competitive effect of such license provisions by demanding that its licensees forego challenge to the validity of its patents to retain the license, a provision that is facially unenforceable.

28.    Masimo's licensing and distribution agreements have foreclosed significant commerce in the market for pulse oximeters by preventing the sale or introduction of competing products.  In addition, the licensing and distribution agreements have stifled the incentive to innovate, as a large percentage of distributors would be unable to offer a competing non-Masimo pulse oximeter monitor even if it could be sold at a lower price or with superior features.  The licensing and distribution agreements also preclude the sale of competing patient cables and sensors for use with Masimo pulse oximeter monitors, even though these are commodity products for which Masimo would otherwise face competition from a variety of branded and generic products.

29.    Masimo has also entered into agreements prohibiting the promotion of competing products, regardless of whether such products might offer better quality or more competitive prices to customers.  In some cases Masimo has required its licensees and distributors to discontinue sales of competing products.

///

4822-2046-7987.6

30.     Masimo has also required licensees and distributors to agree not to offer any competing pulse oximeter monitors at a lower price than Masimo's SET® pulse oximeter monitor, even if customers would benefit from differentiated pricing.

31.     Masimo has sought to impose an extraterritorial effect to its U.S. patent portfolio.  Masimo has attempted to sue Mindray DS USA, Inc. ("Mindray USA") for patent infringement in the United States.   Mindray USA is a sister company of the Shenzhen Mindray and has its own licensing agreement with Masimo.  Nonetheless, Masimo has threatened to sue Mindray USA and/or disrupt Mindray USA's business in the field of pulse oximeter monitors (the majority of which include Masimo SET® circuit boards) as a means of forcing Shenzhen Mindray to comply with Masimo's demands that Shenzhen Mindray promote sales of Masimo pulse oximeter monitors and accessories in China to customers that prefer lesser expensive alternatives.  Masimo also has threatened such suit against Mindray USA unless Shenzhen Mindray complies with Masimo's illegal and anti-competitive price-fixing license provisions for sales outside of the United States.

32.     As a result of Masimo's enforcement of its exclusionary license provisions with Mindray USA and its continued threats to pursue patent infringement claims against Mindray USA, even for products that do not infringe any Masimo patent, Mindray USA has, except for repair or service, discontinued purchase, importation and sale of Shenzhen Mindray pulse oximeter monitors that employ Mindray-based pulse oximetry technology, as well as pulse oximeter sensors and patient cables for use with such oximeters.

33.     Masimo's exclusionary licensing and distribution provisions are specifically designed and intended to stabilize the market and exclude competition.

34.     As of 2011, according to its public statements, Masimo had licensing or distribution agreements with 53 OEM partners, which accounted for over 90% of the worldwide shipments of pulse oximeter monitors.  On information and

42

4822-2046-7987.6

belief, Masimo systematically requires its licensees and partners to agree to provisions designed to exclude competition, such as those outlined in Paragraphs 27 through 33 above. Such provisions can be found in current and former agreements with Respironics, Medical Data Electronics, Invivo, Shenzhen Mindray, Royal Philips Medical Systems, Datascope Corporation and others.

35.     Consumers throughout the United States, including consumers located in the State of California, have been harmed by the reduction in competition as the result of Masimo's exclusionary practices. The provisions have reduced customer choice, restrained output, and raised prices.

36.     Shenzhen Mindray is directly harmed by Masimo's exclusionary licensing and distribution provisions. But for these agreements, distributors and importers could offer Shenzhen Mindray sensors and patient cables, or competitive third party sensors and patient cables available from Shenzhen Mindray, to customers throughout the United States, including within the State of California.

**E.     Exclusionary Technological Interfaces**

37.     Prior to 2009, Masimo pulse oximeter monitors and pulse oximetry sensors employed a proprietary interface called "ProCal." The ProCal interface comprised a patented resistor resident in Masimo's sensor, together with software programming in the pulse oximeter monitor that detected the presence of the resistor once upon insertion of the patient cable and again prior to rendering a measurement. Masimo's pulse oximeter monitors (including standalone monitors, MPPMs and OEM circuit boards) were programmed not to function unless they detected the presence of a Masimo branded sensor containing ProCal.

38.     Beginning in 2009, Masimo changed its pulse oximeter monitors and OEM circuit boards to include its latest patented and exclusionary technology, called "X-Cal." Upon information and belief, X-Cal consists of an electronic memory device, such as an electrically programmable memory ("EPROM") disposed in a sensor/patient cable that is checked each time the sensor is connected

43

to the pulse oximeter monitor.  The pulse oximeter monitor reads identifying information for the connected sensor/patient cable, including how long the sensor/patient cable has been in use and compares that information to a threshold. If the pulse oximeter monitor detects that the sensor/patient cable lacks the identifying information, or that usage has exceeded the threshold, the pulse oximeter rejects the sensor/patient cable and does not work.  This in turn requires the hospital or care-giver to replace the rejected sensor/patient cable with a new Masimo unit.

39.    Also in 2009, Masimo required its licensees and distributors, including Shenzhen Mindray, to re-engineer their pulse oximeter monitors to accept Masimo OEM circuit boards that include the X-Cal technology, which circuit boards are incompatible with earlier versions of Masimo OEM circuit boards.

40.    According to public information, while Masimo originally included its X-Cal technology in reusable components, beginning in 2011 Masimo also incorporated its X-Cal technology into its disposable sensors.

41.    Masimo's ProCal and X-Cal interfaces have the effect of excluding competition from both the sensor and patient cable markets throughout the United States, including the market for such products in the State of California.

42.    On information and belief, there is no technical need to nest a ProCal resistor in parallel with the LEDs or to insert an X-Cal memory device in the sensor/patient cable.  The purpose of these interfaces is to create a technological tie between the Masimo pulse oximeter monitor and Masimo sensors and patient cables.  As a result of ProCal and X-Cal, Masimo sensors are the only sensors that will function with Masimo pulse oximeters.  Any competing sensor is rejected.

43.    On information and belief, the further purpose of Masimo's X-Cal interface is to require the hospital or care-giver to discard the sensor/patient cable and to purchase a new sensor or patient cable from Masimo long before the useful

44

life of the sensor or patient cable has been attained.  The X-Cal interface not only ties the customer to using Masimo sensors and patient cables with its Masimo pulse oximeter monitors, but requires the customer to replace such sensors and patient cables more frequently than required if the sensor or patient cable omitted that interface.  Masimo's X-Cal interface prohibits competition from lower-cost, more durable pulse oximeter sensors and patient cables.

44.     But for Masimo's tying, non-Masimo sensors and patient cables would function with a Masimo pulse oximeter monitor, just as non-Masimo sensors and patient cables routinely function with non-Masimo pulse oximeter monitors, including non-Masimo pulse oximeter monitors manufactured by Shenzhen Mindray.

45.     On information and belief, Masimo has designed its ProCal and X-Cal interfaces to "lock in" customers to Masimo products with anticompetitive effect. Masimo's ProCal and X-Cal ties have the effect of increasing changeover costs and raising barriers to entry for competitors.  Masimo has employed the ProCal and X-Cal interfaces with the specific intent to foreclose competition and, among other things, to limit the ability and opportunity of customers to switch to competing pulse oximetry products, including those offered by Shenzhen Mindray. The X-Cal interface has the further effect of eliminating competition in more durable sensors and patient cables, requiring customers to replace such sensors and patient cables while they are still perfectly functional.

46.     On information and belief, Masimo requires its licensee Nellcor to use a similar method of tying with its Oximax pulse oximeter monitors.  In 2006, Masimo prevailed in a lawsuit alleging that Nellcor pulse oximeters infringed certain claims of Masimo patents.  Under the terms of a settlement agreement filed as an attachment to a Masimo SEC filing, Nellcor is permitted to continue its sale of allegedly infringing pulse oximetry technology under the express condition that it pay a royalty on the revenues derived from all Nellcor oximetry products,

45

including pulse oximeter monitors, sensors, and patient cables that were not subject to the infringement allegations.  The agreement contemplates that Nellcor will use a "lock and key" mechanism to ensure that Nellcor ties its pulse oximeter monitors to aftermarket sales of sensors and patient cables.

47.    Masimo further enforces the Nellcor tying scheme through a covenant not to sue that is expressly nullified if Nellcor manufactures pulse oximeter monitors that are compatible with any third party (i.e., non-Nellcor) sensors. Masimo uses this provision to exclude third-party sensor and patient cable manufacturers and to collect profits on sales of tied sensors and patient cables.

48.    Nellcor's sensors are tied to its Oximax pulse oximeter monitors through a technological "lock and key" protocol known as DigiCal.  But for this tying arrangement, non-Nellcor sensors and patient cables would function with a Nellcor pulse oximeter monitor, just as non-Nellcor sensors and patient cables routinely function with non-Nellcor pulse oximeter monitors, including pulse oximeters manufactured by Shenzhen Mindray.

49.    On information and belief, Masimo has required Nellcor to use the DigiCal interface to "lock-in" customers with Nellcor products.  This requirement directly benefits Masimo by artificially increasing sales of Nellcor sensors and patient cables, on which Masimo collects a high royalty based on its agreement with Nellcor.  Masimo has required the use of DigiCal with the specific intent to foreclose competition and, among other things, to limit the ability and opportunity of customers to switch to competing pulse oximetry products, including those offered by Shenzhen Mindray.

50.    By forcing Nellcor to tie its sensors to its pulse oximeters, Masimo is able to extract anticompetitive profits from Nellcor's substantial installed base of pulse oximeter monitor customers.  By collecting anticompetitive profits from all oximetry products, including current and future products that do not infringe Masimo's patents, Masimo effectively forecloses Nellcor from any effort to invent

46

around Masimo's technology.

51.     Masimo requires its licensees who use Masimo OEM circuit boards to similarly tie customers to Masimo's ProCal and X-Cal interfaces.  Masimo's license agreements prohibit its licensees from offering pulse oximeter sensors or patient cables that can be used with the Masimo OEM circuit boards, thus ensuring that its licensees tie their Masimo-based pulse oximeter monitors to aftermarket sales of Masimo sensors and patient cables.

52.     Masimo enforces its tying scheme against licensees by threat of infringement suit based on its extensive U.S. patent portfolio and threat to terminate its license if a licensee manufactures Masimo-based pulse oximeter monitors that are compatible with any third party (i.e., non-Masimo) sensors or patient cables.  Masimo uses such provisions to exclude third-party sensor and patient cable manufacturers and to collect profits on sales of tied sensors and patient cables.

