UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>MINDRAY DS USA INC. and SHENZHEN MINDRAY BIO-MEDICAL ELECTRONICS CO. LTD.,<br><br>　　　　Defendants. | Case No.: SACV 12-02206-CJC(JPRx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, DENYING DEFENDANT'S MOTION TO DISMISS, AND DENYING PLAINTIFF'S MOTION TO BIFURCATE AND STAY** |

**I.  INTRODUCTION AND BACKGROUND**

　　Masimo Corporation ("Masimo") brought this action against Mindray DS USA Inc. ("Mindray USA") and Shenzhen Mindray Bio-Medical Electronics Co. Ltd. ("Shenzhen Mindray") alleging nine claims for patent infringement and several state law claims. (Dkt. No. 1 ["Compl."].)  Masimo is a Delaware corporation with a principal place of business in Irvine, California. (*Id.* ¶ 1.)  It is in the business of

developing and manufacturing noninvasive patient monitoring technologies, including Signal Extraction Technology, referred to as Masimo SET. (*Id*. ¶ 2.) Shenzhen Mindray is a Chinese corporation with its principal place of business in China. (*Id*. ¶ 4.) Shenzhen Mindray develops, manufactures, and markets medical devices. (*Id*.) Masimo alleges that Shenzhen Mindray infringed on nine of its patents by "selling, offering to sell and/or importing" patient monitoring devices, reusable oximetry sensors and patient monitoring devices. (Compl. ¶¶ 51, 58, 64, 70, 76, 81, 87, 93, 99.) Masimo specifically points to infringement in Shenzhen Mindray's BeneView series of patient monitoring devices and the SpO2 sensors used with such devices. (*See id*.) Masimo further alleges that Shenzhen Mindray committed these acts in this district. (*Id*. ¶ 9.)

Masimo asserts a number of additional non-patent claims against Shenzhen Mindray, including breach of contract, breach of the covenant of good faith and fair dealing, accounting, tortious interference with prospective economic advantage, declaratory relief, and statutory unfair competition. These claims arise from alleged breaches of a November 13, 2002 Purchasing and Licensing Agreement ("Agreement") between the parties.[1] In return for a license to incorporate Masimo "MS Boards" into certain devices, the Agreement creates several obligations for Shenzhen Mindray. Among other things, Shenzhen Mindray agreed to use its best efforts to integrate Masimo SET into all products requiring SpO2 measurements, adopt Masimo SET as its primary standard pulse oximetry product offering, fully inform customers of the advantages of Masimo SET, bring a Masimo representative to convince customers to purchase Masimo SET, train its sales representatives on Masimo SET, exhibit Masimo SET in its trade show booths, promote Masimo SET as the new standard care in pulse oximetry, and inform Masimo of all new licensed products prior to their launch.

---

[1] The Agreement provides that "any claim or cause of action shall be filed in any court in Orange County, California . . . [and] each [party] consents . . . to service of process upon it in the manner set forth in Section 19.6 ('Notice')." (Dkt. No. 21 [Lateef Decl.] Exh. 1 [Agreement] § 18.)

(Compl. ¶¶ 25–32.) Masimo's non-patent claims primarily arise out of alleged breaches of these terms.

