Nicola A. Pisano (CA Bar No. 151282)
    npisano@foley.com
Jose L. Patiño (CA Bar No. 149568)
    jpatino@foley.com
Shawn E. McDonald (CA Bar No. 237580)
    semcdonald@foley.com
Justin E. Gray (CA Bar No. 282452)
    jegray@foley.com
Christopher C. Bolten (CA Bar No. 268284)
    cbolten@foley.com
**FOLEY & LARDNER LLP**
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130-3302
Telephone:  858.847.6700
Facsimile:    858.792.6773

Attorneys for Defendant, Counter-Plaintiff
and Counter Counter-Defendant
SHENZHEN MINDRAY BIO-MEDICAL
ELECTRONICS CO., LTD.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA ANA DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation,<br><br>　　　Plaintiff, Counter-Defendant and Counter Counter-Plaintiff,<br><br>　　　v.<br><br>SHENZHEN MINDRAY BIO-MEDICAL ELECTRONICS CO., LTD., a corporation of the People's Republic of China,<br><br>　　　Defendant, Counter-Plaintiff and Counter Counter-Defendant. | Case No. SACV12-02206 CJC (JPRx)<br><br>**CORRECTED AND SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF SHENZHEN MINDRAY'S MOTION FOR REVIEW OF MAGISTRATE JUDGE'S MARCH 10, 2014 ORDER [DKT. NO. 119]**<br><br>Date:　　　April 21, 2014<br>Time:　　　1:30 p.m.<br>Place:　　　Courtroom 9B<br><br>Judge:　　Hon. Cormac J. Carney<br><br>Discovery Cutoff:　　July 25, 2014<br>Pretrial Conference:　October 27, 2014<br>Trial:　　　　　　　November 4, 2014 |

4837-1664-0986.1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................. 1

II.   ARGUMENT ..................................................................... 3

   A.   THE PROSECUTION BAR FAILS TO PROVIDE ADEQUATE PROTECTION ................................................................. 3

   B.   THE ORDER ERRONEOUSLY MANDATES PRODUCTION OF SHENZHEN MINDRAY'S SOURCE CODE BY APRIL 14, 2014, WITHOUT REGARD TO ~~WHETHER THE CHINESE GOVERNMENT HAS COMPLETED ITS DETERMINATION OF WHETHER IT WILL APPROVE THE PRODUCTION~~ THE CHINESE GOVERNMENT'S DETERMINATION THAT THE INFORMATION IS SUBJECT TO CHINESE SECRECY LAWS............ 9

      1.   The Order's Date Certain Production Deadline Violates U.S. Principles Of Comity ............................................. 13

      2.   The Court's Order Improperly Compelled Production Without Conducting A Comity Analysis ...................... 14

      3.   The Order Is Contrary To Law Because It Compels Production Of Irrelevant Documents To The Undue Burdening Of Shenzhen Mindray ................................. 17

   C.   THE ISSUES RELATING TO SHENZHEN MINDRAY'S PRODUCTION OF PRODUCT SAMPLES ARE NOW MOOT ............ 18

   D.   THE ISSUES RELATING TO SHENZHEN MINDRAY'S SUPPLEMENTAL INTERROGATORY RESPONSES ARE NOW MOOT ............................................................................ 19

III.   CONCLUSION .................................................................. 20

CORRECTED AND SUPPLEMENTAL REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR REVIEW OF MAGISTRATE JUDGE'S 3/10/2014 ORDER
-i-
Case No. SACV12-02206 CJC (JPRx)

4837-1684-0986.1

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Deutsche Bank,*
   605 F.3d 1373 (Fed. Cir. 2010) ..................................................................*passim*

*Kendall v. Visa U.S.A., Inc.,*
   518 F.3d 1042 (9th Cir. 2008) ...................................................................... 18

*Mallinckrodt, Inc. v. Masimo Corp.,*
   147 Fed. Appx. 158 (Fed. Cir. 2005)............................................................... 7

*Masimo Corp. v. Philips Elecs. N. Am.,*
   No. 1:09-cv-00080-LPS-MPT (D. Del.).................................................... 6, 18

*Presidio Components, Inc. v. Amer. Tech. Ceramics Corp.,*
   546 F. Supp. 2d 951 (S.D. Cal. 2008)............................................................. 3

*Richmark Corp. v. Timber Falling Consultants,*
   959 F.2d 1468 (9th Cir. 1992) ........................................................... 13, 14, 15

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Court,*
   482 U.S. 522 (1987)........................................................................... 12, 13

**Federal Statutes/Rules**

Fed. R. Civ. P. 26(b)(1)................................................................................. 16

**International Law/Statutes**

The People's Republic of China's "Detailed Rules for Maintaining
   Confidentiality for the Technologies relating to Chinese Herbal Medicine
   and Western Drugs and Medical Devices" (1983) ............................................ 9

The People's Republic of China's "Regulations on Maintaining
   Confidentiality for Technologies" (1995) ...................................................... 9

Criminal Law of the People's Republic of China,
   Art. 111 ........................................................................................... 14

Implementation Measures for the Law of the People's Republic of China on
   Guarding State Secrets.......................................................................... 14

Law of the People's Republic of China on Guarding State Secrets
   (2010)................................................................................... 9, 10, 14

CORRECTED AND SUPPLEMENTAL REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR REVIEW OF MAGISTRATE JUDGE'S 3/10/2014 ORDER
-ii-
Case No. SACV12-02206 CJC (JPRx)

