Joseph R. Re (SBN 134,479)
Joe.Re@knobbe.com
Stephen C. Jensen (SBN 149,894)
Steve.Jensen@knobbe.com
Jon W. Gurka (SBN 187,964)
Jon.Gurka@knobbe.com
Stephen W. Larson (SBN 240,844)
Stephen.Larson@ knobbe.com
Nicholas A. Belair (SBN 295,380)
Nick.Belair@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax:    (949) 760-9502

Attorneys for Plaintiff
MASIMO CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION a Delaware corporation, Plaintiff, v. SHENZHEN MINDRAY BIO-MEDICAL ELECTRONICS CO., LTD a corporation of the People's Republic of China Defendant. AND RELATED COUNTERCLAIMS | Civil Action No. SACV12-02206 CJC (JPRx) **MASIMO CORPORATION'S OPPOSITION TO SHENZHEN MINDRAY'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 15, 2014 ORDER [DKT NO. 152] OR, IN THE ALTERNATIVE, FOR REVIEW OF THE MAGISTRATE JUDGE'S APRIL 16, 2014 ORDER [DKT. NO. 153]** Date: June 2, 2014 Time: 1:30 p.m. Place: Courtroom 9B Judge: Hon. Cormac J. Carney |

# TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION ................................................................................1

II.    BACKGROUND ..................................................................................2

III.   ARGUMENT ......................................................................................5

    A.   The Court Should Deny Shenzhen Mindray's Motion
        For Reconsideration Of This Court's April 15 Order...................5

    B.   The Court Should Also Deny Shenzhen Mindray's
        Motion For Review Of Judge Rosenbluth's April 16
        Order ........................................................................................10

        1.   Judge Rosenbluth Did Not Reject The "Validity"
            Of The SFDA Statement.......................................................12

        2.   Judge Rosenbluth Did Not Err In Finding That
            Shenzhen Mindray's SFDA Letter Was A "Piece
            of Advocacy" And Inaccurate .............................................14

        3.   Judge Rosenbluth Did Not Err In Holding That
            Shenzhen Mindray Was Not Without Fault In
            Creating The Alleged  "Crisis"............................................16

IV.    CONCLUSION ................................................................................18

# TABLE OF AUTHORITIES

**Page No(s).**

*Richmark Corp. v. Timber Falling Consultants*,
   959 F.2d 1468 (9th Cir. 1992) ................................................................7, 8, 9

## OTHER AUTHORITIES

28 U.S.C. § 636 ................................................................................................10

Fed. R. Civ. P. 26 ............................................................................................10

Fed. R. Civ. P. 72 ............................................................................................10

Local Rule 7-18 ........................................................................................6, 7, 10

Local Rule 72-2.1 .............................................................................................10

# I. **INTRODUCTION**

Shenzhen Mindray seeks reconsideration and review on the ground that Judge Rosenbluth did not perform a "comity" analysis and amend her March 6 Order in view of the Shenzhen FDA's ("SFDA's") April 3, 2014 Statement. But Shenzhen Mindray did not ***ask*** Judge Rosenbluth to perform a "comity" analysis, did not ***ask*** Judge Rosenbluth to amend her March 6 Order, and did not even ***argue*** that the SFDA Statement necessitates reconsideration of the March 6 Order.

Instead, Shenzhen Mindray filed an *Ex Parte* Application asking Judge Rosenbluth to Stay the March 6 Order so that Shenzhen Mindray could "request reconsideration by the ***Chinese government*** of the SFDA Order." (D.I. 148 at 1 (emphasis added).)   Judge Rosenbluth correctly denied Shenzhen Mindray's request for an "indefinite stay" so that Defendants could seeks "reconsideration" by the Chinese government "at some unknown time through some unspecified process." (D.I. 153 at 3.)

As Judge Rosenbluth found, Shenzhen Mindray has not been diligent in seeking approval from the Chinese government to produce its source code. Indeed, during the first ***three weeks*** after the March 6 Order, Shenzhen Mindray did not approach the Chinese government at all.  Then, Shenzhen Mindray sent an inaccurate letter to its local FDA Office advocating for a determination that Shenzhen Mindray's source code cannot be produced because it is subject to various Chinese laws.   Predictably, the SFDA responded that Shenzhen Mindray's source code is subject to various Chinese laws that may require government review.  As Judge Rosenbluth correctly found, Shenzhen Mindray's "contention that it now needs time to seek 'reconsideration' of the Chinese finding is puzzling given that its letter seems to have ***sought*** such a finding in the first place." (D.I. 153 at 3 (emphasis added).)

