Joseph R. Re (SBN 134,479)
Joe.Re@knobbe.com
Stephen C. Jensen (SBN 149,894)
Steve.Jensen@knobbe.com
Jon W. Gurka (SBN 187,964)
Jon.Gurka@knobbe.com
Stephen W. Larson (SBN 240,844)
Stephen.Larson@ knobbe.com
Nicholas A. Belair (SBN 295,380)
Nick.Belair@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Fax:    (949) 760-9502

Attorneys for Plaintiff
MASIMO CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHENZHEN MINDRAY BIO-MEDICAL ELECTRONICS CO., LTD a corporation of the People's Republic of China<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | Civil Action No. SACV12-02206 CJC (JPRx)<br><br>**PUBLIC VERSION**<br><br>**MASIMO'S MEMORANDUM IN OPPOSITION TO SHENZHEN MINDRAY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing:  June 23, 2014<br>Time:     1:30 p.m.<br>Courtroom: 9B<br><br>Hon. Cormac J. Carney |

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ...................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND..............................2

    A.    Shenzhen Mindray, Mindray USA and Mindray International Are One Business Group...........................2

    B.    Shenzhen Mindray's United States Distributors Are Agents Of Shenzhen Mindray.................................3

    C.    Shenzhen Mindray's Executives Admit U.S. Sales........................6

    D.    Shenzhen Mindray's Sales Documents Establish U.S. Sales Of Accused Products ......................................7

    E.    Shenzhen Mindray's Knowledge Of Patent Infringement .............8

    F.    Shenzhen Mindray's Partial Summary Judgment Motion............11

III.    ARGUMENT ....................................................................12

    A.    Standard For Summary Judgment.................................12

    B.    Shenzhen Mindray Directly Infringed Through Its Own United States Sales......................................13

    C.    Shenzhen Mindray Directly Infringed Via Its United States Agents........................................19

    D.    Shenzhen Mindray Indirectly Infringed By Inducing Its United States Distributors To Infringe.........................22

IV.     CONCLUSION ..................................................................24

1

# TABLE OF AUTHORITIES

2

**Page No(s).**

3

4

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,

5

    692 F.3d 1301 ...............................................19

6

*Anderson v. Liberty Lobby, Inc.*,

7

    477 U.S. 242 (1986) ...........................................12, 13

8

*Apple, Inc. v. Samsung Elecs. Co.*,

9

    920 F. Supp. 2d 1079 (N.D. Cal. 2013) .............................. *passim*

10

*Broadcom Corp. v. Qualcomm, Inc.*,

    543 F.3d 683 (Fed. Cir. 2008).....................................23

11

*Celotex Corp. v. Catrett*,

12

    477 U.S. 317 (1986) .............................................12

13

*Cybiotronics, Ltd. v. Golden Source Elecs., Ltd.*,

14

    130 F. Supp. 2d 1152 (C.D. Cal. 2001)...........................18, 19

15

*France Telecom S.A. v. Marvell Semiconductor Inc.*,

16

    No. 12-cv-04967-WHO, 2014 U.S. Dist. LEXIS 52564
    (N.D. Cal. Apr. 14, 2014).........................................19

17

*Frolow v. Wilson Sporting Goods Co.*,

18

    710 F.3d 1303 (Fed. Cir. 2013)....................................22

19

*Gart v. Logitech, Inc.*,

20

    254 F.3d 1334 (Fed. Cir. 2001) ...................................12

21

*Gen. Elec. Co. v. Nintendo Co., Ltd.*,

22

    179 F.3d 1350 (Fed. Cir. 1999) ...................................13

23

*Global-Tech Appliances, Inc. v. SEB S.A.*,

24

    131 S. Ct. 2060 (2011) .........................................22, 23

25

*Guidroz-Brault v. Mo. Pac. R.R. Co.*,

26

    254 F.3d 825 (9th Cir. 2001).....................................12

27

*Halo Elecs., Inc. v. Pulse Eng'g, Inc.*,

    810 F. Supp. 2d 1173 (D. Nev. 2011) ............................19, 23

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No(s).**

*In re Katz Interactive Call Processing Patent Litig.*,
    No. 2:07–ML–1816–B–RGK, 2013 WL 3223382
    (C.D. Cal. June 12, 2013)................................................................20, 21

*Litecubes LLC v. N. Light Prods., Inc.*,
    523 F.3d 1353 (Fed. Cir. 2008)........................................................ *passim*

*Loops LLC v. Phoenix Trading, Inc.*,
    No. C08–1064 RSM, 2010 WL 3340514
    (W.D. Wash. Aug. 23, 2010).....................................................................15

*Mallinckrodt, Inc. v. Masimo Corp.*,
    No. 00-6506 MRP, 2004 U.S. Dist. LEXIS 28518 (C.D. Cal.
    July 12, 2004), *aff'd in relevant part*, 147 Fed. Appx. 158 (Fed.
    Cir. Sept. 7, 2005), *cert. denied*, 546 U.S. 1162, 126 S. Ct.
    1294, 2006 U.S. LEXIS 1091 (2006)..........................................................9

*Manville Sales Corp. v. Paramount Sys., Inc.*,
    917 F.2d 544 (Fed. Cir. 1990)...................................................................24

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
    420 F.3d 1369 (Fed. Cir. 2005)...........................................................17, 18

*Merial Ltd. v. Cipla Ltd.*,
    681 F.3d 1283 (Fed. Cir. 2012).................................................................24

*Motionless Keyboard Co. v. Microsoft Corp.*,
    486 F.3d 1376 (Fed. Cir. 2007).................................................................13

*MyMedicalRecords, Inc. v. Jardogs, LLC*,
    No. 2:13-cv-03560-ODW, 2014 U.S. Dist. LEXIS 1146
    (C.D. Cal. Jan. 6, 2014).............................................................................23

*North Am. Philips Corp. v. Am. Vending Sales, Inc.*,
    35 F.3d 1576 (Fed. Cir. 1994)...................................................................16

# TABLE OF AUTHORITIES
## (*cont'd*)

Page No(s).

