Nicola A. Pisano (CA Bar No. 151282)
npisano@foley.com
Jose L. Patiño (CA Bar No. 149568)
jpatino@foley.com
Shawn E. McDonald (CA Bar No. 237580)
semcdonald@foley.com
Justin E. Gray (CA Bar No. 282452)
jegray@foley.com
Christopher C. Bolten (CA Bar No. 268284)
cbolten@foley.com
**FOLEY & LARDNER LLP**
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130-3302
Telephone:  858.847.6700
Facsimile:   858.792.6773

Attorneys for Defendant, Counter-Plaintiff
and Counter Counter-Defendant
SHENZHEN MINDRAY BIO-MEDICAL
ELECTRONICS CO., LTD.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation,<br><br>　　　　Plaintiff, Counter-Defendant and Counter Counter-Plaintiff,<br><br>　　　　v.<br><br>SHENZHEN MINDRAY BIO-MEDICAL ELECTRONICS CO., LTD., a corporation of the People's Republic of China,<br><br>　　　　Defendant, Counter-Plaintiff and Counter Counter-Defendant. | Case No. SACV12-02206 CJC (JPRx)<br><br>**SHENZHEN MINDRAY BIO-MEDICAL ELECTRONICS CO., LTD.'S OPPOSITION TO MASIMO CORPORATION'S RENEWED MOTION FOR SANCTIONS**<br><br>Date:　　July 28, 2014<br>Time:　　1:30 p.m.<br>Place:　　Courtroom 9B<br>Judge:　　Hon. Cormac J. Carney |

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................. 1

II.   FACTUAL BACKGROUND ..................................................... 3

III.  ARGUMENT ....................................................................... 6

      A.    Shenzhen Mindray's Conduct Does Not Warrant Sanctions ..................... 6

            1.    Shenzhen Mindray Will Make Its Source Code Available For Inspection ................................................ 6

            2.    Shenzhen Mindray Will Make Product Samples Available ............ 9

            3.    Sanctioning Shenzhen Mindray Would Be Unjust ........................ 12

      B.    Masimo's Additional Requests For Sanctions Are Unfounded ............... 16

      C.    Attorneys' Fees Are Not Appropriate ...................................... 17

IV.   CONCLUSION .................................................................... 19

4824-8213-2252.6

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Commil USA, LLC v. Cisco Sys.*,
720 F.3d 1361 (Fed. Cir. 2013) ................................................................. 14

*Gen. Ins. Co. of Am. v. E. Consol. Util., Inc.*,
126 F.3d 215 (3d Cir. 1997) ..................................................................... 12

*Pass & Seymour, Inc. v. Hubbell Inc.*,
255 F.R.D. 331 (N.D.N.Y. 2008) ................................................................ 8

*Petro v. Lighting Serv., Inc.*,
No. 3:09-cv-037, 2009 U.S. Dist. LEXIS 55096 (S.D. Ohio June 29,
2009) .................................................................................................... 8

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
711 F.3d 1348 (Fed. Cir. 2013) ................................................................. 14

*Simms v. Ctr. for Corr. Health & Policy Studies*,
272 F.R.D. 36 (D.D.C. 2011) ..................................................................... 9

*Societe Internationale Pour Participations Industrielles et Commerciales,
S.A. v. Rogers*,
357 U.S. 197 (1958) ................................................................................ 18

*United States ex. rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*,
857 F.2d 600 (9th Cir. 1988) ........................................................ 6, 12, 13, 15

*Wyle v. R.J. Reynolds Indus., Inc.*,
709 F.2d 585 (9th Cir. 1983) ................................................................... 15

*Zysman v. Zanett Inc.*,
No. 13-02813 YGR (DMR), 2014 U.S. Dist. LEXIS 44859 (N.D. Cal.
Mar. 31, 2014) ........................................................................................ 8

**Federal Statutes**

35 U.S.C. § 271 ..................................................................................... 14

4824-8213-2252.6

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

<u>Page(s)</u>

**Rules**

Fed. R. Civ. P. 34 (b)(2)(E)(i) ............................................................................... 8

Fed. R. Civ. P. 37(b)(2)(C) ................................................................................. 17

**Treatises**

8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal
    Practice and Procedure § 2213 (2d ed. 1991) .............................................. 8

7 James Wm. Moore et al., Moore's Federal Practice § 34.13 (3d ed. 2014) .................. 8

4824-8213-2252.6

# I.     __INTRODUCTION__

The ink was not even dry on the Court's Order dated June 19, 2014 denying Masimo's motion for sanctions (transmitted via ECF at 9:07 a.m. June 20, 2014) before Masimo's counsel contacted counsel for Shenzhen Mindray (at 10:37 a.m.) indicating that Masimo would immediately renew its motion for sanctions.  Shenzhen Mindray's counsel responded that same day that it had not yet been able to communicate the Court's Order to Shenzhen Mindray, much less discuss how Shenzhen Mindray would proceed: "It would be premature to renew your motion until we have had an opportunity to review Judge Carney's rulings of today with our client.  At the very least, we plan to revisit the source code issue, and in addition ***Shenzhen Mindray will diligently work to supply whatever additional monitors and accessories you believe we need to supply to you, from whatever source we can locate***." (emphasis added).

