Joseph R. Re (SBN 134,479)
Joe.Re@knobbe.com
Jon W. Gurka (SBN 187,964)
Jon.Gurka@knobbe.com
Stephen W. Larson (SBN 240,844)
Stephen.Larson@ knobbe.com
Nicholas A. Belair (SBN 295,380)
Nick.Belair@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Fax:     (949) 760-9502

Attorneys for Plaintiffs and Counter-Defendant
MASIMO CORPORATION and
MASIMO INTERNATIONAL SARL

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION a Delaware corporation, | Civil Action No. SACV12-02206 CJC (JPRx) |
| and | **MASIMO CORPORATION'S REPLY TO SHENZHEN MINDRAY'S OPPOSITION TO MASIMO'S RENEWED MOTION FOR SANCTIONS** |
| MASIMO INTERNATIONAL SARL, a corporation of Switzerland | |
| Plaintiffs, | |
| v. | |
| SHENZHEN MINDRAY BIO-MEDICAL ELECTRONICS CO., LTD a corporation of the People's Republic of China | Date:  July 28, 2014 Time: 1:30 p.m. Place: Courtroom 9B Hon. Cormac J. Carney |
| Defendant. | |
| AND RELATED COUNTERCLAIMS | |

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ....................................................................................1

II.   ARGUMENT ..........................................................................................3

   A.   Shenzhen Mindray's Defiance of the March 6 Order
        Warrants Sanctions ........................................................................3

      1.   Shenzhen Mindray's Ongoing Failure To Produce
           Source Code.........................................................................3

      2.   Shenzhen Mindray's Ongoing Failure To Produce
           Product Samples .................................................................8

      3.   The Imposition of Sanctions Is Just And
           Warranted In View of Shenzhen Mindray's
           Ongoing Contempt Of Court .............................................11

   B.   Masimo's Request For Additional Sanctions Is
        Warranted in View of Shenzhen Mindray's Ongoing
        Contempt Of Court ......................................................................15

   C.   Attorney's Fees Are Warranted In View Of Shenzhen
        Mindray's Ongoing Violation Of The March 6 Order .................16

III.  CONCLUSION ......................................................................................18

# TABLE OF AUTHORITIES

**Page No(s).**

*Adriana Int'l Corp. v. Thoeren*,
   913 F.2d 1406 (9th Cir.1990) ........................................................................13

*G-K Props. v. Redevelopment Agency of San Jose*,
   577 F.2d 645 (9th Cir. 1978) ...........................................................12, 13, 14

*Henry v. Gill Indus., Inc.*,
   983 F.2d 943 (9th Cir. 1993) ...........................................................................8

*Hull v. Eaton Corp.*,
   825 F.2d 448 (D.C. Cir. 1987) .......................................................................14

*Jorgensen v. Cassiday*,
   320 F.3d 906 (9th Cir. 2003) .........................................................................10

*N. Am. Watch Corp. v. Princess Ermine Jewels*,
   786 F.2d 1447 (9th Cir.1986) ........................................................................12

*Pass & Seymour, Inc. v. Hubbell Inc.*,
   255 F.R.D. 331 (N.D.N.Y. 2008) .....................................................................4

*Payne v. Exxon Corp.*,
   121 F.3d 503 (9th Cir. 1997) .........................................................................13

*Petro v. Lighting Serv., Inc.*,
   No. 3:09-cv-037, 2009 U.S. Dist. LEXIS 55096
   (S.D. Ohio June 29, 2009) ................................................................................4

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) .......................................................................13

*Simms v. Ctr. for Corr. Health & Policy Studies*,
   272 F.R.D. 36 (D.D.C. 2011) ...........................................................................4

*Thompson v. Univ. Med. Ctr.*,
   520 Fed. App'x. 568 (9th Cir. 2013) ..............................................................10

*United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*,
   857 F.2d 600 (9th Cir. 1988) ...........................................................................6

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No(s).**

*Valley Eng'rs Inc. v. Elec. Eng'g Co.*,
  158 F.3d 1051 (9th Cir. 1998).......................................................................12

*Wyle v. R.J. Reynolds Indus., Inc.*,
  709 F.2d 585 (9th Cir. 1983).........................................................................7

*Zysman v. Zanett Inc.*,
  No. C-13-02813 YGR (DMR), 2014 U.S. Dist. LEXIS 44859
  (N.D. Cal. Mar. 31, 2014) ...........................................................................4

# OTHER AUTHORITIES

35 U.S.C. § 271.................................................................................................15

Fed. R. Civ. P. 37..............................................................................................12

Fed. R. Civ. P. 34..............................................................................................4

# I. **INTRODUCTION**

The Court should sanction Shenzhen Mindray for its ongoing contempt of this Court and defiance of the March 6 Order.  Shenzhen Mindray has produced no additional source code since Masimo's prior Motion for Sanctions.  Shenzhen Mindray merely states it will provide additional source code by July 28.  But that is over *three* months after the April 14 deadline.  Moreover, even the source code Shenzhen Mindray commits to provide falls far short of its obligations under the March 6 Order.

