Joseph R. Re (SBN 134,479)
Joe.Re@knobbe.com
Jon W. Gurka (SBN 187,964)
Jon.Gurka@knobbe.com
Stephen W. Larson (SBN 240,844)
Stephen.Larson@ knobbe.com
Nicholas A. Belair (SBN 295,380)
Nick.Belair@knobbe.com
Mark D. Kachner (SBN 234,192)
Mark.Kachner@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Fax:    (949) 760-9502

Attorneys for Plaintiffs
MASIMO CORPORATION and
MASIMO INTERNATIONAL SARL

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION a Delaware corporation, <br><br> and <br><br> MASIMO INTERNATIONAL SARL, a corporation of Switzerland <br><br> Plaintiffs, <br><br> v. <br><br> SHENZHEN MINDRAY BIO-MEDICAL ELECTRONICS CO., LTD a corporation of the People's Republic of China <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS | Civil Action No. SACV12-02206 CJC (JPRx) <br><br> **JOINT STIPULATION ACCOMPANYING MASIMO CORPORATION AND MASIMO INTERNATIONAL SARL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** <br><br> Date: March 26, 2015 <br> Time: 10:00 a.m. <br> Discovery Cut-Off: 4/30/15 <br> Pretrial Conference: 11/16/15 <br> Trial: 12/01/15 <br><br> Hon. Jean P. Rosenbluth |

# TABLE OF CONTENTS

**Page No.**

I.   Introductory Statements ............................................................1

    A.   Masimo's Introductory Statement ...................................1

    B.   Shenzhen Mindray's Introductory Statement ..................2

II.  Specification of Issues In Dispute..........................................5

    A.   Requests For Production Nos. 192-194 and 198 ...........5

        1.   RFP No. 192 .......................................................5

        2.   RFP No. 193 .......................................................6

        3.   RFP No. 194 .......................................................7

        4.   RFP No. 198 .......................................................8

        5.   Masimo's Position Regarding Requests For Production Nos. 192-194 and 198 (Shenzhen Mindray's Alleged Patent Rights) ........................9

            a.   The Patent Ownership And Licensing Documents Are Relevant To Determining Damages For Masimo's Alleged Infringement ..............................................9

            b.   The Patent Ownership And Licensing Documents Masimo Seeks Are Not Privileged..............................................10

            c.   Shenzhen Mindray Has Control Over The Patent Ownership And Licensing Documents Because It Has The Contractual Right To Demand Such Documents From MMIL ........................................................11

            d.   Shenzhen Mindray Has Actual Control Over MMIL's Documents.................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS
## (*cont'd*)

**Page No.**

       i.     Shenzhen Mindray And MMIL Have Commonality Of Ownership..........................12

       ii.    Shenzhen Mindray And MMIL Have The Same Chairman and Overlapping Corporate Officers .........................................13

       iii.   Shenzhen Mindray And MMIL Exchange Documents In The Ordinary Course Of Business .......................14

       iv.   MMIL Will Directly Benefit From Any Award That Shenzhen Mindray May Receive From Its Asserted Patents ...........................................................17

       v.    MMIL Has Already Substantially Participated In This Litigation .......................17

6.    Shenzhen Mindray's Position Regarding Requests For Production Nos. 192-194 and 198 ..............................18

    a.    Masimo Cannot Disregard that Shenzhen Mindray and MMIL Are Separate Corporate Entities....................................................................18

    b.    The Documents at Issue Are Not in Shenzhen Mindray's Actual Control Merely Because Shenzhen Mindray is an Operating Subsidiary of MMIL..................................19

    c.    The Patent Ownership and Licensing Documents Are Not Relevant to Any Discovery Issue. ....................................................21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**
(***cont'd***)

**Page No.**

d.    Assignment of the Patents from MMIL to Shenzhen Mindray Has Not Created a Contractual Right of Access to the Documents Sought by Masimo. ..............................21

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Plaintiff Masimo Corporation ("Masimo"), as movant, and Defendant Shenzhen Mindray Bio-medical Electronics Co., Ltd. ("Shenzhen Mindray"), as respondent, submit the following Joint Stipulation regarding Masimo's Motion to Compel the Production of Documents.  Pursuant to Local Rule 37-1, this Joint Stipulation was prepared following the parties' conference of counsel, which took place on January 22, 2015.

## I.  INTRODUCTORY STATEMENTS

### A.    Masimo's Introductory Statement

Shenzhen Mindray and its parent company, Mindray Medical International Limited ("MMIL"), a Cayman Islands holding company, are using their corporate shell structure to withhold highly relevant documents relating to Shenzhen Mindray's alleged ownership of its asserted patents, as well as documents showing any transfer of those rights and payments related to those patent rights.

On November 13, 2014, Masimo brought a motion to compel production of the same documents that Masimo seeks in this motion.  [*See* D.I. 252].  At that time Shenzhen Mindray had produced the public patent assignment record on file with the United States Patent and Trademark Office, but had not produced underlying transfer documents or evidence of any payments related to any transfer of those patent rights.  At the hearing for this prior motion to compel, Shenzhen Mindray's counsel took the position that Shenzhen Mindray could not produce the requested patent ownership documents because they are allegedly within the possession of MMIL.  (*See* Declaration of Mark D. Kachner ("Kachner Decl."), Ex. 8 at 63:4-15).  This Court clarified that the correct legal standard is whether such documents are within Shenzhen Mindray's ***control***, and ordered Shenzhen Mindray to perform a reasonably diligent search for

/ / /

responsive documents.   (*Id.* at 63:16-64:10 and 65:16-22).   But Shenzhen Mindray refuses to search MMIL's records.  (*See* Kachner Decl., Ex. 4).