53.     By forcing its licensees to tie their pulse oximeter monitors to Masimo sensors and patient cables, Masimo is able to extract anticompetitive profits from such licensees' installed base of pulse oximeter monitor customers, and to ensure that such customers are locked into using Masimo pulse oximetry technology for the foreseeable future.  By collecting anticompetitive profits from all licensee-based oximetry products, including current and future products that do not infringe Masimo's patents, Masimo effectively forecloses any effort to invent around Masimo's technology.

54.     Shenzhen Mindray is directly harmed by these tying arrangements. But for these arrangements, distributors and importers could offer Shenzhen Mindray sensors and patient cables, or competitive third party sensors and patient cables available from Shenzhen Mindray, to customers throughout the United States, including within the State of California.

///

ANSWER AND COUNTERCLAIMS
OF SHENZHEN MINDRAY

## F.   Exclusionary Pricing and Bundling Practices

55.   Sensors and patient cables are consumables that must be frequently replaced, often after a single use.  As a result, hospitals must keep a stock of sensors and patient cables on hand at all times.

56.   Masimo has engaged in exclusionary pricing and bundling practices designed to lock hospitals into Masimo pulse oximetry products.  On information and belief, Masimo induces hospitals to convert to Masimo SET® by offering pulse oximeter monitors at no cost in exchange for a commitment to purchase a minimum number of sensors over the course of a long-term contract, typically five to ten years.  After the long-term contract expires, Masimo continues to lock in the customer through its tying of patient cables and sensors to its pulse oximeter monitors.

57.   On information and belief, Masimo's anticompetitive pricing and bundling practices are designed to shift hospital capital costs to consumers and third-party payers, who are charged a premium over the price of the commodity consumable sensors.

58.   Once a hospital standardizes on Masimo oximetry products, additional purchases of Masimo pulse oximeter monitors and sensors are mutually reinforcing.  A hospital using Masimo pulse oximeter monitors must maintain a large stock of Masimo sensors and patient cables due to technological ties that prohibit compatibility with competing sensors.  This stock creates a strong economic incentive for the hospital to purchase only Masimo pulse oximeter monitors and discourages the hospital from changing to a competing non-Masimo pulse oximeter technology.  To do otherwise would require the hospital to maintain separate stocks of sensors and patient cables for its Masimo and non-Masimo pulse oximeter monitors, increasing overall costs.

59.   Masimo's requirement that Nellcor tie its sensors to its pulse oximeter monitors similarly creates a strong economic incentive for Nellcor's hospital

customers to purchase only Nellcor pulse oximeter monitors.  To do otherwise would require the hospital to maintain separate stocks of sensors and patient cables for its Nellcor and non-Nellcor pulse oximeter monitors, increasing overall costs.

60.     Masimo's conduct has harmed competition throughout the United States, including within the State of California.  Its anticompetitive pricing and bundling practices preclude future competition by locking up prospective customers and raising barriers to entry.  Masimo's scheme is designed to preserve market power by depriving customers of product choice and competitive prices in pulse oximetry.  Its X-Cal interface further deprives customers from switching to more durable, less expensive non-Masimo sensors and patient cables.

61.     Shenzhen Mindray is directly harmed by Masimo's licensing, pricing, bundling practices, and tying schemes.  But for Masimo's conduct, hospitals throughout the United States, and within the State of California, would be free to choose Shenzhen Mindray's pulse oximetry products available from distributors and importers of its products, which are both more durable and could be offered less expensively than those of Masimo.  As a result of Masimo's conduct, Shenzhen Mindray has lost sales of Mindray-based pulse oximeter monitors and has been precluded from selling its own sensors and patient cables to hospitals using Masimo SET® or Nellcor Oximax pulse oximetry technology.

## ADDITIONAL ALLEGATIONS RELATING TO PATENT MISUSE

62.     On November 13, 2002, Masimo entered into a contract with Shenzhen Mindray relating to integration by Shenzhen Mindray of OEM Circuit boards containing Masimo SET® pulse oximetry technology into Shenzhen Mindray pulse oximeter monitors ("the 2002 Agreement").

63.     The 2002 Agreement called for Shenzhen Mindray to promote sales of Masimo SET® pulse oximetry technology in China, and for Masimo to provide technical and marketing support to Shenzhen Mindray.

///

4822-2046-7987.6

64.     By 2008, Masimo had ceased providing support to Shenzhen Mindray to promote sales of Masimo SET® pulse oximetry technology in China.  In 2009, Masimo informed Shenzhen Mindray that it had discontinued the model of OEM circuit board supplied to Shenzhen Mindray, and required Shenzhen Mindray to redesign its Masimo-equipped pulse oximeter monitors to implement the X-Cal interface.

65.     At about the same time, Shenzhen Mindray customers in China had begun complaining to Shenzhen Mindray about the durability of Masimo's pulse oximeter sensors and patient cables, indicating a preference for Shenzhen Mindray pulse oximeter sensors and patient cables, which were less expensive and more durable.

66.     Shenzhen Mindray invested considerable resources in re-engineering its pulse oximeter monitors to accept the X-Cal version of Masimo's OEM circuit boards.  The limited lifetime of pulse oximeter sensors and patient cables equipped with the X-Cal interface required Shenzhen Mindray's customers to replace their pulse oximeter sensors and patient cables more frequently than had been the case for Shenzhen Mindray pulse oximeter monitors equipped with the non-X-Cal version of Masimo's OEM circuit board.  The need to replace sensors even more frequently than before exacerbated the dissatisfaction of Shenzhen Mindray's Chinese customers, resulting in fewer sales of Shenzhen Mindray pulse oximeter monitors including Masimo SET® pulse oximetry technology.

67.     Masimo's response to this decline in sales of OEM circuit boards was to demand that Shenzhen Mindray agree to buy larger quantities of Masimo OEM circuit boards for integration into pulse oximeter monitors to be sold in China. Masimo's demands that Shenzhen Mindray agree to increase the quantities of OEM circuit boards was commercially unreasonable under the circumstances.

68.     In an effort to force Shenzhen Mindray to comply with its demands in China, Masimo threatened to sue Shenzhen Mindray's sister company, Mindray

50

USA, for infringement of the patents asserted herein against Shenzhen Mindray. Mindray USA has a separate contract that enables it to purchase and integrate Masimo OEM circuit boards into its pulse oximeter monitors. Mindray USA's contract with Masimo provides that Masimo SET® will be the primary pulse oximetry technology for all future products, but enables Mindray USA to sell other pulse oximeter technologies, such as where the customer demands such other pulse oximeter technology or where Masimo does not make OEM circuit boards suitable for the particular application.

69.     Upon information and belief, Masimo has been aware for many years that Mindray USA has sold small quantities of pulse oximeter monitors that do not use Masimo OEM circuit boards, or those of Masimo's licensee Nellcor. Upon information and belief, Masimo is further aware that these pulse oximeter monitors do not infringe any Masimo patent. Further, Shenzhen Mindray is informed and believes that Masimo knows that Shenzhen Mindray has not engaged in acts in the United States that could constitute patent infringement, and thus Masimo's assertion of the '952, '222, '086, '194, '060, '986, '958, '154 and '533 patents against Shenzhen Mindray is futile.

70.     Masimo has demanded, under threat of patent infringement litigation, that Mindray USA cease purchase and importation of pulse oximeter monitors, sensors and patient cables from Shenzhen Mindray that employ Shenzhen Mindray pulse oximeter technology. Masimo has also informed Shenzhen Mindray that it will continue to pursue Mindray USA for alleged patent infringement unless Shenzhen Mindray complies with Masimo's demands to exclusively promote Masimo SET® in China and to abandon sales of Shenzhen Mindray's competing pulse oximeter technology in China.

71.     Masimo has tied its threats to sue Mindray USA for infringement of U.S. patents to Shenzhen Mindray's conduct in China, where Masimo has no relevant patents. Masimo's effort to secure an extra-territorial effect for its U.S.

patents constitutes patent misuse that renders Masimo's asserted patents unenforceable.

### ADDITIONAL ALLEGATIONS COMMON TO INEQUITABLE CONDUCT AND WALKER PROCESS ANTITRUST COUNTERCLAIMS

### A.    Background and Development of Masimo's Patent Portfolio

72.    Upon information and belief, Masimo's patent portfolio is the culmination of a systematic and continuous decades' long effort by the officers of Masimo, and in particular Mr. Joe Kiani and Mr. Mohamed Diab, to perpetrate fraud on the United States Patent and Trademark Office ("USPTO") and the American public.

73.    Masimo's goal was to illegally create a dominant position for itself in the market for pulse oximeter monitors, that extends equally into the corresponding submarkets for standalone pulse oximeter monitors, MPPM monitors, OEM circuit boards, and the markets for pulse oximeter sensors and patient cables, by procuring an extensive portfolio of invalid and/or unenforceable patents; by improperly patenting inventions known to have been created by others; by deliberately pursuing patent claims known to lack support under one or more sections of 35 U.S.C. § 112, first paragraph; and/or by withholding material prior art from the USPTO during prosecution of Masimo's patents.

74.    Mr. Kiani, Mr. Diab and Masimo's patent counsel, Knobbe Martens Olsen and Bear LLP ("the Knobbe Martens firm") have financially profited from this conduct, while innovation and competition in the markets for pulse oximeter circuit boards, MPPMs and accessories have been stifled, to the great loss and expense of the American public.

75.    Upon information and belief, Mr. Kiani founded his company on technology improperly taken from a prior employer, Newport Medical Electronics, Inc. ("Newport Medical") and key patents obtained by Masimo since then have claimed inventions that were first invented by Masimo's competitors, including at

52

least Nellcor Incorporated ("Nellcor") and/or Philips Electronics.

76.     Upon information and belief, Mr. Kiani was hired in 1989 by Dr. Saum Nour of Newport Medical, a small California-based start-up company, to help Newport Medical develop a low cost pulse oximeter monitor.  In the course of his work for Newport Medical, Mr. Kiani proposed using an adaptive filter, and specifically, an adaptive noise canceller to remove noise in the red and infrared signals generated by the pulse oximeter sensor due to motion noise.  Newport Medical provided Mr. Kiani with the parts and financial resources to develop a breadboard circuit implementing his noise canceller concept.