On May 31, 2013, Shenzhen Mindray filed an Answer to Masimo's Complaint and asserted an affirmative defense of patent misuse and inequitable conduct as well as several counterclaims, primarily for antitrust violations. (Dkt. No. 55 ["Answer"].) Shenzhen Mindray's counterclaims are based on allegations that Masimo has abused its technology position and conducted a decade-long campaign of anticompetitive licensing strategies. As part of this campaign, Masimo has allegedly "forced many of its current and former competitors to enter into exclusive dealing arrangements under threat of onerous patent litigation." (*Id.* ¶ 27.) Shenzhen Mindray further alleges that Masimo forces its licensees to "tie their pulse oximetry monitors to Masimo sensors and patient cables," allowing it to "extract anticompetitive profits . . . and to ensure that such customers are locked into using Masimo pulse oximetry technology for the foreseeable future." (*Id.* ¶ 53.) Additionally, Masimo allegedly "has engaged in exclusionary pricing and bundling practices designed to lock hospitals into Masimo pulse oximetry products." (*Id.* ¶ 56.) Shenzhen Mindray also alleges that Masimo's patent portfolio "is the culmination of a systematic and continuous . . . effort by the officers of Masimo . . . to perpetrate fraud on the United States Patent and Trademark Office." (*Id.* ¶ 72.) As a result of such actions, Masimo has allegedly created a "dominant position for itself in the market for pulse oximeter monitors . . . ." (*Id.* ¶ 73.) Shenzhen Mindray asserts counterclaims for violations of the Sherman Act, tortious interference with prospective economic advantage, and unfair competition in violation of California Business and Professions Code section 17200, et seq. Shenzhen Mindray additionally seeks a declaratory judgment that Masimo's patents are invalid or unenforceable under a variety of theories.

Before the Court are Shenzhen Mindray's motions for partial judgment on the pleadings and to dismiss for forum non conveniens. Also before the Court is Masimo's motion to bifurcate and stay Shenzhen Mindray's antitrust counterclaims. For the following reasons, the Court **GRANTS** Shenzhen Mindray's motion for partial judgment on the pleadings, **DENIES** its motion to dismiss, and **DENIES** Masimo's motion to bifurcate and stay.[2]

## II. ANALYSIS

### A. Judgment on the Pleadings

A court may grant a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), which provides that "after the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." A motion for judgment on the pleadings is substantially identical to a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) because both permit challenges to the legal sufficiency of the opposing party's pleadings. *Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002). The main difference between the two motions is timing: a 12(b)(6) motion is brought before filing an answer, whereas a motion for judgment on the pleadings is brought after the pleadings are closed. Schwarzer, et al., Rutter Group Practice Guide: Federal Civil Procedure Before Trial, § 9:199, at 9-50 (2007). Judgment on the pleadings is appropriate when, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter of law. *Torbet v. United Airlines, Inc.*, 298 F.3d 1087, 1089 (9th Cir. 2002).

---

[2] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for July 22, 2013 at 1:30 p.m. is hereby vacated and off calendar.

In considering whether to dismiss a case for failure to state a claim under Rule 12(b)(6), the issue before the Court is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). However, "[m]ere legal conclusions" are not entitled to an assumption of truth, *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011), and the complaint must contain more than "a formulaic recitation of the elements of a cause of action," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) (internal citation omitted); *see Garcia v. Wachovia Mortgage Corp.*, 676 F. Supp. 2d 895, 900 (C.D. Cal. 2009) ("[A] court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint.").

### 1. Direct Infringement

Shenzhen Mindray moves for partial judgment on the pleadings of Masimo's direct infringement claims. The Federal Circuit has recently held that all that is required to state a claim for direct patent infringement is: "(1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages." *K-Tech Telecommunications, Inc. v.*

*Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013).  Although it is undisputed that Masimo has sufficiently alleged these elements, Shenzhen Mindray asserts that Masimo has "pleaded itself out of cognizable patent claims by asserting exclusively extraterritorial conduct by Shenzhen Mindray." (Def.'s Reply at 4.)  A plaintiff may only recover on a patent infringement claim if the infringing activity occurred in the United States.  *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375 (Fed. Cir. 2005) ("It is well-established that the reach of section 271(a) is limited to infringing activities that occur within the United States.").  Shenzhen Mindray argues that even if under *K-Tech* a plaintiff need not explicitly plead that infringement took place in the United States, Masimo's allegations conclusively show that any alleged infringement occurred outside the United States.  In support, Shenzhen Mindray points to Masimo's allegations regarding its non-patent claims, which, it maintains, only allege activities outside the United States.[3]  It argues that because Masimo "repeats and realleges and incorporates by reference" the non-patent allegations into its patent claims, it has implicitly alleged that no infringement took place in the United States. (*Id.* at 3.)  Shenzhen Mindray, however, ignores Masimo's allegation that "Mindray conducts business through the United States, including in this district, and has committed the acts complained of in this district." (Compl. ¶ 9.)  The Court must read all allegations in the Complaint in the light most favorable to Masimo.  *See Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994).  Given that Masimo expressly alleges that Shenzhen Mindray "committed the acts complained of" in the United States, the Court finds that it did not plead itself out of a claim through the use of boilerplate language to "incorporate" the non-patent allegations into its direct infringement claims.