4837-1684-0986.1

# I.   <u>INTRODUCTION</u>[1]

As set forth in Shenzhen Mindray's Memorandum of Points and Authorities in Support of Its Motion for Review of Magistrate Judge's March 10, 2014 Order (Dkt. No. 125-1; "Motion") and herein, this Court's review of the Magistrate Judge's March 10, 2014 order (Dkt. No. 119; "Order") is warranted because the Order is based on errors of law and clearly erroneous factual findings. Review of the Order is necessary because, *inter alia*, the Chinese Government <u>has ruled on</u> ~~presently is considering~~ Shenzhen Mindray's written request to promptly confirm whether or not Shenzhen Mindray may produce its source code and related materials.  On March 28, 2014, Shenzhen Mindray hand-delivered to the Food and Drug Administration of the People's Republic of China (the "SFDA") its request for this determination, in accordance with the procedure required under Chinese law.  <u>On April 9, 2014, the SFDA issued its order (the "SFDA Order") stating its determination that the source code and related technical information regarding Shenzhen Mindray's pulse oximeter products are subject to Chinese secrecy laws.</u> The Order must be reversed because it specifies a date certain (April 14, 2014) by which Shenzhen Mindray must produce its source code, without regard to whether the Chinese Government's approval for such disclosure has been obtained by that date.  Were it to comply with the Order ~~prior to obtaining government approval~~ <u>in violation of the SFDA Order,</u> Shenzhen Mindray would subject itself and its personnel to serious risk of harsh criminal punishment, civil liability, and reputational harm for violation of Chinese

---

[1] <u>Subsequent to Shenzhen Mindray's filing of its Reply Memorandum, the Chinese Government issued an order stating its determination that Shenzhen Mindray's source code and related technical documents are subject to Chinese secrecy laws.  Declaration of Shawn E. McDonald In Support of Corrected and Supplemental Reply Memorandum, at ¶ 3 & Exs. C, D.  Shenzhen Mindray files this Corrected and Supplemental Reply in accordance with Magistrate Judge Rosenbluth's instruction that Shenzhen Mindray should put before this Court any such order issued by the Chinese government. *See* Order Denying Defendant's *Ex Parte* Application (Dkt. No. 129), at 2:18-23 ("…Judge Rosenbluth specifically noted that if, before the deadline for producing the requested information, Shenzhen Mindray provides her with any legitimate indication from the Chinese government that any of the requested information may be considered secret, that she will consider amending her order and granting relief from the deadline"); Transcript of Oral Argument (March 6, 2014) (Dkt. No. 125-4), at 70:12-17.</u>

CORRECTED AND SUPPLEMENTAL REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR REVIEW OF MAGISTRATE JUDGE'S 3/10/2014 ORDER
-1-
Case No. SACV12-02206 CJC (JPRx)

4837-1684-0986.1

law.  United States law and principles of international comity require due respect for a foreign litigant and its obligations to its nation's laws.  In failing to permit Shenzhen Mindray to comply with Chinese law, that portion of the Order compelling Shenzhen Mindray to produce its source code was erroneous as a matter of law, and must therefore be reversed.

Review of the Order also is necessary because the Protective Order entered by the Court provides only a two-year prohibition on patent prosecution, which is far too short in duration to protect Shenzhen Mindray.  Under the law, the court must "examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis."  *In re Deutsche Bank*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).  As detailed in the Motion, review of past litigations shows that Masimo and its counsel previously have used the confidential information of a competitor, obtained in litigation, to Masimo's advantage in prosecuting patent applications, during, and after the expiration of, patent prosecution bars.  This demonstrated pattern and practice of misuse of competitors' confidential information to obtain patents covering the competitors' technology, combined with the undisputed slow pace of development in this industry, makes clear that a two-year duration is improper as a matter of law.  In opposition, Masimo fails even to dispute the highly relevant facts of its misuse of competitors' confidential information.  The Magistrate Judge expressly refused to consider the facts of the repeated misuse of competitors' confidential information during patent prosecution by Masimo and its counsel.  The two-year duration of the Protective Order was expressly based upon a model protective order relevant only to the most typical cases, and was not the result of examination of the relevant facts of this case, as is required under the law.  *Id*.  Thus, the two-year duration was the result of erroneous application of the law.

Shenzhen Mindray objects to the prosecution bar provision of the Protective Order, and seeks entry of a protective order with a prosecution bar of five-years' duration.  Shenzhen Mindray submits that in the particular circumstances of this case, the prosecution bar also should specifically apply to Masimo's counsel who receive

Shenzhen Mindray's confidential information and who have already been adjudged to have committed inequitable conduct under similar circumstances.

On March 27, 2014, Shenzhen Mindray produced samples of its accused products to Masimo, and served supplemental responses to Masimo's interrogatory nos. 3-5, in compliance with the Order. Thus, the issues of the Motion relating to Shenzhen Mindray's production of product samples and providing supplemental interrogatory responses are now moot.

## II.   ARGUMENT

### A.   The Prosecution Bar Fails to Provide Adequate Protection

In its Opposition to Shenzhen Mindray's Motion for Review (Dkt. No. 134; "Opposition"), Masimo asserts that Shenzhen Mindray identified no legal error or clearly erroneous factual findings in the Order, with respect to the prosecution bar provision of the Protective Order. That is simply false. As Shenzhen Mindray addressed in detail in its Motion, the Order's imposition of a two-year prosecution bar instead of the five-year prosecution bar proposed by Shenzhen Mindray is contrary to law and relies on clearly erroneous findings of fact as to the risk of misuse by Masimo.

Masimo relies on only the *Presidio* decision, but it is entirely inapposite because the duration of the protective order in that case was not disputed; it was stipulated to by the parties. *Presidio Components, Inc. v. Amer. Tech. Ceramics Corp.*, 546 F. Supp. 2d 951, 952 (S.D. Cal. 2008). Thus, the issue of the duration of the prosecution bar was not addressed by the court in *Presidio*. The *Presidio* decision also is of no import because it has been superseded. In 2010, the U.S. Court of Appeals for the Federal Circuit held that the determination of the proper scope for a patent prosecution bar in a protective order is controlled by Federal Circuit law, not the law of the regional circuits. *In re Deutsche Bank*, 605 F.3d at 1378. As the Federal Circuit made clear: "It is therefore important for a court, in assessing the propriety of an exemption from a patent prosecution bar, to examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis." *Id*. at 1380.

The required examination of "all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis" in this case, leads to only one conclusion.  The only way adequately to protect Shenzhen Mindray from misuse of its confidential information is Shenzhen Mindray's proposed prosecution bar, including its five-year duration.  Masimo refers to the fact that the Northern District of California's Model Protective Order specifies a two-year duration for its prosecution bar. Opposition at 5:25-28.  But that "model" order cannot be adopted in a particular case if the relevant facts of that case indicate that doing so would not provide adequate protection, as is the case here.  *In re Deutsche Bank*, 605 F.3d at 1380.