/ / /

Shenzhen Mindray identifies no error in Judge Rosenbluth's denial of Shenzhen Mindray's request for further delay.  Indeed, nearly a month after Judge Rosenbluth's decision, Shenzhen Mindray has **still** not sought reconsideration of the merits of the SFDA decision.  Moreover, Shenzhen Mindray fails to show any reason for this Court to reconsider its April 15 decision upholding the March 6 Order.  Instead, Shenzhen Mindray simply repeats arguments this Court already rejected, in violation of this Court's Local Rules.  The Court should deny Shenzhen Mindray's Motion.

## II. <u>BACKGROUND</u>

Masimo requested Shenzhen Mindray's source code over five months ago, on December 6, 2013, just over a month after this Court entered its Scheduling Order.  (D.I. 111-3 at ¶ 2; D.I. 79.)  Shenzhen Mindray withheld its source code on the ground it must submit its source code and related technical documents for "review" by the Chinese government.  (*see* D.I. 125-1 at 1:13-17.)

Over two months later, Shenzhen Mindray indicated that it was still collecting documents for review and needed more time to seek "review and clearance of specific technical documents—on a document-by-document basis—by the Chinese Government."  (D.I. 111-1 at 40:20-23.)

Over a month after that, at the discovery hearing on March 6, 2014, Shenzhen Mindray stated that it was **still** identifying documents to be submitted to the Chinese government and would start submissions "as soon as possible" and "certainly within the next three weeks."  (D.I. 125-4, Ex. C at 161:1-5, 10-17.)

On March 6, 2014, Judge Rosenbluth held that Shenzhen Mindray had not identified any specific foreign interest justifying its refusal to produce source code, and ordered Shenzhen Mindray to produce the source code.  (*Id.* at 221.)  Judge Rosenbluth initially provided Shenzhen Mindray thirty days to

comply, but Shenzhen Mindray requested "an additional week because the government itself by statute says it has 30 days" to complete the review process by the Chinese government.  (*Id*. at 221:18-20.)  Judge Rosenbluth granted Shenzhen Mindray the additional time and stated that Shenzhen Mindray could "come back with something -- if during that time period [it] ha[s] something real from the Chinese government that says, you know, X, Y, and Z are state secrets." (D.I. 125-4, Ex. C at 221:12-17.)

Two weeks later, in its March 20 Motion for Review and *Ex Parte* Application seeking a stay of the deadline, Shenzhen Mindray acknowledged that it had ***still*** not even started the process of seeking review by the Chinese government.  (D.I. 125; D.I. 126.)  This Court denied Shenzhen Mindray's *Ex Parte* Application, observing that Shenzhen Mindray had not "even attempted to begin any of these processes, either when it was originally served Masimo's discovery requests, or otherwise, immediately after Judge Rosenbluth issued her March 10 order . . . ."  (D.I. 129 at 3.)

On March 28, 2014, ***three weeks*** after Judge Rosenbluth's Order, Shenzhen Mindray finally contacted the Chinese government.  But rather than submit any materials to a Chinese agency tasked with identifying and clearing state secrets, Shenzhen Mindray sent a letter to its local city-level FDA office in Shenzhen, China.  (D.I. 149-1, Ex. 1.)  That letter did not ask the SFDA to determine whether Shenzhen Mindray's source code contains any state secrets. (*Id*.)  Instead, that letter asked the office to "clarify" whether Shenzhen Mindray could export its source code and technical materials without Chinese government review.  (*Id.* at 5.)

Shenzhen Mindray's letter openly advocated for the Shenzhen FDA office (the "SFDA Office") to determine that source code could ***not*** be produced prior to review, stating that "attorneys licensed in China" had "informed" Shenzhen Mindray that "the U.S. Court's Order implicates a number of Chinese

laws that require review by Chinese governmental authorities . . . ."  (*Id.* at 4.) Shenzhen Mindray argued that the "Chinese government views overseas disclosure of information protected by the above laws as a threat to its national security and international competitiveness."  (*Id.*)  Shenzhen Mindray also criticized this Court's Protective Order because the Patent Prosecution Bar lasts for two years, rather than five years.  (*Id.* at 5)