*Oplus Techs., Ltd. v. Sears Holdings Corp.*,
  No. 2:12-cv-05707-MRP-Ex, 2013 U.S. Dist. LEXIS 145917
  (C.D. Cal. Oct. 2, 2013)...................................................................................24

*Power Integrations, Inc. v. Fairchild Semiconductor*,
  711 F.3d 1348 (Fed. Cir. 2013) ..................................................................19

*Rotec Indus. v. Mitsubishi Corp.*,
  215 F.3d 1246 (Fed. Cir. 2000) ..................................................................19

*Safco Prods. Co. v. Denson Int'l Ltd.*,
  No. C048325, 2006 Cal. App Cal. App. Unpub. LEXIS
  2920,(Cal. Ct. App. Apr. 10, 2006)..............................................................17

*Seaman v. Pyramid Techs.*,
  No. SACV 10-00070 2011 WL 5508971,(C.D. Cal. Nov. 7,
  2011).   ...........................................................................................................16

*SEB S.A. v. Montgomery Ward & Co.*,
  594 F.3d 1360 (Fed. Cir. 2010) ............................................ *passim*

*Simeone v. Bombadier-Rotax GmbH*,
  360 F. Supp. 2d 665 (E.D. Pa. 2005) ..........................................................17

*Strikeforce Techs., Inc. v. PhoneFactor,Inc.*,
  2013 WL 6002850, (D. Del. Nov. 14, 2013)                                        19

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
  556 F.2d 406 (9th Cir. 1977)........................................................................20

*Wing Shing Prods. (BVI) v. Simatelex Mfg. Co.*,
  479 F. Supp. 2d 388 (S.D.N.Y. 2007)..........................................................16

## OTHER AUTHORITIES

35 U.S.C. § 271................................................................................. *passim*

Fed. R. Civ. P. 56.............................................................................................12

# I. __INTRODUCTION__

In the midst of the parties' discovery, and just over a month after its first significant document production, Shenzhen Mindray has filed a motion for partial summary judgment alleging that it never sold the accused products in the United States.   But Shenzhen Mindray's documents and witnesses tell a different story.

Shenzhen Mindray's invoices and purchase orders reveal that Shenzhen Mindray sold numerous accused products within the United States to numerous United States companies during the statutory damages period.   Moreover, Shenzhen Mindray's own witnesses have confirmed such sales within the United States.  Shenzhen Mindray argues that certain freight on board ("f.o.b.") terms in its sales documents are dispositive.   But the Federal Circuit has repeatedly and consistently rejected that argument.   Moreover, numerous Shenzhen Mindray invoices and purchase orders contain no f.o.b. term.  Thus, Shenzhen Mindray's f.o.b. argument fails, both legally and factually.

Shenzhen Mindray's documents and witnesses also have confirmed Shenzhen Mindray's extensive direction and control of its United States distributors.   Indeed, Mindray DS USA's President reported directly to Shenzhen Mindray's Chief Operating Officer, and Shenzhen Mindray directed numerous aspects of Mindray DS USA's sales.   Under well-established principles of agency, Shenzhen Mindray is responsible for the infringing sales of its United States agents, including Mindray DS USA.

Shenzhen Mindray also had the requisite knowledge and intent for indirect infringement.  Indeed, Shenzhen Mindray ***marked*** the accused products with the very patents Masimo ***now asserts*** in this litigation.   Moreover, Shenzhen Mindray was aware of a substantial risk of patent infringement, and was even concerned about such infringement.  Yet Shenzhen Mindray failed to consult legal counsel or perform an adequate investigation of the issue.  As

1  demonstrated by Shenzhen Mindray's own precedent, such evidence is more
2  than sufficient for a jury to conclude that Shenzhen Mindray knew of, or at least
3  was willfully blind, to its infringement.

4      Accordingly, Shenzhen Mindray's Motion fails. Substantial evidence
5  already exists to support Masimo's infringement claims. And numerous
6  disputed issues of fact exist regarding, for example, the location of Shenzhen
7  Mindray's sales, Shenzhen Mindray's direction and control of its agents, and
8  Shenzhen Mindray's intent to induce infringement. Thus, the Court should
9  deny Shenzhen Mindray's Motion.

10      **II.  FACTUAL AND PROCEDURAL BACKGROUND**
11  **A.      Shenzhen Mindray, Mindray USA and Mindray International Are**
12  **         One Business Group**

13      Shenzhen Mindray is the hands and feet of Mindray International,
14  controlling and directing the activities of Mindray USA and other subsidiaries
15  of Mindray International. (D.I. 31 at ¶¶ 3-7.) As Mindray International's SEC
16  filings explain, Mindray International is a Cayman Islands holding company
17  that "conduct[s] *substantially all* of [its] business through [its] consolidated
18  operating subsidiary Shenzhen Mindray." (Ex. 1 at 43 (emphasis added); Ex. 2
19  at 68:2-19.)[1] ███████████████████████████████████████████████████
20  ███████████████████████████████████████ (*Id.* at 35:8-36:21; 69:5-9;
21  73:22-74:21).)

22      Mindray International's senior executives hold their title for the entire
23  Mindray "Group," including Shenzhen Mindray and Mindray USA. (Ex. 3 at
24  154:9-156:20; 159:10-12.). As Minghe Cheng explained at his deposition,
25  / / /

26  _____

27      [1] Unless otherwise specified, the exhibits cited herein are attached to the
Declaration of Stephen Larson In Support of Masimo's Opposition to Shenzhen
28  Mindray's Motion for Partial Summary Judgment ("Larson Decl.").

Mindray senior executives manage the whole Group, not individual legal institutions:

> We always go by the structure of the **whole group**, entire group. . . .   We did not go by the legal institution type of structure. . . .   [For example] President Li was **in charge** of the **entire group**, not just only for the Shenzhen Mindray.  We always go by the group structure.  We don't go by **any individual entity in terms of the management** of the group.

(*Id.* at 154:20-155:16 (emphasis added).)  Thus, Mr. Cheng viewed the various "Mindray" companies as a single "Group," which he viewed as one and the same as "Mindray International."  (*Id.* at 160:7-161:4; Ex. 4 at 318:4-10.) [2]

## B. Shenzhen Mindray's United States Distributors Are Agents Of Shenzhen Mindray

From 2006 through 2008, Shenzhen Mindray sold the accused products to more than thirty United States distributors.  (Ex. 2 at 93:9-13.)   Shenzhen Mindray also sold products to its related entities, Mindray USA Corp., in Massachusetts, and Mindray Medical USA Corp., in Washington.  (Exs. 5-8.)



Shenzhen Mindray's "International

/ / /

---

[2] Minghe Cheng has held various positions with the Mindray Group entities.   In 2008, he was the Executive Vice President and Chief Strategy Officer for the whole Group of Mindray companies.  Cheng Dep. 156:1-20.  In 2009, he was the Executive Vice President, Business and Strategic Development for both Mindray International and Shenzhen Mindray.  *Id.* 216:8-218:18.  Mr. Cheng is currently the Chief Strategy Officer of Mindray Shenzhen and was a co-founder of Mindray Shenzhen in 1991.  D.I. 47-5 at ¶ 1.