Shenzhen Mindray understood the Court's June 19 Order to provide a "last chance" to find a way to produce its source code based on the reasoning set forth in this Court's May 28 Order.   Shenzhen Mindray believes that in issuing its June 19 Order, the Court intended that Shenzhen Mindray should have a reasonable opportunity to comply with the Court's directives, especially now that the case schedule and close of discovery have been vacated.   Masimo's insistence on refiling its motion before Shenzhen Mindray could even be informed of the Court's decision, much less consider the June 19 Order, is a disservice to the Court and a waste of the parties' resources.  Masimo's motion should again be denied as premature.

More importantly, however, for the reasons explained below, Masimo's motion is now moot.  This Court entered a Protective Order that includes a patent prosecution bar that, if enforced, should prevent Masimo from improperly using Shenzhen Mindray's source code as a template for new patent claims to be filed in Masimo's pending continuation patent applications.  In good faith reliance that this Court will enforce the provisions of the Protective Order, and in further review of options consistent with the SFDA Orders issued to date, Shenzhen Mindray will produce, no later than July 28,

2014, its 9006 and 9008 pulse oximetry source code.  Specifically, Shenzhen Mindray has determined that its 9006 source code is now sufficiently near the end of its commercially useful lifetime to qualify as "obsolete" under the SFDA's Order dated April 28, 2014.  In addition, Shenzhen Mindray will make its 9008 source code, used in its current products, available for inspection by Masimo's technical expert at Shenzhen Mindray's headquarters in Shenzhen, China, subject to the provisions of the Protective Order.  The Protective Order imposes limits on how much code can be printed out, and Masimo is free to remove those printouts from China at its own risk (which both Masimo and this Court have deemed to be negligible).[1]

In addition, Shenzhen Mindray will provide to Masimo one of each of the accused product samples no later than July 28, 2014.  As explained below, several of the accused products were discontinued years ago, or are no longer accused of infringement.  Nonetheless, Shenzhen Mindray will provide such samples rather than have Masimo continue its campaign of distracting from the merits of this case with its demand for samples it either does not need or which Masimo already obtained elsewhere.

Masimo's repeated sanctions motions were based on the alleged urgency to obtain access to Shenzhen Mindray source code, all the while flouting Masimo's own source code production obligations.  Despite having promised to produce its source code on April 14, 2014, almost three (3) months later, Masimo has produced only *some* of its source code relating to the inventions disclosed in Shenzhen Mindray's asserted patents, and *refuses* to produce any of its source code relating to the alleged inventions

---

[1] Shenzhen Mindray agreed to produce source code *approved for production by the Chinese government* at its U.S. counsel's offices in San Diego, California.  The SFDA Order dated April 5, 2014, disapproved of export from China of Shenzhen Mindray's source code for its current commercial products.  Accordingly, Shenzhen Mindray's 9008 source code is being made available for inspection in China on the basis that if only small segments of the code relevant to the pulse oximetry algorithms are printed out pursuant to the Protective Order, Shenzhen Mindray still will be in substantial compliance with the SFDA Order of April 5, 2014.

of its own asserted patents.  With this Court having now vacated the case schedule and trial date, Masimo is not prejudiced, and is in no position to argue prejudice in light of Masimo's own continuing failure to produce relevant source code.  Shenzhen Mindray should not be sanctioned for attempting to balance its competing obligations under U.S. and Chinese law, a reasonable justification that does not apply to Masimo's conduct. Masimo's renewed motion for sanctions should be denied.

## II.   FACTUAL BACKGROUND

Masimo's statement of alleged facts is replete with mischaracterizations of the record, Shenzhen Mindray's communications, and this Court's Orders.   The only relevant facts are these:

- The Complaint was filed on December 21, 2012.  Masimo served its first set of discovery requests eleven (11) months later on December 6, 2013.  Shenzhen Mindray timely served its objections and responses on January 9, 2014.

- On February 13, 2014, even before a Protective Order was entered, Masimo moved to compel production of Shenzhen Mindray's source code.  At the March 6, 2014 hearing, Magistrate Judge Rosenbluth rejected Shenzhen Mindray's proposed Protective Order and ordered Shenzhen Mindray to produce its source code by April 14, 2014 – as the Magistrate Judge stated on the record – without regard to whether Chinese government approval had been obtained.  *See, e.g.,* Dkt. No. 201-2, Ex. A at 68:21; 70:17; 71:10-13.

- On April 2, 2014, Shenzhen Mindray hand delivered a request for a determination by the Shenzhen Drug Administration ("SFDA") whether Shenzhen Mindray's source code and related materials are subject to any of several Chinese secrecy laws.  *Id.*, Ex. C at ¶ 3; *id.*, Ex. D.  The SFDA promptly issued an order ("SFDA Order I"), stating that Shenzhen Mindray's source code and related documents were covered by four Chinese secrecy laws.  *Id.*, Ex. E.

- On April 25, 2014, Shenzhen Mindray submitted to the SFDA a request for clarification of SFDA Order I, including a request to produce source code and

related technical documents for its obsolete products under the terms of the Protective Order. *Id.*, Ex. C at ¶ 7; *id.*, Ex. G. On April 28, 2014, the SFDA responded that information relating to outdated oximeter products could be produced at Shenzhen Mindray's discretion. *Id.*, Ex. H ("SFDA Order II").