For example, Shenzhen Mindray does not commit to provide source code for *three* of the five boards.  Instead, Shenzhen Mindray cites the declaration of its United States attorney to represent that the withheld code is "essentially" the same as the code that eventually will be produced.  But Shenzhen Mindray should similarly make its source code available to Masimo's attorneys.  Shenzhen Mindray's ongoing failure to comply with the March 6 Order warrants sanctions.

Shenzhen Mindray also demands that Masimo review the source code for a fourth board in *China*.  That violates this Court's Protective Order, which expressly requires Shenzhen Mindray to produce any source code at its counsel's offices in *San Diego*.  Shenzhen Mindray's demand that Masimo review its source code in China and remove the source code at its "own risk" violates this Court's Protective Order and amounts to no production at all.

Shenzhen Mindray has also failed to produce additional product samples.  Shenzhen Mindray merely states it will do so by July 28.  But even the samples Shenzhen Mindray commits to provide fall short.  For example, Shenzhen Mindray does not commit to produce a sample of its "Beneview T6," a product named in Masimo's Complaint.  Shenzhen Mindray also refuses to provide a sample of its private label "Lumeon" product because Masimo did not specifically request it.  The March 6 Order, however, did not require Masimo to

- 1 -

request samples.  It required Shenzhen Mindray to *investigate* which of its products were shipped into the US by any entity and provide a sample of those products.  Shenzhen Mindray's failure to comply with the March 6 Order has prejudiced Masimo, warranting sanctions.

Accordingly, Masimo's Motion is not "moot."  Shenzhen Mindray has not and will not comply with the March 6 Order.  Moreover, Masimo's Motion is not "premature."  Masimo spent more than a week engaging in multiple attorney conferences and communications with Shenzhen Mindray.  Those communications confirmed that Shenzhen Mindray has not and will not comply with the Court's March 6 Order.

This Court previously held that Masimo could renew its prior Motion for Sanctions if "Shenzhen Mindray has still not complied with *all aspects* of the Magistrate Judge's March 6 order, including producing *all* relevant product samples ordered to be produced by the Magistrate Judge . . . ."  (D.I. 227 (emphasis added).)  There is no dispute that, over *four* months after this Order, Shenzhen Mindray has still not done so.  Accordingly, Shenzhen Mindray continues to be in contempt of this Court.

Shenzhen Mindray's discovery misconduct warrants case-dispositive sanctions.  At a minimum, however, the Court should issue an order stating that any source code not provided *in the United States* by July 28 practices the claims of Masimo's asserted algorithm patents.  Similarly, the Court should order that any product for which samples have not been provided by July 28 practices the claims of these patents.  Such an order would be narrowly tailored and address the specific prejudice caused by Shenzhen Mindray's discovery violations.  Shenzhen Mindray would finally be required to make a choice: either comply with the March 6 Order, at least by July 28, or face certain sanctions.

/ / /

## II.  ARGUMENT

**A.**  **Shenzhen Mindray's Defiance of the March 6 Order Warrants Sanctions**

### 1.  Shenzhen Mindray's Ongoing Failure To Produce Source Code

Shenzhen Mindray argues that sanctions are not warranted because it will produce additional source code by July 28, 2014.  (D.I. 235 at 6.)  But Shenzhen Mindray does not commit to provide *any* source code for *three* out of the five boards: the 0850, 6800, and 0152 boards.  (*See id.* at 7.)

Instead, Shenzhen Mindray cites the declaration of its outside United States attorney to argue that this source code is "essentially the same" as the source code Shenzhen Mindray will purportedly produce.  (D.I. 235-1 at 7.)  But Shenzhen Mindray should not be permitted to restrict its source code to its own attorneys.  Shenzhen Mindray should provide its source code to Masimo's attorneys and experts.  Source code shows how the accused algorithms operate and typically contains comments revealing the engineers' understanding of the code and explaining the changes in the versions of code.  Shenzhen Mindray's continuing disobedience of the March 6 Order has prejudiced Masimo and warrants sanctions.

Shenzhen Mindray states that it will only provide its 9008 source code in *China*.  But that violates this Court's Protective Order, which provides that "[a]ny source code produced in discovery shall be made available for inspection . . . at the *San Diego office* of the Producing Party's counsel, in the case of source code produced by Shenzhen Mindray . . . ."  (D.I. 124 at 12 (emphasis added).)  Shenzhen Mindray argues that it "can be expected to do no more than to provide the 9008 source code for inspection in China."  (D.I. 235 at 8.)  But Shenzhen Mindray can and should be expected to comply with this Court's orders.  Magistrate Judge Rosenbluth already resolved the issue of where source code must be produced.  (D.I. 119.)  Shenzhen Mindray should not be permitted

to revisit this issue.