The requested documents are within Shenzhen Mindray's control. Shenzhen Mindray has the legal right to demand that MMIL provide such documents pursuant to a contract executed between Shenzhen Mindray and MMIL.  In addition, Shenzhen Mindray has actual control over such documents because MMIL is merely a holding company that performs substantially all of its business through Shenzhen Mindray, its primary operating subsidiary. Indeed, Shenzhen Mindray and MMIL are virtually indistinguishable as they have the same Chairman of the Board of Directors, overlapping corporate officers, shared document repositories, and intertwined finances.

Significantly, MMIL has already directly participated in this litigation by purchasing the asserted patents on Shenzhen Mindray's behalf.   Shenzhen Mindray and MMIL should not be able to use their corporate shell structure as both a sword and a shield to procure assets for Shenzhen Mindray's case and to prevent Masimo from discovering highly relevant documents relating to the acquisition of the asserted patents.   These patent ownership documents are critical for Masimo to conduct meaningful discovery at upcoming depositions. Shenzhen Mindray should be ordered to produce these patent ownership documents immediately.

Shenzhen Mindray's remaining relevance and privilege objections are meritless.  Shenzhen Mindray's continued refusal to produce such documents is just another example of Shenzhen Mindray's abusive discovery tactics in this litigation.

**B.**     **Shenzhen Mindray's Introductory Statement**

Masimo's effort to have this Court reconsider prior decisions is improper and cloaked in the guise of yet another motion to compel.   Masimo's motion disregards the law of the case, and is contrary to positions Masimo itself has

successfully advanced to avoid both reciprocal discovery of its own costs to acquire the Masimo patents-in-suit and spoliation sanctions for the conduct of its own two non-party affiliates.   Moreover, the District Court Judge already rejected Masimo's alter-ego arguments by dismissing Mindray DS USA, Inc. from this litigation, and such arguments warrant no further consideration with respect to MMIL.   Having already been denied the relief it sought on its prior motion to compel, Masimo's proper recourse was to seek reconsideration of this Court's December 4, 2014 Order (Declaration of Justin E. Gray ("Gray Decl.") Ex. A), not to file a duplicative motion after the time for seeking review of that Order expired.   Masimo's request that this Court compel production of non-relevant documents that are not in Shenzhen Mindray's possession, custody, or control should be denied.

Masimo already brought this very same motion to compel on November 13, 2014, and this Court granted all of the relief it was capable of granting.   (*See* Gray Decl., Ex. A; Ex. B at 63-64.)   This Court already ordered Shenzhen Mindray to search for and produce documents in its possession, custody or control.   (*See* Gray Decl., Ex. A.)   Shenzhen Mindray complied with that Order. The arguments set forth in Masimo's portion of the Joint Stipulation have already been rejected by this Court.   (*See* Gray Decl., Ex. A; Ex. B at 63-64.) Masimo's proper course of action, since it evidently disagreed with this Court's Order, was to file a motion for review before December 18, 2014.   Masimo did not do so.   As a consequence, the issue is now waived.

There is a reason Masimo did not file a motion for reconsideration.   It was too busy arguing to this Court that the attorneys' fees and costs that Masimo incurred, *inter alia*, in acquiring the Masimo patents asserted here, *are irrelevant* and that Shenzhen Mindray's efforts to obtain such discovery should be blocked as *irrelevant*.   Having successfully convinced this Court that the expenses involved in obtaining asserted patents are irrelevant, Masimo is in no

position to argue that the expense incurred to acquire its patents is relevant to any issue in this litigation, and for good measure, it is judicially estopped from so arguing.

During the January 22, 2015 conference of counsel, Shenzhen Mindray explained all of the above to Masimo, and Masimo had no substantive dispute or response to the squarely inconsistent position it is taking now to secure discovery compared to that it took to successfully insulate materials from discovery.

Moreover, the requested documents are not in Shenzhen Mindray's possession, custody or control.  Neither MMIL's status as a holding company, nor the fact that MMIL and Shenzhen Mindray have overlapping officers and directors, provides a sufficient basis for this Court to disregard corporate formalities.  Masimo already made these alter-ego arguments to the District Court Judge in opposition to Mindray DS USA, Inc.'s motion to dismiss, and the District Court has already rejected them.  (*See* Gray Decl., Ex. C at 15-16 (Masimo opposition brief arguing that "Mindray USA and Mindray Shenzhen are closely tied"); *see also* Ex. D at 9 (granting dismissal of indirect infringement claims because Mindray DS and Shenzhen Mindray were separate corporate entities).)  Masimo's request that this Court overrule the District Court Judge's prior decision on this very issue should be rejected as contrary to the law of the case.

Moreover, the plain language of the patent assignment from MMIL to Shenzhen Mindray – standard language for such documents – cannot possibly be construed as Masimo suggests to mandate access to documents relating to acquisition of the patents at issue.  Instead, that standard assignment language merely requires MMIL to provide documents necessary to perfect title, *i.e.*, to record the change of ownership in the Patent Office.  MMIL did so, the corresponding documents have already been recorded at the United States

Patent and Trademark Office, and those documents have been produced by Shenzhen Mindray during discovery.

Masimo's motion to compel should be denied.

## II. SPECIFICATION OF ISSUES IN DISPUTE

### A. Requests For Production Nos. 192-194 and 198

#### 1. RFP No. 192

"All documents and things referring or relating to any actual or contemplated assignment, transfer, lien, or grant of rights involving the Mindray Asserted Patents."