77.     Upon information and belief, Mr. Kiani thereafter resigned from Newport Medical, and sued Newport Medical to obtain ownership of the adaptive noise canceller concept he had developed while employed by that Company.  Upon information and belief, Mr. Kiani executed a settlement agreement with Newport Medical by which Mr. Kiani agreed not to pursue meritless claims against Newport Medical in exchange for ownership of the technology he had developed for Newport Medical.  In that settlement agreement, Mr. Kiani warranted that he had returned the breadboard circuit and computer coding that he had prepared while working for Newport Medical.  Upon information and belief, Mr. Kiani did not return those items, but instead kept them as the basis for founding of Vital Signals Incorporated, which later became Masimo.

78.     Promptly after defrauding Newport Medical of title to the pulse oximetry invention that he had made for it, Mr. Kiani in 1989 founded Vital Signals Incorporated to develop for his own financial gain a pulse oximeter board implementing the adaptive noise canceller technology.  Mr. Kiani soon hired Mohamed Diab to assist in developing the adaptive noise canceller implementation of a pulse oximeter monitor, and by March of 1991, Masimo filed its first patent application directed to pulse oximeter monitors, U.S. patent application Serial No. 07/666,060 ("the '060 application") through the Knobbe Martens firm.  That

application embodied the adaptive noise canceller filtering technique that Mr. Kiani had taken from Newport Medical.

## B. Unenforceability of the '222 Patent

79.     In or about October 1992, at a meeting of the American Society of Anesthesiologists, Mr. Kiani met with several representatives of Nellcor, including Dr. Thomas Yorkey, to give Nellcor a private showing of Masimo's adaptive noise canceller implementation of its pulse oximeter monitor.   Subsequently, Nellcor and Masimo entered into an agreement under which Nellcor provided Masimo with raw plethysmographic data for Masimo to run through its adaptive noise canceller algorithm.

80.     Masimo had further confidential meetings with Nellcor about Masimo's adaptive noise canceller technology, resulting in a further meeting at Nellcor's Pleasanton office in late 1993, where Dr. Yorkey was again present. Upon information and belief, Dr. Yorkey informed Mr. Kiani at one or more of these meetings that Nellcor had independently developed an alternative method of removing motion artifact noise from the pulse oximeter sensor signal that did not use the least squares estimation-adaptive noise canceller technology implemented by Masimo, which was the only filtering technology disclosed in Masimo's published PCT International Application WO 92/15995, but instead used Kalman filtering techniques.

81.     In 1993, Kalman filters were viewed by persons of ordinary skill as a distinct class of filters from adaptive noise cancellers.  Further, upon information and belief, promptly after Dr. Yorkey's disclosure of Nellcor's use of Kalman filtering technology, Masimo filed on October 6, 1993, a continuation-in-part application of the '060 application with the United States Patent and Trademark Office, U.S. patent application Serial No. 08/132,812 ("the '812 application").

82.     The '812 application, filed by Mr. Stephen Jensen, Esq. of the Knobbe Martens firm, recites that adaptive filters other than adaptive noise cancellers could

be used to practice the invention, specifically mentioning the use of Kalman filters. One of ordinary skill in the art of adaptive filters in 1993 would not have understood how to reconfigure the adaptive noise canceller disclosed in the '060 application to implement a Kalman filter solution, and thus the '812 application lacks written description or enablement to support claims that could cover Kalman filters.

83.    At the time that Masimo filed the '812 application, Mr. Kiani knew that Masimo had not invented the use of Kalman filtering techniques in pulse oximetry.  Upon information and belief, Mr. Kiani knew that invention was derived from his confidential contacts with Nellcor, including conversations with Dr. Yorkey regarding Nellcor's independently developed motion algorithms.  Mr. Kiani directed his patent counsel to file the '812 application with the intent to seek claims directed to Kalman filtering technology that Masimo did not invent, so that Masimo could obtain patents covering Nellcor's technology if Masimo's discussions with Nellcor broke down.

84.    Masimo and Nellcor did not conclude a business arrangement; Nellcor informed Masimo in late 1993 that it would not adopt Masimo's adaptive noise canceller technology, but would instead pursue its independently developed Kalman filtering technology.  Subsequently, Masimo filed U.S. patent application Serial No. 08/572,488 ("the '488 application") as a continuation of the '812 application, and then U.S. patent application Serial No. 08/943,511 ("the '511 application") as a continuation of the '488 application.  U.S. Patent No. 6,263,222 ("the '222 patent"), asserted by Masimo in this litigation, issued on July 17, 2001 from the '511 application.  Claims 1-12 and 23 of the '222 patent claim the use of Kalman filtering technology.

85.    Mr. Kiani's and Mr. Diab's conduct in misrepresenting to the USPTO inventorship of Kalman filtering technology derived from Nellcor in the '222 patent and the parent '511 and '488 applications was deliberate and intentional, and

55

constitutes inequitable conduct that renders all claims of the '222 patent unenforceable. The pattern of conduct established during prosecution of the '222 patent has been replayed during prosecution of many subsequently issued Masimo patents, as set forth *infra*.

### C. Commission of Inequitable Conduct in Related Masimo Patents

86. In or about 1999, Mr. Kiani, as Masimo's CEO, and Mr. Jensen, as litigation counsel for Masimo, sued Nellcor for infringement of U.S. Patent No. 6,036,642 ("the '642 patent") ("Masimo I"). That patent is a continuation application of the '060 application first filed on March 7, 1991, and discloses adaptive noise cancellers as the sole adaptive filtering technology for removing motion artifact from pulse oximeter monitor readings.

87. In response to Masimo's infringement claims, Nellcor moved for summary judgment of non-infringement. In connection with that motion, Nellcor submitted sealed declarations of Dr. Thomas Yorkey and Mr. Clark Baker, which described in detail the algorithms used in the Nellcor's N-395 pulse oximeter monitor and included as appendices many of the Nellcor internal reports describing Nellcor's independent development of those algorithms, which Masimo had accused of infringing the '642 patent.

88. Nellcor prevailed in the Masimo I litigation, with the District Court issuing an Order filed October 4, 2000, granting summary judgment that the term "adaptive filter" used in the claims of that patent was synonymous with "adaptive noise canceller" and that Nellcor's commercial pulse oximeter monitors did not use adaptive noise cancellers. That decision of the District Court was affirmed on appeal by the Federal Circuit in a decision reported at 18 Fed. Appx. 852 (Fed. Cir. 2001).

89. Masimo promptly filed another patent infringement case against Nellcor, this time asserting a number of patents, including U.S. Patent No. 6,206,830 ("the '830 patent") ("Masimo II"). The '830 patent issued on March 27,

2001, as a continuation of the '642 patent, and contains an identical disclosure to the '060 application filed March 7, 1991.

90.     Like the claims of the '642 patent, many claims of the '830 patent require an "adaptive filter" or "adaptive filtering."  However, during prosecution of the '830 patent, Mr. Kiani and Mr. Jensen argued before the USPTO that the term "adaptive filter" as used in the claims should be broadly construed, notwithstanding that the District Court had found in Masimo I that the "adaptive filter" term should be limited to an "adaptive noise canceller."  In connection with post-trial proceedings in Masimo II, the District Court held the '830 patent unenforceable because the inventors and Mr. Jensen had withheld the District Court's opinion in Masimo I from the USPTO.

91.     As reported in the Federal Circuit opinion dated September 7, 2005, in Masimo II affirming the District Court's determination that the '830 patent was unenforceable:  "The district court correctly recognized that the Masimo I litigation directly affected the patentability of the invention claimed in the '830 patent because the same terms were at issue in both proceedings."

92.     The Federal Circuit also held that there was clear evidence of intent to deceive the USPTO:  ". . . the district court inferred intent from the actions of Jensen, Masimo's attorney.  Any competent attorney registered to practice before the PTO should have known that the Masimo I litigation was material to the patentability of the invention claimed in the '830 patent.  After all, a registered attorney is required to be familiar with the laws, regulations, and ethical standards implicated in practicing before the PTO.  Hence, that Jensen did not disclose the Masimo I litigation to the PTO, when he for certain knew about it since he was the lead attorney representing Masimo in that litigation, strongly suggests that he intended to deceive the PTO."

93.     The Yorkey and Baker declarations submitted in Masimo I originally had been filed under seal.  Upon information and belief, Masimo's patent

ANSWER AND COUNTERCLAIMS
OF SHENZHEN MINDRAY

prosecution and litigation counsel in Masimo I and II, studied those materials to formulate additional claims that Masimo and the Knobbe Martens firm then prosecuted in subsequent patent applications, including the unenforceable '830 patent.  That these declarations had been considered by Masimo's patent prosecutors at the Knobbe Martens firm is evident from Masimo's selective submission of these declarations in certain of the patents asserted in this litigation, as described *infra*.

94.   For example, the Yorkey and Baker declarations were submitted by Masimo and the Knobbe Martens firm in connection with prosecution of U.S. Patent No. 7,215,986 ("the '986 patent"), filed on June 5, 2005, and which claims an earliest effective filing date of October 7, 1994.  In view of this filing date, Masimo could have filed a declaration "swearing behind" the date of the Nellcor documents as prior art under 35 U.S.C. § 102(g) had those documents been applied by the Patent Examiner in rejecting Masimo's claims.

### D.   Unenforceability of the '958, '986 and '154 Patents

95.   The Yorkey and Baker declarations were not submitted during prosecution of U.S. Patent No. 7,489,958 ("the '958 patent"), filed May 3, 2006, which claims an earliest effective filing date of April 14, 1997.  Given the 1997 filing date for this application, Masimo could not have filed a declaration "swearing behind" the Nellcor documents had they been submitted by Masimo and cited by the Patent Examiner as prior art under 35 U.S.C. § 102(g).  Mr. Jensen participated in and/or supervised prosecution of the '958 patent, as is evident from his participation with Mr. John Grover, Esq., also from the Knobbe Martens firm, at an Examiner Interview conducted on June 14, 2008, as disclosed in the prosecution history of the '958 patent.  The Yorkey and Baker documents plainly disclose the allegedly inventive step of, e.g., claim 1 of the '958 patent, of combining red and infrared signals to form a composite signal and then analyzing that composite signal using one or more physiologically-based rules.  But for

58

Masimo's and its counsel's failure to cite the Yorkey and Baker documents to the USPTO, the '958 patent would not have issued.