---

[3] Masimo disputes this characterization of its state law allegations.  It maintains that, at the very least, the non-patent allegations are ambiguous as to whether conduct occurred in the United States.

Shenzhen Mindray next asserts that partial judgment on Masimo's direct infringement pleadings is proper because Shenzhen Mindray had a license to engage in the allegedly infringing activity. Specifically, it argues that Masimo's direct infringement claims are predicated on the distribution of BeneView devices, but Shenzhen Mindray is licensed under the Agreement to sell BeneView monitors integrating Masimo SET technology. It asserts that "[t]here is no allegation in the Complaint asserting that Shenzhen Mindray distributed any BeneView monitors in the United States integrating anything other than the licensed Masimo SET boards." (Def.'s Mot. at 8.) Masimo counters that its allegations are broader than Shenzhen Mindray suggests. For example, under each infringement claim, it alleges that the infringing devices "include, without limitation, the BeneView series of patient monitoring devices." (*See, e.g.*, Compl. ¶ 51.) Masimo maintains that its "patent infringement claims are explicitly not limited to 'BeneView' products, while the parties' Agreement could at most only provide a license to particular 'BeneView' products that incorporate Masimo SET technology." (Pl.'s Opp'n at 8.)

A properly pleaded claim for direct infringement includes a description of the infringing devices. *See K-Tech*, 714 F.3d at 1283 (a claim for direct infringement must include "a statement that defendant has been infringing the patent 'by making, selling, and using [*the device*] embodying the patent." (emphasis added)). Masimo's allegations regarding the BeneView devices are overly broad and ambiguous, and fail to put Shenzhen Mindray on notice of precisely which of its products are alleged to be infringing on Masimo's patents. The Court therefore GRANTS Shenzhen Mindray's motion for partial judgment on the pleadings with respect to Masimo's direct infringement claims related to BeneView devices. Because Masimo has represented that its claims include BeneView devices that fall outside the license contained in the Agreement, the Court grants Masimo leave to amend its Complaint.

### 2. Indirect Infringement

Shenzhen Mindray next moves for partial judgment on the pleadings of Masimo's claims for indirect patent infringement. There are two types of indirect infringement: inducement to infringe and contributory infringement. Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." Under 35 U.S.C. § 271(c), "[w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." The pleading standard articulated in Federal Rule of Civil Procedure 8, *Twombly*, and *Iqbal*, applies to claims for indirect infringement. *See Superior Indus., LLC v. Thor Global Enterprises Ltd.*, 700 F.3d 1287, 1295 (Fed. Cir. 2012).

It is not clear from the Complaint whether Masimo alleges that Shenzhen Mindray is liable for inducement to infringe, contributory infringement, or both. This is because the Complaint is entirely devoid of specific allegations regarding indirect infringement. There is not a single allegation in the Complaint that the accused products are "especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use" as required by 35 U.S.C. § 271(c). *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012) ("To state a claim for contributory infringement, therefore, a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses."). Similarly, Masimo does not allege any facts

to support a reasonable inference that Shenzhen Mindray specifically intended to induce infringement of its patents or that it knew it had induced acts that constitute infringement, as required under 35 U.S.C. § 271(b).  *See In re Bill of Lading*, 681 F.3d at 1339 (a claim for inducement to infringe "must contain facts plausibly showing that [the defendants] specifically intended their customers to infringe the [] patent and knew that the customer's acts constituted infringement.").