In its portions of the Joint Stipulation (Dkt. No. 111-1 at 13-17), in its Supplemental Memorandum (Dkt. No. 114 at 1-2), and at the hearing, Shenzhen Mindray argued that its proposed protective order is necessary to provide adequate protection, including its five-year duration, based upon, *inter alia*, the established practice of Masimo and its dual-purpose litigation and patent prosecution counsel Stephen Jensen and other attorneys at the law firm of Knobbe, Martens, Olson and Bear ("KMOB") of misusing confidential information obtained in litigation from its competitors in order to improperly obtain patent claims covering its competitors' inventions.  Masimo asserts that Shenzhen Mindray did not rely upon such arguments in support of a five-year duration.  Opposition at 6.  That too is false; Shenzhen Mindray relied upon such arguments in support of its proposed protective order and its five-year duration, and specifically argued against the "extremely too-low two years" duration proposed by Masimo.  Transcript of Oral Argument, March 6, 2014 ("Hearing Tr.") at 33:25-34:1 (Declaration of Shawn E. McDonald In Support of Motion ("McDonald Decl."; Dkt. No. 125-2), Ex. C).

Masimo does ***not*** dispute that during its first patent infringement litigation against Nellcor ("*Masimo I*"), its counsel Stephen Jensen and KMOB received confidential declarations from Nellcor's Dr. Yorkey and Mr. Baker describing their work developing Nellcor's pulse oximetry products, and then submitted patent claims in a 2006

CORRECTED AND SUPPLEMENTAL REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR REVIEW OF MAGISTRATE JUDGE'S 3/10/2014 ORDER
-4-
Case No. SACV12-02206 CJC (JPRx)

4837-1684-0986.1

continuation application claiming the invention disclosed in those declarations, which improperly issued as Masimo's '958 patent asserted here, as described in detail in the Motion.   Motion at 6:3-17; *see also* Shenzhen Mindray's Third Amended Answer and Counterclaims ("TACC") (Dkt. No. 133) at ¶¶ 100-120.   Rather than dispute these facts, Masimo merely asserts that the citations to paragraphs 97 and 98 of Shenzhen Mindray's Second Amended Answer and Counterclaims ("SACC"; Dkt. No. 101) do not provide support, because "[t]hose paragraphs allege that Masimo committed inequitable conduct by failing to submit those declarations to the USPTO." Opposition at 7:21-22.   But Masimo is incorrect even as to that point.   Paragraph 97 of the SACC recites the specific facts of the misuse, stating: "Mr. Jensen participated in and/or supervised prosecution of the '958 patent, as is evident from his participation with Mr. John Grover, Esq., also from the Knobbe Martens firm, at an Examiner Interview conducted on June 14, 2008, as disclosed in the prosecution history of the '958 patent.  The Yorkey and Baker documents plainly disclose the allegedly inventive step of, e.g., claim 1 of the '958 patent, of combining red and infrared signals to form a composite signal and then analyzing that composite signal using one or more physiologically-based rules." *See also* TACC at ¶¶ 112-113; SACC at ¶ 95 ("The Yorkey and Baker declarations submitted in *Masimo I* originally had been filed under seal.   Upon information and belief, Masimo's patent prosecution and litigation counsel in *Masimo I* and *II*, studied those materials to formulate additional claims that Masimo and the Knobbe Martens firm then prosecuted in subsequent patent applications, including the unenforceable '830 patent."); TACC at ¶ 98 (same); *see also* TACC at ¶¶ 76-99 (describing Masimo's misuse of U.S. continuation patent practice).

As described in the Motion, Masimo prosecuted continuation patent applications filed in 2006 directed to alleged inventions that Masimo learned from Nellcor's witness, Dr. Stone, during one of Masimo's trials against Nellcor in 2004.  Motion at 6:18-7:1.  In that trial, Dr. Stone testified in detail about his work at Nellcor to develop the Nellcor fetal oximeter, which calculated oxygen saturation using both time-based and frequency-

based methods. That invention also was claimed in the 2006 continuation patent application that issued as the '958 patent asserted in this action. *Id.*; *see also* TACC at ¶¶ 121-141. As with its misuse of the Yorkey and Baker documents, Masimo does ***not*** dispute the facts of its improper patenting of technology it learned from Dr. Stone during the 2004 Nellcor trial, and only asserts that the paragraphs of the Second Amended Counterclaims cited in support fail to provide support. *See* Opposition at 7:12-8:19-8. Again, Masimo is wrong even as to that. Paragraphs 114 and 115 of the SACC describe Masimo's misuse of Dr. Stone's testimony to wrongfully obtain, in the '958 patent, claims covering technology described in Dr. Stone's testimony. SACC at ¶¶ 114, 115; *see also* TACC at ¶¶ 121-141. Masimo attempts to side-step this issue by asserting that it "notified the USPTO that it had submitted this testimony during the prosecution of the related '986 Patent." Opposition at 8. But that is immaterial, because the submission to which Masimo refers was more than 10,000 pages and submitted in the prosecution of ***a different patent***, including over 3800 pages of the trial transcript, without any identification of Dr. Stone's relevant testimony, and without the submission of trial exhibits that must be viewed in order to understand the testimony. SACC at ¶ 105; *see also* TACC at ¶ 157.

In its co-pending litigation against Philips Electronics (*Masimo Corp. v. Philips Elecs. N. Am.*, No. 1:09-cv-00080-LPS-MPT (D. Del.); "*Philips*"), Masimo stands accused of improperly claiming inventorship of the subject matter of the claims of the '194 patent after having learned the alleged inventions from Philips engineers. *See* Motion at 6:24-7:1.[2] As with its misuse of the Yorkey and Baker documents, Masimo

---

[2] Shenzhen Mindray's Motion includes a typographical error identifying Masimo's patent claiming the inventions of the Philips engineers as the '952 patent; it should have been identified as the '194 patent. *See* Motion at 6:27. This error was clearly discernible to Masimo because paragraphs 117-121 of the SACC are the sole citation in support of this statement, and paragraph 118 describes how Masimo filed claims that issued as the '194 patent claiming technology disclosed to Masimo by the Philips engineers. Additionally, Masimo is well aware that Philips has accused it of mispatenting Philips' technology in Masimo's '194 patent, and not having done so with respect to Masimo's '952 patent.