The SFDA office replied on April 3, indicating, in two sentences, that Shenzhen Mindray's source code and other proprietary information is "within the scope of confidential information under" various provisions of Chinese law.  (D.I. 149-1, Exs. 4 & 5.)  Shenzhen Mindray then filed this SFDA statement as an attachment to a "Corrected" Reply in Support of its prior Motion for Review, mischaracterizing the SFDA statement as a determination that its source code contains Chinese "state secrets."  (D.I. 145 at 10; D.I. 145-1, Ex. D at 10.) Shenzhen Mindray also included a ***false*** English-language translation indicating that the SFDA had identified Shenzhen Mindray's source code as a "state secret" when, in fact, it said nothing of the kind.  (D.I. 149 at 5-6.)[1]

On April 15, 2014, this Court denied Shenzhen Mindray's Motion for Review.  (D.I. 152.)  This Court acknowledged Shenzhen Mindray's SFDA statement, but "decline[d] to review [the March 6] order in light of facts that were not before Judge Rosenbluth at the time the order was entered."  (*Id.* at 4.) Instead, this Court indicated that the proper procedure would be for Shenzhen Mindray to "request reconsideration of the March 6 Order from Judge Rosenbluth."  (*Id.*)

/ / /

---

[1] Masimo confirmed this by obtaining two certified translations from two different services.  (D.I. 149 at 6.)  In its present Motion for Review, Shenzhen Mindray has submitted a new translation of the SFDA statement omitting the words "state secret," confirming that Shenzhen Mindray's prior translation was false.  (D.I. 164-2, Ex. G at 42.)

Instead of seeking reconsideration of Judge Rosenbluth's Order, however, Shenzhen Mindray filed an *Ex Parte* Application with Judge Rosenbluth seeking a **stay** so that Shenzhen Mindray could seek reconsideration by **the Chinese government**.   (D.I. 148 at 1.)   Shenzhen Mindray asked Judge Rosenbluth to "stay the April 14, 2014 deadline to permit Shenzhen Mindray to promptly seek reconsideration of the SFDA Order by the Chinese government." (*Id.*)   Shenzhen Mindray again pointed to its false translation of the SFDA Statement.  (D.I. 148 at 5.)

On April 16, Judge Rosenbluth denied Shenzhen Mindray's *Ex Parte* Application, "declin[ing] to issue what amounts to an indefinite stay of discovery while Defendant seeks such 'reconsideration' at some unknown time through some unspecified process, because doing so would likely interfere with the case-management dates set by the District Judge."  (D.I. 153 at 3.)  Judge Rosenbluth observed that Shenzhen Mindray's letter to the SFDA was "a piece of advocacy and in some instances inaccurate."  (*Id.*)   Judge Rosenbluth observed that Shenzhen Mindray's "contention that it now needs time to seek 'reconsideration' of the Chinese finding is puzzling given that its letter seems to have sought such a finding in the first place."  (*Id.*)  Judge Rosenbluth held that Shenzhen Mindray was not "without fault in creating the crises" because Shenzhen Mindray had "repeatedly delayed submitting the disputed documents to the Chinese authorities" in accordance with the procedure it had touted for months as mandatory.  (*Id.* at 1.)  Shenzhen Mindray filed its present Motion on April 30, 2014.  (D.I. 164.)

### III.  <u>ARGUMENT</u>

### A.    <u>The Court Should Deny Shenzhen Mindray's Motion For Reconsideration Of This Court's April 15 Order</u>

Shenzhen Mindray seeks reconsideration of this Court's April 15 Order upholding Judge Rosenbluth's March 6 Order.  But Shenzhen Mindray does not

even mention the standards for reconsideration or this Court's Local Rule regarding such requests. (D.I. 164-1 at 9-10.) Local Rule 7-18 provides that "[a] motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion."

Shenzhen Mindray argues that this Court should reconsider its April 15 Order based on the SFDA Statement. But Shenzhen Mindray already submitted that letter to this Court with its prior Motion for Review. (D.I. 145-1, Ex. C.) This Court correctly "declin[ed] to review [the March 6] order in light of facts that were not before Judge Rosenbluth at the time the order was entered." (D.I. 152 at 4.) Thus, Shenzhen Mindray's argument violates Local Rule 7-18, which states that "[n]o motion for reconsideration shall *in any manner* repeat any oral or written argument made in support of or in opposition to the original motion." (emphasis added).

Shenzhen Mindray points to this Court's statement in its April 15 Order that Shenzhen Mindray could "request reconsideration of the March 6 Order from Judge Rosenbluth" and complains that Judge Rosenbluth did not amend her order in view of the SFDA Statement. (*Id.*) But Shenzhen Mindray never *asked* Judge Rosenbluth to reconsider or amend her March 6 Order. Instead, Shenzhen Mindray sought a stay so that it could "request reconsideration by the *Chinese government* of the SFDA Order." (D.I. 148 at 1 (emphasis added).)
/ / /

1  Judge Rosenbluth's denial of that stay establishes no error in this Court's April

2  15 Order.