Marketing and Sales group coordinat[ed] everything" having to do with the distribution. (Ex. 2 at 96:9-22.)

Shenzhen Mindray had an office in Seattle, Washington, for "taking care of the distributors." (*Id.* at 95:4-96:8.) The Seattle office would assist with "logistics," such as if "the distributors didn't know how to clear the custom, make a declaration of the custom clearance," the office would "offer that kind of help to them." (*Id.* at 106:3-107:10).) Shenzhen Mindray also provided service manuals to its distributors. (*Id.* at 251:1-10; Ex. 15 (Shenzhen Mindray Service Manual); Ex. 16 (same).) Shenzhen Mindray also has a United States "service hotline" so "if there is a problem," the customer could "make a phone call, and we will try to resolve it." (Ex. 2 at 252:9-253:1.) Shenzhen Mindray also submitted numerous applications for FDA approvals and trademark applications for the distribution of its products in the United States. (D.I. 21, Ex. D.I. 21-10 to D.I. 21-21; Larson Decl., Ex. 71 at MASM000436; Ex. 80; Ex. 81.) Numerous Mindray employees in the United States, including sales employees, hold themselves out on LinkedIn as employees of "Shenzhen Mindray." (Exs. 83-86.)[3]

In 2008, Mindray International acquired Datascope Corporation, the subsidiary that became Mindray DS USA. ████████████████████ ████████████████████████████████████████████ ████████████ ██ █████████ ████████████ ████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████

---

[3] When Masimo noticed two of these employees for depositions, Shenzhen Mindray refused, stating that they were not employees of Shenzhen Mindray, but rather some other Mindray entity. (Ex. 87.) Thereafter, one employee who had previously identified himself as a regional sales manager for "Shenzhen Mindray" changed his employer to "Mindray North America." (Ex. 88.)

///

After the acquisition, Shenzhen Mindray viewed Shenzhen Mindray, Mindray International and Mindray USA as ███████████████████████

████████████████████████  ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████  ██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████

Mindray DS USA senior executives have admitted that Shenzhen Mindray controls what products and product lines Mindray USA sells. (D.I. 31 at ¶¶ 3-4.) ████████████████████████████████████████

████████████████████████████████ ███  Ex. 3 at 157:8-161:4, 154:20-155:16, 243:8-10; Ex. 2 at 36:14-21.)[4]  Mr. Liu's responsibilities included ████████████████████████████████████  (Ex. 21 & 22 at SZ0002767, SZ0002776).)  This "responsib[ility] for the markets outside of China" specifically included "managing and coordinating" the group's overseas subsidiaries, including Mindray DS USA. (Ex. 2 at 15:15-16:22.)

Mr. Liu oversaw Mindray DS USA's "sales budgets" (*id*. at 16:14-22), "sales," "profit[s]" (*id*. at 22:9-13), and sales forecasts (*id*. at 22:20-23:1).  Mr.

---

[4] ██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

1    Liu  was  ████████████████████████████████████████████

2    (Ex. 2 at 192:5-14.)  Mr. Liu was ultimately "responsible" for Mindray USA's

3    sales numbers, and that if the sales "numbers [were] not met, [he] would ask

4    them about what would happen in the future; what about the forecast."  (*Id*. at

5    19:17-20:4.)  ████████████████████████████████████████████

6    ████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████

8    ████████████████████████████████████████████

9         Mr. Cheng, also met with Mindray USA at least once a year to review

10   Mindray USA's business plan.  (Ex. 4 at 307:18-308:2.)  Mr. Cheng's

11   responsibilities included "business development planning" for the "USA."  (*Id*.

12   at 304:21-305:6).  ████████████████████████████████████

13   ████████████████████████████████████████████████████████

14   ████████████████████████████████████████████  (*Id*. at 273:15-

15   274:8; 284:14-19.)  As of May 2014, Mindray DS USA's President now reports

16   directly to Mr. Cheng.  (Ex. 23; *see also* Ex. 24.)  According to a recent SEC

17   filing, Mr. Cheng "will oversee international sales and marketing and the North

18   America operations, which were part of Mr. Liu's previous responsibilities."

19   (*Id*.)

20   **C.    Shenzhen Mindray's Executives Admit U.S. Sales**

21        Shenzhen Mindray's witnesses have acknowledged Shenzhen Mindray's

22   sales in the United States.  Mr. Cheng testified as follows:

23        Q.    When did Shenzhen Mindray first start selling pulse oximetry

24              technology?

25        A.    1992.

26        Q.    92? Oh, from the very beginning?

27        A.    Yes.

28        Q.    And even today is Shenzhen Mindray still selling products all

1  around the world?

2  A.  Yes.

3  Q.  Is that including *in the US*?

4  A.  For the products produced by Mindray -- Shenzhen Mindray, *of*

5  *course*. They are sold around the world, *including US*.

6  (Ex. 4 at 299:14-300:6.)  Mr. Cheng further testified:

7  Q.  Were you concerned at all about what impact [Masimo's

8  successful litigation against Nellcor] might have on *Shenzhen*

9  *Mindray*?

10  A.  Yes, I was.

11  Q.  Why was that?

12  A.  Because we also have the pulse oximetry.

13  Q.  Because you also *sold pulse oximetry products in the US*?

14  A.  2007? *I think we did*.

15  (Ex. 3 at 130:18-131:6.)   Mr. Liu, discussing Shenzhen Mindray's FDA

16  submissions, testified:

17  ████████████████████████████████████████████

18  ████████████████████████

19  ████████████████████████████████████████████

20  ██████████████████████████

21  ███████████████

22  **D.    Shenzhen Mindray's Sales Documents Establish U.S. Sales Of**

23  **Accused Products**

24  Shenzhen Mindray's commercial documents reflect numerous sales

25  within the United States of the accused products.  For example, Shenzhen

26  Mindray's invoices, purchase orders and sales agreements reflect sales to

27  Mindray USA Corp., Mindray DS USA, ███████████████████████████

28  ████████████████████████████████████████████

1 ████████████████████████████████████ Shenzhen Mindray's invoices

2 identify Shenzhen Mindray as the vendor, the United States company as the

3 purchaser, and specify delivery to numerous locations across the United States,

4 including in ████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████

6 ████████████████████████████████████████

7      Numerous Shenzhen Mindray purchase orders, contracts and invoices

8 include no f.o.b. or ex-works terms.  Indeed, ████████████████████████

9 ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 **E.**    **Shenzhen Mindray's Knowledge Of Patent Infringement**