- On May 6, 2014, Shenzhen Mindray informed Masimo that Shenzhen Mindray's 9005 source code would be made available for inspection. Dkt No. 186-2, Ex. F. On May 12 and 13, Masimo's counsel inspected that source code. Dkt. No. 186-1 at ¶ 8.

- On May 28, 2014, this Court entered its Order upholding the Magistrate Judge's decision.

- On June 19, 2014, this Court denied Masimo's motion for sanctions on the grounds that Shenzhen Mindray did not have the benefit of this Court's May 28 Order.

- On June 20, 2014, less than two hours after transmission of the Court's Order, Masimo informed Shenzhen Mindray that it planned to immediately refile its motion for sanctions. Declaration of Nicola A. Pisano in Support of Shenzhen Mindray's Opposition to Masimo's Renewed Motion for Sanctions ("Pisano Decl.") at ¶ 2 & Ex. A.

- Shenzhen Mindray informed Masimo counsel that it would take whatever steps were necessary to provide the product samples demanded by Masimo and requested that Masimo defer refiling its motion until Shenzhen Mindray had an opportunity to consider the Court's June 19 Order. *Id.*

- On June 24, 2014, during a meet and confer teleconference with Masimo counsel to discuss Masimo's planned refiling of the pending sanction motion, counsel for Shenzhen Mindray explained that Shenzhen Mindray was evaluating this Court's May 28 and June 19 Orders in consultation with PRC counsel. Pisano Decl. at ¶ 3.

- On June 26, 2014, counsel for Shenzhen Mindray conducted a further

teleconference with Masimo counsel to discuss deposition scheduling, and provided an update on Shenzhen Mindray's efforts to locate and provide the product samples discussed in the June 19 Order. *Id*. at ¶ 4.

- On June 27, 2014, counsel for Shenzhen Mindray sent a letter to Masimo's counsel describing the results of its efforts to locate the product samples and describing that in some instances Shenzhen Mindray would undertake to build discontinued products from leftover parts inventory, or if needed, buy used units on-line. Due to the unavailability of key decision makers in Shenzhen, China, no further update on how to comply with the Court's May 28 and June 19 Orders was available. *Id*. at ¶ 5 & Ex. B.

- The June 27, 2014 letter states that in view of the Court's Order on June 26 vacating the scheduling order and trial date for this matter, it would seem that there is sufficient time for Shenzhen Mindray to conclude its further consultations with PRC counsel and/or the SFDA with respect to whether it can provide the additional source code in compliance with the Court's Orders. The letter concluded with a request that if Masimo renewed its motion, that it do so "with sufficient time to provide Shenzhen Mindray an additional three weeks to conclude its evaluation with respect to the source code in view of the Court's May 28, 2014 Order and initial decision on Masimo's Motion for Sanctions." *Id*.

- Masimo did not respond to Shenzhen Mindray's June 27, 2014 letter, but instead filed its renewed motion on June 30, 2014 with a scheduled hearing date 28 days later.

- Shenzhen Mindray subsequently has located and will provide samples of its PM-50 monitor (purchased on e-Bay), VS-800 monitor (also purchased on e-Bay), PM-7000 monitor (in transit from Shenzhen), PM-8000 Express monitor and PM-9000 Express monitor (in transit from Shenzhen), and Beneview T5 and T8 monitors (in transit from Shenzhen). Shenzhen Mindray has no PM-60 monitors in inventory in China, and none are available on e-Bay or from distributors, but

has undertaken to build two units specifically to comply with this Court's Orders. Pisano Decl. at ¶ 6.

- PSS World Medical Shared Services, Inc., to whom Masimo alleges more than 400 PM-60 units were shipped since January 2014 (*see* Decl. of Stephen W. Larson in Supp. of Masimo's Renewed Mot. for Sanctions, Exhibits 5 and 6), does not stock the PM-60 product, and that product has been discontinued by the other distributors as well.  Pisano Decl. at ¶¶ 7-13.

## III.   ARGUMENT

### A.   Shenzhen Mindray's Conduct Does Not Warrant Sanctions

#### 1.   Shenzhen Mindray Will Make Its Source Code Available For Inspection

Masimo continues to seek imposition of various sanctions, including case-dispositive sanctions (Masimo's Memorandum of Points and Authorities in Support of Its Renewed Motion for Sanctions ("Mot.") at 12:3-5) and an order establishing that Shenzhen Mindray's source code *infringes*, or *willfully infringes*, the claims of Masimo's algorithm patents.  *See id.* at 12:7-9, 15:27-16:3; Dkt. No. 232-9 (Proposed Order) ¶ 1.  Such harsh sanctions are authorized only in "extreme circumstances." *United States ex. rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 603 (9th Cir. 1988) ("*Kahaluu*") (describing case-dispositive sanctions and orders taking a plaintiff's allegations as true as "represent[ing] the most severe penalty that can be imposed on a party").  No such circumstances are present here.