Shenzhen Mindray contends that Rule 34(b)(2)(E)(i) permits it to produce source code in China.  (D.I. 235 at 8.)  That rule actually requires Shenzhen Mindray to produce documents "as they are kept in the usual course of business."  Fed. R. Civ. P. 34(b)(2)(E)(i).  Thus, the rule governs the manner, not the location, of the production.  Moreover, Rule 34(b)(2)(E) states that its procedures apply "[u]nless otherwise stipulated or ordered by the court . . . ."  Here, the Court ordered that Shenzhen Mindray produce any source code in San Diego.  (D.I. 124 at 12.)  Thus, Rule 34(b)(2)(E)(i) does not apply.

None of Shenzhen Mindray's cases support its demand that Masimo review source code in China.  The court in *Zysman v. Zanett Inc.*, No. C-13-02813 YGR (DMR), 2014 U.S. Dist. LEXIS 44859, at *5-6 (N.D. Cal. Mar. 31, 2014), held that a party did not have to reorganize its documents for the benefit of the receiving party.  The court in *Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 335 (N.D.N.Y. 2008), held that a party was not permitted to produce its documents in hundreds of unlabeled folders not maintained in the ordinary course of business.  The court in *Petro v. Lighting Serv., Inc.*, No. 3:09-cv-037, 2009 U.S. Dist. LEXIS 55096, at *4 (S.D. Ohio June 29, 2009), rejected a requesting party's selection of an arbitrary location for the production of documents.  None of those cases are relevant to the issues presented here. Shenzhen Mindray further cites *Simms v. Ctr. for Corr. Health & Policy Studies,* 272 F.R.D. 36, 40 (D.D.C. 2011), but in that case, the court ordered that the producing party to make its source code available at the responding party counsel's offices.

Shenzhen Mindray's demand is particularly unreasonable in view of its position that removing source code from China may violate Chinese law. Indeed, for months, Shenzhen Mindray argued that "the criminal law of China makes it a very high risk proposition to attempt to remove technical materials

- 4 -

from China," including potential "***imprisonment*** and even ***death***." (D.I. 111-3, Ex. B at 63 (emphasis added).)   As Masimo has previously shown, the administrative process in China is "rife for abuse and outside influence," and corruption is widespread.   (D.I. 113-1 at ¶ 6.)   Given Shenzhen Mindray's "well-known connections with the Chinese government," Shenzhen Mindray's demand that Masimo obtain source code in a manner that Shenzhen Mindray has contended is criminal is unreasonable.   (*Id*.)   It is particularly unfair in view of the fact that Shenzhen Mindray could have undertaken the review process it touted for months as "mandatory" to eliminate any risk.   (D.I. 111-1 at 40:20-23.)   That Shenzhen Mindray did not do so should not subject Masimo to any "risk" of violating Chinese law.

Shenzhen Mindray states that its 9006 source code is now "obsolete" and can be produced.   (D.I. 235 at 7.)   But Shenzhen Mindray provides no coherent explanation of why this code suddenly became obsolete after Masimo filed its present Motion.   Shenzhen Mindray merely cites its own unilateral conclusion that this code is "sufficiently near the end of its commercial life."   (*Id*.)   But Shenzhen Mindray cannot selectively limit its production to the source code that is the ***least*** commercially relevant.   Shenzhen Mindray must produce ***all*** of the source code, as ordered by this Court, including the 9008 source code it continues to withhold.

Shenzhen Mindray argues that sanctions are not warranted because the parties will be proposing new discovery deadlines.   But the amount of time for discovery is irrelevant where, as here, a party simply refuses to provide discovery.   Moreover, in granting Masimo's Motion to add Masimo International SARL, this Court observed that it "is not clear that significant additional discovery [will] be necessary."   (D.I. 229 at 2-3.)   Shenzhen Mindray continues to blame Masimo for its failure to include Masimo International SARL at the outset of this case.   But Masimo reasonably relied on Shenzhen

- 5 -

1  Mindray's admissions and allegations from the outset of the lawsuit that
2  Masimo is a party to the agreement with standing to pursue its claims.
3  (D.I. 225 at 12.)[1]

4      Shenzhen Mindray contends that Judge Rosenbluth's "chief reason for
5  refusing to reconsider" the April 14 deadline was the trial date set in the original
6  scheduling order.  (D.I. 235 at 6.)  But Shenzhen Mindray provides no support
7  for this assertion.   Shenzhen Mindray merely cites a statement regarding
8  Shenzhen Mindray's "delay" in providing discovery.  (*See id.* (citing Pisano
9  Decl., D.I. 235-2 Ex. H at 46:2-47:16).)  Judge Rosenbluth did not uphold her
10 discovery deadline because of the case schedule.  As she explained in the very
11 transcript Shenzhen Mindray cites, "[I]t's not that there's no time.  It's that I've
12 **already ruled**."  (*Id.* at 45:24-25 (emphasis added).)