#### Shenzhen Mindray's Response to RFP No. 192

"Shenzhen Mindray objects to this request to the extent it seeks production of documents or things protected from discovery by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or immunity. Shenzhen Mindray objects to this request to the extent it seeks documents or things already in the public domain and/or otherwise equally available to or already in the possession, custody, or control of Masimo. Shenzhen Mindray objects to this request as overly broad and unduly burdensome to the extent it seeks production of "all documents and things." Shenzhen Mindray objects to this request to the extent it seeks production of documents or things that are irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Shenzhen Mindray objects to this request as overly broad and unduly burdensome to the extent it requests Shenzhen Mindray to produce or otherwise analyze documents or other information that is not within the possession, custody, or control of Shenzhen Mindray, or to otherwise prepare documents or information that does not already exist. Shenzhen Mindray objects to this request to the extent it seeks legal conclusions or expert opinion. Shenzhen Mindray objects to this request as duplicative of other requests.

Subject to and without waiver of the foregoing General and Specific objections, and to the extent Shenzhen Mindray understands this request, Shenzhen Mindray will produce, at a reasonable time and place, responsive, nonprivileged documents to

the extent that such documents exist and can be located after a reasonable search."

## 2.    RFP No. 193

"All documents and things referring or relating to any payment or other consideration paid by Mindray for rights to the Mindray Asserted Patents."

## Shenzhen Mindray's Response to RFP No. 193

"Shenzhen Mindray objects to this request to the extent it seeks production of documents or things protected from discovery by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or immunity. Shenzhen Mindray objects to this request to the extent it seeks documents or things already in the public domain and/or otherwise equally available to or already in the possession, custody, or control of Masimo. Shenzhen Mindray objects to this request as overly broad and unduly burdensome to the extent it seeks production of "all documents and things."  Shenzhen Mindray objects to this request to the extent it seeks production of documents or things that are irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Shenzhen Mindray objects to this request as overly broad and unduly burdensome to the extent it requests Shenzhen Mindray to produce or otherwise analyze documents or other information that is not within the possession, custody, or control of Shenzhen Mindray, or to otherwise prepare documents or information that does not already exist.  Shenzhen Mindray objects to this request to the extent it seeks legal conclusions or expert opinion. Shenzhen Mindray objects to this request as duplicative of other requests.

Subject to and without waiver of the foregoing General and Specific objections, and to the extent Shenzhen Mindray understands this request, Shenzhen Mindray will produce, at a reasonable time and place, responsive, nonprivileged documents to the extent that such documents exist and can be located after a reasonable search."

/ / /

/ / /

/ / /

- 6 -

### 3.   RFP No. 194

"All documents and things referring or relating to any payment or other consideration received by Mindray for rights to the Mindray Asserted Patents."

### Shenzhen Mindray's Response to RFP No. 194

"Shenzhen Mindray objects to this request because, in its excessive overbreadth, it necessarily it seeks production of documents or things protected from discovery by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or immunity.  A privilege log, among other things, is not reasonably required in response to the unreasonable and open-ended scope of this document request. Shenzhen Mindray further objects to this request as overbroad and unduly burdensome in that this request calls for the production of potentially tens of thousands of documents relating to orders and fulfillment of orders for Shenzhen Mindray parts, and related communications, none of which are relevant to the claims at issue here. Shenzhen Mindray objects to this request to the extent it seeks documents or things already in the public domain and/or otherwise equally available to or already in the possession, custody, or control of Masimo.  Shenzhen Mindray objects to this request as overly broad and unduly burdensome to the extent it seeks production of "all documents and things."   Shenzhen Mindray objects to this request to the extent it seeks production of documents or things that are irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Shenzhen Mindray objects to this request as overly broad and unduly burdensome to the extent it requests Shenzhen Mindray to produce or otherwise analyze documents or other information that is not within the possession, custody, or control of Shenzhen Mindray, or to otherwise prepare documents or information that does not already exist.  Shenzhen Mindray objects to this request to the extent it seeks legal conclusions or expert opinion. Shenzhen Mindray objects to this request as duplicative of other requests.

Subject to and without waiver of the foregoing General and Specific objections, and to the extent Shenzhen Mindray understands this request, Shenzhen Mindray will produce, at a reasonable time and place, responsive, nonprivileged documents to the extent that such documents exist and can be located after a

reasonable search.  Shenzhen Mindray further responds that based upon its reasonable investigation to date, no such documents exist."

### 4.    RFP No. 198

"All documents and things referring or relating to the chain of title for each of the Mindray Asserted Patents."

### Shenzhen Mindray's Response to RFP No. 198

"Shenzhen Mindray objects to this request to the extent it seeks production of documents or things protected from discovery by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or immunity. Shenzhen Mindray objects to this request to the extent it seeks documents or things already in the public domain and/or otherwise equally available to or already in the possession, custody, or control of Masimo.  Shenzhen Mindray objects to this request as overly broad and unduly burdensome to the extent it seeks production of "all documents and things."  Shenzhen Mindray objects to this request to the extent it seeks production of documents or things that are irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Shenzhen Mindray objects to this request as overly broad and unduly burdensome to the extent it requests Shenzhen Mindray to produce or otherwise analyze documents or other information that is not within the possession, custody, or control of Shenzhen Mindray, or to otherwise prepare documents or information that does not already exist.  Shenzhen Mindray objects to this request to the extent it seeks legal conclusions or expert opinion. Shenzhen Mindray objects to this request as duplicative of other requests.