96.     Masimo's and Mr. Jensen's intent to deceive the USPTO regarding the state of the prior art relevant to the '958 patent is clearly evident from this selective disclosure of the Nellcor prior art, and in particular, failure to cite that prior art in cases where it could have lead to rejection of Masimo's claims.  In distinguishing the pending claims of the '958 patent over the Nellcor's U.S. Patent No. 4,911,167 ("Nellcor's '167 patent"), Masimo and its lawyers specifically argued that Nellcor's '167 patent did not disclose "analyzing [a] composite signal using one or more physiologically-based rules" as disclosed in the Yorkey and Baker materials.  *See* Amendment filed July 1, 2007 at pages 11-12 in the prosecution history for the '958 patent.  Mr. Kiani's, Mr. Jensen's and Mr. Grover's deliberate failure to cite the Yorkey and Baker declarations and supporting documents in the '958 patent renders the '958 patent unenforceable.

97.     Mr. Kiani, Mr. Jensen and others at the Knobbe Martens firm who were involved in the Masimo I and II trials and prosecution of Masimo's patents also committed inequitable conduct in connection with prosecuting the '986 and '958 patents, and U.S. Patent No. 7,509,154 ("the '154 patent"), all asserted in this litigation, by failing to submit to the USPTO the trial exhibits needed to understand key portions of the invalidity testimony presented during the Masimo II trial.

98.     During prosecution of the '986 patent, Masimo submitted more than 3800 pages of trial transcript from Masimo II, but did not provide any guidance to the Patent Examiner where testimony relevant to the claimed invention of the '986 patent could be found.  Masimo also did not provide the Patent Examiner with the trial exhibits or demonstratives that accompanied that trial testimony, so even if the Patent Examiner could have found that testimony, he could not have understood it without reference to the slides discussed therein.

///

99.     For example, claim 1 of the '986 patent, which issued in 2007, recites: A method of determining blood oxygen saturation comprising: sensing physiological signals resulting from the attenuation of light of at least first and second wavelengths by body tissue carrying pulsing blood; determining at least two values corresponding to oxygen saturation based upon at least two alternative methods of using the physiological signals; and determining a resulting value for oxygen saturation from the at least two values corresponding to oxygen saturation, wherein one of the at least two alternative methods comprises at least one calculation in the frequency domain.

100.    At the Masimo II trial, Dr. Robert Stone testified with respect to Slide 4905 that, while employed at Nellcor in the 1987-1989 timeframe, he had developed a fetal pulse oximetry method that determined two values corresponding to oxygen saturation based upon two alternative methods of using the sensor data, one in the time domain and the other calculation in the frequency domain.  Dr. Stone further testified that his method arbitrated between the two values of oxygen saturation calculated by the alternative methods to determine a resulting value for oxygen saturation.  *See*, Masimo II trial transcript at pages 1817 to 1821.  Dr. Stone also testified about the PCSat pulse oximetry algorithms developed by Nellcor, which included alternative methods of calculating oxygen saturation.  *See*, Masimo II trial transcript at pages 1821 to 1823.

101.    During his direct testimony in Masimo II, in response to the question whether "this slide [Slide 4905] represent in a very high level format, some of the processing or alternative calculations that you designed into the fetal oximetry program back in the period between 1983 and 1989," Dr. Stone testified that the "slide is very clear."   Mr. Kiani, who attended the Masimo II trial and Mr. Jensen, who was litigation counsel for Masimo at the Masimo II trial and upon information and belief, supervised prosecution of the '986 patent, deliberately and intentionally withheld slide 4905 from the Patent Examiner.

102.   Mr. Kiani and Masimo's patent counsel withheld this information from the USPTO so that Dr. Stone's fetal oximetry invention, as a consequence, could not be cited by the Patent Examiner as anticipating prior art and render unpatentable the claims that Masimo obtained in the '986 patent.  In allowing the '986 patent over Nellcor's '167 patent, the Patent Examiner stated in the Reasons for Allowance of the '986 patent that "Corenman (4,911,167 - cited by Applicant) teaches that an oximeter may include frequency domain analysis, but does not teach performing two different calculations" − precisely the feature discussed at length in Dr. Stone's trial testimony.  *See* Notice of Allowability at page 2, in the '986 patent prosecution history.

103.   It is immaterial that Masimo submitted over 3800 pages of the Masimo II trial transcript during prosecution of the '986 patent as part of a collection of more than 10,000 pages of material, because it neither identified Dr. Stone's relevant testimony nor submitted the trial exhibit required to understand that testimony.  But for Masimo's and its counsel's failure to cite the trial exhibits accompanying Dr. Stone's testimony during Masimo II to the USPTO, the '986 patent would not have issued.

104.   All claims of the '986 patent are unenforceable for inequitable conduct because Mr. Kiani and Masimo's patent counsel buried the relevant testimony from Dr. Stone in tens of thousands of pages of irrelevant materials, and just to be sure that testimony could not be understood by the Patent Examiner, withheld slide 4905 from the Masimo II trial.

105.   U.S. Patent No. 7,509,154 ("the '154 patent"), also asserted in this litigation, issued on March 24, 2009 from an application filed on August 20, 2007, and is a continuation application of U.S. patent application Serial No. 09/195,791 ("the '791 application").  The '791 application is also the parent application of the '986 patent, and shares a common disclosure with the '986 patent.

///

106.   Claim 1 of the '154 patent recites:  A method of measuring oxygen saturation, the method comprising: obtaining first and second signals that are representative of light of first and second wavelengths detected by a light sensitive detector over a period of time, the detected light of first and second wavelengths being attenuated by body tissue carrying pulsing blood; transforming the first and second signals into the frequency domain; calculating a plurality of possible oxygen saturation values using a plurality of values of each of the transformed first and second signals that correspond to non-zero frequencies; selecting one of the plurality of possible oxygen saturation values as an oxygen saturation measurement based upon an analysis to determine which of the plurality of possible oxygen saturation values corresponds to the oxygen saturation of the pulsing blood; and outputting the oxygen saturation measurement to a user.

107.   The fetal oximetry algorithms and methods developed by Nellcor in the late 1980's constitute highly material prior art to the claims of the '154 patent, including claim 1, because the Nellcor fetal oximetry method transformed sensor signals into the frequency domain, calculated possible oxygen saturation values using transformed signals at non-zero frequencies, and output values corresponding to oxygen saturation measurements.  Mr. Kiani, who attended the Masimo II trial, and Mr. Jensen, who was both litigation counsel at the Masimo II trial and upon information and belief, supervised prosecution of the '154 patent, were aware of this prior art.

108.   During prosecution of the '154 patent, the Patent Examiner specifically rejected Masimo's pending claims over Nellcor's '167 patent, discussed *supra*.  After an Examiner Interview, Masimo filed a cryptic amendment allegedly distinguishing Masimo's claims from Nellcor's '167 patent.  Masimo did not, however, provide Dr. Stone's testimony during the Masimo II trial testimony or slide 4905 presented at the Masimo II trial to the Patent Examiner.  That information was material to patentability of the '154 patent and non-cumulative to

62

the text of Nellcor's '167 patent applied by the Patent Examiner in his rejection. But for Masimo's and its counsel's failure to cite the trial exhibits accompanying Dr. Stone's testimony during Masimo II to the USPTO, the '154 patent would not have issued.

109.    Mr. Kiani and his patent counsel, Mr. Grover (who, upon information and belief, was supervised by Mr. Jensen) deliberately and intentionally withheld this information so that Dr. Stone's fetal oximetry invention could not be cited by the Patent Examiner as rendering unpatentable the claims that Masimo sought to obtain in the '154 patent.  All claims of the '154 patent are unenforceable due to Masimo's and its counsel's inequitable conduct.

110.    Masimo and its counsel committed inequitable conduct in connection with prosecution of the '958 patent, not only for failing to cite the Yorkey and Baker documents, but also for the reasons set forth above for the '986 and '154 patents.  As discussed *supra*, Mr. Kiani attended the Masimo II trial, and Mr. Jensen was both litigation counsel in Masimo II and directly participated and/or supervised prosecution of the '958 patent.

111.    Claim 1 of the '958 patent recites:  In a signal processor, a method of determining measurements for one or more blood parameters of pulsing blood, the method comprising: receiving a first intensity signal from a light-sensitive detector which detects light of a first wavelength attenuated by body tissue carrying pulsing blood; receiving a second intensity signal from the light-sensitive detector which detects light of a second wavelength attenuated by body tissue carrying pulsing blood; electronically transforming the first and second intensity signals into the frequency domain; electronically determining values of the transformed first and second intensity signals that represent desired physiological data; electronically combining the transformed first and second intensity signals to form a composite signal comprising physiological information from both the transformed first and second intensity signals; and electronically analyzing the composite signal using

63

one or more physiologically-based rules; and electronically determining the measurement of the blood parameter based at least in part on results of the analysis.

112.   The fetal oximetry algorithms and methods developed by Nellcor in the late 1980's constitute highly material prior art to the claims of the '958 patent, including claim 1, because the Nellcor fetal oximetry method transformed sensor signals into the frequency domain, calculated possible oxygen saturation values using transformed signals by combining the first and second intensity signals to form a composite signal; and analyzed the composite signal using one or more physiologically-based rules to determine an oxygen saturation value.

113.   Mr. Kiani, who attended the Masimo II trial, and Mr. Jensen, who was both litigation counsel at the Masimo II trial and participated in prosecuting the '958 patent, were aware of this prior art.  Masimo and its counsel did not provide Dr. Stone's testimony during the Masimo II trial testimony or slide 4905 presented at the Masimo II trial to the Patent Examiner.  That information was material to patentability of the '958 patent, and but for Masimo's and its counsel's failure to cite the trial exhibits accompanying Dr. Stone's testimony during Masimo II to the USPTO, the '958 patent would not have issued.

114.   Mr. Kiani and his patent counsel at the Knobbe Martens firm deliberately and intentionally withheld this information so that Dr. Stone's fetal oximetry invention could not be cited by the Patent Examiner as rendering unpatentable the claims that Masimo sought to obtain in the '958 patent.  All claims of the '958 patent are unenforceable due to Masimo's and its counsel's inequitable conduct.

### E.   Masimo Knows the '194 and '952 Patents Are Invalid

115.   Upon information and belief, Masimo and its patent counsel did not confine its attempts to improperly claim inventorship and patent inventions made only by Nellcor.  Upon information and belief, Mr. Kiani also met with other

potential competitors in the field of pulse oximetry, and attempted to obtain patents covering aspects of pulse oximetry algorithms disclosed by those other competitors to Mr. Kiani.