Masimo argues that allegations in the Complaint that Shenzhen Mindray was aware that its subsidiary, Mindray USA, was engaged in direct infringement are sufficient to state a claim for indirect infringement.  Masimo, however, provides no authority for the proposition that a parent corporation is liable for indirect infringement if it is aware that its subsidiary corporation is involved in direct infringement.  To state a claim for indirect infringement, Masimo must allege that Shenzhen Mindray actually engaged in improper conduct constituting contributory infringement or inducement to infringe, or provide some other basis for liability.  There are no such allegations in the Complaint.  Shenzhen Mindray is therefore entitled to partial judgment on the pleadings with respect to Masimo's indirect infringement claims.  Masimo is given leave to amend its Complaint to include specific allegations of indirect infringement.

### B. Forum Non Conveniens

Despite the unambiguous forum selection clause contained in the Agreement, Shenzhen Mindray moves to dismiss Masimo's state law claims based on forum non conveniens.  "A district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001).  In determining whether to dismiss an action, the "court must examine: (1) whether an adequate alternative forum

exists, and (2) whether the balance of private and public interest factors favors dismissal." *Id*. at 1142.

### 1. Adequate Alternative Forum

"At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991). To constitute an adequate alternative forum, the "foreign forum must provide the plaintiff with some remedy for his wrong . . . ." *Lueck*, 236 F.3d at 1143. Only in "rare circumstances" will the alternative forum be deemed inadequate. *Lockman*, 930 F.2d at 768. The forum is inadequate "where the alternative forum does not permit litigation of the subject matter of the dispute," such that "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Id*. at 768 (quoting *Piper Aircraft,* 454 U.S. at 254 & n. 22.). The burden of proving the existence of an adequate alternative forum is on the defendant. *Lueck*, 236 F.3d at 1143.

Shenzhen Mindray has sufficiently shown that China is an adequate alternative forum. Shenzhen Mindray has indicated that it will submit to Chinese jurisdiction, and is therefore "amendable to process" in China. Shenzhen Mindray has also submitted evidence that Chinese courts recognize claims for relief based on breach of contract and unfair competition, which form the bulk of Masimo's state law claims. (Dkt. No. 59 ["Li Decl."] ¶ 7.) Masimo objects that Shenzhen Mindray has only provided evidence that Chinese courts offer relief for two of its state law claims. However, the remaining state law claims, breach of the covenant of good faith and fair dealing, accounting, and interference with prospective economic advantage, all arise out of the same nucleus of facts forming the basis of Masimo's contract and unfair business practices claims.

Although Chinese courts may not afford relief for each specific cause of action, they clearly permit litigation on the subject matter in dispute and provide "some remedies for [the] wrong." *Lueck*, 236 F.3d at1143.

### 2. Private Interest Factors

The Court next turns to a consideration of private interest factors. "Courts consider the following private interest factors: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Lueck*, 236 F.3d at 1145. These factors should be considered together in order to arrive at a balanced conclusion. *Id*. Rather than simply count the witnesses and evidence located in each forum, the court should examine "the materiality and importance of the anticipated [evidence and] witnesses' testimony and then determine[ ] their accessibility and convenience to the forum." *Id*. at 1146 (quoting *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335–36 (9th Cir. 1984)).

#### a. Residence and Convenience for the Parties

The residence and convenience of the parties does not weigh in favor of dismissal. Masimo is a resident of California and has chosen a home forum. "[A] plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum. When the home forum has been chosen, it is reasonable to assume that this choice is convenient." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981) (internal citations omitted). Moreover, the forum selection clause in the Agreement provides strong evidence that this forum is convenient for both parties. The Court is

also not persuaded by Shenzhen Mindray's argument that litigating in China would be more convenient because Masimo's employees travel to Asia more often than Shenzhen Mindray employees travel to California.  According to Shenzhen Mindray, Masimo employees have travelled to Asia (though not necessarily China) to meet with Shenzhen Mindray representatives on twelve occasions over the past six years, whereas Shenzhen Mindray employees have only traveled to California six times over the same period.  (Yang Decl. ¶ 6.)  The Court finds that this difference is insignificant.  Although the Court recognizes that Shenzhen Mindray will be required to expend additional resources litigating in the United States, Masimo would be in a very similar situation if it were required to litigate in China, regardless of the fact that its representatives have travelled to Asia an additional six times over the course of twelve years.