does **not** dispute the facts of its improper patenting of technology it obtained from Philips, and only asserts that the paragraphs of the Counterclaims cited in support fail to provide support.   Again, Masimo is wrong.   Paragraph 118 of the SACC describes Masimo's misuse of Philips' confidential information in detail, stating: "Mr. Kiani also met with engineers from Philips in 2001 regarding a potential license of his technology to that company. … Philips described the algorithms used in its FAST® pulse oximetry technology, and according to Philips, Masimo drafted and filed the claims in U.S. Patent No. 6,699,194 ("the '194 patent") asserted in this litigation, in an attempt to cover Philips' FAST® pulse oximetry technology.   In doing so, Masimo impermissibly broadened its claims far beyond what it invented and described in its parent application, filed in 1997."   SACC at ¶ 118; *see also* TACC at ¶ 241 (same).

Masimo attempts to minimize the importance of the fact that its lead counsel, Stephen Jensen, was adjudged to have committed inequitable conduct for the benefit of Masimo based upon his failure to submit a court's claim construction ruling to the PTO. *See* Opposition at 8:20-25.  As explained in detail in the Motion, the important fact is that Mr. Jensen was adjudged to have deliberately deceived the PTO so that Masimo would receive a patent that never should have issued, and which was targeted specifically at Masimo's then-current litigation target (Nellcor).   *See* Motion at 7:2-22; *Mallinckrodt, Inc. v. Masimo Corp.*, 147 Fed. Appx. 158, 184 (Fed. Cir. 2005) ("Hence, that Jensen did not disclose the *Masimo I* litigation to the PTO, when he for certain knew about it since he was the lead attorney representing Masimo in that litigation, strongly suggests that he intended to deceive the PTO.…Because Jensen failed to take even the most minimal steps toward any form of disclosure, all the while knowing that the *Masimo I* litigation had to be material to the patentability of the '830 patent, we can only conclude that the district court did not abuse its discretion in holding the '830 patent unenforceable for inequitable conduct.").   Under *In re Deutsche Bank*, Mr. Jensen's decision to commit inequitable conduct for the benefit of his long-time client Masimo for strategic use in planned litigation is a fact of the utmost importance.  It indicates that Mr. Jensen specifically must

1  be subject to the patent prosecution bar, and that it must be five years in duration in order

2  to provide adequate protection for Shenzhen Mindray's confidential information.

3         In its Opposition, Masimo fails even to address the fact that it has publicly

4  acknowledged that the product life cycle for patient monitors including pulse oximetry

5  offered by Masimo's closest competitor is more than eight (8) years. *See* Press Release,

6  Masimo Renews $1,000,000 Guarantee That Masimo SET Will Outperform All Covidien

7  Nellcor (TM) Pulse Oximeters (May 30, 2013) ("Masimo Press Release") at 1

8  (McDonald Decl., Ex. R).  Nor does Masimo dispute that because of the time needed to

9  develop and obtain regulatory approval for new pulse oximetry algorithms, two years is

10 far too short a duration for the prosecution bar, and places Shenzhen Mindray at extreme

11 risk that Masimo will misuse its confidential information. *See* Motion at 8:13-9:12.

12        The Court's decision to give no weight to the clear evidence of Masimo's and its

13 counsels' misuse of competitors' confidential information to obtain patents claiming the

14 competitors' technology is contrary to the law, which requires that the Court "examine ***all***

15 ***relevant facts*** surrounding counsel's actual preparation and prosecution activities, ***on a***

16 ***counsel-by-counsel basis.***"  *In re Deutsche Bank*, 605 F.3d at 1378.  Shenzhen Mindray

17 addressed these facts in detail and relied upon them in support of its proposed prosecution

18 bar.  The Magistrate Judge's failure to consider Masimo's misconduct—even under the

19 extraordinary circumstance that Masimo and its counsel have once before been adjudged

20 to have committed inequitable conduct under similar circumstances—is a clear error of

21 law.  As described in the Motion, the relevant facts all indicate the very high risk to

22 Shenzhen Mindray of misuse of its highly confidential information, and establish that

23 two-years duration is much too short to adequately protect Shenzhen Mindray's

24 confidential information.  The facts indicate that a five-year duration is necessary here.

25 Importantly, Masimo has not disputed any of these facts.  Accordingly, the Order should

26 be overruled and Shenzhen Mindray's proposed prosecution bar should be entered.

27

28

**B.** **The Order Erroneously Mandates Production of Shenzhen Mindray's Source Code By April 14, 2014, Without Regard To ~~Whether The Chinese Government Has Completed Its Determination of Whether It Will Approve the Production~~ The Chinese Government's Determination That The Information is Subject to Chinese Secrecy Laws**

The Order contravenes United States law, international principles of comity, and the Federal Rules of Civil Procedure, by ordering Shenzhen Mindray to produce for inspection by April 14, 2014, the complete source code for its accused pulse oximeter products. That source code includes pulse oximetry algorithms that were independently developed by Shenzhen Mindray, and those algorithms and source code never leave China in human readable form. *See* Motion at 9:17-10:3. These algorithms and source code comprise information that falls within the literal scope of China's laws for the protection of state secrets and medical device trade secrets, and require that Shenzhen Mindray obtain approval from the Chinese Government before such information can be produced in this litigation. *See id.* at 10:14-13:2. The Order must be reversed because it specifies a date certain for production, without respect to whether the Chinese Government ~~has~~ <u>had</u> completed by that date its determination of whether it will approve the production.