3         Shenzhen Mindray next argues that "international comity requires that the

4  April 14 deadline be vacated or stayed."  (D.I. 164-1 at 10.)  But Shenzhen

5  Mindray already made this "comity" argument in its prior Motion for Review.

6  (*See, e.g.*, D.I. 125-1 at 2 (arguing that deadline is contrary to principles of

7  "international comity"), 15 (same), 16 (same).)  Thus, Shenzhen Mindray again

8  violates Local Rule 7-18 by repeating arguments in its prior motion.  Shenzhen

9  Mindray also improperly relies on the SFDA Statement in its "comity" analysis,

10 even though that document was not before Judge Rosenbluth at the time of her

11 March 6 Order and cannot establish error in that Order.  Indeed, this Court

12 previously "declin[ed] to review [the March 6] order in light of facts that were

13 not before Judge Rosenbluth at the time the order was entered."  (D.I. 152 at 4.)

14 Shenzhen Mindray provides no basis for this Court to reconsider that decision.

15        Regardless, Shenzhen Mindray's SFDA Statement does not change the

16 "comity" analysis.   (*See* D.I. 134 at 13-15 (Masimo's prior "comity"

17 arguments).)  First, even after the SFDA Statement, the withheld source code is

18 still crucial discovery, which still weighs heavily in favor of disclosure.  *See*

19 *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir.

20 1992).  Second, Masimo's request for source code is still specific, and not a

21 "generalized search[] for information," which weighs in favor of disclosure.  *Id*.

22 Third, Shenzhen Mindray has widely distributed the relevant products in the

23 United States, and even employs software engineers in the United States, which

24 still favors disclosure.  *Id*.  Fourth, Shenzhen Mindray has admitted that there is

25 no "alternate means of obtaining" this information, which also favors disclosure.

26 *Id*.  Moreover, Shenzhen Mindray has not shown that it will face any specific

27 hardship.  Thus, the sixth and seventh *Richmark* factors also favor disclosure.

28 / / /

The only *Richmark* factor impacted by the SFDA Statement is the fifth factor considering the "balance of national interests." *Id.* at 1476. In *Richmark*, the Chinese **State Secrecy** Bureau (not, as here, a local FDA Office) had "directly expressed an interest" and wrote a letter "order[ing] [defendant] **not to disclose** or provide the information and documents" and warning that the defendant "shall bear any or all **legal consequences** should [it] not comply with [the] order." *Id.* (emphasis added). Nonetheless, the Ninth Circuit ordered production because, among other things, there was "no indication that [defendant], much less the economy of [China] as a whole, [would] be adversely affected at all by disclosure of [the] information." *Id.* at 1477.

Here, the SFDA Statement simply states that Shenzhen Mindray's source code and proprietary technical documents are "within the scope of confidential information under" various provisions of Chinese law. (D.I. 149-1, Ex. 4.) That establishes no specific Chinese interest in Shenzhen Mindray's withheld discovery. For example, it does not show that the Chinese economy will somehow be impacted by requiring the disclosure. Indeed, Shenzhen Mindray's letter from the FDA office does not order Shenzhen Mindray to withhold discovery, expresses no specific Chinese interest in that discovery, and does not threaten Shenzhen Mindray with any legal consequences if there is disclosure.

Shenzhen Mindray abstractly points to China's "broad-ranging secrecy laws," but that does not establish any specific interest in the discovery in this case. (D.I. 164-1 at 14.) Moreover, during recent depositions, Shenzhen Mindray's senior executives testified that they had no reason to believe that Shenzhen Mindray's source code contains any Chinese state secrets.

///
///
///
///

(D.I. 170-2, Ex. 3 at 315:6-12; Ex. 4 at 263:22-264:8).[2]   At best, the laws pointed to by Shenzhen Mindray require, according to Shenzhen Mindray, a review process to confirm that the documents do not contain state secrets.  But Shenzhen Mindray has stubbornly refused to initiate that process.