16      Shenzhen Mindray has known of Masimo's patents for over a decade.

17 (D.I. 32 at 26.)   Shenzhen Mindray's November 13, 2002 Agreement with

18 Masimo specifically lists Masimo's U.S. "Issued Patents," including Masimo's

19 presently asserted '222 Patent and '952 Patents.[5]  (*Id*.)   Masimo's asserted

20 patents are directed to providing accurate oxygen saturation measurements in

21 the presence of noise caused by patient movement.  For example, Claim 17 of

22 Masimo's '222 Patent is directed to a physiological monitor including a "signal

23 processor" that "calculate[s] arterial oxygen saturation without significant

24 interference in the calculation from the motion induced noise."   (Ex. 56 at

25

26      [5] Masimo asserts the following patents against Shenzhen Mindray in this
case: the '222 Patent, U.S. Patent Nos. 6,002,952 (the "'952 Patent"), 6,580,086

27 (the "'086 Patent"), 6,699,194 (the "'194 Patent"), 6,745,060 (the "'060
Patent"), 7,215,986 (the "'986 Patent"), 7,489,958 (the "'958 Patent"),

28 7,509,154 (the "'154 Patent"), and 8,229,533 (the "'533 Patent.").

MASM0002057.)

██████████████████████████████████████████

██████████████████████████    ███████████████████

██████

Prior to this lawsuit, Masimo sent emails to Shenzhen Mindray identifying various Masimo patents, as well as Masimo's website listing Masimo's patents. (*See, e.g.,* Ex. 61 ('222); Ex. 62 ('222 & '952), Ex. 63 ('952); Ex. 64 at MASM0023027 ██████████ *see also* Ex. 65 (Masimo's website listing '222, '086, '194, '060 and '986); Ex. 66 (same plus '958 and '154).)   Shenzhen Mindray also listed Masimo's asserted patents in its own product manuals and design documents. (Ex. 67 at SZ0084780 ('222); Ex. 68 at SZ0086522 (same); Ex. 69 at SZ0064931 ('952); Ex. 70 (same).)

Shenzhen Mindray even marked the accused products with Masimo patent numbers. For example, Shenzhen Mindray marked its VS-800 monitor with Masimo's asserted '952 Patent. (Ex. 71 at 3.) Shenzhen Mindray marked its DPM3 and DPM 4 products with Masimo's asserted '952 Patent. (Exs. 72 & 73.) Shenzhen Mindray marked its Trio product with Masimo's asserted '222 Patent. (Ex. 74.)[6]

Shenzhen Mindray further was aware of the considerable risk of infringement presented by Masimo's asserted patents. Shenzhen Mindray was aware of Masimo's litigation with ███████████████████████████ ████████████████████████████████████████ ██████████████████ Ex. 60.)   Shenzhen Mindray also closely followed Masimo's litigation against Nellcor, where Masimo's '222 Patent was held valid and infringed. *Mallinckrodt, Inc. v. Masimo Corp.*, No. 00-6506

---

[6] Shenzhen Mindray provided the DPM3, DPM4 and Trio products in response to the Court's Order to provide samples of the Accused Products. (D.I. 170-14, Ex. 12 at 42.)

1    MRP (AJWx), 2004 U.S. Dist. LEXIS 28518 at *27, *54-61 (C.D. Cal. July 12,

2    2004), *aff'd in relevant part*, 147 Fed. Appx. 158 (Fed. Cir. Sept. 7, 2005), *cert.*

3    *denied*, 546 U.S. 1162, 126 S. Ct. 1294, 2006 U.S. LEXIS 1091 (2006).  (Ex. 3

4    at 129:7-131:6.)

5         Mr. Cheng testified that he was "***concerned***" about the Nellcor litigation

6    because "Masimo had won a lot of money" and, like Nellcor, Shenzhen

7    Mindray sold pulse oximetry products in the United States.   (Ex. 3 at 129:18-

8    131:6) (emphasis added).)    Indeed, Shenzhen Mindray marketed its own

9    technology as having equivalent performance to Masimo's SET technology.

10   (Ex. 3  at 106:8-107:10.)



23        Shenzhen Mindray's R&D Group concluded that Nellcor's "case was

24   different from" Shenzhen Mindray's because, unlike Nellcor, Shenzhen

25   Mindray had not hired "any of Masimo's technical people."   (*Id.* at 131:8-

26   132:6.)   Mr. Cheng testified, however, that he could not recall Shenzhen

27   Mindray examining its products or other relevant facts during this investigation.

28   (*Id.* at 132:7-9; 133:6-135:2.)

In February 2007, in response to Shenzhen Mindray's marketing of its technology as equivalent to Masimo's, Masimo reminded Shenzhen Mindray that it had "filed and secured a number of patents for this technology . . . ." (Ex. 77 at SZ0003622.)   In response, Shenzhen Mindray's R&D group again examined Masimo's patents without consulting any lawyers. (Exs. 75 & 76; Ex. 3 at 114:12-116:8; 121:5-122:21.)  Moreover, Shenzhen Mindray's COO, Mr. Liu, testified that he was not aware of any Shenzhen Mindray policy or procedure to avoid patent infringement.  (Ex. 2 at 120:9-14.)

Masimo also raised the issue of infringement on multiple other occasions, including in several 2008 meetings.   (Declaration of Joe Kiani ("Kiani Decl.") at ¶¶ 4-10 & Ex. A.)   But Shenzhen Mindray sought to avoid discussing Masimo's patents. (Kiani Decl. at ¶¶ 4-10.)  Masimo insisted, bringing hard copies of Masimo's patents to one of the meetings.  (*Id.* at ¶ 9.)  Shenzhen Mindray assured Masimo it would address the issue in follow-up meetings, but those meetings never occurred.  (*Id.* at ¶ 10.)

**F.     Shenzhen Mindray's Partial Summary Judgment Motion**

On December 6, 2013, approximately one month after this Court entered its Scheduling Order, Masimo served its first set of document requests. (D.I. 113-2 at ¶ 2.)   Over three months later, on March 24, 2014, Shenzhen Mindray finally provided its first significant document production.[7]  (D.I. 142-1 at ¶ 3.)  A little over one month later, on May 5, 2014, Shenzhen Mindray filed its present Motion.  (D.I. 171-1.)

At the parties' meet and confer regarding this motion, Shenzhen Mindray stated that it was filing its Motion as a response to Masimo's motion seeking sanctions for Shenzhen Mindray's ongoing defiance of this Court's order to produce its source code.  (D.I. 170-13.)  Masimo asked Shenzhen Mindray to

---

[7] Prior to that date, Shenzhen Mindray had produced only seventy-eight documents.  (D.I. 142-1 at ¶ 2.)