Responsive to this Court's Orders of May 28 and June 19, 2014, Shenzhen Mindray will produce its accused source code for inspection no later than July 28, 2014. In light of this, Shenzhen Mindray respectfully submits that no sanctions are appropriate.  Magistrate Judge Rosenbluth's chief reason for refusing to reconsider the deadline set in her March 6 Order was that immediate production of the source code was required to meet the scheduled trial date of November 4, 2014.  *See* Pisano Decl., Ex. H at 46:2-47:16.  With that date having been vacated, and Masimo itself still not

having produced the bulk of its source code, Masimo has not been prejudiced.[2] Shenzhen Mindray respectfully submits that it was entitled to have this Court address Shenzhen Mindray's valid concerns regarding the inconsistent obligations imposed by Chinese law and U.S. law.[3]

Shenzhen Mindray will have produced its 9006 and 9008 source code within two months of the Court's May 28 Order.  In light of the Court's vacating the scheduling order and trial date for this matter, Masimo will have a full opportunity to take whatever discovery it wishes to pursue regarding Shenzhen Mindray's source code.  Masimo's histrionics do not warrant a rush to judgment when there is time enough for Masimo to try to prove that Shenzhen Mindray's source code possesses the elements of any valid and enforceable claim of Masimo's asserted patents, if any.

More specifically, pursuant to SFDA Order II, Shenzhen Mindray has concluded that its 9006 source code is sufficiently near the end of its commercial life that the source code may be deemed "obsolete" and can be exported to the U.S. and produced for inspection at the San Diego offices of Shenzhen Mindray's counsel, under the terms of the Protective Order entered in this case.  The 9006 source code is also essentially the same as the source code used in Shenzhen Mindray's 0152 and 6800 boards.  Pisano Decl. at ¶ 16.  Shenzhen Mindray asks only that this Court enforce the patent prosecution bar provision of the Protective Order to ensure that its source code is not used by Masimo to spawn claims in further Masimo continuation patent applications, as

---

[2] In an effort to promote more efficient and effective discovery by both sides, on June 25, 2014, Shenzhen Mindray proposed to Masimo that the parties jointly request a three or four-month extension of discovery, and that the trial date be reset accordingly. Pisano Decl., Ex. I.  On June 26, 2014, the Court vacated the scheduling order and trial date, and ordered the parties to meet and confer and propose a new scheduling order to the Court.  Dkt. No. 229.

[3] Masimo repeatedly refers to the fact that it sought production of Shenzhen Mindray's source code "nearly seven months ago" (*see* Mot. at 1:11-12, 3:5-6, 13:3-6, 16:8-12), but Masimo fails to mention that the Protective Order was not entered until March 17, 2014.  *See* Dkt. No. 124.

OPPOSITION TO MASIMO'S RENEWED MOTION FOR SANCTIONS
7
Case No. SACV12-02206 CJC (JPRx)

4824-8213-2252.6

has occurred to other Masimo competitors forced to divulge their source code in litigation.

With respect to its 9008 source code, which plainly falls within the scope of SFDA Order I, Shenzhen Mindray will produce that source code for inspection at its headquarters in Shenzhen, China.  Under the terms of the Protective Order as entered, Masimo will be permitted to inspect that source code for as long as desired, and may request printouts of limited portions of that code.  *See* Dkt. No. 124 at 13:3-11 (Protective Order at subsection 9(d)).  Masimo will promptly be provided with such printouts.  And because Masimo has argued repeatedly to this Court that Shenzhen Mindray's current commercial source code does not fall within the scope of any of the Chinese secrecy laws identified in SFDA Order I, it presumably will have little or no concern regarding removal of those source code printouts from China.

Shenzhen Mindray can be expected to do no more than to provide the 9008 source code for inspection in China.  Under the Federal Rules of Civil Procedure documents may be produced where they are kept.  *See* Fed. R. Civ. P. 34 (b)(2)(E)(i); *see also Zysman v. Zanett Inc.*, No. 13-02813 YGR (DMR), 2014 U.S. Dist. LEXIS 44859, at *5-6 (N.D. Cal. Mar. 31, 2014) ("[a] party who chooses to produce documents as they are ordinarily maintained must do just that");  *Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 336 (N.D.N.Y. 2008) ("The most obvious means of complying with the requirements of Rule 34(b)…is to permit the requesting party to inspect the documents where they are maintained");  *Petro v. Lighting Serv., Inc.*, No. 3:09-cv-037, 2009 U.S. Dist. LEXIS 55096, at *5 (S.D. Ohio June 29, 2009) ("the Defendant's response that it will produce the documents in the manner in which and at the place where they are kept in the ordinary course of its business is a valid response") (citing 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2213 (2d ed. 1991)); 7 James Wm. Moore et al., Moore's Federal Practice § 34.13 (3d ed. 2014) ("In lieu of actual production of documents, a party may respond to a request for production by allowing the requesting party to inspect and copy

the documents at a time and place designated by the responding party.") *citing Simms v. Ctr. for Corr. Health & Policy Studies*, 272 F.R.D. 36, 40 (D.D.C. 2011) ("[t]he plain language of the Rule thus allows a party to fulfill its obligations by permitting the requesting party…to…copy…any designated documents.").

No later than July 28, 2014, Masimo will be provided access to the source code in compliance with this Court's Orders.[4]   Masimo has not been prejudiced and sanctions are unwarranted.