13     Shenzhen Mindray continues to defy this ruling, and attempts to justify
14 this defiance by making baseless allegations against Masimo and its attorneys.
15 Shenzhen Mindray alleges that Masimo will misuse its source code to pursue
16 patent claims before the Patent Office.  (D.I. 235 at 7.)  That allegation is
17 baseless and itself sanctionable.  Shenzhen Mindray cites no evidence or even
18 allegation in its counterclaims that Masimo and/or its attorneys have ever used a
19 party's information produced in litigation to pursue or prosecute claims in
20 patent prosecution.  Moreover, this Court issued a Protective Order with a strict
21 prosecution bar four months ago.  Shenzhen Mindray's attempt to justify its
22 misconduct by asserting baseless allegations against Masimo is unpersuasive.

23     Shenzhen Mindray cites *United States ex rel. Wiltec Guam, Inc. v.*
24 *Kahaluu Constr. Co.*, 857 F.2d 600, 603 (9th Cir. 1988), to argue that Masimo's

---

26 [1] Masimo filed its Second Amended Complaint adding Masimo SARL on
July 7, 2014 and requested an attorney conference regarding the schedule that
27 same week.  (D.I. 233.)  Shenzhen Mindray stated that its lead attorney had a
scheduling conflict that week so the parties are now scheduled to discuss the
28 revised schedule on July 14, 2014.

requested sanctions are authorized only in "extreme circumstances" and that "[n]o such circumstances are present here." (D.I. 235 at 6.) In reality, *Kahaluu* states that sanctions are available where discovery violations are 'due to willfulness, bad faith, or fault of the party." *Kahaluu*, 857 F.2d at 603 (citing *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983)). Shenzhen Mindray does not dispute that it intentionally withheld its source code. And, there can be little dispute that this violation is Shenzhen Mindray's own fault.

For months, Shenzhen Mindray withheld its source code on the ground that it needed time to submit the source code to the Chinese government, while repeatedly failing to do so. (*See, e.g.,* D.I. 129 at 2.) Indeed, Shenzhen Mindray's failure to undertake this review is well documented in this Court's orders. (*See id*. at 2 ("Shenzhen Mindray has not made ***any attempt to comply*** with Judge Rosenbluth's order, even by, at the very least, beginning the process of Chinese government review") (emphasis added); D.I. 153 at 1 ("[Shenzhen Mindray] has ***repeatedly delayed*** submitting the disputed documents to the Chinese authorities. . . .") (emphasis added); *id.* at 2 ("[Shenzhen Mindray] is ***wholly responsible*** for creating the situation it finds itself in.") (emphasis added); D.I. 202 at 6 ("Shenzhen Mindray . . . at the very least, could have made a good faith attempt to [present actual evidence that its source code constitutes a Chinese state secret]").)

Indeed, Shenzhen Mindray did nothing at all until ***three*** weeks ***after*** the Court's March 6 Order. (D.I. 232-1 at 4.) Then, Shenzhen Mindray merely sent a letter to its local FDA Office in Shenzhen, China (the "SFDA"), which Shenzhen Mindray does not dispute is not responsible for reviewing state secrets. (*Id*. at 19-20.) Judge Rosenbluth correctly described this letter as "a piece of ***advocacy*** and in some instances ***inaccurate***." (D.I. 153 at 3.) Judge Rosenbluth correctly found Shenzhen Mindray's attempt to rely on the SFDA's

response to this letter as "***disingenuous***" and "to be charitable, mistaken." (*Id.* at 2-3 (emphasis added).) Judge Rosenbluth found Shenzhen Mindray's "contention that [it needed] time to seek 'reconsideration' of the Chinese finding puzzling given that its letter seems to have ***sought*** such a finding in the first place." (*Id.* at 3 (emphasis added).)

Even today, Shenzhen Mindray has not sought "reconsideration" of the merits of the SFDA's determination. Instead, Shenzhen Mindray has simply asked the SFDA whether its prior determination permits Shenzhen Mindray to produce certain "outdated" source code relating to Shenzhen Mindray's least commercially relevant products. (D.I. 164-2, Ex. H at 46.) Accordingly, Shenzhen Mindray's ongoing "disobedient conduct" is not "outside the control of" Shenzhen Mindray, which "is all that is required to demonstrate willfulness, bad faith, or fault" and impose sanctions. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993).

Notably, Masimo does not even seek dismissal but rather a finding directly targeted to the discovery violation. Absent Masimo's requested sanction, Shenzhen Mindray will actually ***benefit*** from its defiance of this Court's Order. Such a result would be untenable and would undermine these proceedings and this Court's authority. The Court should sanction Shenzhen Mindray for its ongoing disobedience of the March 6 Order.