Subject to and without waiver of the foregoing General and Specific objections, and to the extent Shenzhen Mindray understands this request, Shenzhen Mindray will produce, at a reasonable time and place, responsive, nonprivileged documents to the extent that such documents exist and can be located after a reasonable search."

/ / /

/ / /

/ / /

**5.** **Masimo's Position Regarding Requests For Production Nos. 192-194 and 198 (Shenzhen Mindray's Alleged Patent Rights)[1]**

Masimo's Requests For Production Nos. 192-194 and 198 seek evidence of Shenzhen Mindray's alleged ownership of its asserted patents, as well as documents and communications showing any transfer or those rights and payments related to those rights (collectively, the "Patent Ownership and Licensing Documents").

During the parties' January 22, 2015 conference of counsel, Shenzhen Mindray's counsel asserted that their primary basis for refusing to produce such documents is that they are in the possession of MMIL, Shenzhen Mindray's parent company and are thus not within Shenzhen Mindray's control. (*See* Kachner Decl., ¶ 12). Shenzhen Mindray also maintained objections on the basis of relevance and privilege. (*See* Kachner Decl., ¶¶ 13, 14).

**a.** **The Patent Ownership And Licensing Documents Are Relevant To Determining Damages For Masimo's Alleged Infringement**

As an initial matter, the Patent Ownership and Licensing Documents are relevant to important issues in this litigation, including at least to establishing damages for Masimo's alleged infringement. The requested documents would show details of the transfer of patent rights through the ownership chain. Such details should include consideration paid and other details related to the transfer

---

[1] In addition to Masimo's Requests For Production at issue in this motion, Masimo's Interrogatory No. 27 also seeks information related to Shenzhen Mindray's Patent Ownership and Licensing Documents. Shenzhen Mindray objected to this Interrogatory on the grounds briefed in this motion. In addition, Shenzhen Mindray objected to Interrogatory No. 27, arguing that, by counting subparts of unspecified Masimo Interrogatories, Masimo has exceeded the limit for the number of interrogatories in this case. (*See* Kachner Decl. ¶ 14). The parties are continuing to meet and confer on Shenzhen Mindray's counting objection and for this reason, Masimo is not including this Interrogatory in this current motion.

1   of ownership for Shenzhen Mindray's asserted patents.  Shenzhen Mindray has

2   pleaded that Masimo should be required to pay reasonable royalty damages if

3   Shenzhen Mindray prevails on its patent infringement counterclaims.  (*See* D.I.

4   241, at 160.)   Patent acquisition costs are relevant to establishment of a

5   reasonable royalty.  *Integra Lifesciences I, Ltd. v. Merc*k, 331 F.3d 860, 871

6   (Fed. Cir. 2003); *Fresenius Medical Care Holding Inc. v. Baxter Intern., Inc.*,

7   224 F.R.D. 644, 653 (N.D. Cal. 2004); *TransPerfect Global, Inc. v. MotionPoint*

8   *Corp.*, No. C 10-2590, 2013 WL 2552920 *1 (N.D. Cal. June 10, 2013).

9               **b.    The Patent Ownership And Licensing Documents**

10                      **Masimo Seeks Are Not Privileged**

11          As Masimo explained during the parties' conference, Masimo is seeking

12   documents and communications concerning the transfer of patent rights from

13   Prothia SARL, a third party, to MMIL or Shenzhen Mindray.  (*See* Kachner

14   Decl., ¶ 11).  It is well-established that disclosure to a third party waives any

15   privilege.  *See In re Pacific Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir.

16   2012).  Accordingly, there is no privilege covering any document exchanged

17   between Prothia SARL on the one hand and either MMIL or Shenzhen Mindray

18   on the other hand.  Furthermore, any agreement between Prothia SARL, MMIL,

19   or Shenzhen Mindray could not be privileged because such document is not a

20   communication between a client and his attorney.   Based on the foregoing,

21   Shenzhen Mindray's privilege objection is not a valid basis to withhold

22   production of Masimo's requested documents.   Furthermore, Shenzhen

23   Mindray's attorneys in this case were involved in the patent transfer from

24   Prothia SARL and certainly have ready access to the requested documents.  (*See*

25   Kachner Decl., ¶ 28; Ex. 9, at SZ0370812-13 and SZ037815-16).

26   / / /

27   / / /

28   / / /

- 10 -

c.   **Shenzhen Mindray Has Control Over The Patent Ownership And Licensing Documents Because It Has The Contractual Right To Demand Such Documents From MMIL**

Under FED. R. CIV. P. 34, Shenzhen Mindray has an obligation to search for and produce all responsive documents that are in Shenzhen Mindray's "possession, custody, or control." "Control is defined as the legal right to obtain documents upon demand." *See In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999). A contractual obligation to provide documents is sufficient to show control over those documents. *See Genentech, Inc. v. Trs. of Univ. of Penn.*, Case No. C 10-2037 PSG, 2011 WL 5373759, at *3 (N.D. Cal. Nov. 7, 2011) (ordering a party to produce documents in the possession of the party's parent company because the party had the contractual right to request such documents from its parent). Here, the very contract purporting to transfer ownership of Shenzhen Mindray's asserted patents from MMIL to Shenzhen Mindray expressly requires MMIL to "deliver to [Shenzhen Mindray] upon request all lawful documents which may be requested by [Shenzhen Mindray]." (*See* Kachner Decl., Ex. 9, at SZ070799). This agreement does not exempt the documents Masimo seeks. At a minimum, this agreement gives Shenzhen Mindray the legal right to request from MMIL, all documents and things related to Shenzhen Mindray's alleged ownership of the asserted patents. Thus, Shenzhen Mindray has legal control over the documents that Masimo seeks.