116.    Upon information and belief, Mr. Kiani also met with engineers from Philips in 2001 regarding a potential license of his technology to that company. Upon information and belief, Philips described the algorithms used in its FAST® pulse oximetry technology, and according to Philips, Masimo drafted and filed the claims in U.S. Patent No. 6,699,194 ("the '194 patent"), asserted in this litigation, in an attempt to cover Philips' FAST® pulse oximetry technology.  In doing so, Masimo impermissibly broadened its claims far beyond what it invented and described in its parent application, filed in 1997.  *See* Opening Brief In Support Of Defendants' Motion For Summary Judgment Of Invalidity Of U.S. Patent No. 6,699,194 (public version, Dkt. No. 445), filed in *Masimo Corp. v. Philips Elecs. N. Am. Corp. and Philips Medizin Systeme Boblingen GmbH, C.A.* No. 09-80-LPS-MPT (D. Del.) ("the Philips litigation").

117.    In the Philips litigation, the defendants moved for summary judgment, *inter alia*, of invalidity of the '222 and '194 patents.  On April 2, 2013, Magistrate Judge Patrick Thyne in the Philips litigation issued a Report and Recommendation that the defendants' motion for summary judgment be granted that claims 17 and 18 of the '222 patent are invalid as failing to provide adequate written description under 35 U.S.C. § 112, first paragraph.  See Dkt. No. 662, the Philips litigation ("the Report and Recommendation").  The Report and Recommendation further found that all claims of the '194 patent are invalid for lack of written description, more specifically for failing to disclose how to estimate a pulse rate utilizing a signal determined to contain motion artifact.

118.    The '194 patent issued from a grandchild continuation application of U.S. patent application Serial No. 08/834,194, which issued as U.S. Patent No. 6,002,952 ("the '952 patent").  The '952 patent is asserted in this litigation, and has

an identical disclosure to the '194 patent.  Like the claims of the '194 patent, all claims of the '952 patent require apparatus or method steps for estimating a pulserate.  Because the Report and Recommendation of the Delaware District Court found lack of written description for "estimating a pulserate" as recited in the claims of the '194 patent, then the claims of the '952 patent must necessarily also be invalid for lack of written description for the same limitation appearing in the claims of the '952 patent.

119.   At least as of the time of filing of the Report and Recommendation, Masimo knows that the claims of the '194 and '952 patents are invalid as lacking written description under 35 U.S.C. § 112, first paragraph, but nonetheless continues to assert these known invalid patents against Shenzhen Mindray.

## COUNTERCLAIM 1:

## MONOPOLIZATION IN VIOLATION OF THE SHERMAN ACT

120.   Shenzhen Mindray repeats and realleges Paragraphs 1-119 of its Counterclaims above as if fully set forth herein.

121.   Masimo has monopoly power in the relevant market for pulse oximeter monitors in the United States.  Masimo also has monopoly power in the relevant submarkets for stand-alone pulse oximeter monitors, MPPMs, and OEM circuit boards, and in the markets for pulse oximeter sensors and patient cables. Through its exclusionary conduct, Masimo has unlawfully acquired and maintained its monopoly power in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.

122.   Masimo could not maintain its substantial monopoly power in the pulse oximeter market, including the relevant submarkets, but for its tying arrangements, exclusionary agreements, and other anticompetitive conduct. Masimo's monopolization has not been due to growth or development as a consequence of a superior product, business acumen, or historic accident.

///

4822-2046-7987.6

123.   Masimo's monopolization has injured consumers and harmed competition.

124.   There is no legitimate business justification for Masimo's exclusionary and anticompetitive conduct, and no purported justification would outweigh the considerable harm to competition.

125.   As a direct and proximate result of Masimo's acts of monopolization and monopoly maintenance, Shenzhen Mindray has suffered antitrust injury and damages, including lost sales of pulse oximeter monitors, sensors, and patient cables.  Shenzhen Mindray will suffer additional damage in the future if Masimo is permitted to continue its monopolistic conduct.

## COUNTERCLAIM 2: ATTEMPTED MONOPOLIZATION
## IN VIOLATION OF THE SHERMAN ACT

126.   Shenzhen Mindray repeats and realleges Paragraphs 1-125 of its Counterclaims above as if fully set forth herein.

127.   Through its exclusionary conduct, Masimo has unlawfully attempted to acquire a monopoly in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, in the relevant market for pulse oximeter monitors in the United States, including the relevant submarkets for stand-alone pulse oximeter monitors, MPPMs, and OEM circuit boards, and in the markets for pulse oximeter sensors and patient cables.

128.   Masimo's conduct evidences a specific intent to acquire and maintain monopoly power in the relevant market for pulse oximeters, including the relevant submarkets for stand-alone pulse oximeter monitors, MPPMs, and OEM circuit boards, and in the markets for pulse oximeter sensors and patient cables.

129.   Masimo's exclusionary conduct creates a dangerous probability that Masimo will obtain monopoly power in the relevant markets and submarkets, including the power to unilaterally exclude competition, eliminate innovation, and/or raise prices.

4822-2046-7987.6

130.   Masimo's attempted monopolization has injured consumers and harmed competition.

131.   There is no legitimate business justification for Masimo's exclusionary and anticompetitive conduct, and no purported justification would outweigh the considerable harm to competition.

132.   As a direct and proximate result of Masimo's attempted monopolization, Shenzhen Mindray has suffered antitrust injury and damages, including lost sales of pulse oximeter monitors, sensors, and patient cables. Shenzhen Mindray will suffer additional damage in the future if Masimo is permitted to continue its monopolistic conduct.

## COUNTERCLAIM 3: ATTEMPTED MONOPOLIZATION
## IN VIOLATION OF THE SHERMAN ACT

133.   Shenzhen Mindray repeats and realleges Paragraphs 1-132 of its Counterclaims above as if fully set forth herein.

134.   Through its exclusionary technological ties and contract arrangements, Masimo has unlawfully attempted to acquire a monopoly in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, in the relevant markets for sensors and patient cables.

135.   Masimo has developed and used the ProCal and X-Cal interfaces with the specific intent of monopolizing the markets for sensors and patient cables. Because of Masimo's significant market power in the market for pulse oximeter monitors, including the corresponding submarkets for standalone pulse oximeters, MPPMs, and OEM circuit boards, there is a dangerous probability that Masimo will be able to leverage this position to gain monopoly power in the markets for sensors and patient cables.

136.   Masimo's attempted monopolization has injured consumers and harmed competition.

///

4822-2046-7987.6

137.   There is no legitimate business justification for Masimo's exclusionary and anticompetitive conduct, and no purported justification would outweigh the considerable harm to competition.

138.   As a direct and proximate result of Masimo's attempted monopolization, Shenzhen Mindray has suffered antitrust injury and damages, including lost sales of pulse oximeter monitors, sensors, and patient cables. Shenzhen Mindray will suffer additional damage in the future if Masimo is permitted to continue its monopolistic conduct.

## COUNTERCLAIM 4: CONSPIRACY TO MONOPOLIZE
## IN VIOLATION OF THE SHERMAN ACT

139.   Shenzhen Mindray repeats and realleges Paragraphs 1-138 of its Counterclaims as if fully set forth herein.

140.   Masimo's 2006 Settlement Agreement with Nellcor constitutes an illegal conspiracy to monopolize the market for pulse oximeters in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

141.   Masimo's 2006 Settlement Agreement with Nellcor was entered into with specific intent to create and maintain Masimo's monopoly power in the market for pulse oximeter monitors, including the corresponding submarkets standalone pulse oximeters, MPPMs, and OEM circuit boards.  In exchange for cooperation, Masimo granted Nellcor the right to continue selling an infringing pulse oximeter and to collect anticompetitive profits from tied sensor and patient cable sales.

142.   Masimo has taken overt acts in furtherance of this conspiracy, including tying sensors and patient cables to pulse oximeter monitors, forcing distributors to accept exclusionary contractual terms, and boycotting manufacturers of third-party sensors and patient cables through the use of the ProCal, X-Cal and DigiCal technologies.

///

4822-2046-7987.6

143.   Masimo's Settlement Agreement with Nellcor has injured consumers and harmed competition.

144.   There is no legitimate business justification for Masimo's exclusionary and anticompetitive conduct, and no purported justification would outweigh the considerable harm to competition.

145.   As a direct and proximate result of Masimo's exclusionary and anticompetitive acts, Shenzhen Mindray has suffered antitrust injury and damages, including lost sales of pulse oximeter monitors, sensors, and patient cables. Shenzhen Mindray will suffer additional damage in the future if Masimo is permitted to continue its monopolistic conduct.

## COUNTERCLAIM 5:  TYING IN VIOLATION
## OF THE SHERMAN ACT AND THE CLAYTON ACT

146.   Shenzhen Mindray repeats and realleges Paragraphs 1-145 of its Counterclaims as if fully set forth herein.

147.   Masimo's anticompetitive tying of pulse oximeters to patient cables and sensors violates Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1-2, and Section 3 of the Clayton Act, 15 U.S.C. § 14.  This conduct has suppressed competition in the relevant markets for sensors and patient cables.

148.   Pulse oximeter monitors, patient cables, and sensors used in pulse oximetry are separate relevant markets.

149.   Masimo controls, either directly or through its control of Nellcor, approximately 80% of the market for pulse oximeter monitors.  Masimo's control extends equally into the corresponding submarkets for standalone pulse oximeters, MPPMs, and OEM circuit boards.  This dominant position allows Masimo to control prices and exclude competition.

150.   Masimo has forced customers to purchase Masimo sensors by conditioning the sale of Masimo pulse oximeter monitors on the sale of Masimo sensors.  It has done so through technological ties, which makes non-Masimo

sensors incompatible with Masimo pulse oximeter monitors.  It has also enforced the unlawful tie through contractual provisions with distributors.

151.   Masimo has forced customers to purchase Masimo patient cables by conditioning the sale of Masimo pulse oximeter monitors on the sale of Masimo patient cables.  It has enforced the unlawful tie through contractual provisions with distributors and its ProCal and X-Cal interface technologies.

152.   Through its license agreement, Masimo has caused Nellcor to force customers to purchase Nellcor sensors and patient cables by conditioning the sale of Nellcor pulse oximeter monitors on the sale of Nellcor sensors.  Masimo has threatened to sue Nellcor for infringement of its pulse oximeter patents if it allows competition from third-party sensor manufacturers.