### b. Physical Evidence and Other Sources of Proof

The location of the physical evidence and other sources of proof does not weigh in favor of dismissal.  Shenzhen Mindray asserts that it will have significant difficultly obtaining the evidence necessary to defend itself if this action is tried outside of China.  This is primarily because Chinese courts apparently will not enforce orders from a foreign court for depositions or document requests.  (Li Decl. ¶ 6.)  Shenzhen Mindray represents that its most significant business over the last six years has been with Chinese governmental medical institutions.  (Yang Decl. ¶ 4.)  It maintains that it will need "access to the personnel and documents maintained at these governmental medical institutions to disprove allegations of breach and other misconduct." (*Id.*)  According to Shenzhen Mindray, these institutions will not provide such information unless the case is litigated in China.  (*Id.*)

Shenzhen Mindray, however, fails to point to specific evidence it will need from these institutions, or explain exactly why such evidence is relevant to its defense.  A

review of the allegations in the Complaint would suggests that the majority of evidence relevant to Shenzhen Mindray's defense would actually be in its own possession. Most of Masimo's allegations concern the efforts taken by Shenzhen Mindray to comply with certain terms of the Agreement. For example, Masimo alleges that Shenzhen Mindray failed to use best efforts to make Masimo SET its primary and default SpO2 product, integrate Masimo SET into its products requiring SpO2 measurement, ensure its sales force was fully trained on Masimo SET, incentivize its sales force to encourage customers to use Masimo SET, and exhibit the features and benefits of Masimo SET in its trade show booths and kiosks. Several other claims relate exclusively to Masimo and Shenzhen Mindray, and involve no third parties. For example, Masimo alleges that Mindray Shenzhen failed to inform Masimo of a description and model number of each licensed product prior to launch, or supply a certificate from an officer that Shenzhen Mindray was in compliance with the terms of the Agreement. The vast majority of evidence relevant to these claims is likely to be in Shenzhen Mindray's possession, and would therefore not require any court orders to obtain such evidence.

Only three of Masimo's claims directly relate to Shenzhen Mindray's interactions with its customers: Shenzhen Mindray (1) failed to fully inform customers of the advantages of Masimo SET, (2) failed to bring in a Masimo representative to convince customers to purchase Masimo SET, and (3) charged a premium of several hundred dollars for certain monitors. While evidence from its customers might be useful, Shenzhen Mindray should have sufficient evidence in its own possession to adequately defend against these claims. Shenzhen Mindray's sales force, for example, could testify about their practice of informing customers of the advantages of SET and whether they were accompanied by Masimo representatives. Shenzhen Mindray is also likely to have invoices or other sales receipts evidencing the amount charged for monitors.

///

### c. Location of Witnesses and Ability to Compel Unwilling Witnesses

The location of the witnesses and ability to compel unwilling witnesses to testify do not weigh in favor of dismissal. Although many of Shenzhen Mindray's witnesses are likely located in China, it has failed to specially identify any of these witnesses or explain why their testimony is relevant. Masimo, on the other hand, has specifically identified at least nine witnesses residing in the United States with knowledge of the Agreement, relevant Masimo products, and Masimo's interactions with Shenzhen Mindray. (Dkt. No. 63 ["Kiani Decl."] ¶¶ 4–8.) Similarly, although Shenzhen Mindray argues that it will not be able to compel unwilling witnesses located in China to testify, it has failed to identify a single witness falling into that category. In contrast, the nine witnesses identified by Masimo are within the subpoena power of this Court, and almost certainly outside the subpoena power of a Chinese court.