The Chinese Government presently ~~is considering~~ <u>has ruled on</u> Shenzhen Mindray's written request to promptly confirm whether or not Shenzhen Mindray may produce its source code and related materials. On March 28, 2014, Shenzhen Mindray hand-delivered to the Food and Drug Administration of the People's Republic of China ("SFDA") its request for this determination, in accordance with the procedure required under Chinese law. *See* Supplemental Declaration of Shawn E. McDonald <u>In Support of Corrected and Supplemental Reply Memorandum</u> ("McDonald Supp. Decl.") at ¶ 2; *see also* Letter from Shenzhen Mindray to Food and Drug Administration of the People's Republic of China (March 28, 2014) ("SFDA Request"; McDonald Supp. Decl., Ex. B)~~.~~ ~~As of the date of this pleading, the SFDA has not yet issued a determination with respect~~

CORRECTED AND SUPPLEMENTAL REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR REVIEW OF MAGISTRATE JUDGE'S 3/10/2014 ORDER
-9-
Case No. SACV12-02206 CJC (JPRx)

4837-1684-0986.1

to that request. On April 9, 2014, the Food and Drug Administration of the People's Republic of China (the "SFDA") issued the SFDA Order. McDonald Supp. Decl., at ¶ 3 & Exs. C, D. In the SFDA Order, the SFDA stated that "[u]pon examination, we decide that the source code and other highly proprietary technical information regarding Shenzhen Mindray's pulse oximeter products are state secrets covered by the laws including '*Detailed Rules for Maintaining Confidentiality for the Technologies relating to Chinese Herbal Medicine and Western Drugs and Medical Device*' (1983); '*Science and Technology Secrets Provisions*' (1995); '*Law on Guarding State Secrets*' (2010); and '*Regulations on the Implementation of the Law of the People's Republic of China on Guarding State Secrets*' (2014)." *Id*., Ex. D. The SFDA Order is dated April 3, 2014, but it was not issued by the SFDA until April 9, 2014, and was first available on April 9, 2014. *Id.*, at ¶ 4.

China views the disclosure of certain information relating to science and technology, especially information relating to medical technology that affects international competitiveness of its domestic products, as a threat to its national security. *See* Law of the People's Republic of China on Guarding State Secrets (2010) ("PRC State Secrecy Law"; McDonald Decl., Ex. D) at Art. 2. State secrets are defined by reference to several categories of information, including "secret matters concerning science and technology." *Id*. at Art. 9. China also has enacted separate secrecy laws directed *specifically to protection of medical devices*. These laws include China's "Regulations on Maintaining Confidentiality for Technologies" (1995) ("Regulations"; McDonald Decl., Ex. I) and China's "Detailed Rules for Maintaining Confidentiality for the Technologies relating to Chinese Herbal Medicine and Western Drugs and Medical Devices" (1983) ("Detailed Rules"; McDonald Decl., Ex. J.). These laws specifically protect against the disclosure of medical device technology where the disclosure could adversely "impact the international competitiveness of the technology." Regulations at Art. 7 pt. (4) (McDonald Decl., Ex. I). Chinese secrecy laws that pertain to innovations in science and technology, and specifically to medical device technology, separately

require review and approval by the Chinese Government before such information may be disclosed. *See* Motion at 12:9-13:2. Accordingly, the Order is contrary to law and based upon clearly erroneous factual findings because it does not provide Shenzhen Mindray the opportunity to comply with Chinese law.

In accordance with these laws and with the SFDA Order, Shenzhen Mindray cannot disclose its source code and related technical materials. However, continuing its effort to satisfy its obligations to both this Court and under Chinese law, Shenzhen Mindray will promptly request reconsideration of the SFDA Order.

Masimo asserts that Shenzhen Mindray has offered only speculation to support the requirement that its source code and other technical documents must be reviewed by the Chinese Government, and may only be produced if such disclosure is approved by the Chinese Government. *See* Opposition at 10:9-10. Masimo's objection is baseless. As explained above, and in the Motion, China has enacted secrecy laws that specifically cover the information and documents at issue. In accordance with those laws, and once the scope of protection afforded by the Protective Order was determined, Shenzhen Mindray sought a prompt determination by the Chinese Government of whether the source code may be produced. *See* McDonald Supp. Decl. at ¶ 2; SFDA Request (McDonald Supp. Decl., Ex. B).[3] That request ~~is pending, and action on whether the~~

---

[3] Masimo appears to argue that because Shenzhen Mindray agreed to terms in the protective order stating that any production of its source code would occur in the San Diego office of its counsel, Shenzhen Mindray waived its objection to producing the source code before receiving approval from the Chinese Government to do so. Opposition at 11:16-20. That is incorrect. From its initial response to Request for Production No. 54, Shenzhen Mindray has always stated and preserved its objection that it could not produce source code before receiving approval from the Chinese Government to do so. Shenzhen Mindray's Objections and Responses to Masimo Corporation's First Set of Requests for the Production of Documents and Things at 66:23-67:19 (McDonald Decl., Ex. O). Masimo also refers to its "proposal that Shenzhen Mindray produce its source code to Masimo's agent in a secure location in China so that Masimo's agent could then make it accessible via a private network to a secure office in the United States." Opposition at 11:16-20. But, as Shenzhen Mindray has repeatedly informed Masimo, its proposed remote inspection fares no better under Chinese law. *See, e.g.*, PRC State Secrecy Law at Art. 26 (McDonald Decl., Ex. D) ("The transmission of state secrets through the Internet or other public information networks, or through wired or wireless communication, without first adopting secret-guarding measures is prohibited."); *see also id.* at Art. 44 ("transmit[ting] state secrets in wired or

SFDA will permit the release or undertake a more detailed review and determination is expected shortly has been ruled on, and the SFDA Order obviates speculation whether the source code and related materials are subject to the laws discussed above.

The fact that the Chinese Government is considering has considered and has ruled on Shenzhen Mindray's request, and has not summarily approved production (as would have been the case if indeed Chinese law did not apply to the request), establishes that the requested review and determination is within the authority of the Chinese Government and within the ambit of the Chinese secrecy laws cited by Shenzhen Mindray in the Motion, and discussed above. If, as the Magistrate Judge had speculated during the hearing, Shenzhen Mindray's information did not fall within the scope of these Chinese laws, then Shenzhen Mindray's request already would have been rejected, or the Chinese Government would have simply approved the production. Having now submitted its request to the Chinese Government as within its authority to review and approve or forbid the production, received the SFDA Order Shenzhen Mindray cannot produce the materials without further consideration by SFDA before it receives the Chinese Government's determination. Doing so would place Shenzhen Mindray in jeopardy of being found in violation of Chinese law.

Masimo disputes that its declarant, Evan Chuck, agreed that under Chinese law documents for which there is a reasonable basis to believe they may contain state secrets must be submitted to the Chinese Government for review and approval before they may be disclosed. This appears to be an argument rooted in semantics. In Mr. Chuck's declaration he attested to his familiarity with this exact procedure of submission and review, and he did not in any way suggest that it is specified as being anything other than mandatory in the Chinese laws at issue. *See* Declaration of Evan Chuck in Support of Masimo's Supplemental Memorandum in Support of Motion to Compel Production of

---

wireless communications … violates the provisions of this law."); *see also* Joint Stipulation Accompanying Masimo Corporation's Motion to Compel Production of Documents and Interrogatory Responses ("Joint Stipulation"; Dkt. No. 111-1) at 31:17-32:3.

CORRECTED AND SUPPLEMENTAL REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR REVIEW OF MAGISTRATE JUDGE'S 3/10/2014 ORDER
-12-
Case No. SACV12-02206 CJC (JPRx)

4837-1684-0986.1

Documents and Interrogatory Responses (Dkt. No. 113-1) at ¶ 5 ("I am familiar with this provision and with the procedure that Shenzhen Mindray has described.")[4]

Shenzhen Mindray seeks relief from the Order, which is in contravention of the law and principles of international comity, and potentially exposes Shenzhen Mindray to risk of civil and criminal liability under Chinese law.  The Chinese Government ~~presently is considering~~ has ruled that Shenzhen Mindray's ~~request for a determination whether its~~ highly confidential and proprietary information may not be produced.  *See* McDonald Supp. Decl., Ex. D.  ~~The Chinese Government should be afforded adequate time to consider the request and make its determination, as is expressly required under Chinese law.~~  The Order's requirement that Shenzhen Mindray produce its source code by April 14, 2014 should be ~~stayed or~~ vacated~~, and such production should be ordered only if the Chinese Government approves the production~~.

## 1.    The Order's Date Certain Production Deadline Violates U.S. Principles Of Comity

The Order's imposition of a date-certain deadline for Shenzhen Mindray's production is contrary to U.S. principles of international comity.  The Supreme Court has emphasized that where discovery is sought from a foreign litigant, "American courts, in pretrial proceedings, [must] exercise *special vigilance* to…demonstrate *due respect* for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court*, 482 U.S. 522, 546 (1987) ("*Aerospatiale*") (emphasis added).

---

[4] In his declaration, Mr. Chuck goes on at length with baseless allegations about the purported misuse of this process by the Chinese Government and Chinese companies.  It must be noted, as Shenzhen Mindray noted to the Magistrate during the hearing, that Mr. Chuck is not a litigator.  Rather, from his online biography, he appears to be a corporate transactional attorney.  Neither his declaration, nor his online biography, provides any indication that Mr. Chuck has any actual experience with the collection and submission of documents to the Chinese Government for review and approval prior to production.  Thus, the contents of the Chuck Declaration are merely baseless and unsubstantiated opinion, and merit no weight.

The Order and the hearing transcript evidence no vigilance nor any due respect for Shenzhen Mindray's situation, nor for Chinese governmental interests.  Instead, the Order is contrary to law because it orders production irrespective of the required review and ignores Chinese interest in requiring compliance with applicable Chinese law.  Additionally, the Magistrate Judge appears to have presumed how the Chinese Government would interpret and apply its laws, and compelled production based on the Magistrate Judge's subjective determination that the information does not fall within China's secrecy laws.  *See* Motion at 15:19-16:10.   The Chinese Government ~~is considering~~ ruled on Shenzhen Mindray's request and it determined that ~~that it determine whether~~ the information ordered to be produced falls within the scope of the Chinese secrecy laws addressed above.  *See* SFDA Order (McDonald Supp. Decl., Ex. D); SFDA Request (McDonald Supp. Decl., Ex. B). If Shenzhen Mindray's information did not fall within the scope of those laws as presumed by the Magistrate Judge, then the Chinese Government could be expected to have already either rejected Shenzhen Mindray's request for a determination, or simply approved the production.

Thus, the Order's requirement that Shenzhen Mindray produce its source code by April 14, 2014 is contrary to U.S. principles of international comity and it should be ~~stayed or~~ vacated in light of the SFDA Order ~~pending determination of Shenzhen Mindray's request, and such production should be ordered only if the Chinese Government approves the production~~.

## 2.    The Court's Order Improperly Compelled Production Without Conducting A Comity Analysis

As addressed in detail in the Motion, the Court's Order is further contrary to law because it compelled production of information without first performing a comity analysis as set forth in, and required by, *Aerospatiale* (later applied in *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992) ("*Richmark*")).   *See Aerospatiale,* 482 U.S. at 546; Motion at 16:13-18:18.  Indeed, the Order is not the result of the required comity analysis.  Hearing Tr. at 71:8-13 (McDonald Decl., Ex. C) ("…I

1   have no basis to even go through these *Richmark*…the factors, it seems to me, because

2   this is just so speculative.").

3        Masimo asserts that the first comity factor weighs in favor of disclosure because

4   the Chinese Government has expressed no interest in the specific discovery here at issue.

5   *See* Opposition at 13:10-21.   As noted above, that is incorrect, as the Chinese

6   Government ~~presently is considering~~ considered and ruled on Shenzhen Mindray's

7   request.  *See* McDonald Supp. Decl. at ¶ 2; SFDA Request (McDonald Supp. Decl., Ex.

8   B); SFDA Order, (McDonald Supp. Decl., Ex. D).   The Chinese Government's

9   ~~acceptance of Shenzhen Mindray's request~~ SFDA Order establishes that the ~~requested~~

10  ~~review is~~ Shenzhen Mindray's source code and related information are within the

11  authority of the Chinese Government and the ~~subject matter of the request~~ those materials

12  ~~falls~~ within the scope of the Chinese secrecy laws.  SFDA Order (McDonald Supp. Decl.,

13  Ex. D).

14       Thus, this "most important factor" of the comity analysis, "balance of national

15  interests", weighs heavily against disclosure because the Chinese Government ~~is~~

16  ~~reviewing~~ has ruled on Shenzhen Mindray's request, and has expressed a particular

17  interest in Shenzhen Mindray's source code and other technical materials.  *Richmark*, 959

18  F.2d at 1476.  In addition, the Chinese Government has a long-demonstrated and clear

19  interest in preventing disclosure of technology containing China state secrets evidenced

20  by, *inter alia*, enacting rigorous laws for the protection of such information, and

21  enforcing these laws with severe civil and criminal punishment for their violation.  *See*

22  Criminal Law of the People's Republic of China at Art. 111 ("PRC Criminal Law";

23  McDonald Decl., Ex. H), *see also* Implementation Measures for the Law of the People's

24  Republic of China on Guarding State Secrets at Art. 28-32 (McDonald Decl., Ex. E)

25  (prescribing "severe administrative punishments").  The Order apparently resulted from

26  the Court's erroneous finding, stated several times, that the Chinese Government's

27  interest in the information was merely "speculative."  *See, e.g.*, Hearing Tr. at 68:21;

28  70:12-13; 71:13 (McDonald Decl., Ex. C).  Now that the Chinese Government ~~has~~

CORRECTED AND SUPPLEMENTAL REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR REVIEW OF MAGISTRATE JUDGE'S 3/10/2014 ORDER
-15-
Case No. SACV12-02206 CJC (JPRx)

accepted has ruled on Shenzhen Mindray's request for a determination of whether it may produce the information, that speculation has been proved incorrect.  Unlike China, the United States' interest in production of this information is low because discovery does not close until July 25, 2014, and there is no indication that respecting the Chinese Government's authority to conduct the review mandated by its laws will prejudice Plaintiff.  Thus, this factor weighs heavily against ordering disclosure.

The *second* comity factor considers the hardship to the party subject to the request.  As described in detail in the Motion, the PRC Criminal Law imposes harsh criminal punishments for violation of the PRC State Secrecy Law. *See* Motion at 11:24-13:20.  The Chinese Government has accepted and has ruled on Shenzhen Mindray's request for a determination of whether it may produce the information at issue.  Thus, there is no speculation that Shenzhen Mindray would be subject to severe punishment and hardship if it were to produce the information without approval from the Chinese Government.  Any benefit to Masimo from disclosure at this time is greatly outweighed by the oppressive and undue risk to Shenzhen Mindray and its attorneys of punishment for violation of Chinese law, including, *inter alia*, criminal punishment.  Accordingly, this factor weighs heavily against disclosure.

The *third* comity factor is whether the information requested originated in the U.S. *Richmark*, 959 F.2d at 1475.  Shenzhen Mindray's source code and other technical information originated in China and is located exclusively there.  *See* Declaration of Xin Ellen Liu in Support of Shenzhen Mindray's Opposition to Masimo's Motion to Compel ("Liu Decl."; Dkt. No. 111-4 at 58) at ¶ 3.  In its Opposition, Masimo notes that "the relevant products have been widely distributed throughout the United States." Opposition at 14:13-18.  While true, that fact is irrelevant, because the products do not contain the algorithms and source code that is at issue in a human-readable form, and cannot be reverse engineered from the commercial products.  Instead, the algorithms and source codes are present in products imported into the United States by Shenzhen Mindray's customers only in the form of compiled object code, which cannot be read by

humans, and cannot be rendered into human-readable form. Thus, this factor weighs heavily against disclosure.

The *fourth* comity factor is the specificity of the requests. As described immediately below, Request for Production No. 54 is improperly overbroad because it seeks "complete source code" for "each of the Mindray Accused Products," without limiting the request to source code relating to the accused features. *See* section II.B.3, *infra*. In addition, this Request is overbroad because Masimo defined "Mindray Accused Products" to incorporate products incapable of infringement because they are licensed by Masimo, as explained in the Motion. *See* Motion at 20:20-21:9. Accordingly, this factor weighs against production.

The *fifth* comity factor is the importance of the information to the litigation. Masimo has provided no basis for its assertion that Shenzhen Mindray's source code is necessary to prove any of its claims. Even in its opposition, Masimo provides no basis for its assertion that the contents of the entirety of the source code of the accused products is "crucial" to its case. In fact, Masimo has not even identified a single claim of any of its nine patents that it alleges to be infringed by the accused products.

### 3. The Order Is Contrary To Law Because It Compels Production Of Irrelevant Documents To The Undue Burdening Of Shenzhen Mindray

The Order is contrary to law because it compels Shenzhen Mindray to produce documents pursuant to an overbroad request for production. Request for Production No. 54 seeks the following: "Complete source code for each of the Mindray Accused Products." Masimo asserts that Shenzhen Mindray should be required to produce the entire source code relating to each accused product, including those sections of code that are completely irrelevant to Masimo's claims, because "Masimo cannot know the specific portions of the source code that are relevant to the asserted patents without examining the source code. … Without examining the source code, it is not possible to identify which specific portions are relevant, much less fully understand how the system is operating."

Opposition at 15:20-26.  But that is nothing more than an admitted, improper fishing expedition, and ignores the requirement under the Federal Rules that discovery requests be specifically directed to relevant information and documents.  Fed. R. Civ. P. 26(b)(1). By Masimo's flawed logic, because a plaintiff does not know the contents of a defendant's documents before reviewing them, then the defendant must produce all of its documents, and there would be no need for discovery requests.  Such an argument is of course an absurdity not recognized in any case law.

As Shenzhen Mindray stated in its objections and response, this Request is overbroad and unduly burdensome, as recognized by the Court.  *See* Shenzhen Mindray's Objections and Responses to Masimo Corporation's First Set of Requests for the Production of Documents and Things at 66:25-67:19 (McDonald Decl., Ex. O); Hearing Tr. at 57:19-22 (McDonald Decl., Ex. C) ("I've got to say, it seems to me, as a layperson in this area, that there must be some source code parts of these accused products that, clearly, are not applicable.").  The Court correctly recognized that production of ***complete*** source code is overly broad.  The Mindray Accused Devices are complex devices having numerous features, and to comply with this Request, Shenzhen Mindray will have to produce source code for numerous features that are wholly unrelated to the allegedly infringing features of its products.  The Order should be reversed; Shenzhen Mindray should not be compelled to respond to such an improperly overbroad request.

## C.   The Issues Relating to Shenzhen Mindray's Production Of Product Samples Are Now Moot

The Order imposed a March 27 deadline for Shenzhen Mindray's production of product samples.  To comply with the Order, Shenzhen Mindray obtained samples of the accused products within the United States and produced them to Masimo on March 27, 2014.  Shenzhen Mindray's decision to comply with the Order by obtaining samples of the accused products within the United States does not alter the fact that the Order's date certain deadline for production of samples was contrary to law for the reasons stated in the Motion.  Shenzhen Mindray did not object to providing the product samples, only to

the unreasonably short deadline for doing so. If samples had been shipped from Shenzhen, China, it is undisputed that just the process of clearing customs could have taken more time than permitted under the Order.  At her March 11, 2014 deposition in this case, Country Manager of Masimo China, Lily Soong, testified that the process of clearing customs for a shipment of pulse oximetry products may take anywhere from two weeks to two months, and is entirely at the discretion of customs officials.  Uncertified Rough Draft Transcript of March 11, 2014 Deposition of Lily Soong at 82:17-83:8 (McDonald Decl., Ex. K).  Thus, compliance with the Order's deadline for production was not reasonably possible for product samples not already present in the United States. Regardless, because Shenzhen Mindray complied with the Order, this issue is now moot.

### D.    The Issues Relating to Shenzhen Mindray's Supplemental Interrogatory Responses Are Now Moot

Compelling Shenzhen Mindray to respond to Masimo's Interrogatory Nos. 3-5 (the "Interrogatories"), and to do so by March 27, 2014, was contrary to law, for the reasons addressed in detail in the Motion.  *See* Motion at 9:13-18:18, 20:2-24:5.  To comply with the Order, Shenzhen Mindray served supplemental responses to the Interrogatories on March 27, 2014.

Shenzhen Mindray's decision to comply with the Order by doing so does not alter the fact that ordering Shenzhen Mindray to respond to the Interrogatories, and to do so by March 27, 2014, was contrary to law, for the reasons addressed in detail in the Motion. *Id*.  Because Shenzhen Mindray complied with the Order by serving its supplemental responses to the Interrogatories, this issue is moot.  However, Shenzhen Mindray reserves its rights to rely upon its objections to the Interrogatories, including those stated in opposition to Masimo's motion to compel, at the motion hearing, and in its Motion, should Masimo seek any further relief with respect to the Interrogatories.[5]

---

[5] In its Opposition, Masimo appears to deny that it argued at the hearing that the Interrogatories were proper because it had propounded allegedly similar interrogatories in Masimo's co-pending litigation, *Philips*, against third-party Philips Electronics, asserting claims for infringement against Philips as to six

CORRECTED AND SUPPLEMENTAL REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR REVIEW OF MAGISTRATE JUDGE'S 3/10/2014 ORDER
-19-
Case No. SACV12-02206 CJC (JPRx)

4837-1684-0986.1

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Shenzhen Mindray respectfully requests that the Court set aside the Order, enter a new protective order including the prosecution bar provision proposed by Shenzhen Mindray, and grant any other relief the Court deems just.

of the patents that Masimo has asserted against Shenzhen Mindray in the instant litigation.  *See* Motion at 22:1-24:5.  Masimo alleges that it only referred to its interrogatories from *Philips* to support its assertion that the Interrogatories are not unduly broad.  Opposition at 18:18-19:10.  That is not correct; at the hearing Masimo asserted that the Interrogatories are proper because they were allegedly similar to interrogatories it had propounded in *Philips*, and to which it had allegedly received satisfactory responses.  *See*, *e.g.*, Hearing Tr. at 79:25-80:2 (McDonald Decl., Ex. C) (Mr. Larson: "I hate to keep going back to the *Philips* case, but these interrogatories are very similar to those we've promulgated in other patent cases."); *id*. at 91:11-13 (Mr. Larson: "Again, this is an interrogatory we've used before in litigation.  It was used in the *Philips* litigation.  We obtained a meaningful response.")

Shenzhen Mindray was ordered not only to respond to the Interrogatories, but also to respond in the same manner as Philips, even though Shenzhen Mindray is not a party to *Philips*, and does not have access to the discovery requests and responses in *Philips*.  Hearing Tr. at 92:21-24 (McDonald Decl., Ex. C) ("And if [Masimo] turn[s] around and can point to me – me to other people in similar litigation who have responded, then, you know, your inability to do so is not going to be well taken.").  Such imposition of offensive collateral estoppel even though Shenzhen Mindray was not a party or in privity with a party of *Philips* and Masimo has provided no evidence indicating that Philips had contested the Interrogatories on the grounds raised by Shenzhen Mindray is improper under the law.  *See*, *e.g.*, *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008).

<u>CORRECTED AND SUPPLEMENTAL</u> REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR REVIEW OF MAGISTRATE JUDGE'S 3/10/2014 ORDER

Case No. SACV12-02206 CJC (JPRx)

DATED:  April 710, 2014

**FOLEY & LARDNER LLP**
Nicola A. Pisano
Jose L. Patiño
Shawn E. McDonald
Justin E. Gray
Christopher C. Bolten


/s/ *Shawn E. McDonald*
Nicola A. Pisano, CA Bar No. 151282
    npisano@foley.com
Jose L. Patiño, CA Bar No. 149568
    jpatino@foley.com
Shawn E. McDonald, CA Bar No. 237580
    semcdonald@foley.com
Justin E. Gray, CA Bar No. 282452
    jegray@foley.com
Christopher C. Bolten, CA Bar No. 268284
    cbolten@foley.com

Attorneys for Defendant, Counter-Plaintiff, and Counter Counter-Defendant
SHENZHEN MINDRAY BIO-MEDICAL ELECTRONICS CO., LTD.

4837-1684-0986.1

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this case.

Dated:  April 10, 2014

**FOLEY & LARDNER LLP**

/s/ *Shawn E. McDonald*

Shawn E. McDonald

Attorneys for Defendant, Counter-Plaintiff and Counter Counter-Defendant SHENZHEN MINDRAY BIO-MEDICAL ELECTRONICS CO., LTD.

CORRECTED AND SUPPLEMENTAL REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR REVIEW OF MAGISTRATE JUDGE'S 3/10/2014 ORDER
-22-
Case No. SACV12-02206 CJC (JPRx)

4837-1684-0986.1