Moreover, the *Richmark* Court noted that the PRC interest "must be weighed against the United States' interests in vindicating the rights of American plaintiffs and in enforcing the judgments of its courts," an interest the Ninth Circuit described as "***substantial***."  *Richmark*, 959 F.2d at 1477 (emphasis added).  Such is the case here, where the requested discovery is critical to Masimo's patent infringement claims and the close of discovery is rapidly approaching.  Six of Masimo's eight asserted patents relate to signal processing and methods for analyzing measured physiological signals.  (D.I. 170-1 at 1.) Shenzhen Mindray's source code is the definitive source of how the accused devices operate.  (*Id.*)  As such, the source code is critical to Masimo's ability to prove that Shenzhen Mindray infringes Masimo's Algorithm Patents.  Where, as here, the withheld discovery is critical, and where the defendant has "been unable to identify any way in which the [Chinese government's] interests will be hurt by disclosure, the interests of the United States must prevail." *Richmark*, 959 F.2d at 1477.

Shenzhen Mindray points to a letter from Masimo to Shenzhen Mindray as purportedly showing that Masimo can determine infringement based solely on samples of the accused products.  (D.I. 164-1 at 13.)  But Masimo's letter simply "reserve[s] the right to test" Shenzhen Mindray's products to determine if they infringe.  (D.I. 164-1 at 13.)  Masimo's letter does not state that

---

[2] These executives also expressed ignorance of and/or indifference to Shenzhen Mindray's ongoing and flagrant disregard of this Court's Order. (D.I. 170-2, Ex. 3 at 315:2-317:3; Ex. 4 at 262:13-263:20.)   As Shenzhen Mindray's Co-CEO Mr. Cheng put it, "I pay my lawyer for doing that."  (D.I. 170-2, Ex. 3 at 317:2-3.)

infringement can be determined based solely on testing of product samples. Moreover, Shenzhen Mindray has separately violated Judge Rosenbluth's Order by not providing samples of each of the accused products (D.I. 170-1 at 5-8), making the source code even more critical.

Shenzhen Mindray also points to the provisions of the Federal Rules of Civil Procedure regarding electronically stored information. *See* Fed. R. Civ. P. 26(b)(2)(B).  But Shenzhen Mindray already made this argument in its prior Motion for Review.  (D.I. 125-1 at 14.)  Thus, Shenzhen Mindray's Motion again violates Local Rule 7-18, which precludes repeating written arguments made in prior motions.  Moreover, the parties already agreed, and the Court ordered, that any source code must be produced at their respective counsel's offices in San Diego and Irvine.  (D.I. 124 at Section 9.)  Rule 26 establishes no error in this Court's April 15 Order and the Court should deny Shenzhen Mindray's Motion for Reconsideration.

**B.**    **The Court Should Also Deny Shenzhen Mindray's Motion For Review Of Judge Rosenbluth's April 16 Order**

Shenzhen Mindray also seeks review of Judge Rosenbluth's April 16 Order denying Shenzhen Mindray's *Ex Parte* Application to Stay.  Pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72-2.1, this Court should only set aside a magistrate judge's order on a pretrial matter that is not dispositive if that order is "clearly erroneous or contrary to law." *See also* 28 U.S.C. § 636(b)(1)(A).  Shenzhen Mindray identifies no such error in Judge Rosenbluth's April 16 Order.

Shenzhen Mindray argues that Judge Rosenbluth should have performed a "comity" analysis and amended her March 6 Order in view of the SFDA Statement.  (D.I. 164-1 at 2.)  But Shenzhen Mindray never asked Judge Rosenbluth to perform a "comity" analysis and never asked her to amend her March 6 Order in view of the SFDA Statement.  Instead, Shenzhen Mindray

sought an indefinite stay so that it could "request reconsideration by the Chinese government of the SFDA Order." (D.I. 148 at 1.) But Shenzhen Mindray did not establish that such a stay was necessary or appropriate. Instead, Shenzhen Mindray merely addressed the requirements to file an *ex parte* application, while largely ignoring its burden of showing why it was entitled to the underlying relief it sought. (*See* D.I. 148 at 5-7.) But the mere fact that a party shows entitlement to bring its motion on an *ex parte* basis does not show that the party is entitled to the relief it seeks. Shenzhen Mindray did not even address the precedent or factors relevant to a request for a stay.

Shenzhen Mindray complains that neither Judge Rosenbluth nor this Court has provided an extended "comity" analysis. (D.I. 164-1 at 10-11.) But Shenzhen Mindray never ***asked*** Judge Rosenbluth to perform such an analysis, and it is improper for Shenzhen Mindray to ask this Court to do so for the first time in a Motion for Review. Indeed, in its initial briefing prior to the March 6 Order, Shenzhen Mindray argued that a "comity" analysis did not "apply" and would be "premature" because there was no "confirmation from the Chinese Government of whether the documents contain state secrets." (D.I. 111-1 at 34.) Yet, even today, Shenzhen Mindray has still provided no "confirmation from the Chinese government [that its] documents contain state secrets," making a "comity" analysis unnecessary. Regardless, the parties extensively briefed the "comity" issue on multiple occasions, discussed the relevant precedent at the discovery hearing before Judge Rosenbluth, and Judge Rosenbluth correctly followed the Ninth Circuit and this Court's precedents, rather than Shenzhen Mindray's inapposite Second Circuit cases, to order Shenzhen Mindray to produce its source code. (D.I. 125-4, Ex. C at 66:4-67:1.)

/ / /

/ / /

/ / /

1. **Judge Rosenbluth Did Not Reject The "Validity" Of The SFDA Statement**

Shenzhen Mindray's remaining arguments rest on a series of mischaracterizations of Judge Rosenbluth's April 16 Order.  Shenzhen Mindray first alleges that Judge Rosenbluth did not treat the SFDA Order as "valid" and as a "real indication of the Chinese government's view of its own laws." (D.I. 164-1 at 17)  Not so.  Judge Rosenbluth correctly observed that Shenzhen Mindray had not returned with a "real indication from the Chinese government that the documents [are] ***state secrets***." (D.I. 153 at 3 (emphasis added).)  The SFDA Statement does not establish that any of Shenzhen Mindray's documents contain state secrets.  Indeed, the SFDA does not even have responsibility for reviewing state secrets.  (D.I. 149-3, Ex. 2.)  The SFDA Statement simply states that Shenzhen Mindray's source code and technical documents are "within the scope of confidential information under" various provisions of Chinese law, including provisions that have nothing to do with state secrets.  (D.I. 149-1, Exs. 4 & 5.)

In arguing otherwise to Judge Rosenbluth, Shenzhen Mindray pointed to a false English-language translation of the SFDA Statement.  (D.I. 148 at 6.) Shenzhen Mindray's current Motion for Review submits a new declaration (never submitted to Judge Rosenbluth) correcting this critical translation "error." (D.I. 164-2, Ex. G at 42.)  Accordingly, Judge Rosenbluth was correct in finding that Shenzhen Mindray had not returned with a "real indication from

///
///
///
///
///
///

1    the Chinese government that the documents [are] state secrets" (D.I. 153 at 3.).[3]

2    Judge Rosenbluth did not disregard the "validity" of the SFDA Statement, and

3    thus all of Shenzhen Mindray's cases on this issue are inapposite.

4          Shenzhen Mindray next claims that Judge Rosenbluth "disregarded the

5    SFDA Order as illegitimate because Shenzhen Mindray did not submit the

6    source code and technical documents to the SFDA along with its Request."

7    (D.I. 164-1 at 18.)  But Judge Rosenbluth did not characterize the SFDA Order

8    as "illegitimate" or otherwise deny its validity.  Instead, Judge Rosenbluth

9    correctly observed that Shenzhen Mindray was not entitled to any additional

10   delay because it had not even started the process it had touted for months as

11   "mandatory" under Chinese law—despite Judge Rosenbluth giving Shenzhen

12   Mindray thirty days and an extra week to undertake that process.  (D.I. 153

13   at 3.)

14         Shenzhen Mindray alleges that Judge Rosenbluth "improperly

15   interpret[ed] Chinese law and procedure" by requiring that Shenzhen Mindray

16   submit documents to the Chinese government.  (D.I. 164-1 at 19.)  In reality,

17   Judge Rosenbluth simply rejected Shenzhen Mindray's request for additional

18   delay because Shenzhen Mindray has not undertaken the review process it had

19   repeatedly argued was necessary.  (D.I. 153 at 3; *see, e.g.,* D.I. 114 at 3

20   (submission of documents is required); D.I. 111-1 at 5 (same); D.I. 126 at 5-6

21   (same).)  Shenzhen Mindray now argues that no such submission was necessary.

22   Even if that were true, however, that would not weigh in favor of Shenzhen

23

24         [3] Contrary to Shenzhen Mindray's prior representations to Masimo and Judge Rosenbluth that its interactions with the Chinese government would be "transparent" and that Masimo would be privy to communications between Shenzhen Mindray and the government (D.I. 111-1 at 32), Shenzhen Mindray now reveals in its present Motion that Shenzhen Mindray "met" with the SFDA in conjunction with its letter.  (D.I. 164-3 at ¶ 3.)  The newly disclosed existence of private conversations between Shenzhen Mindray and its local FDA office does little to instill confidence in the objectivity of the SFDA's decision.  (*See* D.I. 113-1 at ¶ 6 (explaining that the "administrative decision making process" in China is "rife for abuse and outside influence")).

25

26

27

28

Mindray's requested stay.  If all Shenzhen Mindray had to do to move this dispute forward was send a short and argumentative letter to its local FDA office, Shenzhen Mindray could have done so months ago, rather than repeatedly tell this Court it needed time to collect and submit documents.  As Shenzhen Mindray admits, the SFDA made its decision "the day after submission of the SFDA Request."  (D.I. 164-1 at 20.)

Shenzhen Mindray next argues that the SFDA had "ample and sufficient information about Shenzhen Mindray's pulse oximetry products to make its determination as stated in the SFDA Order."  (*Id*.)  Shenzhen Mindray misses the point.  The "determination" Shenzhen Mindray requested and received from the SFDA did nothing to move this dispute forward.  Shenzhen Mindray asked the SFDA "whether Shenzhen Mindray's source code and related technical documents are covered by any of the Chinese secrecy laws cited in the SFDA Request," and the SFDA simply agreed.  (*Id*. at 5.)  Shenzhen Mindray has argued that position for months, but has said the issue can be resolved by submitting the documents to the Chinese government.  Yet, Shenzhen Mindray has refused to initiate that process, and instead has withheld discovery without any valid basis to do so.

2.   **Judge Rosenbluth Did Not Err In Finding That Shenzhen Mindray's SFDA Letter Was A "Piece of Advocacy" And Inaccurate**

Shenzhen Mindray next argues that Judge Rosenbluth erred in finding that Shenzhen Mindray's letter to the SFDA was "a piece of advocacy and in some instances inaccurate."  (D.I. 153 at 3.)  But Shenzhen Mindray's letter was obviously a piece of advocacy.  Shenzhen Mindray's letter stated that "attorneys licensed in China" had "informed" Shenzhen Mindray that "the U.S. Court's Order implicates a number of Chinese laws that ***require review*** by Chinese governmental authorities . . . ."  (D.I. 149-1, Ex. 1 at 4 (emphasis added).)

- 14 -

1    Shenzhen Mindray argued that the "Chinese government views overseas
2    disclosure of information protected by the above laws as a ***threat*** to its national
3    security and international competitiveness." (*Id.* (emphasis added).) Shenzhen
4    Mindray also criticized this Court's Protective Order, complaining that it lasts
5    for two years, rather than five years. (*Id.* at 5.)

6        Shenzhen Mindray's letter was also inaccurate.  For example, Shenzhen
7    Mindray inaccurately characterized this Court's Order as an order "to export"
8    documents "without regard to whether the laws requiring Chinese government
9    review ***are observed***." (*Id.* (emphasis added).) That is not true. Judge
10   Rosenbluth specifically provided Shenzhen Mindray time to "observe" Chinese
11   law and undertake the review it argued was necessary under that law. Shenzhen
12   Mindray argues that its letter was accurate because, at the hearing, Judge
13   Rosenbluth entered a firm deadline to produce "without regard to whether
14   [documents] are approved for production by the government." (D.I. 164-2,
15   Ex. D at 28.)  But that does not show that Judge Rosenbluth ordered the
16   production of documents without regard to whether Chinese laws "are
17   observed." To the contrary, Judge Rosenbluth specifically provided Shenzhen
18   Mindray time to undertake the review process it said was required. Judge
19   Rosenbluth even indicated that Shenzhen Mindray could return if it obtained
20   some indication that its documents do in fact contain Chinese state secrets. (D.I.
21   125-4, Ex. C at 221:12-17.)

22       Shenzhen Mindray next argues that, even if its letter to the SFDA was a
23   piece of advocacy and contained inaccuracies, that "would be irrelevant"
24   because the SFDA Order was nonetheless "entitled to a presumption of
25   validity." (D.I. 164-1 at 22.) But Shenzhen Mindray cites no law holding that a
26   foreign company can deceive a foreign agency to manufacture a basis to
27   withhold discovery in an American court. Any presumption of validity to which
28   the SFDA is entitled is rebutted by Shenzhen Mindray's deceptive

communications to the SFDA. Regardless, as discussed above, Judge Rosenbluth did not question the validity of the SFDA Statement, but instead correctly observed that the SFDA Statement was not a real indication that the relevant documents are Chinese "state secrets" or that the Chinese government has any specific interest in any such documents. (D.I. 153 at 3.) Shenzhen Mindray does not challenge those findings.

Thus, Judge Rosenbluth did not err in declining Shenzhen Mindray's request for further delay, given that Shenzhen Mindray's letter "sought such a finding in the first place." (*Id.*) Indeed, even today, Shenzhen Mindray has not submitted anything to the SFDA requesting reconsideration of the merits of that decision. Instead, Shenzhen Mindray's most recent letter acquiesces to the SFDA's prior decision, but requests "approval" to produce source code for certain "outdated oximeter products." (D.I. 164-2, Ex. H at 46.) Thus, if Judge Rosenbluth *had* granted Shenzhen Mindray's request for a stay, that stay would still be in effect nearly a month later, with no change in Shenzhen Mindray's reliance on the SFDA Statement to argue that its source code for numerous products must be withheld.[4]

### 3. Judge Rosenbluth Did Not Err In Holding That Shenzhen Mindray Was Not Without Fault In Creating The Alleged "Crisis"

Finally, Shenzhen Mindray argues that Judge Rosenbluth erred in attributing the need for *ex parte* relief to Shenzhen Mindray. Shenzhen Mindray argues that Judge Rosenbluth's decision was "contrary to the law of the case" because, during the March 6 hearing, she instructed Shenzhen Mindray to return

---

[4] Remarkably, Shenzhen Mindray now argues that Chinese law does not preclude the production of source code from its "obsolete" products. (D.I. 164-1 at 6.) If that is so, Shenzhen Mindray should have produced *that* source code *five* months ago rather than improperly withhold it based on Chinese law.

before the deadline.  (D.I. 164-1 at 22.)  But Judge Rosenbluth told Shenzhen Mindray it could return to her if it could "come back with something -- if during that time period [it] ha[s] something real from the Chinese government that says, you know, X, Y, and Z are state secrets."  (D.I. 125-4, Ex. C at 221:12-17.)

Shenzhen Mindray did not do so.  Instead, Shenzhen Mindray filed an *Ex Parte* Application to stay the March 6 Order so that Shenzhen Mindray could seek reconsideration by the Chinese government*.*  (D.I. 148 at 1.)  Shenzhen Mindray did not argue that the March 6 Order was in error in view of the SFDA Statement, which identifies no state secrets in Shenzhen Mindray's source code. Thus, Judge Rosenbluth did not violate the "law of the case" by holding that Shenzhen Mindray was not entitled to further delay so it could seek reconsideration of the SFDA decision.

Shenzhen Mindray argues that it did not unreasonably delay in sending its letter to the SFDA, but it waited ***three weeks*** after Judge Rosenbluth's March 6 Order to do so.  Shenzhen Mindray argues that this delay can be excused because Shenzhen Mindray was waiting for Judge Rosenbluth to enter the Protective Order on March 17, 2014, and then waiting until this Court denied Shenzhen Mindray's *Ex Parte* Application on March 24, 2014.  As Judge Rosenbluth observed, these arguments are "disingenuous."  (D.I. 153 at 2.) Shenzhen Mindray only referenced the Protective Order once in its letter to the SFDA, and "only in the context of complaining that the Court ordered a two-year patent prosecution bar rather than the five years Defendant wanted." (*Id.*)  In addition, in its portion of the Joint Stipulation, Shenzhen Mindray stated that "it most likely would have submitted the materials to the Chinese government for review before the March 6 hearing, and yet it knew that no protective order would have been issued by then because the hearing concerned in part the scope of any protective order."  (*Id.*)  Moreover, Shenzhen Mindray

1  could have at least submitted its materials to the Chinese government "to
2  determine in the first instance whether they even constituted state secrets." (*Id.*)
3  "Only if they were determined to be such would the Chinese government need
4  to know what protections were in place." (*Id.*)  Shenzhen Mindray identifies no
5  error in these findings or in Judge Rosenbluth's denial of Shenzhen Mindray's
6  request for further delay.

7  ## IV.  CONCLUSION

8     For the reasons discussed above, the Court should deny Shenzhen
9  Mindray's Motion.

10                                 Respectfully submitted,

11                                 KNOBBE, MARTENS, OLSON & BEAR, LLP

12

13  Dated:  May 12, 2014          By: */s/ Stephen W. Larson*
14                                    Joseph R. Re
                                      Stephen C. Jensen
15                                    Jon W. Gurka
                                      Stephen W. Larson
16                                    Nicholas A. Belair

17
18                                    Attorneys for Plaintiff,
    17904982                          MASIMO CORPORATION
19  050114

20

21

22

23

24

25

26

27

28

- 18 -