1  defer the present Motion because the parties are in the midst of discovery and

2  / / /

3  because Shenzhen Mindray had just recently produced its documents.  (*Id.*)  But

4  Shenzhen Mindray refused.  (*Id.*)

5      Shenzhen Mindray alleges that, at the meet and confer, Masimo was

6  "unable to identify any evidence" of infringement.  (D.I. 171-1 at 6.)  In reality,

7  Shenzhen Mindray did not ask Masimo to identify any such evidence during the

8  meet and confer.  (Larson Decl. ¶ 2.)  Regardless, Masimo pointed to evidence

9  of infringement, such as recent deposition testimony regarding Shenzhen

10  Mindray's numerous United States distributors.  (*Id.*)  Shenzhen Mindray's

11  counsel was not aware of the testimony and admitted that he had not yet even

12  reviewed the deposition transcripts.  (*Id.*)

### III.  <u>ARGUMENT</u>

### A.    <u>Standard For Summary Judgment</u>

15      Summary judgment is appropriate only where the movant establishes that

16  there are no genuine issues of material fact and that the movant is entitled to

17  judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*,

18  477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

19  248 (1986).  "In determining whether there is a genuine issue of material fact,

20  the evidence must be viewed in the light most favorable to the party opposing

21  the motion, with doubts resolved in favor of the opponent."  *Gart v. Logitech,*

22  *Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001) (internal citations omitted).

23  "Credibility determinations, the weighing of the evidence, and the drawing of

24  legitimate inferences from the facts are jury functions."  *Anderson*, 477 U.S. at

25  255.

26      To prevail on summary judgment, Shenzhen Mindray bears the heavy

27  burden of showing the absence of any genuine issue of material fact.  *Celotex*

28  *Corp. v. Catrett*, 477 U.S. at 323.  "A fact issue is genuine 'if the evidence is

1   such that a reasonable jury *could* return a verdict for the nonmoving party.'"

2   *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001)

3   (emphasis added) (*quoting Anderson,* 477 U.S. at 248). "[I]f a jury could decide

4   the issue either way," then material facts are genuinely in dispute and summary

5   judgment must be denied. *Motionless Keyboard Co. v. Microsoft Corp.*, 486

6   F.3d 1376, 1380 (Fed. Cir. 2007) (*quoting Gen. Elec. Co. v. Nintendo Co., Ltd.*,

7   179 F.3d 1350, 1353 (Fed. Cir. 1999)).

8   **B.     Shenzhen Mindray Directly Infringed Through Its Own United**

9   **States Sales**

10  Whether a sale is "within the United States" under 35 U.S.C. § 271(a) is a

11  question of fact for the jury.  *See SEB S.A. v. Montgomery Ward & Co.,* 594

12  F.3d 1360, 1375 (Fed. Cir. 2010).  Here, Masimo's evidence is virtually

13  identical to evidence the Federal Circuit has held sufficient for a jury to

14  conclude that sales took place "within the United States."  *See Litecubes LLC v.*

15  *N. Light Prods., Inc.*, 523 F.3d 1353, 1369 (Fed. Cir. 2008); *see also SEB,* 594

16  F.3d at 1375.

17  In *Litecubes LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1369 (Fed. Cir.

18  2008), the Federal Circuit rejected the argument that an f.o.b. term dictates the

19  location of a sale.  The Federal Circuit held that, notwithstanding the presence

20  of an f.o.b. term specifying a foreign country, there was substantial evidence of

21  sales in the United States because "American customers were in the United

22  States when they contracted for the accused [products], and the products were

23  delivered directly to the United States."  *Id.* at 1371.  Similarly, here, Shenzhen

24  Mindray's own evidence demonstrates sales within the United States.

25  For example, Shenzhen Mindray's Exhibit A is a commercial invoice of a

26  transaction between Shenzhen Mindray and Mindray USA Corp. for an accused

27  product.  (D.I. 171-4, Ex. A; *see also* Ex. B (translation of Exhibit A).)  Mindray

28  USA Corp. is a United States company and thus was in the United States at the

1   time of the contract.  Moreover, the invoice specifies "delivery to" an address in

2   / / /

3   Marlborough, MA.  Under *Litecubes*, such evidence is sufficient for a jury to

4   conclude that this sale took place "within the United States" under § 271(a).

5          Shenzhen Mindray's Exhibit D is a commercial invoice between

6   Shenzhen Mindray and Mindray DS USA for an accused product.  (D.I. 171-4,

7   Ex. D.)  The invoice contains a "ship to" provision specifying Mindray DS

8   USA's address in Mahwah, New Jersey.  (*Id.*)  Under *Litecubes*, such evidence

9   is sufficient for a jury to conclude that the sale took place in the United States.

10         Shenzhen Mindray's Exhibit F is another commercial invoice between

11  Shenzhen Mindray and Mindray DS USA for an accused product that contains a

12  "ship to" provision specifying delivery to Mindray DS USA in Mahwah, New

13  Jersey.  (D.I. 171-5, Ex. F at 234-35.)  Moreover, Section 3.1 of the contract

14  specifies that "the sale" is to be "governed by the applicable United States laws

15  and regulations."  (*Id*. at 235.)

16         Shenzhen Mindray also has produced other invoices evidencing sales of

17  accused products to, for example, ███████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ██████████████████████████████████████████  These documents

23  similarly specify delivery of the accused products to addresses in the United

24  States.  (*Id*.)  A reasonable jury could rely on this evidence to conclude that

25  Shenzhen Mindray's sales were within the United States.

26         For example, in *Apple, Inc. v. Samsung Elecs. Co.,* 920 F. Supp. 2d 1079,

27  1111 (N.D. Cal. 2013), despite the existence of f.o.b. terms specifying a foreign

28  location for acceptance of products, the district court followed *Litecubes* to deny

- 14 -

summary judgment where, as here, the defendant's customers were "based in the United States, and [the defendant] ship[ped] the phones directly into the United States, albeit having first transferred title to [the United States subsidiaries]."   The Court held that this was "the same arrangement found sufficient to constitute direct infringement in *Litecubes*."   *Apple*, 920 F. Supp. 2d at 1111.

Similarly, in *Loops LLC v. Phoenix Trading, Inc.*, No. C08–1064 RSM, 2010 WL 3340514, at *3 (W.D. Wash. Aug. 23, 2010), the district court followed *Litecubes* and denied summary judgment of noninfringement where, as here, the products "were sold directly to the buyer in the United States; the buyer was in the United States when the contract to purchase was made; and the goods were shipped directly to the buyer in the United States."

Masimo's evidence also is nearly identical to the evidence the Federal Circuit found sufficient in *SEB S.A. v. Montgomery Ward & Co.,* 594 F.3d at 1375.  In *SEB,* the Federal Circuit upheld a jury finding of infringement where the defendant affixed "American trademarks" to the products, manufactured the products with American electrical fittings, and "the invoices . . . . all identif[ied] delivery to U.S. destinations."   *Id.*  Similarly, here, Shenzhen Mindray affixed United States trademarks to its products, obtained FDA approvals to sell such products in the United States, manufactured " ██████████ of its products, actively promoted those products at United States tradeshows, and delivered the accused products to United States locations.  (Ex. 49 at SZ0082599 ████████ ████████████████████ ); Ex. 50 at SZ0082612 (same); Ex. 53 at SZ0082693 ██████████████████████ Ex. 5 (same); Ex. 71 at 3 (U.S. trademarks); Ex. 80 (same); Ex. 81 (same); D.I. 30 at ¶ 3-4; D.I. 21, Exs. 10-21.)

Moreover, Shenzhen Mindray's own witnesses have admitted to Shenzhen Mindray's sales within the United States.  ( ████████████ ; Ex.

- 15 -

3 at 130:18-131:6; Ex. 4 at 299:14-300:6.)   And Shenzhen Mindray's own pleadings affirmatively represent that Masimo has injured "Shenzhen Mindray's ***business*** and property ***in the United States***, by, among other things, hurting ***sales*** and imports of Shenzhen Mindray, and other non-Masimo pulse oximetry products, ***in and to the United States***."   (D.I. 144 at ¶ 45 (emphasis added).) Shenzhen Mindray's "admissions contained in [its] pleadings are binding and cannot later be revoked . . . ." *Seaman v. Pyramid Techs.*, No. SACV 10-00070 DOC (RNBx), 2011 WL 5508971, at *3 (C.D. Cal. Nov. 7, 2011).  A reasonable jury could rely on these admissions to conclude that Shenzhen Mindray's sales are within the United States.

Shenzhen Mindray argues that all of its sales took place in China because of f.o.b. and ex-works terms in some of its invoices and agreements.  (D.I. 171-1 at 9.)   But the Federal Circuit has repeatedly and consistently rejected that argument.  In *North Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579-80 (Fed. Cir. 1994), the Federal Circuit rejected the argument that an f.o.b. provision determined the location of a sale.  In *Litecubes*, the Federal Circuit observed that its "case law" is "***inconsistent*** with such a theory . . . ."  523 F.3d at 1369 (emphasis added).  And in *SEB,* the Federal Circuit reiterated that it "has ***rejected*** the notion that simply because goods were shipped f.o.b., the location of the 'sale' for purposes of 271 must be the location from which the goods were shipped." *SEB*, 594 F.3d at 1375 (emphasis added).  Instead, an f.o.b. term is simply one fact a jury can consider when determining the location of a sale. *See, e.g., id.*

Shenzhen Mindray fails to cite the Federal Circuit's decisions in *Litecubes*, *SEB* and *North American Philips*.  Instead, Shenzhen Mindray cites *Wing Shing Prods. (BVI) v. Simatelex Mfg. Co.*, 479 F. Supp. 2d 388, 402, 405 (S.D.N.Y. 2007), a district court case decided prior to *Litecubes* and *SEB* in which the parties "***agree[d]*** that the point at which legal title passes under the

1  terms of the relevant contract is outcome determinative" and the plaintiff relied

2  solely on a theory that the sale took place where title transferred.

3      Shenzhen Mindray also cites *Simeone v. Bombadier-Rotax GmbH*, 360 F.

4  Supp. 2d 665, 671 (E.D. Pa. 2005), a district court decision applying Third

5  Circuit law in a wrongful death action against an aircraft manufacturer.

6  Shenzhen Mindray further cites *Safco Prods. Co. v. Denson Int'l Ltd.*, No.

7  C048325, 2006 Cal. App. Unpub. LEXIS 2920, at *15 (Cal. Ct. App. Apr. 10,

8  2006), an ***unpublished state court*** decision regarding personal jurisdiction in a

9  product liability case.  Clearly, these cases do not trump the Federal Circuit's

10  case law interpreting § 271(a) with regard to an f.o.b. term.

11      Regardless, even if an f.o.b. term were dispositive, many of Shenzhen

12  Mindray's purchase orders, contracts and invoices contain ***no*** f.o.b. or ex-works

13  term.  For example, none of the invoices above for ██████████████████

14  ████████████████████████████████████████████████████

15  contain ***any*** f.o.b. or ex-work term, much less a term specifying f.o.b. China.

16  (█████████    Indeed, Shenzhen Mindray's own Exhibit A does ***not*** specify that

17  the "f.o.b." or ownership change ***is in China*** or anywhere else.  (*See* D.I. 171-4,

18  Ex. B; Ex. 78.)  Similarly, Shenzhen Mindray's Exhibit D simply states "FOB"

19  and does ***not*** specify f.o.b. at any particular location.  (D.I. 171-4, Ex. D.) [8]

20      Shenzhen Mindray cites *MEMC Elec. Materials, Inc. v. Mitsubishi*

21  *Materials Silicon Corp.*, 420 F.3d 1369, 1377 (Fed. Cir. 2005), to argue that

22  "sales by a foreign entity to an affiliated U.S. company that imports those

23  products to the U.S. do not subject the foreign entity to the charge of direct

24  infringement."  (D.I. 171-1 at 8.)  But that is not what *MEMC* says or holds.

25

26      [8] Shenzhen Mindray improperly translates "Receipt to" a United States
    address to "Receipt [No.]."  *Compare* Ex. 78, *with* D.I. 171-4, Ex. B.  The fact
27  that the invoice specifies delivery of the sales receipt to the United States
    provides further supports the conclusion that the sale took place in the United
28  States.

- 17 -

1   ///

2        In *MEMC*, the defendant Japanese company sold the products to ***another***

3   ***Japanese company*** that then sold the products to a United States company.

4   *MEMC*, 420 F.3d at 1377.   All of the essential activities relating to the

5   defendant's sales took place outside the United States, and defendant's "mere

6   knowledge" that the products would reach the United States did not establish

7   direct infringement under § 271(a).

8        In contrast, here, Shenzhen Mindray is not selling the products to a

9   foreign company.   Shenzhen Mindray directly sells its accused products to

10   numerous companies in the United States, with invoices and agreements

11   specifying delivery to the United States.   That is not "mere knowledge" that

12   products will eventually reach the United States.   That is substantial evidence of

13   direct sales "within the United States" under *Litecubes*, 523 F.3d at 1371

14   (distinguishing *MEMC*).[9]

15        Shenzhen Mindray further cites *Cybiotronics, Ltd. v. Golden Source*

16   *Elecs., Ltd.*, 130 F. Supp. 2d  1152, 1173 (C.D. Cal. 2001), but in that case the

17   accused products were similarly transferred to a third party outside the United

18   States and "all of the essential activities took place outside of the United States."

19   Moreover, *Cybiotronics* predates *Litecubes* and *SEB* and is questionable

20   precedent because, among other things, it found the Federal Circuit's rejection

21   of an f.o.b. term in *North American Philips* to be of limited relevance because

22   *North American Philips* was a jurisdictional case rather than a case addressing

23   infringement on the merits.   In contrast, in *Litecubes*, the Federal Circuit

24   followed and applied the analysis in *North American Philips*, finding "no basis

25                      [9] Shenzhen Mindray also relies on various documents and testimony from

26   its own witnesses.   (D.I. 171-1 at 3-6.)   But that merely demonstrates the existence of disputes of issues of fact that preclude summary judgment.   (*Id.*)

27   Moreover, Shenzhen Mindray repeatedly cites to the deposition testimony of Ting "Richard" Yang, but Mr. Yang testified, "I don't know where our products

28   are sold to.   That's not my duty."   (Ex. 79 at 25:4-8.).)

for construing the location of a 'sale' differently" on the merits.  *Litecubes*, 523 F.3d at 1370.  Moreover, in *Cybiotronics*, the plaintiff failed to even argue that the defendant sold products within the United States. 130 F. Supp.  2d at 1167.

Shenzhen Mindray's remaining cases are similarly inapposite.  In *Power Integrations, Inc. v. Fairchild Semiconductor*, 711 F.3d 1348, 1371 (Fed. Cir. 2013), the Federal Circuit correctly rejected a damages model seeking compensatory damages for worldwide sales of infringing articles.  In *France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-cv-04967-WHO, 2014 U.S. Dist. LEXIS 52564, at *49-50 (N.D. Cal. Apr. 14, 2014), a district court similarly rejected a damages model seeking a reasonable royalty on worldwide sales.  In *Halo Elecs., Inc. v. Pulse Eng'g, Inc.*, 810 F. Supp. 2d 1173, 1208 (D. Nev. 2011), the district court held that "pricing discussions" in the United States did not constitute offers to sell under § 271(a) because the relevant products were manufactured and shipped to locations outside the United States.  And, in *Rotec Indus. v. Mitsubishi Corp.*, 215 F.3d 1246, 1257 (Fed. Cir. 2000), the court held that there were no communications between the defendants and any third parties that could constitute offers to sell.

**C.**   **Shenzhen Mindray Directly Infringed Via Its United States Agents**

Shenzhen Mindray also directly infringed through its United States "agents"—Mindray DS USA, Mindray USA Corp., and Mindray Medical USA Corp.  As the Federal Circuit explained, sitting *en banc*, "[d]irect infringement applies when the acts of infringement are committed by an ***agent*** of the accused infringer or a party acting pursuant to the accused infringer's direction or control."  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012 (en banc) (emphasis added).  Thus, where a United States company is acting as an agent for a foreign company, the United States company's sales are considered direct infringement by the foreign company.  *See Apple*, 920 F.2d at 1111; *see also Strikeforce Techs., Inc. v. PhoneFactor,*

1   *Inc.*, No. 13–490–RGA–MPT, 2013 WL 6002850, at *6 (D. Del. Nov. 14,
2   2013).

3        Agency is a question of fact for the jury.  *See In re Katz Interactive Call*
4   *Processing Patent Litig.*, No. 2:07–ML–1816–B–RGK (FFMx), 2013 WL
5   3223382, at *3 (C.D. Cal. June 12, 2013).  Common law agency, also referred
6   to as "pure agency," does not require the plaintiff to "pierce the veil" or
7   establish "alter ego" liability.  *Strikeforce*, 2013 WL 6002850, at *6.  For
8   example, common law agency requires no showing of a failure to observe
9   corporate formalities, of complete domination or control, or that fraud or
10  injustice has resulted from the corporate form.  *Id.*  To the contrary, there is "no
11  reason why a completely independent, in-state corporation cannot be held to
12  have acted as an agent for another, out-of-state corporation in performing
13  activities giving rise to a cause of action . . . ."  *Wells Fargo & Co. v. Wells*
14  *Fargo Express Co.*, 556 F.2d 406, 419-20 (9th Cir. 1977) (internal citations
15  omitted).

16       Here, a reasonable jury could conclude that Shenzhen Mindray's related
17  United States distributors—Mindray DS USA, Mindray USA Corp., and
18  Mindray Medical USA Corp.—acted as "agents" for Shenzhen Mindray during
19  the statutory damages period.  As Mr. Cheng explained, Shenzhen Mindray's
20  "management of the group" did not "go by any individual entity" or "legal
21  institution type of structure," but rather extended to the "***whole*** group,"
22  including Mindray DS USA.  (Ex. 3 at 154:20-155:16.)  Thus, Mr. Cheng
23  reviewed Mindray USA's business plans (Ex. 4 at 306:18-308:2), and even
24  communicated on behalf of Mindray DS USA in meetings with Masimo.  (*Id.* at
25  273:15-274:8; 284:14-19 (emphasis added).)

26  █████████████████████████████████████████████
27  █████████████████████████████████████████████
28  █████████████████████████████████████████████

1 ████████████████████████████████████████

2 ██ Mr. Liu's responsibilities specifically █████████████

3 ████████████████████████████████████████

4 ██████████████████████████████████. (*Id.*

5 at 15:15-16:22; ██████████████████████████

6 ████████████████████████████████████████

7 ████████████████████████████████ The

8 Court in *Apple* relied on similar facts to conclude that a jury could find a foreign

9 company responsible for the infringing sales of two United States companies.

10 *Apple*, 920 F. Supp. 2d at 1111-12.

11 Notably, the Mindray Group specifically bought Datascope, which would

12 later become Mindray DS USA, to acquire ████████████████████

13 ███████████ After the acquisition, Shenzhen Mindray viewed Shenzhen

14 Mindray and Mindray DS USA as ████████████████████

15 ████████████████ Further, Mindray DS USA senior executives have

16 admitted that Shenzhen Mindray controls what products and product lines

17 Mindray USA sells.  (D.I. 31 at ¶¶ 3-4.)  Indeed, in filings with this Court,

18 Shenzhen Mindray has referred to Mindray DS USA, Inc., as "the business

19 operation of [Shenzhen Mindray] in the American market . . . ."  (D.I. 89 at 15.)

20 A reasonable jury could conclude that Mindray DS USA, Mindray USA

21 Corp., and Mindray Medical USA Corp. were Shenzhen Mindray's "agents" for

22 sales in the United States and that Shenzhen Mindray is responsible for these

23 entities' sales.  *See In re Katz*, 2013 WL 3223382, at *3 (denying summary

24 judgment "because [the] evidence present[ed] a triable issue of fact with respect

25 to both issues of agency and direction").  Thus, Shenzhen Mindray has directly

26 infringed through the admitted United States activities of its related entities.

27 (*See, e.g.,* D.I. 8-1 at ¶ 7 ("Mindray USA sells, offers to sell and imports the

28 patient monitoring devices . . . .");  D.I. 144 at 36 ("Mindray DS USA, Inc. . . .

imports and sells monitors and accessories manufactured by Shenzhen Mindray . . . in the United States.").)

## D.   Shenzhen Mindray Indirectly Infringed By Inducing Its United States Distributors To Infringe

Shenzhen Mindray argues that it did not have the requisite knowledge and intent for contributory and induced infringement under 35 U.S.C. §§ 271(b) and (c).[10]  Shenzhen Mindray is again incorrect.  As the Supreme Court explained in *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011), such knowledge and intent is established by evidence of "knowledge that the induced acts constitute patent infringement."

Here, Shenzhen Mindray *marked* the accused products sold in the United States with the numbers of the *very patents* Masimo asserts in this litigation. (Exs. 71-73.)  The "practice of marking a product with a patent number is a form of extrajudicial admission that the product falls within the patent claims." *Frolow v. Wilson Sporting Goods Co.*, 710 F.3d 1303, 1309 (Fed. Cir. 2013). "[E]vidence of marking is circumstantial evidence that the marked product falls within the patent claims and can preclude summary judgment in appropriate cases." *Id*. at 1310.

Moreover, as the Supreme Court has explained, the intent requirement also can be satisfied by evidence of "willful blindness"—that the defendant subjectively believed there was a high probability of infringement, and took deliberate actions to avoid learning of such infringement.  *Global-Tech,* 131 S.

---

[10]  Although Shenzhen Mindray does not raise the issue, Shenzhen Mindray also supported and encouraged its United States distributor's sales. For example, Shenzhen Mindray provided "logistics" assistance, assistance with importing, technical manuals, and even a "service hotline" to resolve customer ████████████████████████████████████████████████ products ordered and imported by Shenzhen Mindray's U.S. affiliate" Mindray USA.  (D.I. 82 at 8.)

Ct. at 2068.   Here, Shenzhen Mindray marked the accused products with
Masimo's patent numbers, marketed its own products as having equivalent
performance to Masimo's, was specifically warned of the serious risk of patent
infringement, and was concerned about Masimo's successful assertion of its
patents.   (Ex. 3 at 106:8-107:10, 130:19-131:6; Exs. 75-76, 71-73, 77.)   Yet,
Shenzhen Mindray specifically avoided investigating the issue with attorneys
and instead tasked its R&D group—which had no legal training—to
"investigate" the issue.   (Ex. 3 at 114:12-116:8, 121:5-122:21, 132:7-135:2.)   In
addition, Shenzhen Mindray sought to avoid discussing the issue with Masimo.
(Kiani Decl. ¶¶ 4-10.)

Shenzhen Mindray's own case, *Halo*, involved similar "evidence that
[defendant] did not obtain an opinion of counsel that its actions did not induce
infringement, even after being alerted to the potentiality of infringement" by the
plaintiff.   *Halo*, 810 F. Supp. 2d at 1209.   As the Court observed in *Halo*,
"[e]vidence of this type has been found sufficient to support a jury finding
inducement of infringement."   *Id.* (citing *Broadcom Corp. v. Qualcomm, Inc.*,
543 F.3d 683, 699 (Fed. Cir. 2008)).   Moreover, as the Supreme Court held in
*Global-Tech*, 131 S. Ct. at 2071, willful blindness is shown where, as here, the
defendant keeps information from an attorney "to manufacture a claim of
plausible deniability in the event that [it] was later accused of patent
infringement."[11]

Shenzhen Mindray cites cases where, unlike here, the defendant was not
even aware of the asserted patents.   For example, in *MyMedicalRecords, Inc. v.
Jardogs, LLC*, No. 2:13-cv-03560-ODW (SHx), 2014 U.S. Dist. LEXIS 1146, at

---

[11] Masimo also has separately moved for sanctions that would include a
finding that Shenzhen Mindray copied Masimo's patents.   (D.I. 176 at 15.)
Such a finding would provide further support for denying summary judgment as
to indirect infringement.   *See Global-Tech*, 131 S. Ct. at 2071 (copying
established induced infringement).

1 | *8-9 (C.D. Cal. Jan. 6, 2014), the plaintiff failed to allege knowledge of the
2 | asserted patent.  In *Oplus Techs., Ltd. v. Sears Holdings Corp.*, No. 2:12-cv-
3 | 05707-MRP-Ex, 2013 U.S. Dist. LEXIS 145917, at *17 (C.D. Cal. Oct. 2,
4 | 2013), the defendant was not aware of the patents prior to the lawsuit, and even
5 | after the lawsuit was filed, was not aware of the algorithms used by the accused
6 | third-party chipsets.  *Id*. at *22.  And, in *Manville Sales Corp. v. Paramount*
7 | *Sys., Inc*., 917 F.2d 544, 553 (Fed. Cir. 1990), the defendants were not aware of
8 | the patent prior to the lawsuit and, after the lawsuit was filed, relied on advice of
9 | counsel to believe the accused products did not infringe.  Shenzhen Mindray
10 | makes no such showing in this case.

11 | Finally, Shenzhen Mindray cites *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283,
12 | 1302 (Fed. Cir. 2012), but that case **upholds** liability for overseas activities,
13 | holding that a "foreign party" can be liable for indirect infringement where, as
14 | here, it uses "extraterritorial means to actively induce acts of direct infringement
15 | that occur within the United States."  *Id*. at 1302-03.  That case provides no
16 | support for Shenzhen Mindray's arguments.

### IV.  <u>CONCLUSION</u>

For the reasons discussed above, the Court should deny Shenzhen
Mindray's Partial Summary Judgment Motion in its entirety.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: <u>May 27, 2014</u>        By: */s/ Stephen W. Larson*
                            Joseph R. Re
                            Stephen C. Jensen
                            Jon W. Gurka
                            Stephen W. Larson
                            Nicholas A. Belair
                            Attorneys for Plaintiff
                            MASIMO CORPORATION