### 2.    Shenzhen Mindray Will Make Product Samples Available

As Shenzhen Mindray counsel advised Masimo the day it learned of the Court's June 19 Order, Shenzhen Mindray would do whatever was necessary to make the product samples demanded by Masimo available as soon as possible.   Masimo's complaint that the product samples it was provided were insufficient only came to light in Masimo's sanctions motion – the issue was not raised by Masimo in its prior correspondence or even the meet and confer regarding the proposed motion.   Moreover, Masimo's insistence that it refile the present sanctions motion before Shenzhen Mindray could locate and provide the requested samples highlights the make-weight nature of Masimo's contention.

As demonstrated by Masimo's previous filings in this case (*see* Dkt No. 21-2, Ex. 2), Masimo has had a sample of Shenzhen Mindray's VS-800 monitor for several years. Masimo's demand that Shenzhen Mindray be sanctioned for failing to provide a sample of a monitor already in Masimo's possession, but not available in inventory to Shenzhen Mindray, defies logic.   However, in an effort to eliminate this issue,

---

[4] On May 6, 2014, promptly after issuance of SFDA Order II, Shenzhen Mindray informed Masimo that Shenzhen Mindray's 9005 source code would be made available for inspection.  Dkt No. 186-2, Ex. F.  On May 12 and 13, Masimo's counsel inspected that source code.  Dkt No. 186-1, ¶ 8.  After Masimo reviewed the 9005 code, Masimo served interrogatory responses identifying the Shenzhen Mindray products accused of infringement, and Masimo did **not** accuse products containing the 9005 boards of infringement of any Masimo patent.  Dkt. No. 201-1 at ¶ 5.

Shenzhen Mindray located and purchased a used unit on the e-Bay Internet site.  *See* Pisano Decl. at ¶ 6.  It is absurd that this was necessary, since Masimo has a sample of a VS-800 monitor.  Moreover, the DPM3 monitor that Shenzhen Mindray obtained from the inventory of Mindray DS USA, Inc., and provided to Masimo on March 27, 2014, is virtually identical to the VS-800, except for labelling.  *See* Dkt. No. 201-1 at ¶ 5;  Dkt. No. 201-3, Exs. N and O.[5]

Likewise, Masimo's reliance on Internet sites of dubious pedigree and veracity, which purport to show that Shenzhen Mindray is shipping hundreds of PM-60 monitors to an entity named "PSS World Med Shared Services Inc," is misplaced.   These Internet sites are inaccurate.  The entity named PSS World Medical, Inc., having a website at www.pssworldmedical.com, contracted with Mindray DS USA, Inc. ("Mindray DS") to manufacture a private-label version of the handheld pulse oximeter that Shenzhen Mindray marketed as the PM-60 monitor.[6]  This product is not called the "PM-60," but instead is called the "Lumeon." Pisano Decl., ¶ 10; *compare id.*, Ex. D *with id.*, Ex. E.  The Lumeon is not an accused device and Masimo has not requested

---

[5] Masimo asserts that Shenzhen Mindray failed to produce samples of its products identified in inventory in China. Mot. at 2:5-7, 18:23-25.  That is false.  In order to provide samples of those products to Masimo to meet the March 27, 2014 deadline imposed by the Magistrate Judge's Order, Shenzhen Mindray's counsel arranged to obtain sample units already present in the U.S. of each of those products from third-party Mindray DS USA, Inc.  This avoided the unpredictable and uncontrollable delay for a shipment from China to clear U.S. Customs, and the samples were timely produced to Masimo.

[6] Masimo alleges that the Internet sites it relies upon shows that Shenzhen Mindray "ship[ped]" devices into the United States.  Masimo cites Exhibits 5 and 6, which refer to Shenzhen Mindray as the "shipper" and PSS World as the "consignee."  Masimo's allegation is false, and these terms do not mean what Masimo claims.  The website www.importgenius.com, upon which Masimo relies, explains that the term "consignee" means the company "*importing* the shipment into the U.S." In addition, the term "shipper" on a bill of lading means merely the *supplier* of the commodities shipped. *See* Pisano Decl., ¶ 11, Exs. F, G.  Masimo's evidence at most shows only that PSS World has imported products made by Shenzhen Mindray, which are not the PM-60 that Masimo has demanded.  *Id.*, ¶ 11.

production of a sample of the Lumeon pulse oximeter.  In addition, Masimo has previously rejected Shenzhen Mindray's attempts to provide to Masimo devices materially identical to the accused products, but only bearing the Mindray DS badge rather than the Shenzhen Mindray brand.  *See id.* at ¶ 12.  For example, Masimo found unacceptable Shenzhen Mindray's production of a Mindray DS "DPM3" monitor in place of a Shenzhen Mindray "VS-800" monitor and likewise rejected production of a Mindray DS "DPM4" monitor even though it is identical (except for the label) to the Shenzhen Mindray "PM-9000" monitor.  *Id.*  Any attempt to obtain and provide to Masimo a "Lumeon" monitor in lieu of a PM-60 would only provoke further complaints from Masimo about the unavailability of a PM-60 rather than acceptance of the identical product.

Shenzhen Mindray's attempts to procure a PM-60 from PSS World Medical and other medical device distributors were not successful.  PSS World Medical's website catalog does not list, as of the date of this pleading, a single product from Shenzhen Mindray.  *Id.* at ¶ 7.  Moreover, a call to the PSS World Medical customer service center attempting to purchase a Shenzhen Mindray PM-60 handheld pulse oximeter monitor produced the response that "PSS World does not carry that product."  *Id.*  Calls to other medical device distributors, including MFI Medical Equipment and Medical Device Depot showed that those distributors too had discontinued sales of PM-60 devices.  *Id.*  Nonetheless, Shenzhen Mindray has undertaken to ***build*** a PM-60 to order from leftover parts in inventory solely to obviate the need for the Court to address this issue.  *Id.* at ¶ 13.

By the time this motion is heard, Shenzhen Mindray will have provided Masimo with tens of thousands of dollars of equipment.  Masimo simply refused to wait until these monitors could be built or procured and provided in accordance with this Court's June 19 Order.  Masimo may believe it can secure some tactical advantage by misrepresenting Shenzhen Mindray's position regarding these sample monitors.  But

plainly there was no reason for Masimo to again raise this issue to the Court, with the resulting waste of this Court's resources and those of Shenzhen Mindray.

### 3. Sanctioning Shenzhen Mindray Would Be Unjust

Courts imposing harsh sanctions must not only find willfulness but also ensure that the sanction is "just." *Gen. Ins. Co. of Am. v. E. Consol. Util., Inc.*, 126 F.3d 215, 220 (3d Cir. 1997). Courts in this Circuit conduct a five-factor analysis to determine whether imposing case-dispositive and issue-establishment sanctions would be just and would comport with due process. *Kahaluu*, 857 F.2d at 603. A proper analysis of these factors demonstrates that the sanctions sought by Masimo should be denied.

The *first* and *second factors* (the public's interest in expeditious resolution of litigation and the court's need to manage its dockets) do not favor Masimo. These factors take into account any delay in the pace of litigation caused by the infraction. Here, the public's interest in expeditious resolution of litigation does not favor denying any litigant due process. Prior to issuance of this Court's May 28 Order, the obligations imposed on Shenzhen Mindray by SFDA Order I had not been addressed as required by the pertinent Supreme Court authority. Further, the case schedule was vacated by the Court – relieving any impact on Masimo – not because of delay in the production of the Shenzhen Mindray source code, but instead due to *Masimo's eighteen month delay in seeking to add a new party*. Accordingly, the delayed production of Shenzhen Mindray source code will have little or no impact on the expeditious resolution of this litigation nor has it complicated the Court's management of its docket.

Regarding the second factor, Masimo has repeatedly failed to comply with its discovery obligations, requiring Shenzhen Mindray to bring repeated motions to compel to get any of the documents to which it is entitled. *See* Dkt. Nos. 130 (Joint Stip. Accomp'g Shenzhen Mindray's Mot. to Compel (filed March 27, 2014)), 157 (Joint Stip. Accomp'g Shenzhen Mindray's Mot. to Compel (filed April 24, 2014)), and Dkt. No. 186-2, Ex. D (correspondence sent by J. Gray to N. Belair dated May 9, 2014 agreeing to delay filing third motion to compel for additional discovery conference).

Accordingly, the second factor does not weigh in Masimo's favor where it has affirmatively obstructed Shenzhen Mindray's access to discovery.  *See id.*; *see also* Dkt. No. 180 (Shenzhen Mindray's Mot. for Sanctions).  Shenzhen Mindray's justifiable delay in producing the source code that it has or will produce has not delayed any pretrial preparation, and will not delay trial.  *See Kahaluu*, 857 F.2d at 603 (holding first two factors weighed lightly where case was proceeding to trial in timely fashion and observing that "cases in which we have upheld orders of dismissal have often involved serious disruption of the district court's trial schedule.").

Under the ***third factor***, the risk of prejudice to Masimo is insufficient to warrant sanctions.  Shenzhen Mindray's source code will be made available with ample time for Masimo to analyze it and prepare for trial.  By the time this motion is heard, Shenzhen Mindray will have produced to Masimo samples of all of the accused Shenzhen Mindray products.  In the absence of a trial date and the disruption caused by Masimo's belated motion to join Masimo International SARL, Masimo has not and will not be prejudiced.  Accordingly, the third factor does not support imposition of the sanctions.

Masimo concedes that the ***fourth factor*** (public policy favoring disposition of cases on their merits) "always weighs against" severe sanctions, such as those sought by Masimo.

The ***fifth factor*** of the five-factor analysis requires the Court to consider the availability of less drastic sanctions.  Shenzhen Mindray's efforts to balance the competing interests of its national law with those imposed by the Court, and to secure due process, do not warrant sanctions.[7]

---

[7] Masimo acknowledges that under a sanction that the accused products practice the claims in Masimo's algorithm patents, "Masimo would still need to prove the remaining elements of patent infringement…including a sale or offer to sell in the United States….And Shenzhen Mindray would still be entitled to challenge patent validity." Mot. at 12:15-18.  Indeed, this Court recently found disputed issues of fact as to whether the accused products were sold, offered for sale, used, made or imported in or into the United States by Shenzhen Mindray – an issue that has nothing to do with source code.  *See* Dkt. No. 226.  Nonetheless, Masimo also appears to seek, in other

With Shenzhen Mindray having produced its source code no later than July 28, Masimo should be put to its proof regarding its claims that the source code establishes that the elements of any algorithm patent claim is met.  Shenzhen Mindray has already produced the source code and related technical documents describing its 9005 version pulse oximetry algorithms, used in its 9005 and 0850 boards.  Pisano Decl. at ¶ 16.  This source code conclusively established that none of the products including those algorithms infringe any of Masimo's asserted patents.  Dkt No. 201-1 at ¶¶ 7, 9.  Indeed, in Masimo's interrogatory response identifying accused products it does not accuse 9005-based products of infringement.  *Id.*  Shenzhen Mindray's production of its 9006 and 9008 source codes likewise will establish that no valid and enforceable claim of any Masimo asserted patent is practiced by Shenzhen Mindray.

Masimo's proposed sanction establishing infringement further would violate due process because it would deny Shenzhen Mindray its opportunity to present infringement defenses, including those as to which Shenzhen Mindray's source code is not at all probative.  First, an invalid claim cannot be infringed.  *Commil USA, LLC v. Cisco Sys.*, 720 F.3d 1361, 1368 (Fed. Cir. 2013) ("It is axiomatic that one cannot infringe an invalid patent").   As Masimo does not dispute that Shenzhen Mindray remains entitled to show the asserted patents invalid, a sanction can, at most, find that elements of certain patent claims are met, but cannot include a finding of infringement pending resolution of the validity of each algorithm patent.

Second, Shenzhen Mindray does not conduct any activity in the United States cognizable under the Patent Act, as discussed in Shenzhen Mindray's motion for partial summary judgment.  Shenzhen Mindray does not sell, use, make, or import in or into the United States any of the accused products.  35 U.S.C. § 271; *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013) ("It is axiomatic that U.S. patent law does not operate extraterritorially to prohibit

sections of its brief, a finding of infringement.  *See* Mot. at 12:7-9; 15:27-16:3.  For this reason, Shenzhen Mindray addresses both sanctions.

infringement abroad.").  Accordingly, a finding of infringement imposed for Shenzhen Mindray's belated production of its source code, which has nothing to do with the location element of infringement, would deny Shenzhen Mindray due process.  *See, e.g., Kahaluu*, 857 F.2d at 602 ("due process considerations require that the sanction be specifically related to the particular claim which was at issue in the order to provide discovery"); *see also Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983) ("Sanctions interfering with a litigant's claim or defense violate due process when imposed merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.")

Third, Masimo's proposed sanction of a finding of infringement would deprive Shenzhen Mindray of its right to present its defense that products sold in China to Mindray DS are licensed under Masimo's separate license agreement with Mindray DS (the "DS Agreement").  *See* Dkt. No. 144 (Shenzhen Mindray's Fourth Am. Answer and Countercls., Ninth Affirmative Defense (Implied License)) at ¶ 35.  Under that agreement, Mindray DS agreed to sell primarily Masimo products, with the express understanding that with that obligation met, Mindray DS could continue to sell a number of pulse oximetry technologies that were not *licensed by Masimo* at that time.[8] *See* Dkt. No. 16 (filed under seal), Ex. A.  The substitution by Mindray DS of one non-Masimo pulse oximetry technology for another under the DS Agreement (in this case, that of Shenzhen Mindray) was therefore impliedly licensed, so long as Mindray DS continued to sell "primarily Masimo."  It is undisputed that Mindray DS has consistently sold primarily Masimo products since the inception of the DS Agreement.  Accordingly, a finding of infringement for the Shenzhen Mindray products sold to Mindray DS based on Shenzhen Mindray's justifiable delay in producing its source code would arbitrarily deny Shenzhen Mindray its right to establish this defense at trial.

---

[8] Although Masimo eventually licensed Nellcor under its patents in 2006, there is no dispute that Mindray DS's sales of Nellcor pulse oximetry products prior to that time were specifically contemplated to continue and were licensed under the DS Agreement.

OPPOSITION TO MASIMO'S RENEWED MOTION FOR SANCTIONS
15
Case No. SACV12-02206 CJC (JPRx)

## B.   Masimo's Additional Requests For Sanctions Are Unfounded

Masimo's additional sanctions requests are even more offensive to due process, and should be rejected. Masimo's request that the Court order that Shenzhen Mindray's source code is copied from Masimo's "SET" Technology has no basis in fact or law.

In support of Masimo's original sanctions motion, Masimo's CEO, Mr. Kiani, submitted a perjurious declaration in which he implies that Shenzhen Mindray was given access to Masimo's source code (it never was) and further avers that he expressed concern that Shenzhen Mindray copied that source code (it did not). Dkt. No. 190-1 at ¶ 4. Masimo continues to rely upon Mr. Kiani's declaration in its renewed Motion, and continues to assert "that Shenzhen Mindray copied Masimo's patented inventions." Mot. at 22:6-7. In view of Shenzhen Mindray's production of its source code, it should be allowed to defend against Masimo's onslaught of lies to demonstrate to this Court and the jury, that Shenzhen Mindray engaged in none of the conduct alleged by Masimo.

Masimo's production of source code in this case has been woefully inadequate, and in violation of Magistrate Judge Rosenbluth's Order. Masimo's products are made using computer source code that implements various functions, and the two functions most relevant to the patent infringement issues in this case are pulse oximetry and Masimo's X-Cal functionality. Pulse oximetry includes the ability to non-invasively transmit light through a patient's tissue, *e.g.*, a fingertip, measure the amount of light that passes through the tissue and exits the skin on the other side of the fingertip, and then use that data to calculate the amount of oxygen in the patient's blood. Masimo's asserted algorithm patents are directed to pulse oximetry, and the calculation of blood oxygen saturation. Masimo's X-Cal functionality, on the other hand, is the focus of Shenzhen Mindray's patent infringement counterclaims and relates to a digital lock that Masimo uses to disable its monitors if a user plugs a non-Masimo sensor or cable into the Masimo monitor, or whenever a Masimo X-Cal sensor or cable is operated longer

than a pre-set limit.  Masimo has produced mere snippets of source code relating to X-Cal, and none of its source code relating to pulse oximetry.

Masimo refers to the fact that Shenzhen Mindray's technical expert has reviewed Masimo's deficient production of source code for more than 15 days, but the review has taken so long precisely because Masimo refuses to produce the complete source code for any product, and instead only has produced incomplete and disjointed snippets of source code relating only to X-Cal, frustrating the expert's ability to understand the structure and function even of Masimo's X-Cal source code.  This despite the fact that, on April 24, 2014, Magistrate Judge Rosenbluth ordered Masimo to produce its source code and all related technical documents by May 8, 2014.  Pisano Decl., Ex. H at 81:21-25.  But Masimo has refused to produce any of its source code relating to the calculation of blood oxygen saturation by its products, *i.e.*, the functionality of the alleged inventions of Masimo's asserted algorithm patents, and the very functionality that Masimo asserts Shenzhen Mindray copied from Masimo's source code.  That source code is highly relevant to Masimo's infringement and damages claims against Shenzhen Mindray.[9]  *Id.*, Ex. J.  Masimo must still produce its own source code (so far withheld in violation of Magistrate Judge Rosenbluth's order) so that Shenzhen Mindray's technical expert can compare the two codes and demonstrate that Shenzhen Mindray's source code is completely different from Masimo's source code.

### C.   Attorneys' Fees Are Not Appropriate

Attorneys' fees are not available where a party's noncompliance was "substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).  Shenzhen Mindray complied with this Court's discovery orders to the full extent possible consistent with its duties to this Court and the laws of its home country.  This Court recognized that, prior to its May 28 Order, Shenzhen

---

[9] Masimo plainly produced the source code for its pulse oximetry algorithms in its pending litigation with Philips in Delaware District Court; and unlike Shenzhen Mindray, Masimo faces no impediment in producing that source code here.

Mindray lacked the benefit of its views on the March 6 discovery order, and in its June 19 Order offered Shenzhen Mindray another chance to find a way to reconcile its home country's laws with this Court's Orders.  Shenzhen Mindray submits that by July 28, it will have complied with all aspects of this Court's orders.  It will only be Masimo, which was also ordered to produce its source code by Magistrate Judge Rosenbluth, who is in default on the production of source code.

As recognized by the Supreme Court, Shenzhen Mindray's "fear of criminal prosecution constitutes a weighty excuse for nonproduction." *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 211 (1958).  Here, Shenzhen Mindray's alleged noncompliance arose from a good faith dispute regarding the validity of the Magistrate Judge's March 6 Order.  That question remained unanswered until this Court's May 28 Order.  And this Court's June 19 Order made plain that Shenzhen Mindray still could timely comply with the May 28  Order. Masimo has suffered no prejudice.  Masimo's decision to refile its motion rather than wait until Shenzhen Mindray could evaluate and react to the Court's June 19 Order does not warrant an award of attorneys' fees.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

OPPOSITION TO MASIMO'S RENEWED MOTION FOR SANCTIONS
18
Case No. SACV12-02206 CJC (JPRx)

## IV. __CONCLUSION__

For at least the foregoing reasons, Shenzhen Mindray respectfully requests that this Court deny Masimo's motion for sanctions.

DATED:  July 7, 2014

Respectfully submitted,

FOLEY & LARDNER LLP


_/s/ Nicola A. Pisano_
Nicola A. Pisano (CA Bar No. 151282)
    npisano@foley.com
Jose L. Patiño (CA Bar No. 149568)
    jpatino@foley.com
Shawn E. McDonald (CA Bar No. 237580)
    semcdonald@foley.com
Justin E. Gray (CA Bar No. 282452)
    jegray@foley.com
Christopher C. Bolten (CA Bar No. 268284)
    cbolten@foley.com

Attorneys for Defendant, Counter-Plaintiff and Counter Counter-Defendant SHENZHEN MINDRAY BIO-MEDICAL ELECTRONICS CO., LTD.

4824-8213-2252.6

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this case.

Executed on July 7, 2014.

FOLEY & LARDNER LLP


*/s/ Nicola A. Pisano*
Nicola A. Pisano (CA Bar No. 151282)
    npisano@foley.com

Attorneys for Defendant, Counter-Plaintiff
and Counter Counter-Defendant
SHENZHEN MINDRAY BIO-MEDICAL
ELECTRONICS CO., LTD.

4824-8213-2252.6