## 2. Shenzhen Mindray's Ongoing Failure To Produce Product Samples

Shenzhen Mindray also continues to be in contempt of this Court for failing to produce product samples. Indeed, Shenzhen Mindray has not produced a single additional product sample since the Court's March 27 deadline. Shenzhen Mindray states that it will provide more samples by July 28. But Shenzhen Mindray does not even commit to produce samples of ***all*** of the accused products.

For example, Shenzhen Mindray's brief is silent regarding its BeneView T6, a product named in Masimo's Complaint.  (D.I. 69 at ¶ 24.)  Shenzhen Mindray also refuses to provide a sample of its "private label" pulse oximeter entitled "Lumeon."  (D.I. 235 at 11.)  Shenzhen Mindray claims that "Lumeon" is not an accused product.  Not so.  Masimo accuses products containing Shenzhen Mindray pulse oximetry technology that are imported or sold within the United States.  (D.I. 69 at 24.)  Shenzhen Mindray does not dispute that "Lumeon" meets these criteria.  (D.I. 235 at 10.)

Shenzhen Mindray contends that it does not need to produce a "Lumeon" sample because Masimo did not specifically request one.  (*Id.* at 10-11.)  But the March 6 Order did not require Masimo to request samples.  The March 6 Order required Shenzhen Mindray to investigate "which of its products" containing Shenzhen Mindray technology "were ever shipped into the US by **any** entity" and provide Masimo "one sample of each such product free of charge." (D.I. 111-1 (Joint Stipulation) at 46:2-8; D.I. 119 (referencing "lines 2 through 8 on page 46 of the Joint Stipulation")).  Masimo cannot be expected to identify each Shenzhen Mindray product imported into the United States.  Indeed, Masimo learned of Shenzhen Mindray's recent "private label" "Lumeon" sales from Shenzhen Mindray's Opposition Brief.  Shenzhen Mindray's failure to investigate and produce samples has prejudiced Masimo and warrants sanctions.

Shenzhen Mindray's delay has also compromised the quality, reliability and authenticity of the samples Masimo will receive.  Three months ago, Shenzhen Mindray told this Court "that the requested samples are in Shenzhen, China" and just "need to be shipped through international customs." (D.I. 125-1 at 23.)  Shenzhen Mindray now states that certain samples are not in inventory. (D.I. 232-6, Ex. 4 at 10-11.)  As a result, Shenzhen Mindray will now "purchase" samples from third parties, including on eBay, and "build" samples from spare parts in its factory.  (D.I 235 at 9-10.)  But Masimo should not be

relegated to examining samples of questionable origin or samples strategically **built** by Shenzhen Mindray in view of ongoing litigation.  Shenzhen Mindray's discovery misconduct has irrevocably prejudiced Masimo.

Moreover, Shenzhen Mindray does not dispute that its failure to provide samples was entirely within its control.  That warrants sanctions.  *See Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) ("[d]isobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault") (affirming district court's **terminating** sanctions); *Thompson v. Univ. Med. Ctr.*, 520 Fed. App'x. 568 (9th Cir. 2013) (same).  Indeed, nearly three months ago, Judge Rosenbluth and this Court found that Shenzhen Mindray had not been diligent in providing samples.

As this Court summarized, Shenzhen Mindray had not "made **any attempt** to comply with Judge Rosenbluth's order, even by, at the very least . . . . beginning the process to pass the requested product samples through customs, as it argues must be done."  (D.I. 129 at 2 (emphasis added).)  Now, three months later, it is apparent that Shenzhen Mindray did **nothing further** to collect samples in the intervening months, even while shipping the accused products to **other** parties in the United States.[2]  Shenzhen Mindray now requests even **more** time to "locate," "purchase," "built or procure[]" samples.  (D.I. 235 at 9-10.)

Shenzhen Mindray has also made shifting and inconsistent representations regarding its product samples.  Three months ago, Shenzhen Mindray represented to Masimo and this Court that product samples were "in Shenzhen, China" and ready to be shipped through customs.  (D.I. 125-1 at 23.)  Shortly before Masimo's present Motion, Shenzhen Mindray's attorneys

---

[2] Masimo's import information showing the shipment of hundreds of PM-60 monitors originates from a widely used service that simply collects information reported to United States customs under Federal law.  Shenzhen Mindray identifies no inaccuracy in this information; it merely alleges that the products are eventually sold under a different "Lumeon" label.  (D.I. 235 at 14.)

represented that certain products, such as the PM-8000 and PM-9000 products, were not in inventory in China.  (D.I. 232-6 at 11.)  Then, just ten days later, Shenzhen Mindray now represents that such samples are indeed in China.  (D.I. 235-1 at ¶ 6 (Pisano Declaration).)   Shenzhen Mindray's shifting representations have made discovery a "moving target" that has complicated and undermined these proceedings.

Shenzhen Mindray's remaining arguments largely express disagreement and disdain for Shenzhen Mindray's obligations under the March 6 Order.  Shenzhen Mindray finds it "*absurd*" that it must provide a sample of its VS-800 monitor.  (D.I. 235 at 9-10 (emphasis added).)  Shenzhen Mindray believes this obligation of the March 6 Order "*defies logic*."  (*Id.* at 9-10 (emphasis added).)  But it was Shenzhen Mindray that promised to identify samples and provide those samples free of charge.  (D.I. 111-1 (Joint Stipulation) at 46:2-8.)  Judge Rosenbluth simply ordered Shenzhen Mindray to abide by its *own promise* to Masimo.  (D.I. 119 (referencing Joint Stipulation at 46:2-8).)

Shenzhen Mindray attempts to minimize the importance of these product samples by arguing that some of them involve "label" changes.  As Masimo has explained, however, this labeling is highly relevant to Masimo's patent infringement claims because Shenzhen Mindray has repeatedly *marked* its products with the numbers of the very patents Masimo now asserts.  (D.I. 232-1 at 22.)   Shenzhen Mindray's ongoing defiance of its discovery obligations cries out for sanctions.

### 3.   The Imposition of Sanctions Is Just And Warranted In View of Shenzhen Mindray's Ongoing Contempt Of Court

Shenzhen Mindray's arguments regarding the factors governing case-dispositive sanctions are not persuasive.  (D.I. 235 at 12.)  With regard to the first and second factors, Shenzhen Mindray argues that, before the Court's May 28 Order, its obligations in view of Chinese law "had not been addressed as

1  required by the pertinent Supreme Court authority." (*Id.*)  That is incorrect.  As
2  this Court observed in its May 28 Order, "Judge Rosenbluth had conducted as
3  thorough a comity analysis as necessary" because Shenzhen Mindray had
4  pointed to nothing suggesting any foreign interest in its discovery.  (D.I. 202 at
5  5.)  Moreover, prior to the May 28 Order, the Court had issued *two* orders
6  upholding the deadlines in the March 6 Order.  (D.I. 129; D.I. 152.)  Neither
7  order spurred Shenzhen Mindray to comply with the March 6 Order.

8       Shenzhen Mindray also points again to the fact that discovery in this case
9  will be extended.  (D.I. 235 at 12.)  But, as noted above, the amount of time for
10 discovery is irrelevant with regard to discovery Shenzhen Mindray will *never*
11 provide.  Moreover, that Shenzhen Mindray suggests it may now provide
12 discovery does not "restore to other litigants on a crowded docket the
13 opportunity to use the courts." *N. Am. Watch Corp. v. Princess Ermine Jewels*,
14 786 F.2d 1447, 1451 (9th Cir.1986) (citing *G-K Props. v. Redevelopment
15 Agency of San Jose*, 577 F.2d 645, 647 (9th Cir. 1978)).  As the Ninth Circuit
16 has explained, Fed. R. Civ. P. 37(b)(2) "does not limit the court to rewarding the
17 party wronged" but to undoing the harm caused "to the system of justice itself."
18 *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1059 (9th Cir. 1998), *cert
19 denied*, 526 U.S. 1064 (1999).

20      Litigants are expected to follow the rules and comply with this Court's
21 orders.  Thus, "[the Ninth Circuit has] said that where a court order is violated,
22 factors 1 and 2 *support* sanctions. . . ."  *Valley Eng'rs Inc.*, 158 F.3d at 1058
23 (affirming a case-dispositive sanction where a party "damage[d] the integrity of
24 the discovery process.") (emphasis added).  There is no dispute that Shenzhen
25 Mindray has violated this Court's March 6 Order.  Accordingly, the first and
26 second factors support sanctions.

27      Shenzhen Mindray attempts to distract from its discovery misconduct by
28 again pointing to Masimo, arguing that Masimo has "repeatedly failed to

- 12 -

comply with its discovery obligations." (D.I. 235 at 12-13.) Shenzhen Mindray is incorrect. Unlike Shenzhen Mindray, Masimo has satisfied its discovery obligations and has taken great care to comply with all of this Court's orders. Moreover, Shenzhen Mindray cites no precedent suggesting that a party can excuse its contempt of Court by pointing to the other party's purported discovery deficiencies.

Shenzhen Mindray's arguments regarding the third factor are even less persuasive. (*Id.* at 13.) Shenzhen Mindray claims that the risk of prejudice to Masimo is insufficient because Shenzhen Mindray will eventually make its source code and product samples available. However, Shenzhen Mindray has refused to produce all of its source code and product samples. Instead, Shenzhen Mindray is continuing to withhold discovery in violation of this Court's Order.

Moreover, under Ninth Circuit law, a "[f]ailure to produce documents as ordered . . . is considered sufficient prejudice" to warrant sanctions. *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997) (citing *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir.1990)). There is no dispute that Shenzhen Mindray has failed to produce discovery by the deadlines in the March 6 Order. As the Ninth Circuit has held, "[l]itigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents." *G-K Props.*, 577 F.2d at 647. Such conduct warrants sanctions.

Shenzhen Mindray makes no argument regarding the fourth factor. (D.I. 235 at 13.) As both parties agree, the fourth factor favors disposition on the merits. But that factor is never controlling where, as here, the other factors favor sanctions. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1022 (9th Cir. 2002) (upholding a sanction of default judgment against a non-compliant party). Moreover, it is Shenzhen Mindray that is preventing litigation

on the "merits" by withholding fundamental discovery in this case.  Masimo's requested sanction simply restores the imbalance and prejudice caused by Shenzhen Mindray's discovery misconduct.  The fourth factor does not weigh against Masimo's narrowly tailored sanction.

Shenzhen Mindray makes no substantive argument regarding the fifth factor.  That factor considers whether less drastic sanctions are available.  On this issue, Shenzhen Mindray simply states: "Shenzhen Mindray's efforts to balance the competing interests of its national law with those imposed by the Court, and to secure due process, do not warrant sanctions."  (D.I. 235 at 13.)  But that says nothing regarding the availability of lesser sanctions.

As Masimo explained in its Opening Brief, there is no lesser discovery sanction that would sufficiently cure the prejudice caused by Shenzhen Mindray's discovery violations.  (D.I. 232-1 at 14-15.)  "[I]mpos[ing] a fine [without other sanctions] would merely 'introduce into litigation a sporting chance theory encouraging parties to withhold vital information from the other side with the hope that . . . it would only result in a fine.'"  *G-K Props.*, 577 F.2d at 647.  Accordingly, the fifth factor, and the factors as a whole, favor sanctions.

Shenzhen Mindray argues that imposing sanctions will deprive it of due process because the sanctions will preclude Shenzhen Mindray from presenting various defenses.  (D.I. 235 at 15.)  But a sanction would violate due process if, unlike here, the discovery misconduct is outside of the sanctioned party's control or the misconduct could not interfere with the rightful decision of the case. *Hull v. Eaton Corp.*, 825 F.2d 448, 452 n.5 (D.C. Cir. 1987).  Moreover, Masimo's requested sanction would not prevent Shenzhen Mindray from presenting its defenses.  Masimo seeks a finding that the withheld source code and products practice the claims in Masimo's patents directed to pulse oximetry algorithms.  (D.I. 232-1 at 12.)  Under such a sanction, Masimo would still have

to prove the remaining elements of patent infringement under 35 U.S.C. § 271, such as a sale or offer to sell in the United States. And, Shenzhen Mindray would still be entitled to challenge patent validity and present other defenses, if relevant. Masimo's requested sanction would not violate due process. The Court should grant Masimo's request for sanctions.[3]

## B.  Masimo's Request For Additional Sanctions Is Warranted in View of Shenzhen Mindray's Ongoing Contempt Of Court

Shenzhen Mindray argues that Masimo's request for a finding of copying has "no basis in fact or law." (D.I. 235 at 16.) Shenzhen Mindray even accuses Masimo's CEO of submitting a "perjurious declaration" in stating his belief that Shenzhen Mindray copied Masimo's patented technology. (*Id.*) While Shenzhen Mindray's attorneys may have confidence that the withheld source code was not copied, Shenzhen Mindray has refused to provide that same source code to Masimo's counsel. Without Shenzhen Mindray's source code, Masimo is obviously deprived of probative evidence on the issue of copying, justifying sanctions.

Moreover, Shenzhen Mindray presents no argument at all in response to Masimo's request for a sanction that there are no available non-infringing design-arounds and that the accused products extensively use the invention. These arguments stand unrebutted and support imposing sanctions.

Shenzhen Mindray instead engages in another discussion of irrelevant facts, this time focusing on ***Masimo's*** source code, the operation of Masimo's "X-Cal technology" and how Masimo purportedly failed to provide its source code "in violation of Magistrate Judge Rosenbluth's Order." (*Id.* at 16.) None of this discussion is relevant to Shenzhen Mindray's contempt of this Court.

---

[3] Masimo does not agree that Shenzhen Mindray's defenses are valid or with the purported facts Shenzhen Mindray recites in support of those defenses. (D.I. 235 at 14-15.) In the interest of brevity, Masimo does not discuss its contrary views in this brief.

1   Moreover, Shenzhen Mindray mischaracterizes Magistrate Judge Rosenbluth's
2   Order.  Shenzhen Mindray states that Magistrate Judge Rosenbluth ordered
3   Masimo to produce its "source code and all related technical documents."
4   (*Id.* at 17.)  In reality, Magistrate Judge Rosenbluth ordered Masimo to produce
5   documents sufficient to describe the "structure, function and operation" of
6   Masimo's X-Cal technology.  (D.I. 163 at 1; D.I. 130-1 at 18.)

7        As Masimo explained to Shenzhen Mindray (in communications
8   Shenzhen Mindray omits from its Opposition), Masimo has fully complied with
9   that Order, including by providing Shenzhen Mindray full access to the X-Cal
10  source code months ago.[4]  In fact, Shenzhen Mindray has repeatedly failed to
11  explain what additional source code is purportedly necessary to understand
12  Masimo's X-Cal technology.  (D.I. 235-2, Ex. J at 40.)  And Shenzhen Mindray
13  only recently served a discovery request asking for all of Masimo's source code,
14  regardless of whether it relates to Masimo's X-Cal technology, and Masimo is
15  diligently considering that request.  Shenzhen Mindray's attempt to distract
16  from its contempt by pointing to Masimo's production of source code fails.  The
17  Court should award sanctions.

18  **C.   Attorney's Fees Are Warranted In View Of Shenzhen Mindray's**
19       **Ongoing Violation Of The March 6 Order**

20       Shenzhen Mindray argues that this Court should not award attorneys' fees
21  because Shenzhen Mindray's withholding of discovery was "substantially
22  justified."  (D.I. 235 at 17.)  Shenzhen Mindray claims that it "complied with
23  this Court's discovery orders to the full extent possible consistent with its duties
24  to this Court and the laws of its home country."  (*Id.* at 17.)  In reality, as noted

25

26       [4] Shenzhen Mindray's Exhibit J presents a discovery email from
    Shenzhen Mindray's counsel Shawn McDonald to Masimo's counsel Perry
27  Oldham dated June 23, 2014.  (D.I. 235-2.)  Shenzhen Mindray fails to include
    Mr. Oldham's response refuting Shenzhen Mindray's allegations just three
28  hours later.

above, Shenzhen Mindray did nothing at all to resolve any issues under Chinese law until *three* weeks after the Court's March 6 Order. Then, as Judge Rosenbluth found, Shenzhen Mindray affirmatively "sought" a finding from the SFDA that its source code could not be produced. (D.I. 153 at 3 (emphasis added).) Even today, Shenzhen Mindray has not taken any action to resolve whether its source code actually contains Chinese state secrets.

Shenzhen Mindray argues that its violation of the March 6 Order was justified because it "lacked the benefit" of this Court's views on the March 6 Order until this Court's May 28 Order. But this Court upheld the validity of the March 6 Order over a month earlier, on April 15, 2014. (D.I. 152.) Shenzhen Mindray produced no source code at that time. Then, this Court upheld the May 6 Order a *second* time, on May 28, 2014. (D.I. 202.) Shenzhen Mindray *still* produced no additional discovery.

It was only after Masimo initiated these sanctions proceedings that Shenzhen Mindray even hinted that it might provide additional discovery. That Shenzhen Mindray, upon threat of sanctions, apparently became motivated to provide additional discovery does not show that it was substantially justified in violating this Court's Order. To the contrary, Shenzhen Mindray's latest positions confirm that its prior withholding of source code was not justified.

For example, in response to Masimo's *second* Motion for Sanctions, Shenzhen Mindray now announces that its 9006 source code is actually "obsolete" and may be produced. But Shenzhen Mindray could and should have reached this conclusion months ago. Instead, Shenzhen Mindray improperly withheld this and other discovery, forcing Masimo to file and respond to at least *seven* motions and *ex parte* applications to obtain fundamental discovery ordered months ago.

Moreover, Shenzhen Mindray provides no justification at all for its improper withholding of product samples. Shenzhen Mindray does not attempt

to explain why this Court should not award attorney's fees for Shenzhen Mindray's failure to produce samples.  There is no justification, under Chinese law or otherwise, for Shenzhen Mindray's failure to identify, collect and produce samples it was ordered to produce nearly *four* months ago.  Even today, Shenzhen Mindray has still not provided Masimo any additional samples or explained what happened to the samples it told Masimo and this Court were in China and "ready to ship" over three months ago.  As Masimo explained in its Opening Brief, willfulness, fault and/or bad faith are not required to impose monetary sanctions.  (D.I. 235 at 21-22.)  The Court should award Masimo its attorney's fees.

### III.  CONCLUSION

For the reasons discussed above, the Court should grant Masimo's Renewed Motion for Sanctions.  At a minimum, the Court should issue an order finding that any source code not provided in the United States by July 28 practices the claims of Masimo's asserted algorithm patents.  Similarly, the Court should order that any product for which samples have not been provided by July 28 practices the claims of these patents.  In addition, the Court should award Masimo its attorney's fees incurred in addressing Shenzhen Mindray's discovery misconduct.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  July 14, 2014       By: */s/ Stephen W. Larson*
Joseph R. Re
Jon W. Gurka
Stephen W. Larson
Nicholas A. Belair

Attorneys for Plaintiffs and
Counter-Defendant
MASIMO CORPORATION and
MASIMO INTERNATIONAL SARL

- 18 -