d.   **Shenzhen Mindray Has Actual Control Over MMIL's Documents**

In addition to having the contractual right to demand documents from MMIL, Shenzhen Mindray's close relationship with MMIL demonstrates actual control over MMIL's documents. Courts consider the following factors to determine whether documents in the possession of one entity are in the control

- 11 -

of another entity: (a) commonality of ownership of the two entities; (b) exchange or intermingling of directors, employees, or officers of the two entities; (c) exchange of documents between the two entities in the ordinary course of business; (d) any benefit or involvement by the non-party entity in the underlying transaction; and (e) the involvement of the non-party entity in the litigation. *See Thales Avionics Inc. v. Matsushita Avionics Systems Corp.*, Case No. SACV 04-454-JVS(MLGx), 2006 WL 6534230, at *4 (C.D. Cal. Mar. 8, 2006). Each of these factors weighs heavily in favor of finding that Shenzhen Mindray is in control of documents within MMIL's possession.

### i.   Shenzhen Mindray And MMIL Have Commonality Of Ownership

This factor pertains to the closeness of coordination between Shenzhen Mindray and MMIL. *See Thales Avionics Inc.*, 2006 WL 6534230 at *5. As explained in MMIL's most recent Annual Report, MMIL is a Cayman Islands holding company and Shenzhen Mindray is MMIL's "primary operating subsidiary" that conducts substantially all of MMIL's business. (*See* Kachner Decl., Ex. 10 at 30, 51, and 75). In addition, MMIL owns approximately 99.99% of the equity in Shenzhen Mindray. (*See Id.* at 51). MMIL's near exclusive ownership of Shenzhen Mindray and Shenzhen Mindray's control over MMIL's business activities, weighs strongly in favor of a finding that Shenzhen Mindray controls the Patent Ownership and Licensing Documents.

Furthermore, the Mindray entities hold themselves out as a single organization, the Mindray Group. The MMIL website states that "Mindray is one of the leading global providers of medical devices and solutions." (*See* Kachner Decl., Ex. 11). *See also Thales Avionics*, 2006 WL 6534230, at *5 (finding that a corporate website holding out related entities as part of a single organization was evidence of close coordination between the entities). Indeed, Mr. Minghe Cheng, one of MMIL's and Shenzhen Mindray's corporate officers,

explained at his deposition that he views Mindray entities together as a group and not as separate legal entities:

> We always go by the structure of the **whole group**, entire group. . . .  We did not go by the legal institution type of structure. . . . [For example] President Li was **in charge** of the **entire group**, not just only for the Shenzhen Mindray.  We always go by the group structure.  We don't go by **any individual entity in terms of the management** of the group.

[D.I. 193, Ex. 3 at 154:20-155:16 (emphasis added).]  Thus, Mr. Cheng views the various Mindray companies as a single group, and he views Shenzhen Mindray and MMIL as one and the same.  (*Id.* at 160:7-161:4; D.I. 193, Ex. 4 at 318:4-10.)[2]  This conflation of "Shenzhen Mindray" and the "Mindray Group" weighs heavily in favor of finding that Shenzhen Mindray has control over all of the Mindray Group's documents, including the Patent Ownership and Licensing Documents.  *See Thales Avionics*, 2006 WL 6534230, at *5.

### ii. <u>Shenzhen Mindray And MMIL Have The Same Chairman and Overlapping Corporate Officers</u>

According to a "Mindray Group Organization Chart," which Shenzhen Mindray produced in this case, and MMIL's most recent Annual Report, Shenzhen Mindray and MMIL have the same Chairman and the same corporate officers.  (*See* Kachner Decl., Ex. 12, at SZ0360089, Ex. 10 at 13).[3]  Mr. Xu

---

[2] Mr. Cheng Minghe is currently the Chief Strategy Officer of Mindray Shenzhen and MMIL and was a co-founder of Mindray Shenzhen in 1991.  (*See* D.I. 47-5 at ¶ 1.)

[3] The document entitled "Mindray Group Organization Chart" apparently depicts Shenzhen Mindray's organizational structure because it identifies Mr. Ting "Richard" Yang and Ms. Xin "Ellen" Liu as employees.  (*See* Kachner Decl., Ex. 12 at SZ0360091 and SZ036109).  Both Mr. Yang and Ms. Liu have submitted declarations in this case declaring that they are employees of Shenzhen Mindray.  (*See* D.I. 59, Ex. 6; D.I. 164, Ex. 3).

- 13 -

Hang serves as Chairman of both Shenzhen Mindray and MMIL.  (*Id.*)  Mr. Li Xiting serves as President and CEO of Shenzhen Mindray and President and Co-CEO of MMIL.  (*Id.*)  Mr. Minghe Cheng serves as Chief Strategic Officer of Shenzhen Mindray and Co-CEO and Chief Strategic Officer of MMIL.  (*Id.*)  Mr. Jiangxin Wang serves as Group VP and GM of Public Relations at Shenzhen Mindray and Chief Administrative Officer of MMIL.  (*Id.*)  Mr. Alex Lung serves as Chief Financial Officer of both Shenzhen Mindray and MMIL.  (*Id.*)  Mr. Jie Liu serves as Chief Operating Officer of both Shenzhen Mindray and MMIL.[4]  Ms. Fannie Lin Fan serves as General Counsel and Secretary of the Board of Directors of Shenzhen Mindray and as General Counsel of MMIL.  (*See* Kachner Decl., Ex. 12, at SZ0360090, Ex. 10 at 15).  The high degree of overlapping directors, officers, and employees weighs heavily in favor of finding that Shenzhen Mindray has control over the Patent Ownership and Licensing Documents.

### iii.   Shenzhen Mindray And MMIL Exchange Documents In The Ordinary Course Of Business

By Shenzhen Mindray's and MMIL's own admission, Shenzhen Mindray is MMIL's primary operating subsidiary that conducts substantially all of MMIL's business, necessitating the exchange of documents between Shenzhen Mindray and MMIL during the ordinary course of business.  (*See* Ex. 10, at 30, 51, 75).   Shenzhen Mindray's document production includes numerous documents that appear to have come from MMIL's files.  Those documents include, among others:

---

[4] It is Masimo's understanding that Mr. Jie Liu may have recently ended his employment with the Mindray Group.  Shenzhen Mindray has not produced an updated organizational chart in this litigation and MMIL has not released an updated Annual Report, so it is unclear who currently holds the Chief Operating Officer position for Shenzhen Mindray and MMIL.

1. An "Asset and Purchase Agreement" between MMIL and Datascope Corp., dated March 10, 2008 (*See* Kachner Decl., Ex. 13);

2. A MMIL "Board Meeting Agenda," dated April 23, 2012 (*See* Kachner Decl., Ex. 14);

3. A MMIL memo from its Chief Operating Officer, Mr. Jie Liu, announcing organizational structure changes and management appointments (*See* Kachner Decl., Ex. 15);

4. A MMIL document entitled "Method for Contract Review and Management," signed by its Chief Operating Officer, Mr. Jie Liu (*See* Kachner Decl., Exs. 16 and 17); and

5. An "IP Transfer Agreement" between MR Holdings (HK) Limited and Mindray DS USA, Inc., which are both subsidiaries of MMIL, dated December 21, 2009 (*See* Kachner Decl., Ex. 18).

Shenzhen Mindray's production of numerous MMIL documents in this litigation shows that Shenzhen Mindray has control over MMIL's documents, including the Patent Ownership and Licensing Documents that are the subject of this Motion.   In particular, the production of an MMIL "Asset Purchase Agreement" and an "IP Transfer Agreement" between two other Mindray entities strongly suggests that all of the Mindray entities exchange documents with one another in the ordinary course of business.   Shenzhen Mindray and MMIL cannot use their corporate shell structure to selectively shield certain MMIL documents.   *See AFL Telecomms. LLC v. SurplusEQ.com Inc.*, Case No. CV-11-1086 PHX DGC, 2012 WL 2590557 (D. Ariz. July 5, 2012) (*quoting Gerling Int'l Ins. Co. v. Commissioner*, 839 F.2d 131, 140 (3rd Cir. 1988)) ("[w]here the relationship is thus such that the agent-subsidiary can secure documents of the principal-agent to meet its own business needs and documents

/ / /

1  helpful for use in the litigation, the courts will not permit the agent-subsidiary to

2  deny control for purposes of discovery by an opposing party").

3        In addition, MMIL's "Method for Contract Review and Management"

4  document suggests that the Mindray entities all have access to a shared SAP

5  system database for purchase orders.  (*See* Kachner Decl., Exs. 16 & 17, at §§

6  2.1, 4.2.3).    This document also suggests that a common Legal Affairs

7  Department and Administrative Office maintains Mindray Group contract

8  archives.  (*Id*. at §§ 8.1, 8.5).

9        In addition to these MMIL documents, Shenzhen Mindray also produced

10  an e-mail exchange between Lifei ("Albert") Xiao and Jennifer Marrash, a

11  Mindray DS USA, Inc., employee, dated January 16, 2012 describing shared

12  access to document servers. (*See* Kachner Decl., Ex. 19).  This email discusses

13  access to "DHF [and] ECM Server[s]," which appear to store documents shared

14  between Mindray entities.   (*See* Kachner Decl., Ex. 19). Incredibly, during

15  counsels' conference regarding this motion, Shenzhen Mindray's counsel was

16  unable to confirm whether they had even inquired about the existence of such

17  shared databases and archives.  (*See* Kachner Decl., ¶ 12).  Shenzhen Mindray's

18  access to shared archives and databases by the Mindray Group strongly suggests

19  that Shenzhen Mindray has the legal right to access and provide the requested

20  Patent Ownership and License Documents to Masimo.  *See Choice-Intersil*

21  *Microsystems, Inc. v. Agere Systems, Inc.*, 224 F.R.D. 471, 472-73 (N.D. Cal.

22  2004) (ordering a party to produce documents in the custody of a non-party

23  parent company where evidence showed that the party and the parent company

24  shared document databases).

25  / / /

26  / / /

27  / / /

28  / / /

### iv.    MMIL Will Directly Benefit From Any Award That Shenzhen Mindray May Receive From Its Asserted Patents

MMIL owns approximately 99.99% of the equity in Shenzhen Mindray. (*See* Kachner Decl., Ex. 10, at 51). As explained in MMIL's Annual Report, as a holding company, MMIL relies on "dividends and other distributions on equity paid by [its] operating subsidiary Shenzhen Mindray for [its] cash and financing requirements, including the funds necessary to pay dividends and other cash distributions to [its] shareholders, service any debt [it] may incur and pay [its] operating expenses." (*Id.* at 25.) MMIL's reliance on Shenzhen Mindray to meet its cash and financial requirements shows that MMIL will directly benefit from any award Shenzhen Mindray receives in this case. Shenzhen Mindray thus has control over the documents that Masimo seeks. *See Thales Avionics*, 2006 WL 6534230, at *5.

### v.    MMIL Has Already Substantially Participated In This Litigation

MMIL purchased Shenzhen Mindray's asserted patents on its own behalf before assigning those rights to Shenzhen Mindray. According to records submitted to the U.S. Patent & Trademark Office, after Masimo filed its Complaint in this case on December 21, 2012, MMIL allegedly purchased the asserted patents from Prothia SARL on July 25, 2013, and allegedly assigned the asserted patents less than a month later to Shenzhen Mindray on August 16, 2013. (*See* D.I. 1; Kachner Decl., Ex. 9, at SZ0370796 and SZ0370799). Less than a week later, on August 21, 2013, Shenzhen Mindray asserted the same patents against Masimo. [*See* D.I. 70].

MMIL's direct participation in this litigation to benefit Shenzhen Mindray supports Masimo's argument that Shenzhen Mindray has control over MMIL. *See Thales Avionics Inc.*, 2006 WL 6534230, at *4. Shenzhen Mindray

and MMIL must not be permitted to abuse their corporate shell structure by withholding highly relevant documents relating to MMIL's acquisition of the asserted patents from Prothia SARL.

For all of these reasons, Masimo requests that the Court order Shenzhen Mindray to immediately produce evidence related to the Patent Ownership and Licensing Documents.

### 6. Shenzhen Mindray's Position Regarding Requests For Production Nos. 192-194 and 198

#### a. Masimo Cannot Disregard that Shenzhen Mindray and MMIL Are Separate Corporate Entities.

It is the law of the case that separateness of corporate entities will be observed by this Court.  The District Court Judge dismissed Mindray DS USA because it is a separate corporate entity.  (*See* Gray Decl., Ex. E (lending no credence to Masimo's contentions that "Mindray USA and Mindray Shenzhen are closely tied").)   In addition, Masimo successfully argued to this Court that its wholly owned and controlled Chinese subsidiary, Masimo China, was not a party to the suit and thus Shenzhen Mindray could not compel production of documents in the hands of Masimo China (or Masimo SARL) because those entities are not parties.  (*See* Gray Decl., Ex. F (denying motion to compel).) Similarly, MMIL is not a party, and thus the relief that Masimo seeks is inconsistent with Masimo's arguments regarding its relationship to Masimo SARL and Masimo China.  (Gray Decl., Ex. G at 64 (Masimo arguing "Well, [Masimo China is] not a party to this litigation…it's not even our obligation to produce documents from a company like that.  They can subpoena for those sorts of information.").)  Thus, Masimo is judicially estopped from now arguing that documents in the hands of non-party affiliated companies are in the "possession, custody or control" of the parties to the litigation.  Moreover, this Court is precluded from granting the requested relief to Masimo without

manufacturing a principle of law that one party may recover documents from another on the same theory that discovery was denied to the other party in the litigation.

"Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another case." *See Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 1152, 1164 (C.D. Cal. 2008). The standard for applying judicial estoppel is clearly met here where: (1) Masimo's current position on disregarding corporate separateness is "clearly inconsistent" with its earlier position; (2) Masimo successfully advanced the earlier position, such that judicial acceptance of an inconsistent position in the later proceeding would create a perception that either the first or the second court had been misled; and (3) where Masimo would derive an unfair advantage or impose an unfair detriment on Shenzhen Mindray if not estopped. *See id.* Moreover, this Court cannot order discovery contrary to the District Court Judge's findings.

      **b.**    **<u>The Documents at Issue Are Not in Shenzhen Mindray's Actual Control Merely Because Shenzhen Mindray is an Operating Subsidiary of MMIL.</u>**

Just because Shenzhen Mindray is a subsidiary of MMIL by no means gives Shenzhen Mindray control over the documents sought. District courts in the Ninth Circuit have found an insufficient showing of control or legal right to demand access to documents, even where a company is a wholly owned subsidiary. *See Genentech, Inc. v. Trs. of the Univ. of Pa.*, No. C 10-2037 PSG, 2011 U.S. Dist. LEXIS 128526 at *9-10 (N.D. Cal. Nov. 7, 2011) (finding that while there may be a suggestion that the parent entity had a legal right to a subsidiary's documents, there was not a sufficient showing "that the converse is true" that the subsidiary had a legal right to the parent's documents and denying in part defendants' motion to compel); *Tessera Inc. v. Micron Tech., Inc.*, No.

- 19 -

C-06-80024-MISC-JW (PVT), 2006 U.S. Dist. LEXIS 25114 at *17 (N.D. Cal. Mar. 22, 2006) (denying in part defendants' motion to compel and finding no specific showing that the subsidiary had a legal right to obtain any of the documents set forth in the document requests on demand even though the parent company owned 96.7 percent of the U.S. subsidiary, there was a joint global sales, marketing and distribution network, there were joint research and development efforts, and the parent and subsidiary had overlapping directors and shared counsel).  The fact that *some* documents may have been exchanged between MMIL and Shenzhen Mindray in the ordinary course of *some* of their business transactions does not mean that it must be so for the documents at issue in Masimo's motion, or that this gives Shenzhen Mindray a right to demand said documents from MMIL.  *See Genentech*, 2011 U.S. Dist. LEXIS 128526 at *8 ("Penn did not elicit testimony, however, that such requests [for data] are made and honored regularly.")  As in *Genentech* and *Tessera,* Masimo's generalizations about the interconnectedness of MMIL and Shenzhen Mindray do not constitute a sufficient showing that Shenzhen Mindray has control over the documents Masimo seeks.

Masimo unpersuasively hangs its hat on one unpublished case, which in turn relies on authority outside the Ninth Circuit.  *See Thales Avionics Inc. v. Matsushita Avionics Sys. Corp.*, No. SACV 04-454-JVS(MLGx), 2006 U.S. Dist. LEXIS 97119 (C.D. Cal. Mar. 8, 2006).  However, this Court need not address even this case because Masimo has already prevailed before this Court, during discovery motions, that documents in the hands of non-party affiliates need not be produced even where they are clearly relevant to the issues raised by the litigation.

Here, Masimo has also succeeded in convincing this Court that documents relating to the expense of acquiring the asserted Masimo patents – the invoices relating to the patent prosecution attorneys' fees and expenses – are

irrelevant and that Shenzhen Mindray's efforts to take discovery on such topics constitutes "harassment." (*See* Gray Decl., Ex. H at 1.) Masimo convinced this Court that documents relating to acquisition costs of Masimo's asserted patents – actually in the possession, custody and control of Masimo – are irrelevant. Masimo has no basis to now argue that similar acquisition documents in the possession, custody and control of a non-party affiliate are somehow relevant.

### c. The Patent Ownership and Licensing Documents Are Not Relevant to Any Discovery Issue.

It is law of the case that expenditures related to acquisition of the asserted patents in this litigation are irrelevant, and that discovery into these issues constitutes harassment. In particular, this Court already ruled, at Masimo's urging, that the attorneys' fees that Masimo spent to acquire the asserted patents are not relevant to any issue in the case. (*See* Gray Decl., Ex. I at 2:13–21, 7:3–9:15; Ex. H at 4:15-8:16; Ex. J; Ex. K at 6:11-15 ("Knobbe further objects to this request because it seeks documents that were subject to the Court's December 4, 2014 and January 26, 2015 Orders (*see* Dkt. Nos. 262, 301) denying Shenzhen Mindray's motion to compel production of documents relating to Knobbe's attorney billings to Masimo.").) Accordingly, by Masimo's own admission and positions taken in this litigation, Masimo is judicially estopped from now seeking further discovery (*i.e.*, regarding Shenzhen Mindray's acquisition of its asserted patents) on a topic that Masimo successfully convinced this Court was irrelevant. *See Milton H. Greene Archives, Inc.*, 568 F. Supp. at 1164.

### d. Assignment of the Patents from MMIL to Shenzhen Mindray Has Not Created a Contractual Right of Access to the Documents Sought by Masimo.

Finally, Masimo argues that because MMIL has assigned the patents to Shenzhen Mindray, Shenzhen Mindray is in control of the documents at issue

through a contractual right of access.  Masimo's contention has no basis in fact or law.  The express requirement to deliver documents upon request in that assignment agreement between Masimo and MMIL only refers to the documents needed ***to perfect the title of the patent***, *i.e.*, provide documents needed to record the change of ownership in the United States Patent and Trademark Office.  That standard assignment language cannot remotely be construed to require access to the actual sales documents.  "Where there is no ambiguity, there is nothing to be construed.  And a court cannot and should not do violence to the plain terms of a contract by artificially creating ambiguity where none exists."  *In re Air Passenger Computer Reservations Sys. Antitrust Litig.*, 724 F. Supp. 744, 747 (C.D. Cal. 1989).  Additionally, courts in the discovery context have limited compelled production of responsive documents to those to which the contractual agreement specifically pertains.  *See Genentech*, 2011 U.S. Dist. LEXIS 128526 at *10 (finding authorization to access documents was limited to the data sharing provisions of the Agreement [between the subsidiary and the parent], which extended the reach of "free and open communication" and "sharing of data and materials" only to that relating to the development plan created by the parties and granting the motion to compel in part only as to those documents).  The assignment agreement pertains only to the perfection of title and not to any of the document requests propounded by Masimo.  Accordingly, the executed assignment provides Shenzhen Mindray no contractual right to rummage through the files of MMIL, as Masimo misleadingly argues.  Indeed, Masimo's argument would implicate every single file on every single topic within MMIL.  Clearly a contract designed to assist in perfecting title was not meant to break down the walls between the corporations and to allow Shenzhen Mindray unfettered access to all of MMIL's documents.

/ / /

1        For the foregoing reasons, Shenzhen Mindray requests that this Court

2    deny Masimo's motion to compel.

3

4

5                                        Respectfully submitted,

6                                        KNOBBE, MARTENS, OLSON & BEAR, LLP

7

8    Dated: March 5, 2015          By: */s/ Mark D. Kachner*

9                                        Joseph R. Re

10                                       Jon W. Gurka

11                                       Stephen W. Larson
                                         Nicholas A. Belair

12                                       Mark D. Kachner

13                                       Attorneys for Plaintiffs,
                                         MASIMO CORPORATION and
14                                       MASIMO INTERNATIONAL SARL

15

16                                       FOLEY & LARDNER, LLP

17

18   Dated: March 5, 2015          By: */s/ Justin E. Gray (With Permission)*

19                                       Nicola A. Pisano

20                                       Jose L. Patiño

21                                       Ary Chang
                                         Justin E. Gray

22                                       Christopher C. Bolten

23                                       Attorneys for Defendant,
                                         SHENZHEN   MINDRAY   BIO-MEDICAL
24                                       ELECTRONICS CO., LTD.

25

26

27

28

                                      - 23 -