153.   Through its license agreements with other licensees, Masimo has caused such licensees to force customers to purchase Masimo sensors and patient cables by conditioning the sale of Masimo pulse oximeter monitors on the sale of Masimo sensors.  Masimo has threatened to sue its licensees for infringement of its pulse oximeter patents if such licensees compete, or allow competition from, third-party sensor manufacturers.

154.   Absent Masimo's illegal conduct, consumers would purchase sensors and patient cables from third-party suppliers, including Shenzhen Mindray.  Consumers have been harmed by Masimo's tying because they have been forced to pay higher prices for sensors and patient cables and have been unable to choose the sensors and patient cables that best suit their needs.

155.   Masimo's tying scheme has resulted in foreclosure of a substantial amount of commerce in the markets for sensors and patient cables.  By forcing customers to purchase particular sensors and patient cables, Masimo is likely to achieve market power in those markets.

156.   Masimo's tying scheme has injured consumers and harmed competition.

71

4822-2046-7987.6

157.   There are no legitimate business justifications for Masimo's requirement that its pulse oximeter monitors be used only with Masimo-branded sensors and patient cables, and no purported justification would outweigh the considerable harm to competition.  Similarly, there is no justification for Masimo to cause Nellcor to require that its pulse oximeter monitors be used only with Nellcor-branded sensors, and no purported justification would outweigh the considerable harm to competition.

158.   As a direct and proximate result of Masimo's unlawful tying, Shenzhen Mindray has suffered antitrust injury and damages, including lost sales of pulse oximeter monitors, sensors, and patient cables. Shenzhen Mindray will suffer additional damage in the future if Masimo is permitted to continue its monopolistic conduct.

## COUNTERCLAIM 6:  GROUP BOYCOTT IN VIOLATION OF THE SHERMAN ACT

159.   Shenzhen Mindray repeats and realleges Paragraphs 1-158 of its Counterclaims as if fully set forth herein.

160.   Masimo's exclusion of third parties constitutes a group boycott or concerted refusal to deal, and is illegal *per se* under Section 1 of the Sherman Act. 15 U.S.C. § 1.

161.   Masimo possesses a dominant position in the relevant market for pulse oximeter monitors, as well as the corresponding submarkets standalone pulse oximeters, MPPMs, and OEM circuit boards.

162.   Through its agreements with licensees and distributors, Masimo has excluded third party patient cable and sensor manufacturers from the markets for these products by prohibiting licensees and distributors from selling or marketing third-party sensors or patient cables for use with Masimo SET®.

///

///

4822-2046-7987.6

163.    Masimo has further enforced this exclusive scheme by entering into a contract with Nellcor whereby Nellcor must configure its products to exclude third-party sensor and patient cable manufacturers.

164.    Because of Masimo's contracts referenced herein, third-party sensor and patient cable manufacturers are excluded from approximately 80% of the market.

165.    Masimo's contracts referenced herein have injured consumers and harmed competition.

166.    There is no legitimate business justification for Masimo's exclusionary and anticompetitive conduct, and no purported justification would outweigh the considerable harm to competition.

167.    As a direct and proximate result of Masimo's exclusionary and anticompetitive acts, Shenzhen Mindray has suffered antitrust injury and damages, including lost sales of pulse oximeter monitors, sensors, and patient cables. Shenzhen Mindray will suffer additional damage in the future if Masimo is permitted to continue its monopolistic conduct.

## COUNTERCLAIM 7:  AGREEMENT IN RESTRAINT OF TRADE IN VIOLATION OF THE SHERMAN ACT

168.    Shenzhen Mindray repeats and realleges Paragraphs 1-167 of its Counterclaims as if fully set forth herein.

169.    As alleged above, Masimo has entered into exclusionary agreements with Nellcor, OEMs, distributors, and hospitals that have unreasonably restrained trade and competition in the relevant markets for pulse oximeter monitors, patient cables, and sensors in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

170.    Masimo's exclusionary agreements affect a substantial amount of commerce in the relevant markets for pulse oximeter monitors, patient cables, and sensors.

///

171.   Masimo's exclusionary agreements have injured consumers and harmed competition.

172.   There is no legitimate business justification for Masimo's exclusionary and anticompetitive conduct, and no purported justification would outweigh the considerable harm to competition.

173.   As a direct and proximate result of Masimo's exclusionary and anticompetitive acts, Shenzhen Mindray has suffered antitrust injury and damages, including lost sales of pulse oximeter monitors, sensors, and patient cables. Shenzhen Mindray will suffer additional damage in the future if Masimo is permitted to continue its monopolistic conduct.

## COUNTERCLAIM 8: VIOLATION OF SECTION 2 OF THE SHERMAN ACT – WALKER PROCESS MONOPOLIZATION CLAIM

174.   Shenzhen Mindray repeats and realleges Paragraphs 1-173 of its Counterclaims as if fully set forth herein.

175.   Masimo possesses monopoly power in the relevant markets, maintaining a dominant share of a market with high entry barriers.

176.   As alleged above, the allowance of at least the '222, '986, '958 and '154 patents by the USPTO was procured by Masimo's failure to disclose highly relevant aspects of Nellcor's prior art pulse oximetry algorithms, including the Yorkey and Baker documents, fetal oximetry and PCSat prior art systems material to those patents.

177.   As alleged above, Masimo failed to disclose highly material prior art during the prosecution of the '222, '986, '958 and '154 patents with the intention of deceiving the USPTO into issuing those patents.

178.   As alleged above, the USPTO would not have issued the '222, '986, '958 and '154 patents with the claims asserted in this litigation if Masimo and its patent counsel had not intentionally concealed the existence of the material Nellcor prior art materials.

179.   As alleged above, at the time Masimo brought this action, it knew about the Nellcor prior art, and that the Nellcor prior art anticipates and renders the claims of '222, '986, '958 and '154 patents invalid.  As of the date of this filing, Masimo further knows that the '222 and '194 patents, and consequently, the '952 patent as well, are invalid for lack of written description, as determined by Magistrate Judge Thyne in the Philips litigation in the Report and Recommendation.

180.   By asserting the '222, '986, '958, '154, '194 and '952 patents that Masimo knows are invalid and/or unenforceable, Masimo has engaged in willful exclusionary conduct that has caused Masimo's monopoly power in the relevant pulse oximetry markets to be maintained, enhanced or acquired, and has significantly diminished the ability of Shenzhen Mindray and other competitors to compete fairly in those markets.

181.   Masimo's action have caused, and will continue to cause, injury to Shenzhen Mindray and the relevant markets by: (1) creating illegal and artificial barriers to entry into the relevant markets by seeking to enforce invalid and/or fraudulently obtained patents; (2) subjecting Shenzhen Mindray to the high costs and other substantial burdens of defending itself against a baseless patent infringement action predicated on invalid and unenforceable patents; and (3) creating meritless doubt in the minds of Shenzhen Mindray customers and potential customers, causing them to forgo purchases of Shenzhen Mindray products.

182.   As a result of Masimo's unlawful conduct in violation of 15 U.S.C. § 2, Shenzhen Mindray has suffered and will continue to suffer damages.

**COUNTERCLAIM 9:  VIOLATION OF SECTION 2 OF THE SHERMAN ACT *WALKER PROCESS* ATTEMPTED MONOPOLIZATION CLAIM**

183.   Shenzhen Mindray repeats and realleges Paragraphs 1-182 of its Counterclaims as if fully set forth herein.

75

184.   Masimo's conduct, as alleged above, violates Section 2 of the Sherman Act, 15 U.S.C. § 2.

185.   By attempting to enforce the '222, '986, '958, '154, '194 and '952 patents that it knows are invalid and unenforceable, Masimo intends to acquire monopoly power in the relevant pulse oximetry markets.

186.   Unless Masimo's baseless patent infringement case against Shenzhen Mindray is dismissed and the asserted patents are declared invalid and unenforceable, Masimo is likely to succeed in acquiring monopoly power because of its dominant position in the relevant markets, the high entry barriers in the market, and the absence of other competitors.

### COUNTERCLAIM 10:  TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

187.   Shenzhen Mindray repeats and realleges Paragraphs 1-186 of its Counterclaims as if fully set forth herein.

188.   But for Masimo's threats to enforce the exclusionary licensing provisions of its contract with Mindray USA and its continued threats to pursue patent infringement claims against Mindray USA for products that do not infringe any Masimo patent, Mindray USA would purchase, import and sell Shenzhen Mindray pulse oximeter monitors that employ Shenzhen Mindray-based pulse oximetry technology, as well as pulse oximeter sensors and patient cables for use with such pulse oximeter monitors.

189.   But for Masimo's wrongful and illegal conduct, Shenzhen Mindray would have realized additional sales of its products to Mindray USA, as well as other U.S. distributors and importers, which products would have been sold throughout the United States, including within the State of California.

190.   Shenzhen Mindray believes that the Masimo's conduct was undertaken with the intent to interfere with Shenzhen Mindray's business relationship with Mindray USA.

191.    As a result of Masimo's wrongful acts, Shenzhen Mindray has been injured in its business and property through the lost of present and future profits, by loss of sales of pulse oximeter monitors that employ Shenzhen Mindray-based pulse oximetry technology, as well as pulse oximeter sensors and patient cables compatible with those pulse oximeter monitors.

192.    Shenzhen Mindray has suffered and continues to suffer actual damages.

193.    Shenzhen Mindray is informed and believes that Masimo's acts were willful, malicious, oppressive and undertaken with the intent of harming Shenzhen Mindray.

194.    Unless restrained, Masimo will continue to disrupt Shenzhen Mindray's relationship with Mindray USA, all to Shenzhen Mindray's great and irreparable injury, for which damages would not afford an adequate remedy nor completely compensate the injury to Shenzhen Mindray's business, reputation and good will.

## COUNTERCLAIM 11:  STATUTORY UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200

195.    Shenzhen Mindray repeats and realleges Paragraphs 1-194 of its Counterclaims as if fully set forth herein.

196.    This is a cause of action for statutory unfair competition under § 17200, et seq., of the California Business & Professions Code.

197.    Masimo's wrongful acts alleged herein, including its exclusionary licensing and distribution practices, illegal tying practices, exclusionary pricing and bundling practices, and interference with Shenzhen Mindray's business relationship with Mindray USA, have harmed competition and restrained trade in the State of California, and constitute unlawful, unfair and fraudulent business practices in violation of California Business & Professions Code § 17200, et seq.

///

4822-2046-7987.6

198.   As a result of Masimo's wrongful acts, Shenzhen Mindray has been injured in its business and property through the loss of present and future profits, by loss of sales of pulse oximeter monitors that employ Shenzhen Mindray-based pulse oximetry technology, as well as pulse oximeter sensors and patient cables compatible with those pulse oximeter monitors.

199.   Shenzhen Mindray has suffered and continues to suffer actual damages as a result of Masimo's conduct.

200.   Shenzhen Mindray is informed and believes that Masimo's acts were willful, malicious, oppressive and undertaken with the intent of monopolizing the markets for pulse oximeter monitors, sensors and patient cables, and restraining trade and reaping super-competitive profits in those markets.  Masimo's acts have harmed Shenzhen Mindray.

201.   Unless restrained, Masimo will continue to engage in the acts complained of, all to Shenzhen Mindray's great and irreparable injury.

## COUNTERCLAIM 12: DECLARATORY JUDGMENT
## OF NON-INFRINGEMENT OF THE  '952 PATENT

202.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

203.   By its Complaint, Masimo asserts that Shenzhen Mindray has infringed the '952 patent.

204.   Shenzhen Mindray has denied Masimo's claim of infringement of the '952 patent, and contends that it does not infringe the '952 patent or any valid or enforceable asserted claim thereof.

205.   An actual and justiciable controversy has thus arisen between Masimo and Shenzhen Mindray concerning the alleged infringement of the '952 patent.

///
///

4822-2046-7987.6

206.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Shenzhen Mindray is entitled to judgment from this Court finding that the '952 patent is not infringed, directly or indirectly, by Shenzhen Mindray.

## COUNTERCLAIM 13:  DECLARATORY JUDGMENT
## OF NON-INFRINGEMENT OF THE  '222 PATENT

207.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

208.   By its Complaint, Masimo asserts that Shenzhen Mindray has infringed the '222 patent.

209.   Shenzhen Mindray has denied Masimo's claim of infringement of the '222 patent, and contends that it does not infringe the '222 patent or any valid or enforceable asserted claim thereof.

210.   An actual and justiciable controversy has thus arisen between Masimo and Shenzhen Mindray concerning the alleged infringement of the '222 patent.

211.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Shenzhen Mindray is entitled to judgment from this Court finding that the '222 patent is not infringed, directly or indirectly, by Shenzhen Mindray.

## COUNTERCLAIM 14: DECLARATORY JUDGMENT
## OF NON-INFRINGEMENT OF THE '086 PATENT

212.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

213.   By its Complaint, Masimo asserts that Shenzhen Mindray has infringed the '086 patent.

214.   Shenzhen Mindray has denied Masimo's claim of infringement of the '086 patent, and contends that it does not infringe the '086 patent or any valid or enforceable asserted claim thereof.

79

215.   An actual and justiciable controversy has thus arisen between Masimo and Shenzhen Mindray concerning the alleged infringement of the '086 patent.

216.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Shenzhen Mindray is entitled to judgment from this Court finding that the '086 patent is not infringed, directly or indirectly, by Shenzhen Mindray.

## COUNTERCLAIM 15:  DECLARATORY JUDGMENT
## OF NON-INFRINGEMENT OF THE '194 PATENT

217.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

218.   By its Complaint, Masimo asserts that Shenzhen Mindray has infringed the '194 patent.

219.   Shenzhen Mindray has denied Masimo's claim of infringement of the '194 patent, and contends that it does not infringe the '194 patent or any valid or enforceable asserted claim thereof.

220.   An actual and justiciable controversy has thus arisen between Masimo and Shenzhen Mindray concerning the alleged infringement of the '194 patent.

221.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Shenzhen Mindray is entitled to judgment from this Court finding that the '194 patent is not infringed, directly or indirectly, by Shenzhen Mindray.

## COUNTERCLAIM 16:  DECLARATORY JUDGMENT
## OF NON-INFRINGEMENT OF THE '060 PATENT

222.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

223.   By its Complaint, Masimo asserts that Shenzhen Mindray has infringed the '060 patent.

///

ANSWER AND COUNTERCLAIMS
OF SHENZHEN MINDRAY

4822-2046-7987.6

224.   Shenzhen Mindray has denied Masimo's claim of infringement of the '060 patent, and contends that it does not infringe the '060 patent or any valid or enforceable asserted claim thereof.

225.   An actual and justiciable controversy has thus arisen between Masimo and Shenzhen Mindray concerning the alleged infringement of the '060 patent.

226.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Shenzhen Mindray is entitled to judgment from this Court finding that the '060 patent is not infringed, directly or indirectly, by Shenzhen Mindray.

## COUNTERCLAIM 17:  DECLARATORY JUDGMENT
## OF NON-INFRINGEMENT OF THE '986 PATENT

227.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

228.   By its Complaint, Masimo asserts that Shenzhen Mindray has infringed the '986 patent.

229.   Shenzhen Mindray has denied Masimo's claim of infringement of the '986 patent, and contends that it does not infringe the '986 patent or any valid or enforceable asserted claim thereof.

230.   An actual and justiciable controversy has thus arisen between Masimo and Shenzhen Mindray concerning the alleged infringement of the '986 patent.

231.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Shenzhen Mindray is entitled to judgment from this Court finding that the '986 patent is not infringed, directly or indirectly, by Shenzhen Mindray.

## COUNTERCLAIM 18:  DECLARATORY JUDGMENT
## OF NON-INFRINGEMENT OF THE '958 PATENT

232.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

233.   By its Complaint, Masimo asserts that Shenzhen Mindray has infringed the '958 patent.

234.   Shenzhen Mindray has denied Masimo's claim of infringement of the '958 patent, and contends that it does not infringe the '958 patent or any valid or enforceable asserted claim thereof.

235.   An actual and justiciable controversy has thus arisen between Masimo and Shenzhen Mindray concerning the alleged infringement of the '958 patent.

236.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Shenzhen Mindray is entitled to judgment from this Court finding that the '958 patent is not infringed, directly or indirectly, by Shenzhen Mindray.

## COUNTERCLAIM 19:  DECLARATORY JUDGMENT
## OF NON-INFRINGEMENT OF THE '154 PATENT

237.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

238.   By its Complaint, Masimo asserts that Shenzhen Mindray has infringed the '154 patent.

239.   Shenzhen Mindray has denied Masimo's claim of infringement of the '154 patent, and contends that it does not infringe the '154 patent or any valid or enforceable asserted claim thereof.

240.   An actual and justiciable controversy has thus arisen between Masimo and Shenzhen Mindray concerning the alleged infringement of the '154 patent.

241.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Shenzhen Mindray is entitled to judgment from this Court finding that the '154 patent is not infringed, directly or indirectly, by Shenzhen Mindray.

///

///

///

4822-2046-7987.6

## COUNTERCLAIM 20:  DECLARATORY JUDGMENT
## OF NON-INFRINGEMENT OF THE '533 PATENT

242.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

243.   By its Complaint, Masimo asserts that Shenzhen Mindray has infringed the '533 patent.

244.   Shenzhen Mindray has denied Masimo's claim of infringement of the '533 patent, and contends that it does not infringe the '533 patent or any valid or enforceable asserted claim thereof.

245.   An actual and justiciable controversy has thus arisen between Masimo and Shenzhen Mindray concerning the alleged infringement of the '533 patent.

246.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Shenzhen Mindray is entitled to judgment from this Court finding that the '533 patent is not infringed, directly or indirectly, by Shenzhen Mindray.

## COUNTERCLAIM 21:  DECLARATORY JUDGMENT
## OF INVALIDITY OF THE '952 PATENT

247.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

248.   By its Complaint, Masimo asserts that the '952 patent is valid. Shenzhen Mindray has denied this allegation and contends that the '952 patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

249.   An actual and justiciable controversy has thus arisen between Masimo and Shenzhen Mindray concerning the validity of the '952 patent.

250.   As alleged above, the '952 patent shares an identical disclosure with the '194 patent, and all claims of the '952 patent include the identical limitation determined by Magistrate Judge Thyne in the Philips litigation to lack written

description.  Accordingly, all claims of the '952 patent likewise are invalid for lack of written description.

251.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Shenzhen Mindray is entitled to judgment from this Court finding that the '952 patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

## COUNTERCLAIM 22: DECLARATORY JUDGMENT
## OF INVALIDITY OF THE '222 PATENT

252.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

253.   By its Complaint, Masimo asserts that the '222 patent is valid. Shenzhen Mindray has denied this allegation and contends that the '222 patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

254.   As alleged above, all claims of the '222 patent are invalid as lacking written description and having been derived from Nellcor; and in addition, claims 17 and 18 have been determined to be invalid by Magistrate Judge Thyne in the Philips litigation.

255.   An actual and justiciable controversy has thus arisen between Masimo and Shenzhen Mindray concerning the validity of the '222 patent.

256.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Shenzhen Mindray is entitled to judgment from this Court finding that the '222 patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

## COUNTERCLAIM 23: DECLARATORY JUDGMENT
## OF INVALIDITY OF THE '086 PATENT

257.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

///

4822-2046-7987.6

258.   By its Complaint, Masimo asserts that the '086 patent is valid. Shenzhen Mindray has denied this allegation and contends that the '086 patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

259.   An actual and justiciable controversy has thus arisen between Masimo and Shenzhen Mindray concerning the validity of the '086 patent.

260.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Shenzhen Mindray is entitled to judgment from this Court finding that the '086 patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

## COUNTERCLAIM 24: DECLARATORY JUDGMENT
## OF INVALIDITY OF THE '194 PATENT

261.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

262.   By its Complaint, Masimo asserts that the '194 patent is valid. Shenzhen Mindray has denied this allegation and contends that the '194 patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

263.   An actual and justiciable controversy has thus arisen between Masimo and Shenzhen Mindray concerning the validity of the '194 patent.

264.   As alleged above, all claims of the '194 patent have been determined to be invalid by Magistrate Judge Thyne in the Philips litigation for lacking written description.

265.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Shenzhen Mindray is entitled to judgment from this Court finding that the '194 patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

///

///

///

///

ANSWER AND COUNTERCLAIMS
OF SHENZHEN MINDRAY

## COUNTERCLAIM 25: DECLARATORY JUDGMENT
## OF INVALIDITY OF THE '060 PATENT

266.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

267.   By its Complaint, Masimo asserts that the '060 patent is valid. Shenzhen Mindray has denied this allegation and contends that the '060 patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

268.   An actual and justiciable controversy has thus arisen between Masimo and Shenzhen Mindray concerning the validity of the '060 patent.

269.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Shenzhen Mindray is entitled to judgment from this Court finding that the '060 patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

## COUNTERCLAIM 26:  DECLARATORY JUDGMENT
## OF INVALIDITY OF THE '986 PATENT

270.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

271.   By its Complaint, Masimo asserts that the '986 patent is valid. Shenzhen Mindray has denied this allegation and contends that the '986 patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

272.   An actual and justiciable controversy has thus arisen between Masimo and Shenzhen Mindray concerning the validity of the '986 patent.

273.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Shenzhen Mindray is entitled to judgment from this Court finding that the '986 patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

///

///

ANSWER AND COUNTERCLAIMS
OF SHENZHEN MINDRAY

4822-2046-7987.6

## COUNTERCLAIM 27: DECLARATORY JUDGMENT
## OF INVALIDITY OF THE '958 PATENT

274.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-200 of its Counterclaims as if fully set forth herein.

275.   By its Complaint, Masimo asserts that the '958 patent is valid. Shenzhen Mindray has denied this allegation and contends that the '958 patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

276.   An actual and justiciable controversy has thus arisen between Masimo and Shenzhen Mindray concerning the validity of the '958 patent.

277.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Shenzhen Mindray is entitled to judgment from this Court finding that the '958 patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

## COUNTERCLAIM 28: DECLARATORY JUDGMENT
## OF INVALIDITY OF THE '154 PATENT

278.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

279.   By its Complaint, Masimo asserts that the '154 patent is valid. Shenzhen Mindray has denied this allegation and contends that the '154 patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

280.   An actual and justiciable controversy has thus arisen between Masimo and Shenzhen Mindray concerning the validity of the '154 patent.

281.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Shenzhen Mindray is entitled to judgment from this Court finding that the '154 patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

///

///

4822-2046-7987.6

## COUNTERCLAIM 29: DECLARATORY JUDGMENT
## OF INVALIDITY OF THE '533 PATENT

282.    Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

283.    By its Complaint, Masimo asserts that the '533 patent is valid. Shenzhen Mindray has denied this allegation and contends that the '533 patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

284.    An actual and justiciable controversy has thus arisen between Masimo and Shenzhen Mindray concerning the validity of the '533 patent.

285.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., Shenzhen Mindray is entitled to judgment from this Court finding that the '533 patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

## COUNTERCLAIM 30: DECLARATORY JUDGMENT
## OF UNENFORCEABILITY BASED ON PATENT MISUSE

286.    Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

287.    Masimo has hundreds of issued U.S. patents, but few patents outside the U.S., and no meaningful patent protection in China.

288.    Masimo has separate contracts with each of Shenzhen Mindray and Mindray USA.

289.    Masimo has threatened to sue Mindray USA for patent infringement to force Shenzhen Mindray to comply with Masimo's anticompetitive and commercially unreasonable demands in China.

290.    Masimo's threat to enforce its '952, '222, '086, '194, '060, '986, '958, '154 and '533 patents against Mindray USA to obtain an extra-territorial effect against Shenzhen Mindray in China constitutes patent misuse as an illegal effort to

88

broaden the scope of protection afforded by Masimo's patents, rendering each of the '952, '222, '086, '194, '060, '986, '958, '154 and '533 patents unenforceable.

## COUNTERCLAIM 31: DECLARATORY JUDGMENT
## OF UNENFORCEABILITY OF THE '222 PATENT

291.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

292.   As alleged above, Masimo committed inequitable conduct during prosecution of the '222 patent by attempting to patent an invention it derived from Nellcor, and by failing to disclose to the USPTO the Yorkey and Baker materials.

293.   As alleged above, Masimo did not itself invented the use of Kalman filters in pulse oximetry, and did not disclose the Yorkey and Baker materials, which information is highly material to patentability of the claims of the '222 patent.  As alleged above, but for Mr. Kiani's, Mr. Diab's and Mr. Jensen's decision to deliberately and intentionally withhold that information from the USPTO, the claims of the '222 patent would not have issued.

294.   An actual case or controversy exists between Masimo and Shenzhen Mindray based on Masimo having filed a Complaint against Shenzhen Mindray alleging infringement of the '222 patent.

295.   Shenzhen Mindray has been injured and damaged by Masimo filing a Complaint asserting the '222 patent.

296.   Declaratory relief is both appropriate and necessary to establish that the '222 patent is unenforceable and thus cannot be asserted against Shenzhen Mindray.

///

///

///

///

## COUNTERCLAIM 32: DECLARATORY JUDGMENT
## OF UNENFORCEABILITY OF THE '958 PATENT

297.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

298.   As alleged above, Masimo committed inequitable conduct during prosecution of the '958 patent by failing to disclose to the USPTO the Yorkey and Baker materials and by failing to submit to the USPTO the trial exhibits needed to understand key portions of the invalidity testimony presented during the Masimo II trial, which information is highly material to patentability of the claims of the '958 patent.

299.   As alleged above, but for Mr. Kiani's, Mr. Jensen's and Mr. Grover's decision to deliberately and intentionally withhold that information from the USPTO, the claims of the '958 patent would not have issued.

300.   An actual case or controversy exists between Masimo and Shenzhen Mindray based on Masimo having filed a Complaint against Shenzhen Mindray alleging infringement of the '958 patent.

301.   Shenzhen Mindray has been injured and damaged by Masimo filing a Complaint asserting the '958 patent.

302.   Declaratory relief is both appropriate and necessary to establish that the '958 patent is unenforceable and thus cannot be asserted against Shenzhen Mindray.

## COUNTERCLAIM 33: DECLARATORY JUDGMENT
## OF UNENFORCEABILITY OF THE '986 PATENT

303.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

///

4822-2046-7987.6

304.   As alleged above, Masimo committed inequitable conduct during prosecution of the '986 patent by failing to submit to USPTO the trial exhibits needed to understand key portions of the invalidity testimony presented during the Masimo II trial, which information is highly material to patentability of the claims of the '986 patent.

305.   As alleged above, but for Mr. Kiani's and Masimo's patent counsel's decision to deliberately and intentionally withhold that information from the USPTO, the claims of the '986 patent would not have issued.

306.   An actual case or controversy exists between Masimo and Shenzhen Mindray based on Masimo having filed a Complaint against Shenzhen Mindray alleging infringement of the '986 patent.

307.   Shenzhen Mindray has been injured and damaged by Masimo filing a Complaint asserting the '986 patent.

308.   Declaratory relief is both appropriate and necessary to establish that the '986 patent is unenforceable and thus cannot be asserted against Shenzhen Mindray.

## COUNTERCLAIM 34: DECLARATORY JUDGMENT
## OF UNENFORCEABILITY OF THE '154 PATENT

309.   Shenzhen Mindray repeats and realleges Paragraphs 1-144 of its Answer, each of its Affirmative Defenses, and Paragraphs 1-201 of its Counterclaims as if fully set forth herein.

310.   As alleged above, Masimo committed inequitable conduct during prosecution of the '154 patent by failing to disclose to the USPTO the Yorkey and Baker materials and by failing to submit to the USPTO the trial exhibits needed to understand key portions of the invalidity testimony presented during the Masimo II trial, which information is highly material to patentability of the claims of the '154 patent.

///

4822-2046-7987.6

311.   As alleged above, but for Mr. Kiani's and Masimo's patent counsel's decision to deliberately and intentionally withhold that information from the USPTO, the claims of the '154 patent would not have issued.

312.   An actual case or controversy exists between Masimo and Shenzhen Mindray based on Masimo having filed a Complaint against Shenzhen Mindray alleging infringement of the '154 patent.

313.   Shenzhen Mindray has been injured and damaged by Masimo filing a Complaint asserting the '154 patent.

314.   Declaratory relief is both appropriate and necessary to establish that the '154 patent is unenforceable and thus cannot be asserted against Shenzhen Mindray.

## **DEMAND FOR JURY TRIAL**

Shenzhen Mindray demands a trial by jury of any and all issues in this action so triable.

## **PRAYER FOR RELIEF**

Wherefore, Shenzhen Mindray requests that the Court enter judgment for Shenzhen Mindray, and award it the following relief:

A.   Dismiss Masimo's Complaint with prejudice and find that Masimo takes nothing by its claims against Shenzhen Mindray;

B.   Enter judgment in favor of Shenzhen Mindray, and against Masimo, on the Complaint;

C.   Declare that Shenzhen Mindray has not infringed any of the '952, '222, '086, '194, '060, '986, '958, '154 or '533 patents or any valid asserted claim therein;

D.   Declare that the claims of the '952, '222, '086, '194, '060, '986, '958, '154 and '533 patents are invalid;

E.   Declare that the claims of the '222, '986, '958 and '154 patents are unenforceable for inequitable conduct;

92

F.   Declare that all of the '952, '222, '086, '194, '060, '986, '958, '154 and '533 patents are unenforceable against Shenzhen Mindray due to patent misuse;

G.   Enjoin Plaintiff, its assigns, and all those in privity therewith from asserting any of the '952, '222, '086, '194, '060, '986, '958, '154 or '533 patents against Shenzhen Mindray or any of its customers or suppliers;

H.   Declare that Masimo has violated the Antitrust laws;

I.   Award Shenzhen Mindray the damages to which it is entitled under the Antitrust laws, including treble damages, costs, and attorneys fees pursuant to 15 U.S.C. § 15(a);

J.   Enjoin Masimo from engaging in the anticompetitive conduct alleged herein;

K.   Find this case an exceptional case and award Shenzhen Mindray its attorneys' fees and costs under 35 U.S.C. § 285 and/or Rule 11 of the Federal Rules of Civil Procedure; and

L.   Grant Shenzhen Mindray such other and further relief as the Court deems appropriate and just under the circumstances.


Executed on May 31, 2013

FOLEY & LARDNER LLP

/s/ Nicola A. Pisano
Nicola A. Pisano

Attorneys for Defendant SHENZHEN MINDRAY BIO-MEDICAL ELECTRONICS CO., LTD.

93

4822-2046-7987.6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this case.

Dated:  May 31, 2013

FOLEY & LARDNER LLP

/s/ Nicola A. Pisano
Nicola A. Pisano

Attorneys for Defendant SHENZHEN
MINDRAY BIO-MEDICAL
ELECTRONICS CO., LTD.

ANSWER AND COUNTERCLAIMS
OF SHENZHEN MINDRAY

4822-2046-7987.6