### d. Enforceability of Judgments

The enforceability of judgments does not weigh in favor of dismissal. Shenzhen Mindray represents that judgments from U.S. courts are rarely enforced in China. (Li Decl. ¶ 9.) It additionally asserts that Chinese courts would refuse to recognize an award against Shenzhen Mindray if it was unable to compel unwilling witnesses to testify. Masimo, however, would seem to be the party prejudiced as a result of this possibility, but it does not object to litigating in this forum. The Court therefore finds that this factor does not provide an adequate reason to dismiss the case.

### 3. Public Interest Factors

The Court must next consider five factors to determine the public interest: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3)

the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Boston Telecommunications Grp., Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009). Shenzhen Mindray asserts that China has a significant interest in this case given that much of the conduct underlying Masimo's claims took place there. However, the Court only considers whether "there is an identifiable local interest in the controversy, not whether another forum also has an interest." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1182 (9th Cir. 2006). California has a meaningful interest in this controversy given that one of the parties is a California resident. *See Oestreicher v. Alienware Corp.*, 502 F. Supp. 2d 1061, 1068 (N.D. Cal. 2007) *aff'd*, 322 F. App'x 489 (9th Cir. 2009) (stating that California law considers the residence of the parties to determine which state has an interest in the litigation). The Court is very familiar with the law at issue: California law.[4] Certainly this Court would be significantly more familiar with the relevant California law than would a Chinese court. Finally, the Court does not find that the other three factors, the burden on the courts and juries, congestion in the court, and costs of resolving the dispute, are significant enough to justify dismissal of the action.

After a consideration of the private and public interests at stake in this action, the Court finds that dismissal for forum non conveniens is not warranted.

**C. Bifurcation and Stay**

Masimo moves to bifurcate Shenzhen Mindray's antitrust claims pursuant to Federal Rule of Civil Procedure 42(b). Rule 42(b) permits a court, "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, [to] order a separate trial of any claim, cross-claim,

---

[4] Shenzhen Mindray implies that Chinese law might govern Masimo's claims. However, it has failed to explain the basis for applying Chinese law.

counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues." Fed. R. Civ. P. 42(b). In determining whether bifurcation is appropriate, the district court should consider: (1) convenience; (2) the risk of prejudice; (3) judicial economy; (4) the possibility of confusion; and (5) whether the issues are clearly separable. *See Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982). A district court has "broad discretion" in determining whether to bifurcate a case. *Jinro Am., Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 998 (9th Cir. 2001). The party moving for bifurcation has the burden of showing that bifurcation is justified. *See Karpenski v. Am. Gen. Life Companies, LLC*, 84 Fed. R. Serv. 3d 608 (W.D. Wash. 2012); *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992).

The Court finds that bifurcation and a stay of discovery are not warranted. There are significant overlapping issues between the patent and antitrust claims. Shenzhen Mindray's *Walker Process* and patent misuse counterclaims, for example, are based on the same underlying conduct as its inequitable conduct and patent misuse affirmative defenses. The determination of each will likely involve similar issues and evidence, and judicial economy is therefore best served by conducting discovery and pretrial proceedings together.

Although it is true that in the event Masimo prevails on its patent claims the scope of the antitrust litigation will likely be reduced, the Court finds this potential benefit outweighed by the inefficiencies inherent in piecemeal litigation and discovery. A stay of discovery, for example, would likely result in repetitive discovery and frequent disputes regarding whether the requested discovery is related to patent or antitrust allegations. Bifurcation would also significantly extend the length of trial, resulting in greater inconvenience for the jury and the witnesses, many of whom would have to appear twice. These concerns are especially pronounced in this case given the

additional burdens placed on Shenzhen Mindray in having to litigate in a foreign country.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Shenzhen Mindray's motion for partial judgment on the pleadings. Masimo shall have twenty (20) days from the date of this minute order to file an amended complaint. The Court **DENIES** Shenzhen Mindray's motion to dismiss for forum non conveniens. The Court additionally **DENIES** Masimo's motion to bifurcate and stay.

DATED: July 17, 2013

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE